# EXHIBIT 1

1  Stephen J. Kottmeier (State Bar No. 077060)
   sjk@hopkinscarley.com
2  Jay M. Ross (State Bar No. 151759)
   jross@hopkinscarley.com
3  HOPKINS & CARLEY
   A Law Corporation
4  The Letitia Building
   70 S First Street
5  San Jose, CA  95113-2406

6  *mailing address:*
   P.O. Box 1469
7  San Jose, CA 95109-1469
   Telephone:     (408) 286-9800
8  Facsimile:     (408) 998-4790

9  Attorneys for Secured Creditor Boston Private Bank
   & Trust Company, formerly known as and successor
10 to Borel Private Bank & Trust Company

11                UNITED STATES BANKRUPTCY COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                       SAN JOSE DIVISION

14

15                                    | CASE NO.  13-53491
16  In re:                            | RS No.
                                      | CHAPTER 11
17
                                      | **DECLARATION OF DAVID SCHEIBER**
18  272 E. Santa Clara Grocery, LLC,  | **IN SUPPORT OF SECURED CREDITOR**
                                      | **BOSTON PRIVATE BANK & TRUST**
19              Debtor.               | **COMPANY'S MOTION FOR ORDER**
                                      | **CONFIRMING NO STAY IS IN EFFECT**
20                                    | **WITH RESPECT TO RENT**

21                                    | Hearing
                                      | Date:       August 21, 2013
22                                    | Time:       2:00 p.m.
                                      | Place:      280 S. First Street
23                                    |             San Jose, CA
                                      |             Courtroom 3099
24                                    | Judge:      Hon. Stephen L. Johnson

25

26         I, David Scheiber, declare as follows:

27         1.     I am a Senior Vice President – Special Assets Department of Secured Creditor

28  Boston Private Bank & Trust Company ("BPB"), successor in interest by merger to and formerly

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE
114\1018762.1

DECLARATION OF DAVID SCHEIBER ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S MOTION FOR
ORDER CONFIRMING NO STAY IS IN EFFECT (CASE NO. 13-53491)

known as Borel Private Bank & Trust Company. I have been assigned the responsibility for administration and enforcement of the loan ("Loan") which is secured by the property now owned by the debtor in this case. As part of my responsibilities, I have become familiar with the BPB's loan documents for the Loan, its accounting of sums due and owing under the Loan, and the supervision of the Loan by BPB personnel before me. Except as to those matters stated upon information and belief, I have personal knowledge of the matters set forth in this declaration based upon my personal review of BPB's business records, discussions with other BPB staff and communications with the manager of the current owner of the property. If called upon to do so, I could and would competently testify thereto.

2. I make this declaration in support of BPB's Motion for Order Confirming No Stay Is In Effect With Respect to Rent being collected by BPB pursuant to a recorded assignment of rents agreement, a deed of trust and BPB's enforcement of its assignment of rents pursuant to a pre-petition notice to the tenant under California Civil Code section 2938 to pay rent directly to BPB. The rents are being paid to BPB by the tenant at the real property located at 272 East Santa Clara Street, San Jose, CA 95112 (Assessor's Parcel No. 467-24-111) (the "Property").

3. BPB has never had a lending relationship with Debtor 272 E. Santa Clara Grocery, LLC ("E. Santa Clara LLC"). BPB's borrower was and is an entity known as Kimomex Santa Clara, LLC ("Kimomex").

4. On or about July 15, 2008, Kimomex executed and delivered to Borel Private Bank & Trust Company ("Borel") a Promissory Note, a first Deed of Trust ("Deed of Trust"), an Assignment of Rents ("Assignment of Rents"), and other documents (collectively, the "Loan Documents") in connection with a loan by Borel to Kimomex in the original principal amount of $3,600,000.00. A true and correct copy of the Promissory Note is attached hereto as **Exhibit A**. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit B**. A true and correct copy of the Assignment of Rents is attached hereto as **Exhibit C**. Both the Deed of Trust and the Assignment of Rents were recorded against the Property on or about July 18, 2008 in the Office of the Santa Clara County Recorder. BPB is the successor by merger of Borel and is now the lender, assignee and beneficiary under the Loan Documents.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

114\1018762.1

- 2 -

DECLARATION OF DAVID SCHEIBER ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT CASE NO. 13-53491

Case: 13-53491   Doc# 21-2   Filed: 07/23/13   Entered: 07/23/13 10:42:02   Page 3 of 67

5. Pursuant to the terms of the Promissory Note and other Loan Documents, Kimomex borrowed the maximum principal sum of $3,600,000.

6. I am informed and believe that thereafter on or about May 14, 2009, Kimomex also borrowed a sum from a group of individuals and secured its obligation to said parties through a junior deed of trust ("Junior Deed of Trust") dated on said date and recorded on May 21, 2009. A true and correct copy of the Junior Deed of Trust, obtained from the public records, is attached hereto as **Exhibit D**. I am further informed and believe that the Trustee later caused the Junior Deed of Trust to be foreclosed under its power of sale. I am further informed and believe that the Property was sold at the trustee's sale to the beneficiaries under the Junior Deed of Trust. I am further informed and believe that the Trustee's Deed, dated October 27, 2011 was recorded on April 20, 2012. A true and correct copy of the Trustee's Deed, obtained from the public records, is attached hereto as **Exhibit E**. I am further informed and believe that the beneficiaries thereafter conveyed all of their right, title and interest in the Property to debtor E. Santa Clara LLC by Grant Deed recorded on April 20, 2012. A true and correct copy of the Grant Deed, also obtained from the public records, is attached hereto as **Exhibit F**. E. Santa Clara LLC therefore appears to be the successor to the beneficiary of a deed of trust junior and its interest in the Property is subordinate to the Deed of Trust and Assignment of Rents of BPB.

7. Kimomex breached its obligations to BPB under the Loan Documents when it failed to make monthly payments when due beginning before mid-2011 and failed to pay all property taxes for the Property when due. In addition, the conveyances of the Property under the Junior Deed of Trust, under the Trustee's Deed and under the Grant Deed described in paragraph 6 above were all done without BPB's consent and therefore are in breach of the "due on sale" covenant in the Deed of Trust. As of June 27, 2013, the outstanding principal balance due and owing from Kimomex under the Promissory Note and other Loan Documents is $3,341,017.20. In addition to principal there is due, owing and unpaid accrued interest, late charges and other fees and costs, and attorneys' fees and legal costs in amounts to be determined.

8. The current tenant of the Property is Grocery Outlet Inc. ("Tenant"), a California corporation. The Property is currently being used commercially as a grocery store. I am

Hopkins & Carley
Attorneys At Law
San Jose

114\1018762.1

- 3 -

DECLARATION OF DAVID SCHEIBER ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT CASE NO. 13-53491

Case: 13-53491    Doc# 22-3    Filed: 07/23/13    Entered: 07/23/13 10:42:02    Page 4 of 67

Hopkins & Carley
Attorneys At Law
San Jose

1  informed that the current monthly rent being paid by the Tenant of the Property is $39,600.00.

2  On about May 17, 2013, pursuant to Civil Code section 2938, BPB enforced its rights and

3  delivered written notice ("Notice") to that Tenant to pay rent directly to BPB pursuant to the Loan

4  Documents. A copy of that Notice is attached hereto as **Exhibit G**. The Tenant subsequently

5  acknowledged receipt of the Notice. Pursuant to the Notice, BPB was paid the June rent by the

6  Tenant on or about June 11, 2013.

7        9.     Also pursuant to the Notice, the Tenant has now paid the July rent to BPB. BPB is

8  holding that rent pending the outcome of this Motion.

9       I declare under penalty of perjury under the laws of the State of California that the

10  foregoing is true and correct, and that this declaration was executed on July 10, 2013 at Encino,

11  California.

12                            /s/ David Scheiber
13                             David Scheiber

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

114\1018762.1                        - 4 -

DECLARATION OF DAVID SCHEIBER ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S MOTION FOR
ORDER CONFIRMING NO STAY IS IN EFFECT (CASE NO. 13-53491)

# EXHIBIT A



# Borel Private Bank & Trust Company

## PROMISSORY NOTE

| Principal $3,600,000.00 | Loan Date 07-15-2008 | Maturity 07-15-2018 | Loan No 335944-62 | Call / Coll 180 / 023 | Account | Officer 06 | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Kimomex Santa Clara, LLC
50 W. San Fernando Street, Suite 420
San Jose, CA 95113

**Lender:** Borel Private Bank & Trust Company
San Mateo Office
160 Bovet Road
San Mateo, CA 94402

**Principal Amount: $3,600,000.00**          Date of Note: July 15, 2008

**PROMISE TO PAY.** Kimomex Santa Clara, LLC ("Borrower") promises to pay to Borel Private Bank & Trust Company ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Million Six Hundred Thousand & 00/100 Dollars ($3,600,000.00), together with interest on the unpaid principal balance from July 15, 2008, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 60 monthly consecutive principal and interest payments in the initial amount of $24,307.45 each, beginning August 15, 2008, with interest calculated on the unpaid principal balances using an initial interest rate of 6.500%; 59 monthly consecutive principal and interest payments in the initial amount of $24,307.45 each, beginning August 15, 2013, with interest calculated on the unpaid principal balances using an interest rate based on the the Prime Rate as published in The Wall Street Journal (currently 5.000%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 6.500%; and one principal and interest payment of $2,814,716.96 on July 15, 2018, with interest calculated on the unpaid principal balances using an interest rate based on the the Prime Rate as published in The Wall Street Journal (currently 5.000%), adjusted if necessary for the minimum and maximum rate limitations for this loan, resulting in an initial interest rate of 6.500%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** For the first 60 payments, the interest rate on this loan will be 6.500%. Thereafter, the interest rate on this Note is subject to change based on changes in an independent index which is the the Prime Rate as published in The Wall Street Journal (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each daily. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.000% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.500% per annum or more than (except for any higher default rate shown below) the lesser of 12.500% per annum or the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year. All interest payable under this Note is computed using this method.

**PREPAYMENT FEE; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Upon prepayment of this Note, Lender is entitled to the following prepayment fee: In the event of prepayment of the loan in whole or part during the first three (3) years following this note date, Borrower is obligated to pay a prepayment fee equal to three (3) percent (%) the first year, two (2) percent (%) the second year and one (1) percent (%) the third year of the amount prepaid. Other than Borrower's obligation to pay any minimum interest charge and prepayment fee, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Borel Private Bank & Trust Company, Attn: Note Department, 160 Bovet Road San Mateo, CA 94402-9955.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding a 2.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. After maturity, or after this Note would have matured had there been no default, the Default Rate Margin will continue to apply to the final interest rate described in this Note.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of San Mateo County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated July 15, 2008, to a trustee in favor of Lender on real property located in Santa Clara County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Borrower is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Borrower. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in Santa Clara County, State of California.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Borel Private Bank & Trust Company 160 Bovet Road San Mateo, CA 94402-9955.

**GENERAL PROVISIONS.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of this Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the

collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

KIMOMEX SANTA CLARA, LLC

THE SMALL 1988 LIVING TRUST DATED JANUARY 8, 1988, Manager of Kimomex Santa Clara, LLC

By: _____
   Kimball W. Small, Trustee of The Small 1988 Living
   Trust dated January 8, 1988

By: _____
   Martha L. Small, Trustee of The Small 1988 Living
   Trust dated January 8, 1988

THE SMALL 1998 LIVING TRUST DATED OCTOBER 15, 1998, Manager of Kimomex Santa Clara, LLC

By: _____
   David Kimball Small, Trustee of The Small 1998
   Living Trust dated October 15, 1998

By: _____
   Trudy V. Small, Trustee of The Small 1998 Living
   Trust dated October 15, 1998

LASER PRO Lending, Ver 5.11.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2008.  All Rights Reserved.  - CA  C:\CFI\LPL\D20.FC  TR-3679  PR-COMMLOAN

# EXHIBIT B

**First American Title Company**

Escrow No.: NCS-348859-SC

RECORDATION REQUESTED BY:
Borel Private Bank & Trust Company
San Mateo Office
160 Bovet Road
San Mateo, CA 94402

WHEN RECORDED MAIL TO:
Borel Private Bank & Trust Company
Attn: Note Department
160 Bovet Road
San Mateo, CA 94402-9955

DOCUMENT: 19928835    Pages: 11

| | |
|---|---|
| Fees... | 50.00 |
| Taxes.. | |
| Copies | |
| AMT PAID | 50.00 |

REGINA ALCOMENDRAS    RDE # 001
SANTA CLARA COUNTY RECORDER   7/18/2008
Recorded at the request of    3:26 PM
First American Title Company

FOR RECORDER'S USE ONLY



**Borel Private Bank & Trust Company**

## DEED OF TRUST

THIS DEED OF TRUST is dated July 15, 2008, among Kimomex Santa Clara, LLC, a California Limited Liability Company ("Trustor"); Borel Private Bank & Trust Company, whose address is San Mateo Office, 160 Bovet Road, San Mateo, CA 94402 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and First American Title Insurance Company, whose address is 1737 North First Street, Suite 500, San Jose, CA 95112 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Santa Clara County, State of California:

PARCEL ONE:

LOTS 1, 4 AND 5, IN BLOCK 1, RANGE 7, NORTH OF THE BASE LINE OF THE CITY OF SAN JOSE, ACCORDING TO THE OFFICIAL MAP OF SAID CITY OF SAN JOSE OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, IN BOOK A OF MAPS, AT PAGES 72 AND 73.

PARCEL TWO:

COMMENCING AT A POINT OF THE SOUTHERLY LINE OF SANTA CLARA STREET DISTANT THEREON 137.50 FEET WESTERLY FROM THE INTERSECTION OF SAID LINE OF SANTA CLARA STREET WITH THE WESTERLY LINE OF SEVENTH STREET, SAID POINT BEING WHERE THE DIVIDING LINE BETWEEN LOTS 1 AND 2 IN BLOCK 1, RANGE 7, NORTH OF THE BASE LINE INTERSECTS SAID SOUTHERLY LINE OF SANTA CLARA STREET, RUNNING THENCE SOUTHERLY ALONG WESTERLY LINE OF LOTS 1 AND 4 A DISTANCE OF 207.50 FEET; THENCE AT RIGHT ANGLES WESTERLY 37.50 FEET; THENCE AT RIGHT ANGLES NORTHERLY 207.50 FEET AND THENCE AT RIGHT ANGLES EASTERLY 37.50 FEET TO THE POINT OF BEGINNING, BEING THE EASTERLY 37.50 FEET OF LOTS 2 AND 3 EXCEPTING THE SOUTHERLY 67.50 FEET OF LOT 3 IN BLOCK 1, RANGE 7, NORTH OF THE BASE LINE IN SAID CITY OF SAN JOSE.

The Real Property or its address is commonly known as 272 E. Santa Clara Street, San Jose, CA 95113.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND

ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

    **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

    **Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

    **Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

    **Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

    **Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

    **Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

    **Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

    **Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

    **Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having

priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Trustor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Trustor's existence as a going business or the death of any member, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by

public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Santa Clara County,

State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

Acceptance by Trustee. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

NOTICES. Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

STATEMENT OF OBLIGATION FEE. Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Deed of Trust:

Amendments. This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Annual Reports. If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

Caption Headings. Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

Merger. There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

Choice of Venue. If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of San Mateo County, State of California.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Severability. If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

Successors and Assigns. Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the indebtedness.

Time is of the Essence. Time is of the essence in the performance of this Deed of Trust.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

Beneficiary. The word "Beneficiary" means Borel Private Bank & Trust Company, and its successors and assigns.

Borrower. The word "Borrower" means Kimornex Santa Clara, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

Deed of Trust. The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all

Case: 13-53491    Doc# 32-3    Filed: 07/28/13    Entered: 07/28/13 10:42:02    Page 12 of 62

assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means Borel Private Bank & Trust Company, its successors and assigns.

**Note.** The word "Note" means the promissory note dated July 15, 2008, **in the original principal amount of $3,600,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means First American Title Insurance Company, whose address is 1737 North First Street, Suite 500, San Jose, CA 95112 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Kimomex Santa Clara, LLC.

Case: 13-53491 Doc# 22-3 Filed: 07/25/13 Entered: 07/25/13 10:42:02 Page 18 of 62

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

KIMOMEX SANTA CLARA, LLC

THE SMALL 1988 LIVING TRUST DATED JANUARY 8, 1988, Manager of Kimomex Santa Clara, LLC

By: _____
Kimball W. Small, Trustee of The Small 1988 Living Trust dated January 8, 1988

By: _____
Martha L. Small, Trustee of The Small 1988 Living Trust dated January 8, 1988
By KIMBALL W. SMALL
her Attorney-in-fact

THE SMALL 1998 LIVING TRUST DATED OCTOBER 15, 1998, Manager of Kimomex Santa Clara, LLC

By: _____
David Kimball Small, Trustee of The Small 1998 Living Trust dated October 15, 1998

By: _____
Trudy V. Small, Trustee of The Small 1998 Living Trust dated October 15, 1998

---

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ )
) SS
COUNTY OF _Santa Clara_ )

On _July 15_, 20 _08_ before me, _Jody L. Bolaños, Notary Public_
(here insert name and title of the officer)

personally appeared Kimball W. Small, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

JODY L. BOLAÑOS
Commission # 1522331
Notary Public - California
Santa Clara County
My Comm. Expires Oct 28, 2008

(Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF ___California___ )
) SS
COUNTY OF ___Santa Clara___ )

On ___July 15___, 20 _08_ before me, ___Jody L. Bolaños, Notary Public___
(here insert name and title of the officer)

personally appeared Martha L. Small, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

JODY L. BOLAÑOS
Commission # 1622331
Notary Public - California
Santa Clara County
My Comm. Expires Oct 28, 2008

(Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF ___California___ )
) SS
COUNTY OF ___Santa Clara___ )

On ___July 15___, 20 _08_ before me, ___Jody L. Bolaños, Notary Public___
(here insert name and title of the officer)

personally appeared David Kimball Small, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

JODY L. BOLAÑOS
Commission # 1622331
Notary Public - California
Santa Clara County
My Comm. Expires Oct 28, 2008

(Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ )
) SS
COUNTY OF _Santa Clara_ )

On _July 15_ , 20 _08_ before me, _Jody L. Bolanos, Notary Public_
(here insert name and title of the officer)

personally appeared Trudy V. Small, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> JODY L. BOLANOS
> Commission # 1522331
> Notary Public - California
> Santa Clara County
> My Comm. Expires Oct 28, 2009

(Seal)

---

### (DO NOT RECORD)
### REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____ Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have
been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or
pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust),
and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of
Trust. Please mail the reconveyance and Related Documents to:

Date: _____ Beneficiary: _____
By: _____
Its: _____

LASER PRO Lending, Ver. 5.41.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - CA C:\CFI\LPL\G01.FC
TR-3573 PR-COMMLOAN

# EXHIBIT C

DOCUMENT: 19928836      Pages: 7

Fees ...    27.00
Taxes ...
Copies ...
AMT PAID    27.00

REGINA ALCOMENDRAS      RDE # 001
SANTA CLARA COUNTY RECORDER    7/18/2008
Recorded at the request of     3:26 PM
First American Title Company

RECORDATION REQUESTED BY:
Borel Private Bank & Trust Company
San Mateo Office
160 Bovet Road
San Mateo, CA 94402

WHEN RECORDED MAIL TO:
Borel Private Bank & Trust Company
Attn: Note Department
160 Bovet Road
San Mateo, CA 94402-9965

FOR RECORDER'S USE ONLY


## Borel Private Bank & Trust Company

## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated July 15, 2008, is made and executed between Kimomex Santa Clara, LLC, a California Limited Liability Company (referred to below as "Grantor") and Borel Private Bank & Trust Company, whose address is 160 Bovet Road, San Mateo, CA 94402 (referred to below as "Lender").

ASSIGNMENT. For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Santa Clara County, State of California:

PARCEL ONE:

LOTS 1, 4 AND 5, IN BLOCK 1, RANGE 7, NORTH OF THE BASE LINE OF THE CITY OF SAN JOSE, ACCORDING TO THE OFFICIAL MAP OF SAID CITY OF SAN JOSE OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, IN BOOK A OF MAPS, AT PAGES 72 AND 73.

PARCEL TWO:

COMMENCING AT A POINT OF THE SOUTHERLY LINE OF SANTA CLARA STREET DISTANT THEREON 137.50 FEET WESTERLY FROM THE INTERSECTION OF SAID LINE OF SANTA CLARA STREET WITH THE WESTERLY LINE OF SEVENTH STREET, SAID POINT BEING WHERE THE DIVIDING LINE BETWEEN LOTS 1 AND 2 IN BLOCK 1, RANGE 7, NORTH OF THE BASE LINE INTERSECTS SAID SOUTHERLY LINE OF SANTA CLARA STREET, RUNNING THENCE SOUTHERLY ALONG WESTERLY LINE OF LOTS 1 AND 4 A DISTANCE OF 207.50 FEET; THENCE AT RIGHT ANGLES WESTERLY 37.50 FEET; THENCE AT RIGHT ANGLES NORTHERLY 207.50 FEET AND THENCE AT RIGHT ANGLES EASTERLY 37.50 FEET TO THE POINT OF BEGINNING, BEING THE EASTERLY 37.50 FEET OF LOTS 2 AND 3 EXCEPTING THE SOUTHERLY 67.50 FEET OF LOT 3 IN BLOCK 1, RANGE 7, NORTH OF THE BASE LINE IN SAID CITY OF SAN JOSE.

The Property or its address is commonly known as 272 E. Santa Clara Street, San Jose, CA 95113.

This is an absolute assignment of Rents made in connection with an obligation secured by property pursuant to California Civil Code section 2938.

THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

GRANTOR'S REPRESENTATIONS AND WARRANTIES. Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of California and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default in Favor of Third Parties.** Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or ability to perform Grantor's obligations under this Assignment or any of the Related Documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in

any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Assignment within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment fee that Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and

Case: 13-53491    Doc# 32-3    Filed: 07/25/13    Entered: 07/25/13 10:42:02    Page 26
of 62

signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.** This Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Assignment has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of San Mateo County, State of California.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means Kimomex Santa Clara, LLC.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means Kimomex Santa Clara, LLC.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment.

Lender. The word "Lender" means Borel Private Bank & Trust Company, its successors and assigns.

Note. The word "Note" means the promissory note dated July 15, 2008, **in the original principal amount of $3,600,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON JULY 15, 2008.

GRANTOR:

KIMOMEX SANTA CLARA, LLC

THE SMALL 1988 LIVING TRUST DATED JANUARY 8, 1988, Manager of Kimomex Santa Clara, LLC

By: _____
Kimball W. Small, Trustee of The Small 1988 Living Trust dated January 8, 1988

By: _____
Martha L. Small, Trustee of The Small 1988 Living Trust dated January 8, 1988

THE SMALL 1998 LIVING TRUST DATED OCTOBER 15, 1998, Manager of Kimomex Santa Clara, LLC

By: _____
David Kimball Small, Trustee of The Small 1998 Living Trust dated October 15, 1998

By: _____
Trudy V. Small, Trustee of The Small 1998 Living Trust dated October 15, 1998

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_

COUNTY OF _Santa Clara_ ) SS

On _July 15_ 20 _08_ before me, _Jody L. Bolaños, Notary Public_
(here insert name and title of the officer)

personally appeared Kimball W. Small, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

JODY L. BOLAÑOS
Commission # 1822331
Notary Public - California
Santa Clara County
My Comm. Expires Oct 28, 2008

(Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_

COUNTY OF _Santa Clara_ ) SS

On _July 15_ 20 _08_ before me, _Jody L. Bolaños, Notary Public_
(here insert name and title of the officer)

personally appeared Martha L. Small, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

JODY L. BOLAÑOS
Commission # 1822331
Notary Public - California
Santa Clara County
My Comm. Expires Oct 28, 2008 (Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ )
) SS
COUNTY OF _Santa Clara_ )

On _July 15_, 20 _08_ before me, _Jody L. Bolaños, Notary Public_
(here insert name and title of the officer)

personally appeared David Kimball Small, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> JODY L. BOLANOS
> Commission # 1822331
> Notary Public - California
> Santa Clara County
> My Comm. Expires Oct 28, 2008

(Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ )
) SS
COUNTY OF _Santa Clara_ )

On _July 15_, 20 _08_ before me, _Jody L. Bolaños, Notary Public_
(here insert name and title of the officer)

personally appeared Trudy V. Small, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

> JODY L. BOLANOS
> Commission # 1822331
> Notary Public - California
> Santa Clara County
> My Comm. Expires Oct 28, 2008

(Seal)

LASER PRO Lending, Ver. 5.41.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - CA C:\CFI\LPL\G14.FC
TR-3573 PR-COMMLOAN

# EXHIBIT D

First American Title Company

Escrow No: NCS-397083-SC

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO


INVESTMENT GRADE LOANS, INC
475 S. SAN ANTONIO ROAD
LOS ALTOS, CA 94022

DOCUMENT: 20261533

Pages: 12

Fees 45.00
Taxes
Copies
AMT PAID 45.00

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
First American Title Company

RDE # 006
5/21/2009
8:00 AM

RECORDER: INDEX FOR SPECIAL NOTICE

# DEED OF TRUST

Loan No. 0905012

This Deed of Trust ("Security Instrument"), made this date May 14, 2009. Trustor is Kimomex Santa Clara, LLC, a California Limited Liability Company ("Borrower"). The Trustee Investment Grade Loans, ("Trustee") The Beneficiary, See Exhibit B, whose address is 475 S SAN ANTONIO ROAD, LOS ALTOS, CA 94022 ("Lender").

BORROWER owes Lender the principle sum of (U.S. $635,000.00)

This debt is evidenced by Borrower's note dated the same as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on 12/01/2010 This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in Santa Clara County, California: which has the address of: 272 East Santa Clara Street, San Jose ("Property Address"); Legal Description: See Exhibit A ; APN #: 467-24-111

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and all fixtures now or hereafter to the property. All replacements and additions shall be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property";

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

1. Payments of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due, the principal of and interest on the debt evidenced by the Note, prepayment and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by the Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leaseholder payments of ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums  These items are called "Escrow Items"  Lender may, at any time, collect and hold Funds in any amount not to exceed the maximum amount a lender for a federally related loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. -2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount  If so, Lender may, at any time, collect and hold Funds due on the basis of current data and reasonable estimates of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be require to pay Borrower any interest or earnings on the Funds  Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Fund was made  The Funds are pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amount permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law.  If the amount of the Funds held by Lender at any time is not sufficient to pay Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency  Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender If under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires The insurance carrier providing the insurance shall be chosen by; Borrower subject to Lender's approval, which shall not be unreasonably withheld If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7

All insurance policies and renewal shall be acceptable to Lender and shall include a standard mortgage clause Lender shall have the right to hold the policies and renewals If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or material impairment of the lien created by this Security Instrument or false inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value or the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instruments, appearing in court, paying reasonable attorney's fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect Lender will accept,

use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taken of any part or the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount to the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemner offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which set maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notice.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for

reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonable require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer.  The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument  There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law.

20. Hazardous Substances.  Borrower shall not cause or permit the presence, use, disposal, storage, or release of and Hazardous substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law  The preceding two sentences shall not apply to the presence, use, or storage on the Property on small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which borrower has actual knowledge  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials  As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

### BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default to any other defense of borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sole.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located.  Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other person prescribed by applicable law.  Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.  Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser a Trustee's deed conveying the Property without any covenant or warranty, expressed or implied.  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it  Such person or Persons shall pay any recordation costs.

23. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereinabove by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee  Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution

Case: 13-53491    Doc# 32-3    Filed: 07/29/13    Entered: 07/29/13 10:42:02    Page 34
- of 62

**24. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address, which is the Property Address.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by section 2943 of the Civil Code of California.

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

___ 1-4 Family Rider       ___ Condominium Rider       ___ Planned Unit Development Rider
**XX** Security Rider       **XX** Other(s) *specify* .Assignment of Rents and Profits Rider

## REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed or trust or other encumbrance with a lien which has priority over this Security Instrument to Notice Lender care of Lender's Servicing Agent, at its address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**Kimomex Santa Clara, LLC - Borrower**

The Small 1988 Living Trust Dated January 8, 1988, Manager of Kimomex Santa Clara, LLC

By: _____       By: _____
Kimball W. Small, Trustee of the Small 1988     Martha L. Small, Trustee of the Small 1988
Living Trust dated January 8, 1988       Living Trust dated January 8, 1988

*Kimball W. Small*

The Small 1998 Living Trust Dated October 15, 1998, Manager of Kimomex Santa Clara, LLC

By: _____       By: _____
David Kimball Small, Trustee of the Small 1998     Trudy V. Small, Trustee of the Small 1998
Living Trust dated October 15, 1998       Living Trust dated October 15, 1998

STATE OF CALIFORNIA Santa Clara County ss.
On May 18, 2009 before me, the undersigned, a Notary Public in and for said State, personally appeared
Kimball W. Small, David Kimball Small & Trudy V. Small
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted Executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary's Signature

Name (typed or printed) Jody L. Bolaños

My Commission Expires: Oct 28, 2012

Dated 5/18/09

JODY L. BOLAÑOS
Commission # 1818001
Notary Public - California
Santa Clara County
My Comm. Expires Oct 28, 2012

(This area for official notarial seal)

Case: 13-53491    Doc# 32-3    Filed: 07/28/13    Entered: 07/28/13 10:42:02    Page 35 of 62

State of California
County of Santa Clara

On May 12, 2009 before me Jody L. Bolanos, notary public personally appeared Kimball
W. Small, David Kimball Small, Trudy V. Small, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California
that the foregoing is true and correct.

Witness my hand and official seal.

_____
Notary Name: Jody L. Bolanos
Commission expires: October 28, 2002
Commission No. 1818001

JODY L. BOLANOS
Commission # 1818001
Notary Public - California
Santa Clara County
My Comm. Expires Oct 28, 2012

# REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE:

      The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Security Instrument, have been paid in full   You are hereby directed to cancel said note or notes and this Security Instrument, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Security Instrument to the person or persons legally entitled thereto.

Dated:


("Lender")


When recorded, mail to INVESTMENT GRADE LOANS, INC, 475 S  SAN ANTONIO ROAD, LOS ALTOS, CA 94022


Att: Recon department


  -


K_DEED DOC

Case: 13-53491    Doc# 32-3    Filed: 07/28/13    Entered: 07/28/13 10:42:02    Page 32 of 62

# EXHIBIT A
# LEGAL DESCRIPTION

### LEGAL DESCRIPTION

Real property in the City of SAN JOSE, County of SANTA CLARA, State of CALIFORNIA, described as follows:

PARCEL ONE:

LOTS 1, 4 AND 5, IN BLOCK 1, RANGE 7, NORTH OF THE BASE LINE OF THE CITY OF SAN JOSE, ACCORDING TO THE OFFICIAL MAP OF SAID CITY OF SAN JOSE OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, IN BOOK A OF MAPS, AT PAGES 72 AND 73.

PARCEL TWO:

COMMENCING AT A POINT ON THE SOUTHERLY LINE OF SANTA CLARA STREET DISTANT THEREON 137.50 FEET WESTERLY FROM THE INTERSECTION OF SAID LINE OF SANTA CLARA STREET WITH THE WESTERLY LINE OF SEVENTH STREET, SAID POINT BEING WHERE THE DIVIDING LINE BETWEEN LOTS 1 AND 2 IN BLOCK 1, RANGE 7, NORTH OF THE BASE LINE INTERSECTS SAID SOUTHERLY LINE OF SANTA CLARA STREET, RUNNING THENCE SOUTHERLY ALONG WESTERLY LINE OF LOTS 1 AND 4 A DISTANCE OF 207.50 FEET; THENCE AT RIGHT ANGLES WESTERLY 37.50 FEET; THENCE AT RIGHT ANGLES NORTHERLY 207.50 FEET AND THENCE AT RIGHT ANGLES EASTERLY 37.50 FEET TO THE POINT OF BEGINNING, BEING THE EASTERLY 37.50 FEET OF LOTS 2 AND 3 EXCEPTING THE SOUTHERLY 67.50 FEET OF LOT 3 IN BLOCK 1, RANGE 7, NORTH OF THE BASE LINE IN SAID CITY OF SAN JOSE.

APN: 467-24-111

# EXHIBIT "B"

**TO NOTE SECURED BY A DEED OF TRUST DATED MAY 14, 2009 FROM THE KIMOMEX SANTA CLARA, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, IN THE AMOUNT OF $635,000.00 (LOAN# 0905012) IN FAVOR OF THE FOLLOWING BENEFICIARIES:**

The Andrew Alan Lewis Revocable Trust Agreement dated January 5, 1984, as to an undivided 75/635 interest and PENSCO Trust Company, Custodian FBO Andrew A. Lewis (PENSCO Acct# LE172) as to an undivided 75/635 interest, for a total Andrew A Lewis investment of 150/635,

Michael Lach, a single man, as to an undivided 50/635 interest,

Phillip August Sienna, Trustee, For the Phillip August Sienna Living Trust Dated November 17, 1995, as to an undivided 100/635 interest,

Liesel Ernst, an unmarried woman, as to an undivided 150/635 interest,

Allyn R. Tognoli & Tina D. Tognoli, Trustees of the Tognoli Trust dated June 4, 1991, as to an undivided 25/635 interest and PENSCO Trust Company, Custodian FBO Allyn Tognoli IRA, as to an undivided 25/635 interest, for a total Tognoli family investment of 50/635,

Linda C. Latham, an unmarried woman, as to an undivided 25/635 interest,

Ogen Perry & Dorit G. Perry, Trustees of the Perry Family Revocable Trust dated April 26, 2004 as to an undivided 110/635 interest.

# INVESTMENT GRADE LOANS, INC

475 S. SAN ANTONIO ROAD
LOS ALTOS, CA 94022

# PROTECTION OF LENDER'S SECURITY RIDER

NOTICE:    THIS RIDER ADDS A PROVISION TO THE SECURITY INSTRUMENT ALLOWING THE LENDER TO REQUIRE PAYMENT OF THE LENDER'S ATTORNEY'S FEES IN BANKRUPTCY CASES

THIS PROTECTION OF LENDER'S SECURITY RIDER is made May 14, 2009, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure borrower's note to See Exhibit B and/or  (the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at: 272 East Santa Clara Street, San Jose - Property address

AMENDED COVENANT   In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PROTECTION OF LENDER'S SECURITY
Uniform covenant 7 of the security Instrument is amended to read as follows:

7. Protection of Lender's Security.  If Lender's interest in the Property is materially affected by any proceeding under the Bankruptcy Laws of the United States, the Lender, at Lender's option, may take such action, including seeking relief under the Bankruptcy Laws, and disburse such sums, including reasonable attorney's fees, as is necessary to protect Lender's interest.

If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with the Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust  Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice form Lender to borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder

by SIGNING BELOW, Borrower accepts and agrees to the terms and covenant contained in this PROTECTION OF LENDER'S SECURITY RIDER.

---

## Kimomex Santa Clara, LLC - Borrower

The Small 1988 Living Trust Dated January 8, 1988, Manager of Kimomex Santa Clara, LLC

By: _____
    Kimball W. Small, Trustee of the Small 1988
    Living Trust dated January 8, 1988

By: _____
    Martha L. Small, Trustee of the Small 1988
    Living Trust dated January 8, 1988

The Small 1998 Living Trust Dated October 15, 1998, Manager of Kimomex Santa Clara, LLC

By: _____
    David Kimball Small, Trustee of the Small 1998
    Living Trust dated October 15, 1998

By: _____
    Trudy V  Small, Trustee of the Small 1998
    Living Trust dated October 15, 1998

K_RIDER DOC

# RIDER TO DEED OF TRUST
## ASSIGNMENT OF RENTS AND PROFITS
## AND SECURITY AGREEMENT

**THIS RIDER** is made this May 14, 2009 and is incorporate into and shall be deemed to amend and supplement the Deed of Trust of even date given by the undersigned (the "Borrower") to secure Borrower's promissory note to INVESTMENT GRADE LOANS, INC, (a California corporation), as Trustee for the benefit of See Exhibit B, as to an undivided $635,000.00 interest; (collectively, "Lender") and covering the Property described in the Deed of Trust and located at 272 East Santa Clara Street, San Jose

### 1. Assignment of Rents, Revenues and Profits

(a) All of Borrower's interest in any leases, membership contracts, concessions agreements, rental agreements or any other agreements pertaining to the said Property now existing or hereafter entered into, all of the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use or enjoyment of all or any portion thereof or from any lease or agreement pertaining to occupancy of any portion of the Property now existing or hereafter entered into whether now due, past due, or to become due, and including all unpaid rents, security deposits, prepaid membership fees and dues and other charges (the "Rents and Profits"), are hereby absolutely, presently and unconditionally assigned, transferred and conveyed to Lender to be applied by Lender in payment of the principal and interest and all other sums payable on the Note, and of all other sums payable under this Deed of Trust Prior to the occurrence of any Event of Default Borrower shall have a license to collect and receive all Rents and Profits, which license shall be terminable at the sole option of Lender, without regard to the adequacy of its security hereunder and without notice to or demand upon Borrower, upon the occurrence of any Event of Default. It is understood and agreed that neither the foregoing Assignment of Rents and Profits to Lender nor the exercise by Lender of any of its rights or remedies under this Deed of Trust hereof shall be deemed to make Lender a "mortgagee in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof, unless and until Lender, in person or by agent, assumes actual possession thereof Nor shall appointment of a receiver for the Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Property or any part thereof by such receiver, be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any portion thereof. Upon the occurrence of any Event of Default, this shall constitute a direction to and full authority to each lessee under any lease and each guarantor of any lease to pay all Rents and Profits to Lender without proof of the default relied upon Borrower hereby irrevocably authorizes each lessee and guarantor to rely upon and comply with any notice or demand by Lender for the payment to Lender of any Rents and Profits due or to become due.

(b) Borrower shall apply the Rents and Profits to the payment of all necessary and reasonable operating cost and expenses of the Property, debt service on the indebtedness secured hereby, and a reasonable reserve for future expenses, repairs and replacements for the Property, before using the Rents and Profits for Borrower's personal use or any other purpose not for the direct benefit of the Property.

### 2. Security Agreement This Deed of Trust is intended to be a security agreement pursuant to the California Uniform Commercial Code for:

(a) any and all items of personal property specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the California Uniform Commercial Code and which are not in this Deed of Trust effectively made part of the real property, including, without limitation, Borrower's interest in all building materials, fixtures, equipment and machinery incorporated or to be incorporated into improvements constructed and to be constructed on the Property together with all interest of the Borrower in all personal property, appliances, equipment and cost of goods now or hereafter owned or possessed by Borrower located upon, in, or about or used in connection with said Property, including, without limiting, any and all personal property necessary for the operation and maintenance of a health and racquet club on said Property, together with all increases, substitutes, replacements, proceeds and products thereof and additions and accessions thereto, all rents, issues and profits due or to become due Borrower from or pertaining to said real property, Borrower's interest in any monies deposited by or on behalf of Borrower with any city, county, public body, utility or agency for the installation or as security for the installation of any utility pertaining to the Property, all rights to the use of any trade name, trademark or service mark now or hereafter associated with the business or businesses conducted on said premises (subject, however, to any franchise or license agreements relating thereto) together with all rights of borrower under any policy or policies of insurance covering the foregoing property and all proceeds, loss payments and premium refunds which may be payable with respect to such insurance policies or any other insurance policies insuring said real or personal property and the proceeds of any involuntary disposition, including without limitation any tort judgment proceeds; and

(b) Any and all items of property specified above as part of the Property which, under applicable law, constitute fixtures and may be subject to a security interest under Section 9-313 of the California Uniform Commercial Code

Borrower hereby grants Lender a security interest in said property, all of which is referred to in this Deed of Trust as "Personal Property," and in all additions thereto, substitutions therefore and proceeds thereof, for the purpose of securing all indebtedness and other obligations of Borrower now or hereafter secured by this Deed of Trust, which shall be a paramount and superior lien on all such Personal Property at all times Borrower agrees to execute and deliver financing and continuation statements covering the Personal Property from time to time and in such form as Lender may require to perfect and continue the perfection of Lender's lien or security interest with respect to said property. Borrower shall pay all costs of filing such statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Upon the occurrence of any default of Borrower hereunder, Lender shall have the rights and remedies of a secured party under California Uniform Commercial Code, including, Section 9-604 thereof, as well as all other rights and remedies available at law or in equity.

Notwithstanding anything to the contrary contained in this Paragraph 2, Borrower may from time to time replace items of personal property and fixtures constituting a part of the Property, provided that:

(1) The replacements for such items of personal property or fixtures are of equivalent value and quality;

(2) Borrower has good and clear title to such replacement property free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingents or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors or any third parties in or to such replacement property have been expressly subordinated at no cost to Lender to the lien of the Deed of Trust in a manner satisfactory to Lender; and

(3) at the option of Lender, Borrower provides at no cost to Lender a satisfactory opinion of counsel to the effect that the Deed of Trust constitutes a valid and subsisting first lien on and security interest in such replacement property and is not subject to being subordinated or the priority thereof affected under any applicable law, including, but not limited to, the provisions of Section 9-313 of the California Uniform Commercial Code

IN WITNESS WHEREOF, Borrowers have executed this Rider as of the date first above written

**Kimomex Santa Clara, LLC - Borrower**

The Small 1988 Living Trust Dated January 8, 1988, Manager of Kimomex Santa Clara, LLC

By: _____          By: _____
Kimball W. Small, Trustee of the Small 1988          Martha L. Small, Trustee of the Small 1988
Living Trust dated January 8, 1988          Living Trust dated January 8, 1988

The Small 1998 Living Trust Dated October 15, 1998, Manager of Kimomex Santa Clara, LLC

By: _____          By: _____
David Kimball Small, Trustee of the Small 1998          Trudy V. Small, Trustee of the Small 1998
Living Trust dated October 15, 1998          Living Trust dated October 15, 1998

ASSRENT1 DOC

# EXHIBIT E

Recording Requested By:

When Recorded, Mail To:

Investment Grade Loans, Inc.
475 South San Antonio Road
Los Altos, California 94022

FC No.: 11-143

DOCUMENT: 21633290 | Pages: 3

Fees.. 26.00
Taxes. 9240.00
Copies.
AMT PAID 9266.00

REGINA ALCOMENDRAS          RDE # 008
SANTA CLARA COUNTY RECORDER  4/20/2012
Recorded at the request of   12:06 PM
Grantee

# TRUSTEE'S DEED

SJ CONV TAX $ 6,930.00

The Grantees herein were the Beneficiaries
The amount of the unpaid debt was $ 1,183,908.74
The amount bid by the Grantee was $ 100,000.00
The property is in Santa Clara County
City of San Jose, State of California
APN: 467-24-111

First Loan balance is $2,100,000.00

Documentary Transfer Tax $ 2,310.00
[  ]  Computed on the full value of the
      property conveyed
[X]  Computed on full value less liens and
      the one encumbrance remaining at
      at the time of sale
Said sale was held on a 2 Deed of Trust

_____
Signature of Declarant or Agent

INVESTMENT GRADE LOANS, as the duly appointed Trustee under a Deed of Trust referred to below and herein called TRUSTEE, does hereby grant without any covenant or warranty, expressed or implied to:

Grantees shown as Exhibit A, attached hereto and made part hereof,

called Grantees,

the property described on Exhibit B attached hereto and made part hereof.

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, under that certain Deed of Trust executed by

Kimomex Santa Clara LLC, a California Limited Liability Company,

as Trustor,

recorded on May 21, 2009 as instrument number 20261533 in Book n/a Page n/a of Official Records in the Office of the Recorder of Santa Clara County, California; and pursuant to the Notice of Default recorded on June 30, 2011 as instrument number 21223029 in Book n/a at Page n/a of Official Records of said County, Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by said Deed of Trust.

A Notice of Trustee's Sale was published once a week for three consecutive weeks commencing on October 3, 2011 in the San Jose Post Record, a legal newspaper, and at least twenty days before the date fixed therein for sale, a copy of said Notice of Trustee's Sale was posted in a conspicuous place on the property described herein and in one public place in the city where the sale was to be held.

At the time and placed fixed in said Notice of Trustee's Sale, said Trustee did sell said property herein described at public auction on October 24, 2011 to said Grantee, being the highest bidder therefore, for $100,000.00 cash, lawful money of the United Sates, in partial satisfaction of the indebtedness then secured by said Deed of Trust.

Investment Grade Loans, as Trustee

DATE: 10/27/2011

By: _____
Thomas J. Rancatore, CFO

# Exhibit A

The Andrew Alan Lewis Revocable Trust Agreement dated January 5, 1984, as to an undivided 75/635 interest and Pensco Trust Company, Custodian FBO Andrew A. Lewis (Pensco Acct.# LE172), as to an undivided 75/635 interest, for a total Andrew A. Lewis investment of 150/635;

Michael Lach, a single man, as to an undivided 50/635 interest;

Phillip August Sienna, Trustee, for The Phillip August Sienna Living Trust dated November 17, 1995, as to an undivided 100/635 interest;

Liesel Ernst, an unmarried woman, as to an undivided 150/635 interest;

Allyn R. Tognoli & Tina D. Tognoli, Trustees of The Tognoli Trust dated June 4, 1991, as to an undivided 25/635 interest and Pensco Trust Company, Custodian FBO Allyn Tognoli IRA, as to an undivided 25/635 interest, for a total Tognoli Family Investment of 50/635;

Linda C. Latham, an unmarried woman, as to an undivided 25/635 interest;

Ogen Perry & Dorit G. Perry, Trustees of The Perry Family Revocable Trust dated April 26, 2004, as to an undivided 110/635 interest.

---

# Exhibit B

The land referred to herein is situated in the State of California, County of Santa Clara, City of San Jose, and is described as follows:

PARCEL ONE:

LOTS 1, 4 and 5, in Block 1, Range 7, North of the Base Line of the City of San Jose, according to the Official Map of said City of San Jose of Record in the Office of the County Recorder of Santa Clara, State of California, in Book A of Maps, at Pages 72 and 73.

Case: 13-53491    Doc# 32-3    Filed: 07/28/13    Entered: 07/28/13 10:42:02    Page 46 of 62

PARCEL TWO:

COMMENCING AT a point on the Southerly Line of Santa Clara Street Distant thereon 137.50 feet Westerly from the intersection of said line of Santa Clara Street with the Westerly Line of Seventh Street, said point being where the Dividing Line between Lots 1 and 2 in Block 1, Range 7, North of the Base Line intersects said Southerly Line of Santa Clara Street, running thence Southerly along Westerly Line of Lots 1 and 4 a distance of 207.50 feet; thence at right angles Westerly 37.50 feet; thence at right angles Northerly 207.50 feet and thence at right angles Easterly 37.50 feet to the Point of Beginning, being the Easterly 37.50 feet of Lots 2 and 3 excepting the Southerly 67.50 feet of Lot 3 in Block 1, Range 7, North of the Base Line in said City of San Jose.

APN: 467-24-111

---

State of California
County of Santa Clara

On _October 27, 2011_ before me, _Marie Louise Cates_, a Notary Public, personally appeared _Tom Rancatore_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or entity(ies) upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____
Signature of Notary Public



Trustee's Deed 11-143
Page 3

# EXHIBIT F

RECORDING REQUESTED BY

Andrew A. Lewis

WHEN RECORDED MAIL TO

INVESTMENT GRADE LOANS, INC
475 S. SAN ANTONIO ROAD
LOS ALTOS, CA 94022

DOCUMENT: 21633291 Pages 17

Fees 68 00
Taxes
Copies
AMT PAID 68 00

REGINA ALCOMENDRAS RDE # 008
SANTA CLARA COUNTY RECORDER 4/20/2012
Recorded at the request of 12:06 PM
Grantee

SPACE ABOVE THIS LINE FOR RECORDERS USE

# GRANT DEED

Andrew A. Lewis, Declarant

The undersigned grantor(s) declare(s):
  Documentary transfer tax is none *
  City Transfer Tax is none *
  (___) Computed on full value of property conveyed, or
  (___) Computed on full value less value of liens and encumbrances remaining at time of sale.
  (___) Unincorporated area (_X_) City of San Jose.
    Tax Parcel Number No. 467-24-111

*"This conveyance changes the manner in which title is held, grantor(s) and grantee(s) remain the same
and continue to hold the same proportionate interest, R & T 11925(d)."

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

The Andrew Alan Lewis Revocable Trust Agreement dated January 5, 1984,

and Pensco Trust Company, Custodian FBO Andrew A. Lewis (Pensco Acct.#LE172),

and Michael Lach, a single man,

and Phillip August Sienna, Trustee, for The Phillip Sienna Living Trust dated November 17, 1995,

and Liesel Ernst, an unmarried woman,

and Allyn R. Tognoli & Tina D. Tognoli, Trustees of The Tognoli Trust dated June 4, 1991,

and Pensco Trust Company, Custodian FBO Allyn Tognoli IRA,

and Linda C. Latham, an unmarried woman,

and Ogen Perry & Dorit G. Perry, Trustees of The Perry Family Revocable Trust dated April 26, 2004,

hereby GRANT(S) to 272 E. Santa Clara Grocery, LLC a California limited liability company

the following described real property in the City of San Jose, County of Santa Clara, State of California:

  Address: 272 East Santa Clara Street, San Jose

  Legal Description: See Exhibit "A" Attached hereto and made a part hereof

Dated: March 14, 2012

The Andrew Alan Lewis Revocable Trust Agreement dated January 5, 1984

By: _____
Andrew Alan Lewis, Trustee


√ Michael Lach, a single man


By: _____
Michael Lach


The Phillip August Sienna Living Trust dated November 17, 1995

By: _____
Phillip August Sienna


Liesel Ernst, an unmarried woman


By: _____
Liesel Ernst


The Tognoli Trust dated June 4, 1991

√ By: _____          By: _____
Allyn R. Tognoli, Trustee                    Tina D. Tognoli, Trustee


Linda C. Latham, an unmarried woman

By: _____
Linda C. Latham


The Perry Family Revocable Trust dated April 26, 2004

By: _____          By: _____
Ogen Perry, Trustee                          Dorit G. Perry, Trustee

STATE OF CALIFORNIA
COUNTY OF _Santa Clara_ ss.

On _March 20, 2012_ before me, _Marie Louise Cates_, a notary public, personally appeared _ANDREW ALAN LEWIS_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary's Signature _____

GRNTDE-1 DOC

MARIE LOUISE CATES
Commission # 1944164
Notary Public - California
Santa Clara County
My Comm. Expires Jul 15, 2015

(This area for official notarial seal)

STATE OF CALIFORNIA
COUNTY OF _Santa Clara_ SS.

On _March 21, 2012_ before me, _Marie Louise Cates_____, a notary public, personally appeared
_Phillip August Sienna_____ who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

```
                              MARIE LOUISE CATES
                              Commission # 1944164
                              Notary Public - California
                              Santa Clara County
                              My Comm. Expires Jul 15, 2015
```

_____
Notary's Signature

GRNTDE-I.DOC

(This area for official notarial seal)

STATE OF CALIFORNIA
COUNTY OF Santa Clara SS.

On March 14, 2012 before me, Marie Louise Cates , a notary public, personally appeared
Linda Lathaus who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary's Signature

GRNTDE-I DOC

```
      MARIE LOUISE CATES
      Commission # 1944164
    Notary Public - California
        Santa Clara County
   My Comm. Expires Jul 15, 2015
```

(This area for official notarial seal)

STATE OF CALIFORNIA
COUNTY OF Santa Clara SS.

On March 14, 2012 before me, Marie Louise Cates, a notary public, personally appeared Ogun Pehry who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary's Signature

GRNTDE-1 DOC

```
MARIE LOUISE CATES
Commission # 1944164
Notary Public - California
Santa Clara County
My Comm. Expires Jul 15, 2015
```

(This area for official notarial seal)

STATE OF CALIFORNIA
COUNTY OF _Santa Clara_ SS.

On _March 14 2012_ before me, _Marie Louise Cates_, a notary public, personally appeared
_Dorit Perry_ who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MARIE LOUISE CATES
Commission # 1944164
Notary Public - California
Santa Clara County
My Comm. Expires Jul 15, 2015

_____
Notary's Signature

GRNTDE-1.DOC

(This area for official notarial seal)

Dated: March 14, 2012

The Andrew Alan Lewis Revocable Trust Agreement dated January 5, 1984

By:_____
Andrew Alan Lewis, Trustee


Michael Lach, a single man

By: *Michael Lach*
Michael Lach


The Phillip August Sienna Living Trust dated November 17, 1995

By:_____
Phillip August Sienna


Liesel Ernst, an unmarried woman

By:_____
Liesel Ernst


The Tognoli Trust dated June 4, 1991

By:_____          By:_____
Allyn R. Tognoli, Trustee                    Tina D. Tognoli, Trustee


Linda C. Latham, an unmarried woman

By:_____
Linda C. Latham


The Perry Family Revocable Trust dated April 26, 2004

By:_____          By:_____
Ogen Perry, Trustee                            Dorit G. Perry, Trustee

State of California

County of San Joaquin

On March 15, 2012, before me, Jeanette M. Farley, personally appeared Michael Lach, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed in the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

Witness my hand and official seal



Signature _Jeanetta M Farley_

Jeanette M. Farley
My Commission Expires 6/28/2013

Capacity Claimed by Signer
Name of Person(s) or Entity(ies)

X  Individual
__ Corporate
__ Partners
__ Attorney-in-Fact
__ Trustee
__ Guardian/Conservator

Signer is Representing
Name of Person(s) or Entity(ies)

Self
_____
_____
_____
_____

Title or Type of Document

Number of Pages
Date of Document
Signer(s) Other Than Named Above

Grant Deed, City of San Jose,
   Tax Parcel # No.467-24-111
Three
March 14, 2012
None

Dated: March 14, 2012

The Andrew Alan Lewis Revocable Trust Agreement dated January 5, 1984

By:_____
Andrew Alan Lewis, Trustee

Michael Lach, a single man

By:_____
Michael Lach

The Phillip August Sienna Living Trust dated November 17, 1995

By:_____
Phillip August Sienna

Liesel Ernst, an unmarried woman

By:_____
Liesel Ernst

The Tognoli Trust dated June 4, 1991

By:_____         By:_____
Allyn R. Tognoli, Trustee              Tina D. Tognoli, Trustee

Linda C. Latham, an unmarried woman

By:_____
Linda C. Latham

The Perry Family Revocable Trust dated April 26, 2004

By:_____         By:_____
Ogen Perry, Trustee                    Dorit G. Perry, Trustee

STATE OF ~~CALIFORNIA~~ Minnesota
COUNTY OF Steele _____ SS.

On 3-23-12 _____ before me. __Mikel R. Akers__, a notary public, personally appeared
Liesel Ernst _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary's Signature

```
MIKEL R AKERS
Notary Public
State of Minnesota
My Commission Expires
January 31, 2016
```

(This area for official notarial seal)

GRNTDE-I.DOC

Dated: March 14, 2012

The Andrew Alan Lewis Revocable Trust Agreement dated January 5, 1984

By:_____
Andrew Alan Lewis, Trustee

Michael Lach, a single man

By:_____
Michael Lach

The Phillip August Sienna Living Trust dated November 17, 1995

By:_____
Phillip August Sienna

Liesel Ernst, an unmarried woman

By:_____
Liesel Ernst

The Tognoli Trust dated June 4, 1991

By:_____     By:_____ Trustee
Allyn R. Tognoli, Trustee             Tina D. Tognoli, Trustee

Linda C. Latham, an unmarried woman

By:_____
Linda C. Latham

The Perry Family Revocable Trust dated April 26, 2004

By:_____     By:_____
Ogen Perry, Trustee                      Dorit G. Perry, Trustee

STATE OF CALIFORNIA
COUNTY OF San Mateo ss.

On March 15, 2012 before me, ___Tanis Au___, a notary public, personally appeared
Allyn R. Tognoli & Tina D Tognoli who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Tanis Au_
Notary's Signature

GRNTDE-1.DOC

TANIS AU
Commission # 1919517
Notary Public - California
San Mateo County
My Comm. Expires Jan 27, 2015

(This area for official notarial seal)

Pensco Trust Company, Custodian FBO Andrew A. Lewis (Pensco Acct.#LE172)

By: _____

Name: _Jim Weinberg_

Title: _V PAA_


Pensco Trust Company, Custodian FBO Allyn Tognoli IRA

By: _____

Name: _____

Title: _____

CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

On ___April  11___, 20_12_, before me, JASON DAVIS GRIFFITH, Notary Public

personally appeared  JIM WEINBERG,

who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JASON DAVIS GRIFFITH
Commission # 1843801
Notary Public · California
San Francisco County
My Comm. Expires Apr 9, 2013

_____
Signature of Notary Public

Place Notary Seal Above

―――――――――――――― OPTIONAL ――――――――――――――

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

CAPACITY CLAIMED BY SIGNER

☐ INDIVIDUAL
X CORPORATE OFFICER(S)
  Vice President of Private Placements

☐ PARTNERS      ☐ LIMITED
                ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____
_____
_____

SIGNER IS REPRESENTING:
NAME OF ENTITY
PENSCO Trust Co.

DESCRIPTION OF ATTACHED DOCUMENT

_____Grant Deed_____
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

____March  14____, 20_12_
DATE OF DOCUMENT

_____In Ging_____
SIGNER(S) OTHER THAN NAMED ABOVE

Pensco Trust Company, Custodian FBO Andrew A. Lewis (Pensco Acct.#LE172)

By:_____

Name:_____

Title:_____


Pensco Trust Company, Custodian FBO Allyn Tognoli IRA

By:_____

Name:____Jim Weinberg_____

Title:____r P A A_____

CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

On ___April 11___, 20 12, before me, JASON DAVIS GRIFFITH, Notary Public

personally appeared JIM WEINBERG,

who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

JASON DAVIS GRIFFITH
Commission # 1843801
Notary Public - California
San Francisco County
My Comm. Expires Apr 9, 2013

Place Notary Seal Above

_____
Signature of Notary Public

━━━━━━━━━━━━━━━ OPTIONAL ━━━━━━━━━━━━━━━
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

CAPACITY CLAIMED BY SIGNER

☐ INDIVIDUAL
X CORPORATE OFFICER(S)
  <u>Vice President of Private Placements</u>

☐ PARTNERS      ☐ LIMITED
                ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____
_____
_____

SIGNER IS REPRESENTING:
NAME OF ENTITY
<u>PENSCO Trust Co.</u>

DESCRIPTION OF ATTACHED DOCUMENT

<u>Grant Deed</u>
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

<u>March  14</u>, 2012
DATE OF DOCUMENT

<u>Multiple</u>
SIGNER(S) OTHER THAN NAMED ABOVE

# EXHIBIT G

BOSTON PRIVATE BANK
▨ TRUST COMPANY

## DEMAND THAT YOU PAY RENT TO A PARTY OTHER THAN THE LANDLORD

(Section 2938 of the California Civil Code)

**To Tenant:** Grocery Outlet, Inc.

**Property Occupied by Tenant:** 272 E. Santa Clara Street, San Jose, CA

**Landlord:** 272 E. Santa Clara Grocery, LLC

**Secured Party And Assignee:** Boston Private Bank & Trust Company, formerly known as Borel Private Bank & Trust Company
160 Bovet Road, San Mateo, CA 94402

The secured party named above is the beneficiary under a Deed of Trust, dated *July 15, 2008,* and recorded as *Instrument No. 19928835* in the official records of *Santa Clara County,* California, and is the Assignee under an Assignment of Rents dated *July 15, 2018,* and recorded as *Instrument No. 19928836* in the official records of *Santa Clara County,* California. You may request a copy of the Deed of Trust and Assignment Of Rents from the Secured Party at 160 Bovet Road, San Mateo, CA 94402.

THIS NOTICE AFFECTS YOUR LEASE OR RENTAL AGREEMENT RIGHTS AND OBLIGATONS. YOU ARE THEREFORE ADVISED TO CONSULT AN ATTORNEY CONCERNING THOSE RIGHTS AND OBLIGATIONS IF YOU HAVE ANY QUESTIONS REGARDING YOUR RIGHTS AND OBLIGATIONS UNDER THIS NOTICE.

IN ACCORDANCE WITH SUBDIVISION (C) OF SECTION 2938 OF THE CALIFORNIA CIVIL CODE, YOU ARE HERBY DIRECTED TO PAY TO THE SECURED PARTY, ***BOSTON PRIVATE BANK & TRUST COMPANY, 160 BOVET ROAD, SAN MATEO, CA 94402, Attn: David Scheiber,*** ALL RENTS UNDER YOUR LEASE OR OTHER RENTAL AGREEMENT WITH THE LANDLORD OR PREDECESSOR IN INTEREST OF LANDLORD, FOR THE OCCUPANCY OF THE PROPERTY AT 272 E. SANTA CLARA STREET, SAN JOSE, CA WHICH ARE COMING DUE UNDER THE LEASE OR OTHER RENTAL AGREEMENT FOLLOWING THE DATE YOU RECEIVE THIS DEMAND UNLESS YOU HAVE ALREADY PAID THIS RENT TO THE LANDLORD IN GOOD FAITH AND IN A MANNER NOT INCONSISTENT WITH THE AGREEMENT BETWEEN YOU AND THE LANDLORD. IN THIS CASE, THIS DEMAND NOTICE SHALL REQUIRE YOU TO PAY TO THE SECURED PARTY, *BOSTON PRIVATE BANK AND TRUST COMPANY,* ALL RENTS THAT COME DUE FOLLOWING THE DATE OF THE PAYMENT TO THE LANDLORD.

IF YOU PAY RENT TO THE LANDLORD THAT BY THE TERMS OF THIS DEMAND YOU ARE REQUIRED TO PAY TO THE SECURED PARTY, YOU MAY BE SUBJECT TO DAMAGES INCURRED BY THE SECURED PARTY BY REASON OF YOUR FAILURE TO COMPLY WITH THIS DEMAND, AND YOU MAY NOT BE DISCHARGED FROM YOUR OBLIGATION TO PAY THAT RENT TO THE SECURED PARTY. YOU WILL NOT BE SUBJECT TO THOSE DAMAGES OR OBLIGATED TO PAY THAT RENT TO THE SECURED PARTY IF YOU HAVE PREVIOUSLY RECEIVED A DEMAND OF THIS TYPE FROM A DIFFERENT ASSIGNEE.

Your obligation to pay rent under this demand shall continue until you receive either (1) a written notice from a court directing you to pay the rent in a manner provided therein, or (2) a written notice from the secured party named above canceling this demand.

The undersigned hereby certifies, under penalty of perjury, that the undersigned is an authorized officer or agent of the secured party and that the secured party is the assignee, or the current successor to the assignee, under an assignment of leases, rents, issues, or profits executed by the landlord, or a predecessor in interest that is being enforced pursuant to and in accordance with Section 2938 of the Civil Code.

Executed at Encino, California, on May 17 , 2013.

*BOSTON PRIVATE BANK & TRUST COMPANY,*
*Secured Party*


David Scheiber
Senior Vice-President

2