Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151759)
jross@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: (408) 286-9800
Facsimile: (408) 998-4790

Attorneys for Secured Creditor BOSTON PRIVATE
BANK & TRUST COMPANY, formerly known as
and successor to Borel Private Bank & Trust
Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>272 E. Santa Clara Grocery, LLC,<br><br>Debtor. | CASE NO. 13-53491<br><br>CHAPTER 11<br><br>**BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004** |

Debtor 272 E. Santa Clara Grocery, LLC (the "Debtor") has objected to the Rule 2004 Applications filed by secured creditor Boston Private Bank & Trust Company ("BPB") on the baseless grounds that BPB prematurely filed the Applications solely in an effort to harass the Debtor and its members. For the reasons set forth below, the Debtor's objections rely on distorted facts and misplaced law and should be overruled in their entirety. BPB's Applications have been brought in good faith and should be granted.

728\1026667.2

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF
EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004: CASE NO. 13-53491

Case: 13-53491   Doc# 42   Filed: 07/30/13   Entered: 07/30/13 09:01:55   Page 1 of 10

# I. BACKGROUND

## A. The Chapter 11 Case

The Debtor filed what it acknowledges is a Chapter 11 single asset real estate case on June 27, 2013,. The Debtor commenced the case on the same date that BPB's application to appoint a receiver and for injunction in aid of a receiver over that certain leased real property located at 272 E. Santa Clara Street, San Jose, Ca. (the "Property") was scheduled to be heard before the Superior Court for the State of California (the "State Court"). The Debtor acknowledges the Property that is the subject of the now-stayed State Court action is the Debtor's principal asset.

The Debtor claims in its schedules that the value of the Property is $7,300,000.00. [Dkt. 1, p. 7] The Debtor's members, however, apparently bid only $100,000.00 at their trustee's sale to take ownership of the Property. No other parties bid, calling into question the Debtor's claim that the Property has a value anywhere close to what it now claims.

Apart from the Debtor's insiders, it appears from the Debtor's schedules that the Debtor has only two unsecured creditors, one of which is its State Court counsel. [Dkt. 1, p. 4] The Debtor lists no secured creditors other than BPB under its loan to Kimomex Santa Clara, LLC ("Kimomex") (described below) and the County of Santa Clara for the defaulted property taxes. [Dkt. 1, p. 12]

The Debtor and its predecessors assert that the Property has an environmental issue that requires remediation and a related governmental restriction that must be resolved before the Property can be marketed for sale. The Debtor appears to have no liquid assets available to address these matters. Aside from a few hundred dollars in a bank account, the Debtor's only other listed personal property assets are several unliquidated claims against third parties about which it gives very little information and for which it provides no values. [Dkt. 1, pp. 8-9]

The Debtor's Statement Of Financial Affairs discloses that within the 90 days prior to filing bankruptcy, the Debtor made about $125,000.00 in cash payments to insiders. [Dkt. 1, p. 19] The Debtor provides no justification for these payments which may well be avoidable under bankruptcy law or insider transfers invalid under California law (*See, e.g.*, Cal. Corp. Code

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1026667.2

- 2 -

BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004: CASE NO. 13-53491

Case: 13-53491    Doc# 42    Filed: 07/30/13    Entered: 07/30/13 09:01:55    Page 2 of 10

§§17254 and 17255). The transferees are listed also listed as unsecured creditors of the Debtor. [Dkt. 1, p. 4]

The 341 meeting of creditors is scheduled to be held on August 1, 2013.

The Debtor's applications for employment of bankruptcy and special counsel are scheduled to be heard August 21, 2013.

### B. BPB's Claim Against Property of the Debtor's Estate

BPB holds the senior lien on the Property securing a loan with an outstanding principal balance of $3,341,017.20. The Debtor, however, is not BPB's borrower. BPB's borrower is instead an unrelated entity, Kimomex.

### C. Events Giving Rise to the Property Becoming an Asset of the Debtor's Estate

In 2008, at the time BPB made the senior secured loan to Kimomex, the Property was actually owned by Kimomex. Yet on or about May 14, 2009 – approximately one year after Kimomex executed and delivered a Deed of Trust and an Assignment of Rents in favor of BPB (and BPB recorded them), Kimomex apparently borrowed $635,000 in "hard money" from a group of individuals (including the Examinees) and secured its obligation to said parties through a deed of trust dated on said date and recorded on May 21, 2009. The trustee under the junior deed of trust was Investment Grade Loans, Inc. ("IGLI"). IGLI is owned and operated by Andrew Lewis, the Debtor's managing member. The junior deed of trust was subordinate to BPB's Deed of Trust and to its Assignment of Rents, both of which were recorded and became encumbrances against Kimomex's title before Kimomex granted the junior deed of trust. The junior encumbrance caused an event of default on the BPB loan.

In 2011, IGLI, the trustee under the junior deed of trust, caused that deed of trust to be foreclosed through its power of sale. The Property was then sold to the beneficiaries (including the Examinees) at the foreclosure sale for the mere sum of $100,000.00.. The Trustee's Deed, dated October 27, 2011, was recorded on April 20, 2012. The beneficiaries thereafter conveyed all of their right, title and interest in the Property to the Debtor by Grant Deed recorded on April 20, 2012. Debtor is therefore the successor to the Examinees of the junior deed of trust and, through them, Kimomex. BPB never consented to any transfer.

728\1026667.2 - 3 -
BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004: CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491    Doc# 42    Filed: 07/30/13    Entered: 07/30/13 09:01:55    Page 3 of 10

### D. The Original Borrower Defaulted and IGLI Entered Into Now-Expired Agreements with BPB to Delay Scheduled Foreclosures; BPB Reserved All Rights

Kimomex later defaulted on BPB's senior loan by both failing to make payments and failing to pay property taxes for the Property. BPB commenced foreclosure. The defaults were not cured, and BPB scheduled its foreclosure sale for July 20, 2011. IGLI and its investors faced being foreclosed out by that sale and losing everything. IGLI desperately pressed BPB not to foreclose and to give IGLI some time to find a way to save IGLI's ability to recover for its investors.

As the Debtor acknowledges, BPB and IGLI entered into a written agreement by which BPB agreed to postpone the trustee sale for a limited period of time. IGLI made payments to BPB; but, as IGLI agreed, the payments did *not* cure the defaults under the Loan. Among other things, $235,466.40 in delinquent property taxes were not paid.

To preserve all rights under the loan documents, BPB and IGLI's agreement specifically provided that notwithstanding the payments, BPB was entitled to seek appointment of a receiver or pursue any other remedy other than a limited agreement to not foreclose nonjudicially. BPB also reserved all rights under California law and the loan documents. In relevant parts, the parties expressly agreed:

> "2. <u>Remaining Default</u>. The Parties acknowledge and agree that the Payment is insufficient in amount to satisfy all obligations due and owing as of this time and that the Notice of Default and Notice of Sale remain in full force and effect….
>
> 7. <u>Reservation of [BPB] Enforcement Rights</u>. The Parties acknowledge and agree that by entering into this agreement, [BPB] is waiving none of its rights and remedies under California law and its loan documents with respect to the defaults of the borrower. Apart from its covenant to postpone the trustee's sale as set forth expressly herein, [BPB] may at any time exercise any of its rights and remedies as it deems appropriate in its sole discretion, including, without limitation [BPB]'s right to seek appointment of a receiver with respect to the property, [BPB]'s right under the civil code to provide notice to any tenant to pay rent to [BPB] and [BPB]'s right to any other type of judicial relief it may deem appropriate to protect its interests in the property or under the loan."

IGLI and BPB thereafter entered into three amendments extending the period during

728\1026667.2                  - 4 -
BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004: CASE NO. 13-53491

Case: 13-53491    Doc# 42    Filed: 07/30/13    Entered: 07/30/13 09:01:55    Page 4 of 10

which BPB would conditionally postpone from time to time the foreclosure sale date on certain conditions. Each amendment contained provisions similar to those quoted above. The last amendment specifically provided that any obligation BPB had to postpone the foreclosure sale ended on December 31, 2012.

**No further agreement was ever made**, and the Debtor has not heretofore contended otherwise. BPB's draft was its only proposal, and the Debtor rejected it, so it was withdrawn. Accordingly, any rights that IGLI or any successor had under the agreement terminated as of December 31, 2012, including any right to make monthly payments to obtain a foreclosure sale postponement.

### E. The Loan Is Currently Due and Payable In Full

The full amount of BPB's $3.4 million loan is immediately *all* due and payable by reason of material defaults. The Deed of Trust expressly provides that any transfer of the Property (by lien or sale) without BPB's consent violates the "Due On Sale" covenant in the Deed of Trust entitling BPB to accelerate the loan. BPB did not consent to the transfers to either Investment Grade Loans, Inc. or the Debtor and the Debtor does not dispute this fact. This default can be cured only by payment in full. Bernhardt, *California Mortgages, Deeds of Trust, and Foreclosure Litigation*, §8.20.b (4th ed. 2013).

### F. The Debtor Seeks To Force BPB to Become an Involuntary Lender

Ignoring this fact, the Debtor seeks to have this Court force BPB to become an involuntary lender. It wants the Court to allow *indefinite* unfettered use of both BPB's rents and real property collateral in return for only small monthly payments. BPB cooperated with the LLC's predecessor for eighteen months *ending last December* by periodically postponing BPB's foreclosure sale. Citing that period of cooperation, the Debtor is now trying to convince this Court that BPB does not need financial or other information about the Debtor that has or will become an involuntary borrower of BPB. The Debtor's opposition alludes to some ability to pay monthly installments under the BPB loan or the now expired agreement between BPB and IGLI. Following filing of its application for the appointment of the Receiver, BPB finally received the June rent payment from the tenant, and BPB is holding that payment. However, the Debtor

728\1026667.2 - 5 -
BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004: CASE NO. 13-53491

Case: 13-53491    Doc# 42    Filed: 07/30/13    Entered: 07/30/13 09:01:55    Page 5 of 10

retained all of the rents from the Property from April and May 2013 totaling almost $80,000, and BPB has no assurance that any future rents will be paid to it. The Debtor has never been a party to either the loan or any agreement with BPB and has no such right to retain any payments. In fact, the only right it now has is to pay the loan in full. The Kimomex borrower's defaults under the loan documents remain uncured, and no reinstatement right or right to make partial payments exists. Accordingly, the loan must be paid in full by virtue of these defaults alone.

### G. The Debtor's Fraud Claim Has No Factual Or Legal Basis

In a disguised attempt to assert a purported fraud claim against BPB and in an effort to demonstrate that BPB is somehow harassing the Debtor, the Debtor alleges that IGLI would not have entered into the agreement regarding the foreclosure sale if BPB had disclosed to IGLI that there were environmental issues on the Property. No evidence other than a claim on information and belief is offered to show that BPB had specific knowledge of facts about the environmental condition. In fact, the skeletal supporting declaration of the Debtor's proposed counsel, William Healy, provides absolutely no evidentiary support for the Debtor's position. If anything it is replete with multiple levels of hearsay and speculation. However, even if BPB was aware of the condition, the claim that IGLI would not have entered into the agreement defies reason. At the time, IGLI's alternative was that BPB would foreclose its first deed of trust and IGLI's interest in the Property would be eliminated. *In other words, its investors would have been left with nothing*. To suggest that the alleged nondisclosure in any way would have influenced the situation is on its face not credible.

Furthermore, the Debtor has previously asserted that a purported buyer of the Property found out about the issue through its "due diligence." That demonstrates that the facts regarding the environmental issue were not hidden in any way. In fact, they are a matter of public record with the County of Santa Clara and not hidden from anyone. Mr. Lewis admitted to BPB that IGLI failed to do its own due diligence. That failure falls on IGLI, not BPB.

More importantly, BPB as a lender to Kimomex had no duty whatsoever IGLI or its investors to make some kind of disclosure or to assure the profitability of their enterprise. Under California law, a bank owes no such duty of care to its own borrower, so with even greater force

728\1026667.2 - 6 -
BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004: CASE NO. 12-53491

Case: 13-53491    Doc# 42    Filed: 07/30/13    Entered: 07/30/13 09:01:55    Page 6 of 10

such a duty of care cannot exist as to third parties who are separate lenders to the borrower. As the court in *Nymark v. Heart Fed. Sav. & Loan* (1991) 231 Cal.App.3d 1089, 1095, held: "[A] lender has no duty to disclose its knowledge that the borrower's intended use of the loan proceeds represents an unsafe investment. The success of the borrower's investment is not a benefit of the loan agreement which the lender is under a duty to protect." The court further held, "[a] lender's general lack of duty to a borrower is an established public policy. A strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure the success of every investment." *Id*. Because this rule holds true as to a bank's borrower, the actual customer of the bank, then it must certainly hold true as to third parties who are simply investors in an unrelated junior loan to the borrower. *Cf. Fox & Carskadon Financial Corporation v. San Francisco Federal Savings And Loan Assn.* (1975) 52 Cal.App.3d 484 (in the making of a loan, lender had no duty of care to party in contract to purchase property from borrower). Not only do the Debtor's claims of alleged fraud not withstand logical analysis, they have no basis in law. Accordingly, they should be ignored.

## II. LEGAL ARGUMENT

By its 2004 Applications, BPB seeks to examine Andrew Lewis, Ogden Perry, Ernst Liesel, Allyn Tognoli and Linda Latham (collectively, the "Examinees") during the week of August 19 through 22, 2013. Contrary to the Debtor's assertions that the Applications are premature and solely designed to harass the Debtor, the information BPB seeks by its Applications (as described in detail in the Applications) falls squarely within the broad scope of Bankruptcy Rule 2004.

It is well settled that the scope of a Rule 2004 examination is "unfettered and broad" and it affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure does. *In re GHR Companies, Inc.*, 33 B.R. 451, 453-54 (Bankr. D. Mass. 1983); *In re GHR Companies, Inc.*, 41, B.R. 655, 660 (Bankr. D. Mass 1984). The 2004 examinations are allowed for the "purpose of discovering assets and unearthing frauds" and have been compared to a fishing expedition. *In re Foerst*, 93 F. 190, 191 (DS.D.N.Y. 1899). The only limits to a 2004 examination are that they cannot be used for purposes of abuse or harassment and

728\1026667.2 - 7 -
BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004; CASE NO. 13-53491

Case: 13-53491    Doc# 42    Filed: 07/30/13    Entered: 07/30/13 09:01:55    Page 7 of 10

cannot stray into matters not relevant to the basic inquiry. *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wisc. 1984).

Harassment has only been found in limited circumstances where the information is obviously being sought was for improper purposes (i.e. by a competitor of the debtor or after an applicant was seeking information to appeal a bankruptcy court order when his claims were otherwise barred by res judicata. *See In re Duratech Industries, Inc.,* 241 B.R. 283 (E.D.N.Y. 1999) (denying 2004 application of debtor's competitor on the grounds that it was an improper attempt to harass debtor under the pretext that it was committed to proposing a plan of reorganization for the benefit of creditors, when the only non-insider creditor was the debtor's landlord who had not filed any motion to lift the automatic stay or to compel the debtor to assume or reject its lease, and sufficient information was publicly available for applicant to file a plan if it desired); *In re Martin*, 208 B.R. 807 (N.D.N.Y. 1997) (denying 2004 application that sought to uncover new evidence to prove that Bankruptcy Court's order was incorrect, after applicant had already been afforded a full and fair opportunity to litigate those issues in an adversary proceeding).

As set forth below, BPB's Applications have been made in a good faith effort to matters affecting the administration of the estate, including BPB's collateral, and to obtain information about the Debtor, its financial affairs and its ability to confirm a plan.

### A. BPB Is A "Creditor" With Standing to Bring the Applications

As a preliminary matter, in an absurd effort to imply that BPB lacks standing to bring the Applications, the Debtor makes the fatally flawed assertion that BPB is not a "creditor" of the estate. However, under Bankruptcy Code section 101(5), "claim" is broadly defined to include any right to payment, whether or not such right is, among other things, legal or equitable. A "creditor" is defined under Bankruptcy Code section 101(10) to include any entity that has a claim against the Debtor that arose at or before the time the Debtor commenced its case. The Debtor has listed the Property as property of its estate, and since BPB holds a senior lien on the Property, it is indisputably holds a "claim" and is a creditor of the Debtor's estate for purposes of Rule 2004. In fact, the Debtor even listed BPB as a creditor. Accordingly, BPB is entitled to

728\1026667.2 - 8 -
BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004: CASE NO. 13-53491

Case: 13-53491 Doc# 42 Filed: 07/30/13 Entered: 07/30/13 09:01:55 Page 8 of 10

make the Applications.

**B. BPB's Applications Were Filed In Good Faith and Not To Harass the Debtor or Third Parties**

BPB filed the Applications in good faith because it is informed and believes that the Examinees have relevant information that will materially aid BPB in its investigation of the Debtor's acts, conduct, assets, liabilities, financial condition and business operations as well as to whether any resources are available to the Debtor that might be used to make payments to BPB and formulate a feasible plan in this case. BPB, as the largest of the three creditors in this single asset case, has every right to know the financial status of the Debtor and sources of money and other resources that will be used to fund the case administration and pay its secured claim. Moreover, the Debtor has admitted that it lacks sufficient funds to deal with the environmental issues associated with the Property and BPB is entitled to information about how the Debtor will protect BPB's collateral for the loan.

In a case where the Property at issue was transferred to the Debtor without BPB's consent, the information sought by the Application is even more essential to BPB because under any plan the Debtor will likely try to force itself as a borrower of BPB. In a typical lending relationship, a lender is entitled to seek and review a potential borrower's financial information prior to making a decision about whether to loan money to an individual or entity. Here, the Debtor will be effectively attempting to force BPB to become a lender to it, and BPB should be therefore be permitted to seek and obtain information about its potential borrower's financial and other qualifications as it would be able to do outside of bankruptcy. These matters fall under the proper scope of examination as delineated under Bankruptcy Rule 2004(b).

The Applications also seek information from owners of the Debtor concerning all of the Debtor's business affairs, acts and conduct and the resources available to the Debtor to use to consummate a plan. As an owners and contributor of assets to the Debtor, such owners should have information on all of those subjects, and requests for such information do not constitute harassment. BPB needs to examine these owners and the documents they can produce related to the Property. These matters may affect the administration of the estate and therefore fall under

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1026667.2 - 9 -
BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004: CASE NO. 13-53491

Case: 13-53491   Doc# 42   Filed: 07/30/13   Entered: 07/30/13 09:01:55   Page 9 of 10

the proper scope of production of documentary evidence as delineated under Rule 2004(b) of the Federal Rules of Bankruptcy Procedure.

Finally, BPB is entitled to investigate the basis for the Debtor's current valuation of the Property, and since the Examinees purchased it and transferred it to the Debtor, they should have information about the value.

The foregoing provides good faith and legitimate reasons for authorizing BPB's 2004 examinations to go forward.

### C. The Applications Are Timely

The Debtor's assertions that the Applications are premature because the 341 meeting of creditors has not yet been held and the Debtor's proposed counsel has not been retained entirely lack merit. First, the Applications seek to take the 2004 examinations during the week of August 19, 2013. The meeting of creditors will be held tomorrow, July 31, 2013. Accordingly, the examinations are not premature on the ground that the 341 meeting should occur first. Second, BPB's ability to seek information about the Debtor's financial condition from third parties should not be prejudiced by the Debtor's lack of Court-approved counsel, which is due to no fault of BPB. The hearing on the Debtor's selection of counsel is not scheduled to be heard until August 21, 2013. BPB should not be forced to wait almost one month to discover relevant information, particularly when the Debtor voluntarily filed bankruptcy to halt BPB's receivership action.

Moreover, no adversary proceeding has been brought by the Debtor to prevent the BPB from taking 2004 examinations as to any alleged fraud. Accordingly, the Applications are proper.

### III. CONCLUSION

Based upon the foregoing, BPB respectfully requests that this Court overrule the Debtor's objection and approve each of the Applications.

HOPKINS & CARLEY, A Law Corporation

By: /s/ Stephen J. Kottmeier
Stephen J. Kottmeier
Attorneys for Secured Creditor BOSTON
PRIVATE BANK & TRUST COMPANY

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1026667.2 - 10 -
BOSTON PRIVATE BANK & TRUST COMPANY'S REPLY IN SUPPORT OF ITS *EX PARTE* APPLICATIONS FOR ORDERS OF EXAMINATION AND FOR PRODUCTION OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004; CASE NO. 13-53491

Case: 13-53491    Doc# 42    Filed: 07/30/13    Entered: 07/30/13 09:01:35    Page 10 of 10