CAMPEAU GOODSELL SMITH
WILLIAM J. HEALY, ESQ. BAR NO. 146158
440 North First Street, Ste. 100
San Jose, California 95112
Telephone: 408.295.9555
Facsimile: 408.295.6606

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>272 E Santa Clara Grocery, LLC<br><br>          Debtor. | Case No.: 13-53491<br><br>**CHAPTER 11**<br><br>**RESPONSE TO OBJECTION TO APPLICATION FOR ORDER APPOINTING COUNSEL FOR DEBTOR**<br><br>**Date:  August 21, 2013**<br>**Time:  2:00 p.m.**<br>**Place: United States Bankruptcy Court**<br>          280 South First St., Rm 3099<br>          San Jose, CA<br>**Judge: Hon. Stephen Johnson** |

COMES NOW, Campeau Goodsell Smith, L.C. ("CGS" or "Applicant") and submits the following reply to Boston Private Bank & Trust Company's ("BPB" and/or the "Bank") objection ("Objection") to Debtor's application ("Application") to employ CGS as Debtor's general bankruptcy counsel:

**I.    BPB's Objection to the Application is Limited and Misplaced.**

BPB's Objection to the Application is limited to two claimed deficiencies of information,

RESPONSE TO OBJECTION TO APPLICATION FOR ORDER APPOINTING COUNSEL FOR DEBTOR
1

namely that the Application fails to fully disclose the "factual and legal relationships" between the Debtor, the Andrew Lewis ("Mr. Lewis") and CGS relative to the retainer and fails to demonstrate the non-existence of facts that would "create non-disinterestedness, actual conflict, or impermissible potential for conflict of interest". The Objection is misplaced and should be overruled.

## II. FACTUAL BACKGROUND.

A brief background of the Debtor and the basis for the bankruptcy filing may help demonstrate why the Objection is misplaced and should be overruled.

Debtor owns a single piece of real estate located at 272 E. Santa Clara, San Jose, CA ("the Property). Debtor is owned by a several investors (collectively the "Investors") and in March 2012 the Investors formed the Debtor and deeded their respective ownership interests in the Property to the Debtor. BPB is not a direct creditor of the Debtor, but holds a deed of trust on the Property. Prior to the formation of the Debtor, the Investors held a deed of trust on the Property junior to BPB and foreclosed. At the time of the foreclosure, the Property was empty—no tenant and no income. Between October 2011 and March 2012, the Investors marketed the Property for lease, found and secured a tenant, and paid $242,000 in leasing commissions. At the same time the Investors were paying BPB $24,307.45 per month to keep its loan current. In March 2012 Debtor entered into a 10-year lease of the Property with Grocery Outlet, Inc., a national grocery store chain, wherein the tenant pays rent of $39,600 per month (triple net). Debtor is solvent with the current value of the Property at $7.3 million, based on a pre-petition contract to sell the Property, and total outstanding liabilities of approximately $4.3 million.

RESPONSE TO OBJECTION TO APPLICATION FOR ORDER APPOINTING COUNSEL FOR DEBTOR
2

In November 2012 the Debtor entered into a contract to sell the Property for $7.3 million. Escrow was scheduled to close in December 2012 and the sale would have paid off BPB's lien. However, the buyer cancelled the sale after discovering that the Property was undergoing clean-up or investigation due to a possible leak from an old underground storage tank. The buyer's discovery was Debtor's first notice of any contamination on the Property. Debtor was informed that BPB had been aware of the contamination since 2008, had a copy of a report showing purported contamination, and never disclosed the report or the purported contamination to Debtor.

Since December 2012 Debtor has been working to address the environmental issue, secure governmental clearances, and sell the Property and pay BPB and all creditors in full.

Debtor filed for bankruptcy protection after BPB, contrary to its prior agreements with Debtor and most recent verbal extension of that agreement demanded Debtor release all claims Debtor had against BPB, began intercepting 100% of the rent (approximately $39,000 and $15,000 more than BPB's monthly loan payment), and moved towards foreclosure. BPB's interception of 100% of the rent has left Debtor without monthly income.

Debtor retained CGS to represent it as general bankrupty counsel. CGS, in discussions with the Debtor, agreed to a $20,000 retainer. As BPB had intercepted 100% of Debtor's income, Debtor was unable to immediately fund the retainer. Debtor's manager and member Andrew A. Lewis ("Mr. Lewis") agreed, pre-petition, to loan to the Debtor of $20,000.00 in order to fund CGS's retainer. The Application and associated Attorney Client Fee Agreement do not suggest that Mr. Lewis has agreed to be responsible for or pay all of CGS's legal fees and he has not so agreed.

## III. LEGAL AUTHORITY

### a. The Disinterested Issue Relating to Employment of Debtor's Counsel Is Based on Disclosure and Concerns of a Misaligned Duty of Loyalty.

CGS is disinterested, disclosed its relationship to the Debtor, and its duty of loyalty runs to the Debtor. As CGS's only contractual relationship is with the Debtor, the Debtor's payment of CGS's retainer comes from Debtor pursuant to a pre-petition loan to the Debtor by Mr. Lewis, and such has been disclosed. Debtor's and Mr. Lewis's interests are aligned such that no duty of loyalty concerns warrant the objection to CGS's employment.

While some courts raise concerns regarding counsel's duty of loyalty when legal fees are paid by a third party/insider, not all take a uniform or per see approach in addressing this issue and most focus on whether the parties interests are aligned. Some courts have announced a per se rule stating that such arrangement violates 11 USC 327 unless the Debtor and the third party/insider are aligned, others have rejected it. *In re Hathaway Ranch Partnership*, 116 B.R. 208 Bankr.C.D.Cal.1990); see also *In re Lotus Properties LP*, 200 BR 388, (Bankr. C.D, California 1996). Several prior bankruptcy court decisions from the Ninth Circuit are in accord with *Hathaway* but involve serious allegations of misconduct by the third party, inadequate disclosure by counsel of the source of the retainer, dual representation by proposed counsel of the bankruptcy debtor and a principal/insider, the failure of counsel to provide full disclosure of all pertinent connections, and the presence of a reimbursement or guarantee arrangement. *In re Lotus Properties LP*, 200 BR 388, 392 (Bankr. C.D, California 1996). Other Courts in our district have rejected the pre se approach, especially when there is no indication of wrongdoing. The basis for such rejection is that "many small corporations facing the threshold of the Bankruptcy Court depend upon their key, and many times solvent, insiders to fund the debtor's

RESPONSE TO OBJECTION TO APPLICATION FOR ORDER APPOINTING COUNSEL FOR DEBTOR
4

bankruptcy attorney for the latter's undertaking of vital pre-and post-bankruptcy representation". *Id. at*, 393

Instead of a per se rule these courts look at the facts of the case to determine whether counsel holds or represents an interest adverse to the estate, and is not disinterested. Courts have used different tests to determine if counsel has a conflict. Some courts have used the Kelton's guidelines promulgated by BPB's counsel while others courts have set different specific guidelines. The *Missouri Mining* case had the following guidelines:

- whether there was any specific advantage to the third party;
- whether there was any injury to the estate;
- whether there was prejudice to other creditors; and
- whether an actual conflict arising from the payment is apparent.

*In re Missouri Mining, Inc.,* 186 BR 946, 949 (Bankr.WD Missouri 1995) approved by *In re Lotus Properties, LP*, 200 B.R. 388, 394 (stated Missouri Mining guidelines were similar to the Kelton guidelines).

### b. The Interests of All Parties are Aligned and CGS Is Disinterested.

The interests of all parties, including the Debtor, BPB, Mr. Lewis[1], and creditors, are aligned-secure government clearance of the environmental issues, sell the Property, and pay all creditors. However, because BPB has intercepted and continues to intercept 100% of Debtor's income, BPB has prevented the Debtor from paying its obligations, including counsel, absent the pre-petition loan from Mr. Lewis. There is not an actual or apparent conflict between the Debtor

---

[1] Mr. Lewis, owns a 27% interest in the Debtor--Statement of Financial Affairs (Doc#1).

RESPONSE TO OBJECTION TO APPLICATION FOR ORDER APPOINTING COUNSEL FOR DEBTOR
5

and CGS and/or Mr. Lewis because the Attorney Client Fee Contract does not require Mr. Lewis to pay CGS's fees.

The Debtor has complied with both the Missouri Guidelines and the Kelton Guidelines. First, the Debtor has fully disclosed the debtor/client relationship as demonstrated by the Application. Second, the Debtor gave its express consent to the fee arrangement by executing a written fee agreement which fully disclosed the terms of that arrangement. Mr. Lewis has been informed by CGS that the duty of loyalty is to the Debtor and not to Mr. Lewis and the fee agreement is specifically between the Debtor and CGS. There is no specific advantage to Mr. Lewis to agreeing to a pre-petition loan to the Debtor to pay CGS's retainer, there is no injury to the estate, the arrangement does not prejudice the other creditors, and there is no actual conflict. In fact, Debtor and creditors benefit from Mr. Lewis' pre-petition loan as it enabled Debtor to secured counsel and file this bankruptcy. CGS's compensation is subject to court approval and any compensation beyond the retainer it to come from the Debtor and not Mr. Lewis.

**IV. Conclusion.**

Based on the foregoing, Debtor requests that CGS be employed as general bankruptcy Counsel and BPB's objection be overruled.

Dated: August 9, 2013                  CAMPEAU GOODSELL SMITH

                                                 By: /s/: William J. Healy
                                                 William J. Healy
                                                 Attorneys for the Debtor

RESPONSE TO OBJECTION TO APPLICATION FOR ORDER APPOINTING COUNSEL FOR DEBTOR
6

Case: 13-53491   Doc# 47   Filed: 08/14/13   Entered: 08/14/13 09:49:12   Page 6 of 6