Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151750)
jross@hopkinscarley.com
Michaeline H. Correa (State Bar No. 215215)
mcorrea@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: (408) 286-9800
Facsimile: (408) 998-4790

Attorneys for Secured Creditor
BOSTON PRIVATE BANK & TRUST COMPANY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>272 E. Santa Clara Grocery, LLC,<br><br>Debtor. | CASE NO. 13-53491<br><br>CHAPTER NO. 11<br><br>**SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPPOSITION TO DEBTOR'S CROSS MOTION FOR USE OF CASH COLLATERAL**<br><br>Hearing<br>Date: August 21, 2013<br>Time: 2:00 p.m.<br>Place: 280 S. First Street<br>San Jose, CA<br>Courtroom 3099<br><br>Judge: Hon. Stephen L. Johnson |

Secured Creditor Boston Private Bank & Trust Company ("BPB") hereby opposes debtor 272 E. Santa Clara Grocery, LLC's (the "Debtor") cross motion for use of cash collateral. BPB disputes that the rents generated by the lease of the Debtor's real property located at 272 East

Santa Clara Street, San Jose, CA 95112 (the "Property") constitute cash collateral in the first instance.[1] Even assuming, *arguendo*, the rents are cash collateral, this single asset real estate Debtor has failed, and is unable, to provide adequate protection to BPB to use such cash collateral. There are no unencumbered assets upon which to grant BPB a replacement lien, and the Debtor has failed to provide any evidence that the Property has equity to protect BPB's interest. The cross motion is also procedurally improper. Accordingly, the Debtor's cross motion for use of cash collateral should be denied in its entirety. The declaration of David Scheiber filed July 12, 2013 [Dkt. No. 22] is incorporated herein and supports this opposition.

## I.

## FACTUAL BACKGROUND

In July 2008, Kimomex Santa Clara, LLC ("Kimomex") borrowed $3.6 million from BPB's predecessor Borel Private Bank & Trust Company. At the time, Kimomex owned the Property and executed and delivered to Borel a Promissory Note ("Note"), a first Deed of Trust ("Deed of Trust"), an Assignment of Rents ("Assignment of Rents"), and other documents (collectively, the Note, Deed of Trust and Assignment of Rents are referred to as the "Loan Documents"). The Deed of Trust and Assignment of Rents were duly recorded against the Property on July 18, 2008 in the Office of the Santa Clara County Recorder. BPB is the successor of Borel by merger and is now the lender, assignee and beneficiary under the Loan Documents.

Almost one year later in May 2009, Kimomex borrowed approximately $600,000 from a group of individuals and secured its obligation to those parties through a junior deed of trust ("Junior Deed of Trust") against the Property. That Junior Deed of Trust was recorded on or about May 21, 2009. The trustee of the Junior Deed of Trust later caused the Junior Deed of Trust to be foreclosed under its power of sale. The Property was sold at the trustee's sale to the

---

[1] In its motion for order confirming that no stay is in place, which is scheduled to be heard August 21, 2013, BPB has asserted that because it enforced its recorded assignment of rents agreement pursuant to California Civil Code §2938(c) by delivering a notice to the tenant of the Property to pay rents to BPB prior to the Petition Date and the tenant commenced doing so, BPB became entitled to all rents upon delivery of the notice to the tenant, and the tenant became obligated to make its rent payments only to BPB. The Debtor lost whatever property interest it had in the rents and the rents are therefore not cash collateral.

728\1029975.3 - 2 -
SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPPOSITION TO DEBTOR'S CROSS MOTION FOR USE OF CASH COLLATERAL CASE NO. 13-53491

Case: 13-53491  Doc# 50  Filed: 08/14/13  Entered: 08/14/13 15:11:29  Page 2 of 9

beneficiaries under the Junior Deed of Trust. The Trustee's Deed ("Trustee's Deed"), dated October 27, 2011, was recorded on April 20, 2012. The beneficiaries thereafter conveyed all of their right, title and interest in the Property to the Debtor by Grant Deed ("Grant Deed") recorded on or about April 20, 2012. Consequently, the Debtor's interest in the Property is subordinate and subject to BPB's Deed of Trust and Assignment of Rents.

Kimomex breached its obligations to BPB under the Loan Documents when it failed to make monthly payments when due beginning before mid-2011 and failed to pay all property taxes for the Property when due. In addition, the conveyances of the Property under the Junior Deed of Trust, the Trustee's Deed and the Grant Deed were all done without BPB's consent and in breach of the Loan Documents, including but not limited to the "due on sale" covenant in the Deed of Trust. Accordingly, the loan became fully due and payable.

The current tenant of the Property is Grocery Outlet Inc. ("Tenant"). The Tenant uses the Property commercially as a grocery store. The Tenant's current monthly rent for the Property is $39,600.00, and under the triple-net lease, Tenant is required to pay all expenses. Pursuant to California Civil Code section 2938, on May 17, 2013, BPB enforced its rights under the Assignment of Rents by delivering a written notice ("Notice") to the Tenant demanding it to pay its rent directly to BPB. The Tenant subsequently acknowledged receipt of the Notice. Pursuant to the Notice, the Tenant paid the June rent to BPB on June 11, 2013.

Based upon Kimomex's defaults under the Loan Documents, BPB filed a motion for the appointment of a receiver over the Property in the Santa Clara Superior Court.

On June 27, 2013 (the "Petition Date"), the Debtor filed this voluntary Chapter 11 case to stay BPB's motion to appoint a receiver over the Property, which was originally scheduled for hearing the same day.

At the case management conference held August 1, 2013, the Debtor admitted this is a single asset real estate case.

The Debtor is not the borrower under the Loan Documents and by this bankruptcy case is seeking to force BPB to become an involuntary lender to it while it attempts to address the environmental issues associated with the Property.

After the Debtor filed its petition in this case and also pursuant to the Notice, the Tenant paid the July rent to BPB. BPB is holding that July rent pending the outcome of its motion to confirm that no stay is in place (the "Stay Motion"), which is scheduled to be heard before this Court on August 21, 2013. Tenant also recently paid its August rent to BPB. That rent is being held as well pending BPB's motion regarding rents.

As of the Petition Date, the outstanding principal balance due and owing from Kimomex to BPB under the Note and other Loan Documents was $3,341,017.20. In addition to principal there is due, owing and unpaid accrued interest, late charges and other fees and costs, and attorneys' fees and legal costs in amounts to be determined.

The Debtor's statement of financial affairs reflects that it made payments totaling approximately $125,000 to the Debtor's insiders within 90 days prior to the Petition Date. [Dkt. No. 1 at p. 19].

This single asset real estate case has been pending for approximately 45 days and the Debtor has not yet filed a plan of reorganization. Although the Debtor asserts that the plan is to clean up the Property and sell it, the Debtor has acknowledged that the Property has environmental issues that need to be resolved in order for the alleged proposed purchaser to proceed with the sale of the Property at $7.3 million. *See* Cross Motion, 8:1-9. The Debtor has provided no evidence of any such contingent contract, and has not introduced any appraisal of the Property. Moreover, the Debtor has not provided an estimate of the remediation costs or any evidence that such remediation costs will not exceed the alleged equity in the Property. There is no legitimate evidentiary basis for the Debtor's alleged $7.3 million valuation of the Property.

## II.

## LEGAL ARGUMENT

### A. The Debtor's Cross Motion Should Be Denied As Procedurally Improper

The Debtor's cross motion is procedurally improper and should be denied on that ground.

Bankruptcy Local Rule 9014-1(c)(1) provides in pertinent part:
> Where the matter is governed by B.L.R. 9014-1(b)(1), or the initiating party desires a hearing under B.L.R. 9014-1(b)(2), and relief is sought against an identified, named entity, **the motion, notice of the hearing, supporting declarations, memoranda, and**

**all other papers shall be filed and served at least 28 days before the actual scheduled hearing date**. (Emphasis added)

The Debtor set its "cross motion" for hearing on 14 days', rather than 28 days' notice, somehow attempting to piggyback off of BPB's properly scheduled Stay Motion. The Debtor failed to file an application for order shortening notice of the hearing. Accordingly, notice of the cross motion is defective, and the cross motion should be denied on this basis alone.

### B. The Debtor's Motion Should Be Denied Because There Is No Adequate Protection for BPB

Assuming, *arguendo*, notice of the cross motion is proper or the defects could be cured, the cross motion should be denied because the Debtor has failed to provide BPB with adequate protection to use BPB's cash collateral under Bankruptcy Code sections 363 and 361.

#### 1. Legal Standard

When a secured creditor, such as BPB, has a valid and perfected security interest in and lien on collateral, as well as the proceeds therefrom (such as the rents of the Property), those proceeds constitute cash collateral under Bankruptcy Code sections 363(a) and 552(b)(2). Under section 363(c)(2), a debtor "may not use, sell, or lease cash collateral" without the secured creditor's consent or after the court authorizes such use. Upon a secured creditor's request, the Bankruptcy Court must prohibit or condition the use of cash collateral to provide the creditor with adequate protection of its interest. 11 U.S.C. § 363(e). The Debtor carries the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p)(1). While the Bankruptcy Code does not define adequate protection, examples of what may constitute such protection include:

(a) Requiring the debtor to make cash payments to the secured creditor to the extent that cash collateral use results in a decrease in value of its collateral;

(b) Providing the secured creditor with a replacement lien on property to the extent that cash collateral use results in a decrease in the value of the collateral; and

(c) Granting such relief to the secured creditor as will result in the creditor's realization of the "indubitable equivalent" of its interest.

11 U.S.C. § 361.

In *In re Kenny Kar Leasing, Inc.*, 5 B.R. 304 (Bankr. C.D. Cal. 1980), the Bankruptcy Court gave meaning to "adequate protection" under Bankruptcy Code section 363(e), holding that

728\1029975.3 - 5 -
SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPPOSITION TO DEBTOR'S CROSS MOTION FOR USE OF CASH COLLATERAL CASE NO. 13-53491

Case: 13-53491    Doc# 50    Filed: 08/14/13    Entered: 08/14/13 15:11:29    Page 5 of 9

"[s]ecured creditors should not be deprived of the benefit of their bargain.  Though a creditor may not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for." *Id.* at 308.  Additionally, "[w]hen requesting court authorization for expenditure of cash collateral, a debtor must prove by clear and convincing evidence that the secured creditor will realize the value of its bargain in light of all the facts and circumstances of the case." *In re O.P. Held, Inc.*, 74 B.R. 777 (Bankr. N.D.N.Y. 1987).

In *In re Buttermilk Towne Center, LLC*, the Sixth Circuit Bankruptcy Appellate Panel ruled that where a single asset real estate debtor, such as the Debtor here, did not hold any unencumbered assets to offer the lender adequate protection, the lender was not adequately protected via a replacement lien.  442 B.R. 558 (B.A.P. 6th Cir 2010) (where a lender has an independent security interest in rents by way of an assignment, a replacement lien on the encumbered rents does not provide adequate protection of the lender's interest in the rents).  The BAP recognized that the lender has two distinct security interests, namely the mortgage on the property and a perfected security interest in rents, and each interest must be adequately protected.  *Id.* at 566.  The Court rejected the assertion that the owner could use future rents to replace the expenditure of prior months' rents for cash collateral purposes because all of the rents are already the creditor's collateral (until the lender is paid in full).  Moreover, use of cash collateral for professional fees is not adequately protected by a replacement lien consisting of future rents.  *Id.* at 567.

### 2. The Single Asset Real Estate Debtor Is Unable to Provide Adequate Protection to BPB

In this case, the entire loan balance is currently due and owing to BPB.  The Tenant is currently making monthly rent payments to BPB in the amount of $39,600.  BPB has not consented to the Debtor's use of the asserted cash collateral.  For that reason, the Debtor has objected to BPB's Stay Motion (i.e., to try to halt BPB's continued receipt of the rent payments) and now seeks Court authority for what appears to be unfettered monthly use of $15,000 of BPB's cash.  Such use should not be permitted.

To support its desired use, the Debtor offers no justification other than to generically seek

728\1029975.3 - 6 -
SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPPOSITION TO DEBTOR'S CROSS MOTION FOR USE OF CASH COLLATERAL  CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

Case: 13-53491    Doc# 50    Filed: 08/14/13    Entered: 08/14/13 15:11:29    Page 6 of 9

$15,000 per month "to preserve and protect its real property (and BPB's collateral), pay ERAS to finalize and submit its report to the government and pursue government clearance to sell, and fund its operation, including US Trustee fees, real property taxes and attorneys fees for bankruptcy counsel and special counsel." *See* Cross Motion, 13, 14-19. The Debtor did not attach any budget showing how these funds would in fact be spent and otherwise provides no details as to how the unitemized and unsupported amount would be used.

Any environmental investigation or cleanup would not in the ordinary course of business of the Debtor. While the Debtor makes assertions, its motion fails to provide any *evidence* as to why the reports are necessary for its reorganization. As to other expenses, there is no justification for use of cash collateral to pay other expenses to maintain the Property since the lease is triple net and the Tenant is already paying all such expenses, *including Property taxes*. There are no employees or management expenses associated with the Property. There is no basis for the Debtor's professionals – whose appointment has been challenged in any event – to be paid before BPB is paid in full. Accordingly, the Debtor simply fails to establish that BPB is receiving the benefit of its bargain under the Loan Documents or that the use of cash collateral is justified.

To attempt to support its request for use of cash collateral, the Debtor first asserts that BPB will be granted a replacement lien. However, similar to *In re Buttermilk*, *supra*, the Debtor lacks any unencumbered assets upon which such a lien may be granted. The Debtor's only other basis for adequate protection is the alleged "equity" in the Property. Yet, the Debtor has failed to provide an appraisal of the Property or other evidence of value. Instead, the Debtor baldly asserts that the Property value is $7.3 million based upon a purported contingent contract with an undisclosed buyer from December 2012. The Debtor, however, fails to provide a copy of any such contract or any other evidence of its terms and conditions. In fact, the Debtor admits that the Property has environmental issues and the proposed purchaser will not consummate a sale until such issues are addressed.

The Debtor therefore fails to establish that BPB is adequately protected by any equity in the Property. The "evidence" of the Property value submitted by the Debtor is merely conclusory. The only evidence of the value of the Property is contained in the conclusory and

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1029975.3

- 7 -

SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPPOSITION TO DEBTOR'S CROSS MOTION FOR USE OF CASH COLLATERAL
CASE NO. 13-53491

Case: 13-53491    Doc# 50    Filed: 08/14/13    Entered: 08/14/13 15:11:29    Page 7 of 9

argumentative declaration of the *Debtor's attorney*, which is neither factual nor admissible to establish value in connection with the cross motion. *See* B.L.R. 9013-1(d)(2). Moreover, the Debtor fails to provide any evidence that the remediation costs to cure the environmental issues do not exceed the equity in the Property. In light of the environmental issues on the Property, and the contingent nature of the proposed purchaser's offer, the Debtor is incapable of demonstrating that the Property has any equity whatsoever. Every deficient adequate protection payment will compound the lack of, and diminishing, equity in the Property.

Based upon the foregoing, BPB respectfully requests that the Court deny the Debtor use of cash collateral in its entirety.

### C. If the Court Permits the Use of Cash Collateral Notwithstanding the Debtor's Failure to Meet the Requirements of the Code, Such Use Should Be Limited in Time and Amount

If, on the other hand, the Court is inclined to grant the Debtor's cross motion, use of BPB's cash collateral should be for a brief interim period and limited to payments to ERAS and payments to complete other necessary environmental investigations, and be subject to further review by the Court and BPB. BPB opposes the use of cash collateral to pay Property expenses, management fees, professional fees or other administrative expenses of the estate.

Moreover, to the extent the Debtor is authorized to use cash collateral, BPB requests that, as a condition of granting such relief, the Court order: (i) a super-priority administrative claim, pursuant to Bankruptcy Code section 507(b) to the extent the adequate protection ordered by the Court proves to be inadequate; (ii) a replacement lien to the extent the Court finds that a replacement lien is available; and (iii) such other and further relief as the Court deems just and proper.

Furthermore, BPB respectfully requests that the Court order that if the Debtor defaults on any term or condition regarding Debtor's use of BPB's cash collateral, including the failure to timely make a monthly adequate protection payment, then BPB shall be entitled to relief from the automatic stay, subject to the following notice and cure provisions: Upon any default in the Debtor's use of cash collateral, BPB shall serve written notice of default on the Debtor and its

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1029975.3

- 8 -

SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPPOSITION TO DEBTOR'S CROSS MOTION FOR USE OF CASH COLLATERAL       CASE NO. 13-53491

Case: 13-53491    Doc# 50    Filed: 08/14/13    Entered: 08/14/13 15:11:29    Page 8 of 9

counsel. If Debtor fails to cure the default within 10 days after service of such written notice by overnight mail, BPB may file and serve a declaration under penalty of perjury specifying the default, together with a proposed order terminating the stay, which the Court may grant without further notice or hearing.

## III.

## CONCLUSION

Based upon the foregoing, BPB respectfully requests that the Court deny the cross motion in its entirety. If the Court permits use of alleged cash collateral notwithstanding the lack of a basis for such use, then BPB requests the Court limit authority to use BPB's cash collateral to the ERAS payment and any other payments required to complete the environmental investigation of the Property and ensure that BPB is adequately protected for such use. BPB further requests that no administrative fees or management fees be paid from BPB's cash collateral, absent further order of the Court. It is respectfully submitted that, as a condition of granting Debtor's use of BPB's cash collateral, the Court should order: (i) Debtor to provide a full and current accounting of rents collected; (ii) monthly adequate protection payments to BPB; (iii) a super-priority administrative claim in favor of BPB, pursuant to Section 507(b), to the extent the adequate protection ordered by the Court proves to be inadequate; (iv) replacement lien be granted to BPB if available; (v) subject to certain notice and cure provisions, BPB shall be granted relief from the automatic stay upon Debtor's default of the terms and conditions of Debtor's use of BPB's cash collateral; and (vi) such other and further relief as the Court deems just and proper.

Dated: August 13, 2013

HOPKINS & CARLEY
A Law Corporation

By: /s/ Stephen J. Kottmeier
    Stephen J. Kottmeier
    Michaeline H. Correa
    Attorneys for Secured Creditor
    BOSTON PRIVATE BANK & TRUST COMPANY

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1029975.3

- 9 -

SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPPOSITION TO DEBTOR'S CROSS MOTION FOR USE OF CASH COLLATERAL
CASE NO. 13-53491

Case: 13-53491    Doc# 50    Filed: 08/14/13    Entered: 08/14/13 15:11:29    Page 9 of 9