1  Stephen J. Kottmeier (State Bar No. 077060)
   sjk@hopkinscarley.com
2  Jay M. Ross (State Bar No. 151759)
   jross@hopkinscarley.com
3  HOPKINS & CARLEY
   A Law Corporation
4  The Letitia Building
   70 S First Street
5  San Jose, CA  95113-2406

6  *mailing address:*
   P.O. Box 1469
7  San Jose, CA 95109-1469
   Telephone:   (408) 286-9800
8  Facsimile:   (408) 998-4790

9  Attorneys for Secured Creditor BOSTON PRIVATE
   BANK & TRUST COMPANY, formerly known as
10 and successor to Borel Private Bank & Trust
   Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | CASE NO.  13-53491 |
| 272 E. Santa Clara Grocery, LLC, | CHAPTER 11 |
| Debtor. | **OPPOSITION TO EX PARTE APPLICATION FOR ORDER DIRECTING BOSTON PRIVATE BANK & TRUST COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004** |

547\1030646.1

OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004

CASE NO. 13-53491

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | BACKGROUND | | 2 |
| | A. | BPB's Claim Against Property of the Debtor's Estate | 2 |
| | B. | Events Giving Rise to the Property Becoming an Asset of the Debtor's Estate | 2 |
| | C. | The Original Borrower Defaulted and IGLI Entered Into Now-Expired Agreements with BPB to Delay Scheduled Foreclosures; BPB Reserved All Rights | 3 |
| | D. | The Loan Is Currently Due and Payable In Full | 4 |
| | E. | The Debtor Has Sued The Individual Kimomex Members In State Court | 5 |
| | F. | Debtor Files This Application Seeking BPB's Production Of Documents With Minimal Time For Response And Production | 5 |
| II. | ARGUMENT | | 5 |
| | A. | The Debtor Should Be Stopped From Pursuing A Fishing Expedition To Support A Claim That Has No Factual Or Legal Basis | 5 |
| | B. | Debtor's Requests For Production Are Overbroad And Burdensome | 8 |
| | C. | Debtor Imposed An Unreasonable Deadline For Production Of Documents And Should Be Required To Pay The Extraordinary Costs Associated With Its Requests | 9 |
| | D. | Debtor's Requests Seek Proprietary BPB Documents | 10 |
| | E. | Debtor Seeks Documents Which Could Trigger The Privacy Rights Of Third Parties And In Circumvention Of State Court Discovery Procedures Pertaining To Those Third Parties | 10 |
| III. | CONCLUSION | | 11 |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

- i -

OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004

CASE NO. 13-53491

Case: 13-53491    Doc# 51    Filed: 08/15/13    Entered: 08/15/13 18:10:51    Page 2 of 16

# TABLE OF AUTHORITIES

Page

**CASES**

*2435 Plainfield Ave., Inc. v. Township of Scotch Plains*
(*In re 2435 Plainfield Ave., Inc.*)
(Bankr. D. N.J. 1998) 223 B.R. 440 ............................................................................ 11

*Fox & Carskadon Financial Corporation v. San Francisco Federal Savings And Loan Assn.*
(1975) 52 Cal.App.3d 484 ........................................................................................... 7

*In re Buick*
(Bankr. D. Colo. 1994) 174 B.R. 299 ......................................................................... 11

*In re Continental Forge Co., Inc.*
(Bankr. W.D. Pa. 1987) 73 B.R. 1005 .......................................................................... 6

*In re Countrywide Home Loans, Inc.*
(Bankr. W.D. Pa. 2008) 384 B.R. 373 ................................................................. 6, 8, 9

*In re Eagle–Picher Industries, Inc.*
(Bankr. S.D.Ohio 1994) 169 B.R. 130 ......................................................................... 9

*In re Express One International, Inc.*
(Bankr. E.D.Tex.1998) 217 B.R. 215 ........................................................................... 9

*In re Fearn*
(Bankr. S.D. Ohio 1989) 96 B.R. 135 .......................................................................... 8

*In re Financial Corp. of America*
(Bankr. C.D. Cal. 1990) 119 B.R. 728 ....................................................................... 11

*In re GHR Energy Corp.*
(Bankr. D. Mass. 1983) 35 B.R. 534, 538 .................................................................... 5

*In re Hammond*
(S.D. Ohio 1992) 140 B.R. 197 .................................................................................... 9

*In re Letters Rogatory Issued by Nat. Court of First Instance in Commercial Matters etc.*
(E.D. Pa.1992) 144 F.R.D. 272 ..................................................................................... 9

*In re Metiom, Inc.*,
(Bankr. S.D. N.Y., 2004) 318 B.R. 263 ...................................................................... 10

*In re Texaco, Inc.*
(Bankr. S.D.N.Y.1987) 79 B.R. 551 ............................................................................. 9

*Matter of Wilcher*
56 B.R. 428, 434 ........................................................................................................... 6

*Nymark v. Heart Fed. Sav. & Loan*
(1991) 231 Cal.App.3d 1089 ........................................................................................ 7

*Standard Chlorine of Del., Inc. v. Sinibaldi*
(D. Del. 1992) 821 F. Supp. 232 .................................................................................. 9

**STATUTES**

Bankruptcy Rule 2004 .......................................................................................................... 6, 9

- ii -

OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004

CASE NO. 13-53491

Case: 13-53491    Doc# 51    Filed: 08/15/13    Entered: 08/15/13 18:10:51    Page 3 of 16

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

# TABLE OF AUTHORITIES
(continued)

| | Page |
|---|---|
| Bankruptcy Rule 9016 | 9 |
| Federal Rule of Civil Procedure 45 | 9 |
| Federal Rules of Civil Procedure 26, *et seq.* | 6 |

## OTHER AUTHORITIES

Bernhardt, *California Mortgages, Deeds of Trust, and Foreclosure Litigation*, §8.20.b (4th ed. 2013) ................................................................. 4

- iii -

OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004

CASE NO. 13-53491

Case: 13-53491   Doc# 51   Filed: 08/15/13   Entered: 08/15/13 18:10:51   Page 4 of 16

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

**TO THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY COURT JUDGE AND PARTIES IN INTEREST:**

Secured Creditor Boston Private Bank & Trust Company ("BPB") hereby files this opposition to the Debtor's Application (the "Application") for Order Directing Boston Private Bank & Trust Company's Production of Documents Under Bankruptcy Rule 2004 (Doc # 46).

The Application is based upon an inaccurate and incomplete statement of the underlying facts. Worse, Debtor seeks documents for the thinly-veiled purpose of trying to assert some kind of fraud claim against BPB based upon a purported theory that is unfounded factually and, more significantly, as a matter of law. BPB is not the Debtor's lender. Consequently, irrespective of what documentation or information BPB has/had related to the environmental condition of the real property at issue, BPB never had any disclosure obligation to the Debtor. BPB should not be required to endure the burdens and expenses of this examination.

Moreover, the Application attempts to impose an overbroad and extremely burdensome production obligation on BPB. Although the Debtor purportedly seeks BPB's documentation to ascertain its knowledge of "environmental issues" on the real property at issue, the requests for production in the Application are not even closely tied to that reasoning. They also seek BPB's proprietary documents. In addition, the Application imposes an extremely short and unreasonable deadline for production.

Finally, even though Debtor has a pending State Court action involving the same parties, Debtor seeks production of documents pertaining to third parties whose privacy rights could be violated if the Application is granted and BPB is ordered to produce documents. Debtor is trying to circumvent the State Court discovery procedures and due process by failing to give notice of the Application to any of those third parties so that they would have the opportunity to oppose it.

For all of these reasons, the Application should be denied.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

547\1030646.1

OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004

CASE NO. 13-53491

Case: 13-53491    Doc# 51    Filed: 08/15/13    Entered: 08/15/13 18:10:51    Page 5 of 16

## I. BACKGROUND[1]

### A. BPB's Claim Against Property of the Debtor's Estate

BPB holds the senior lien on the certain leased real property located at 272 E. Santa Clara Street, San Jose, Ca. (the "Property") securing a loan with an outstanding principal balance of $3,341,017.20. The Debtor is not BPB's borrower. BPB's borrower is instead an unrelated entity, Kimomex.

### B. Events Giving Rise to the Property Becoming an Asset of the Debtor's Estate

In 2008, at the time BPB made the senior secured loan to Kimomex, the Property was actually owned by Kimomex. Yet on or about May 14, 2009 – approximately one year after Kimomex executed and delivered a Deed of Trust and an Assignment of Rents in favor of BPB (and BPB recorded them), Kimomex apparently borrowed $635,000 in "hard money" from a group of individuals and secured its obligation to said parties through a deed of trust dated on said date and recorded on May 21, 2009. In addition, the individual members of Kimomex (collectively the "Individual Kimomex Members") apparently guaranteed the repayment of that "hard money" loan. The trustee under the junior deed of trust was Investment Grade Loans, Inc. ("IGLI"). IGLI is owned and operated by Andrew Lewis, the Debtor's managing member. The junior deed of trust was subordinate to BPB's Deed of Trust and to its Assignment of Rents, both of which were recorded and became encumbrances against Kimomex's title before Kimomex granted the junior deed of trust. The junior encumbrance caused an event of default on the BPB loan.

In 2011, IGLI, the trustee under the junior deed of trust, caused that deed of trust to be foreclosed through its power of sale. The Property was then sold to the beneficiaries at the foreclosure sale for the mere sum of $100,000.00 (no one else bid at that foreclosure sale). The Trustee's Deed, dated October 27, 2011, was recorded on April 20, 2012. The beneficiaries thereafter conveyed all of their right, title and interest in the Property to the Debtor by Grant Deed

---

[1] The facts contained in this Background are established, in part, by the Declarations of Debtor's managing member, Andrew Lewis, and BPB's Senior Vice President, David Schieber, that were filed in BPB's Santa Clara County Superior Court action filed under case no. 113-CV-247691. Copies of those declarations are attached as Exhibits A and B, respectively, to the Declaration of Counsel in support of this opposition ("Counsel Decl."), filed concurrently herewith and incorporated herein.

547\1030646.1 - 2 -
OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004 CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491    Doc# 51    Filed: 08/15/13    Entered: 08/15/13 18:10:51    Page 6 of 16

recorded on April 20, 2012. Debtor is therefore the successor to the beneficiaries of the junior deed of trust and, through them, Kimomex. BPB <u>never</u> consented to any transfer. The Debtor claims in its schedules that the value of the Property is $7,300,000.00. [Dkt. 1, p. 7]

### C. The Original Borrower Defaulted and IGLI Entered Into Now-Expired Agreements with BPB to Delay Scheduled Foreclosures; BPB Reserved All Rights

Kimomex later defaulted on BPB's senior loan by both failing to make payments and failing to pay property taxes for the Property. BPB commenced foreclosure. The defaults were not cured, and BPB scheduled its foreclosure sale for July 20, 2011. IGLI and its investors faced being foreclosed out by that sale and losing everything. IGLI desperately pressed BPB not to foreclose and to give IGLI some time to find a way to save IGLI's ability to recover for its investors.

As the Debtor acknowledges, BPB and IGLI entered into a written agreement by which BPB agreed to postpone the trustee sale for a limited period of time. IGLI made payments to BPB; but, contrary to Debtor's representation in the Application, the payments *did not cure* the defaults under the Loan. Among other things, $235,466.40 in delinquent property taxes were not paid.

Although ignored in the Application, BPB and IGLI's agreement specifically provided that notwithstanding the payments, all of BPB's rights were preserved under the loan documents such that BPB was entitled to seek appointment of a receiver or pursue any other remedy other than a limited agreement to not foreclose nonjudicially. BPB also reserved all rights under California law. Even though the Application acknowledges the existence of this agreement, it neglects to point out that, in relevant parts, the parties expressly agreed:

> "2. <u>Remaining Default</u>. The Parties acknowledge and agree that the Payment is insufficient in amount to satisfy all obligations due and owing as of this time and that the Notice of Default and Notice of Sale remain in full force and effect….
>
> 7. <u>Reservation of [BPB] Enforcement Rights</u>. The Parties acknowledge and agree that by entering into this agreement, [BPB] is waiving none of its rights and remedies under California law and its loan documents with respect to the defaults of the borrower. Apart from its covenant to postpone the trustee's sale as set forth expressly herein, [BPB] may at any time exercise any of its rights and remedies as it deems appropriate in its sole discretion, including, without

547\1030646.1 - 3 -
OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004
CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491    Doc# 51    Filed: 08/15/13    Entered: 08/15/13 18:10:51    Page 7 of 16

limitation [BPB]'s right to seek appointment of a receiver with respect to the property, [BPB]'s right under the civil code to provide notice to any tenant to pay rent to [BPB] and [BPB]'s right to any other type of judicial relief it may deem appropriate to protect its interests in the property or under the loan."

Counsel Decl., at ¶2, Ex. A.

IGLI and BPB thereafter entered into three amendments extending the period during which BPB would conditionally postpone from time to time the foreclosure sale date on certain conditions. (*Id.*) Again not mentioned in the Application, each amendment contained provisions similar to those quoted above. The last amendment specifically provided that any obligation BPB had to postpone the foreclosure sale ended on December 31, 2012.

**No further agreement was ever made**. As the Application states, albeit buried in a description that makes it seem as if the parties had negotiated an agreement, BPB provided a draft proposal of a fourth amendment to the agreement, but **the Debtor refused to sign it**. Not mentioned in the Application is that fact as a result of that rejection, the proposed fourth amendment was expressly withdrawn. (Counsel Dec., at ¶3, Ex. B.) Accordingly, any rights that IGLI or any successor had under the agreement terminated as of December 31, 2012, including any right to make monthly payments to obtain a foreclosure sale postponement. Furthermore, it is disingenuous for Debtor to say it later proposed executing that fourth amendment and waited for BPB to respond. Having been withdrawn, there is nothing for Debtor to sign and nothing to which BPB need respond.

### D. The Loan Is Currently Due and Payable In Full

The full amount of BPB's $3.4 million loan is immediately *all* due and payable by reason of material defaults. The Deed of Trust expressly provides that any transfer of the Property (by lien or sale) without BPB's consent violates the "Due On Sale" covenant in the Deed of Trust entitling BPB to accelerate the loan. BPB did not consent to the transfers to either IGLI or the Debtor and the Debtor does not dispute this fact. This default can be cured only by payment in full. Bernhardt, *California Mortgages, Deeds of Trust, and Foreclosure Litigation*, §8.20.b (4th ed. 2013).

- 4 -
OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004
CASE NO. 13-53491

Case: 13-53491   Doc# 51   Filed: 08/15/13   Entered: 08/15/13 18:10:51   Page 8 of 16

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

### E. The Debtor Has Sued The Individual Kimomex Members In State Court

On April 16, 2013, the Debtor filed a lawsuit in the Santa Clara County Superior Court, under case number 113-CV-244710, against the Individual Kimomex Members (the "State Court Action Against the Individual Kimomex Members") to enforce their guaranties of the "hard money" loan described above. Notwithstanding the Debtor's subsequent initiation of this bankruptcy, that State Court action remains pending. Debtor's application to employ special counsel to litigate that case is set for hearing on August 21, 2013.

### F. Debtor Files This Application Seeking BPB's Production Of Documents With Minimal Time For Response And Production

BPB filed several applications for 2004 examinations in this action (Dkt. Nos. 31-36 and 41). Debtor opposed each of those applications, asserting that BPB should not be allowed to conduct any of the requested investigation (Dkt. Nos. 37 and 43). In response, on Tuesday, August 13, 2013, the Court notified the parties to meet and confer regarding BPB's 2004 examination applications and scheduled a conference call hearing to discuss them at 1:00 p.m., on Friday, August 16, 2013. (Counsel Dec., at ¶5.) Following that notification from the Court, at approximately 4:40 p.m., on Tuesday, August 13, 2013, Debtor filed this Application (Doc # 46).

BPB has not yet had the opportunity review its files to determine the volume of documents, if any, it has responsive to the requests in the Application. Moreover, in so far as BPB is the successor to Borel Private Bank and Trust and operates on its own and different computer system, responding to the requests in the Application would require BPB to search its predecessor's computer system archives which would be a time-consuming and costly endeavor. (Counsel Dec., ¶4.) BPB has not yet been able to determine how long it would take or how costly it would be to perform such a search. (*Id.*)

## II. ARGUMENT

### A. The Debtor Should Be Stopped From Pursuing A Fishing Expedition To Support A Claim That Has No Factual Or Legal Basis

Even though Rule 2004 examinations are allowed a broad scope, they are not without limits. "[I]t must *first* be determined that the examination is proper." *In re GHR Energy Corp.*, 35

547\1030646.1 - 5 -
OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004

Case: 13-53491 Doc# 51 Filed: 08/15/13 Entered: 08/15/13 18:10:51 Page 9 of 16

CASE NO. 13-53491

B.R. 534, 538 (Bankr. D. Mass. 1983). "While it is obvious that particular rights of a creditor are affected when one of its debtors files for protection under the Bankruptcy Code, it cannot be said that a creditor necessarily loses the protections afforded by the Federal Rules of Civil Procedure especially in the context of an action arising under non-bankruptcy law." *Id.* "Rather, the proper mode of discovery which ordinarily must be utilized against a third party who may be liable to the bankruptcy estate for various wrongful acts is contained in the Federal Rules of Civil Procedure, which provide numerous procedural safeguards against unfairness to the party from which discovery is sought." *Matter of Wilcher*, 56 B.R. 428, 434 (citing F.R.C.P. 26, *et seq*.).

The examination of a witness [under Rule 2004] as to matters having no relationship to the debtor's affairs or no effect on the administration of the estate is improper." *In re Continental Forge Co., Inc.,* 73 B.R. 1005, 1007 (Bankr. W.D. Pa. 1987). Moreover, "it is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *Matter of Wilcher*, 56 B.R. at 434; *see also In re Continental Forge Co., Inc.,* 73 B.R. at 1007 (recognizing the non-debtor's right to privacy in its business affairs). "[T]he imprecise standard of relevancy in Rule 2004 requires the court to exercise its discretion and balance the competing interests between the examiner's right to expose alleged chicanery and [proposed examinee's] right to privacy in his business affairs. [Citations omitted.]" *Matter of Wilcher*, 56 B.R. at 434 (in the absence of any actual evidence of duplicity, the entity was not properly subject to a Rule 2004 examination).

When a creditor objects to a Rule 2004 application, the Debtor must meet a threshold standard of "good cause" before it will be permitted to conduct examinations and require the production of documents pursuant to Rule 2004. *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008) *(citing Matter of Wilcher* 56 B.R. 428 (imposing standard of good cause for Rule 2004 discovery directed to creditor)).

Here, the Application reveals that the Debtor seeks BPB's documents because it is considering some type of fraud claim against BPB based upon a theory that BPB knew about and did not disclose the purported environmental issues related to the Property. (Application, at 8:21-24; and 9:5-8.) But, the Debtor has not shown and cannot show any basis for this claim to

547\1030646.1 - 6 -
OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004 CASE NO. 13-53491

Case: 13-53491    Doc# 51    Filed: 08/15/13    Entered: 08/15/13 18:10:51    Page 10 of 16

justify the intrusion into BPB's business affairs and the expenditure of resources to respond to this examination.

Even presuming *arguendo* that BPB knew of the environmental condition, any claim that IGLI would not have entered into the agreement with BPB regarding the foreclosure sale defies reason. At the time, IGLI's alternative was that BPB would foreclose its first deed of trust and IGLI's interest in the Property would be eliminated. *In other words, its investors would have been left with nothing*. To suggest that the purported nondisclosure in any way would have influenced the situation is, on its face, not credible.

Furthermore, the Debtor has previously asserted that a purported buyer of the Property found out about the issue through its "due diligence." That demonstrates that the facts regarding the environmental issue were not hidden in any way. In fact, they are a matter of public record with the County of Santa Clara and not hidden from anyone. Mr. Lewis admitted to BPB that IGLI failed to do its own due diligence. That failure falls on IGLI, not BPB.

More importantly, BPB *as a lender to Kimomex* had no duty whatsoever IGLI or its investors to make some kind of disclosure or to assure the profitability of their enterprise. Under California law, a bank owes no such duty of care to its own borrower, so with even greater force such a duty of care cannot exist as to third parties who are separate lenders to the borrower. As the court in *Nymark v. Heart Fed. Sav. & Loan* (1991) 231 Cal.App.3d 1089, 1095, held: "[A] lender has no duty to disclose its knowledge that the borrower's intended use of the loan proceeds represents an unsafe investment. The success of the borrower's investment is not a benefit of the loan agreement which the lender is under a duty to protect." The court further held, "[a] lender's general lack of duty to a borrower is an established public policy. A strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure the success of every investment." *Id*. Because this rule holds true as to a bank's borrower, the actual customer of the bank, then it must certainly hold true as to third parties who are simply investors in an unrelated junior loan to the borrower. *Cf. Fox & Carskadon Financial Corporation v. San Francisco Federal Savings And Loan Assn.* (1975) 52 Cal.App.3d 484 (in the making of a loan, lender had no duty of care to party in contract to purchase property from

547\1030646.1 - 7 -
OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004 CASE NO. 13-53491

Case: 13-53491    Doc# 51    Filed: 08/15/13    Entered: 08/15/13 18:10:51    Page 11 of 16

borrower).

Accordingly, not only do the Debtor's claims of alleged fraud not withstand logical analysis, they have no basis in law. BPB, therefore, should not be required to undertake the time-consuming and costly search for documents requested in the Application.

**B.     Debtor's Requests For Production Are Overbroad And Burdensome**

In the Application, Debtor asserts that this discovery is needed to obtain "information from BPB relative to the nature and extent of the environmental issues on the Property, including the timing, costs, and extent of remediation; claims against third parties, and matters preventing or delaying the fair market sale of the Property." (Application, at 8:13-14.) To emphasize its rationale, the Debtor repeats that "the nature and extent of the environmental issue is unknown, including the extent, time and cost of remediation. In addition, the validity and value of these claims are currently unknown." (Application, at 9:3-5.)

The requests for production, however, are far reaching and stray well beyond the Debtor's rationale. For example, Debtor seeks BPB's entire loan file related to the Kimomex loan (request "No. One"), and all "communications" (as that terms is broadly defined in the Application) between BPB and Kimomex, and between BPB and each of the Kimomex Individual Members "relative to the Property" (requests "No. Three," "No. Six," "No. Seven," "No. Eight," and "No. Nine"). Debtor also seeks BPB's entire underwriting file related to the Kimomex loan (request "No. Two").

In *In re Countrywide Home Loans*, *supra*, the bankruptcy court recognized that in the face of an objection by a creditor to the scope of document requests, the debtor must show good cause to justify the information sought:

> The question of sufficient good cause exists to pursue a Rule 2004 examination and the type of discovery implicitly allowed by the Rule in a given matter is not suited to application of a mechanical test. Rather, a totality of circumstances approach is required, taking into account all relevant factors. *Id.* Consistent with this approach it is appropriate to apply the "good cause" standard in what may be termed a "sliding scale" manner or balancing test. That is to say, the level of good cause required to be established by the [moving party] before she can obtain certain documents or pursue a certain line of inquiry in a Rule 2004 examination involving a creditor will vary depending on the potential intrusiveness involved. *See, e.g., In re Fearn,* 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (scope of Rule 2004 examination should not be so broad as to be more disruptive and costly to

the party to be examined than beneficial to the party seeking discovery); *In re Express One International, Inc.*, 217 B.R. 215, 217 (Bankr. E.D.Tex.1998) (same); *In re Eagle–Picher Industries, Inc.*, 169 B.R. 130, 134 (Bankr. S.D.Ohio 1994) (same); *In re Texaco, Inc.*, 79 B.R. 551, 556 (Bankr. S.D.N.Y.1987) (same); *see also In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (court must balance the examiner's interests against the debtor's interest in avoiding the cost and burden of disclosure.)

*In re Countrywide Home Loans*, *supra,* 384 B.R. at 393.

As set forth above, the Debtor has failed to provide any correlation or good cause for its overly broad, unduly burdensome and costly document requests. The Debtor could have narrowly tailored its requests to the rationale it provided and repeated, but chose not to, and its Application therefore should be denied.

### C. Debtor Imposed An Unreasonable Deadline For Production Of Documents And Should Be Required To Pay The Extraordinary Costs Associated With Its Requests

According to the Application, Debtor seeks BPB's production of responsive documents at 10:00 a.m., on August 30, 2013. (Application, at 9:25.) That deadline, however, is only thirteen (13) business days after Debtor filed the Application, and is shortened every day pending the decision on it. Considering that the Debtor made thirteen (13) requests seeking a broad range of documents, such a deadline, on its face, is not reasonable. In this particular circumstance, compliance with the requests requires BPB to perform a search of the archives of the old computer system of its predecessor, Borel Private Bank and Trust (e.g., to see if there are e-mails responsive to Debtor's requests). That undertaking will be time-consuming and costly. Although the exact amount of time and exact cost is not yet known, it cannot be done in less than thirteen (13) business days and may take much longer. Moreover, since Federal Rule 45 is incorporated into Bankruptcy Rule 2004 through Bankruptcy Rule 9016, to the extent the expense is significant, the Debtor should be required to reimburse BPB for the costs that will be incurred to conduct that search. *See Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232, 265 (D. Del. 1992) (court found it had discretion (or perhaps an obligation) to order third-party bank's compliance with the subpoena so long as party reimbursed the bank for its reasonable production costs); *see also In re Letters Rogatory Issued by Nat. Court of First Instance in Commercial Matters etc.*, 144 F.R.D. 272 (E.D. Pa.1992) (court relied on Rule 45 in denying non-party motion

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

547\1030646.1

- 9 -

OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004                                                   CASE NO. 13-53491

Case: 13-53491    Doc# 51    Filed: 08/15/13    Entered: 08/15/13 18:10:51    Page 13 of 16

to quash subpoena duces tecum, but compelling subpoena compliance conditioned on requirement that non-party receive reimbursement for reasonable production and copying costs).

### D. Debtor's Requests Seek Proprietary BPB Documents

As mentioned above, the requests for production in the Application include all "documents" (as that term is broadly defined in the Application) "contained within [BPB's] underwriting file relative to a loan by [BPB and/or its predecessor, Borel Private Bank and Trust Company] and Kimomex[.]" That request necessarily includes internal documents, notes, memos and communication pertaining to the analysis and decision to make the underlying loan to Kimomex. This is not a case where a borrower seeks disclosure of its lender's underwriting analysis of a loan made to that borrower. Rather, here, a stranger to the underlying loan seeks disclosure of the underwriting analysis. That analysis is proprietary and must be protected from disclosure.

### E. Debtor Seeks Documents Which Could Trigger The Privacy Rights Of Third Parties And In Circumvention Of State Court Discovery Procedures Pertaining To Those Third Parties

The Debtor bears the burden of proving to this court that good cause exists for obtaining *any* discovery from or regarding third parties, such as the Individual Kimomex Members. *In re Metiom, Inc.*, 318 B.R. 263, 268 (Bankr. S.D. N.Y., 2004). The Debtor also bears the burden of demonstrating why it should be entitled to obtain the information through a Rule 2004 fishing expedition as opposed to through the state court discovery statutes governing the lawsuit it commenced against BPB's customers prior to the Petition Date.

The Application seeks to have BPB produce documents that may be subject to the privacy rights of third parties. For example, BPB's loan file (request "No. One") likely contains tax returns and other confidential financial information belonging to BPB's borrower, Kimomex, as well as the various individual members of Kimomex. Also, BPB's "communication" with the Individual Members of Kimomex "relative to the Property" (requests "No. Three," "No. Six," "No. Seven," "No. Eight," and "No. Nine") may include communication that those people anticipated and want to be kept confidential. Nonetheless, Debtor contends in the Application that, beyond BPB, "additional notice of the Application is not necessary[.]" (Application, at

9:18.) Rule 2004 requests are subject to the rules of privilege. *In re Financial Corp. of America*, 119 B.R. 728, 733-39. (Bankr. C.D. Cal. 1990). Consequently, the Debtor's limited notice of this Application has deprived all of those third parties of their due process right to review and consider the Application, and assert their own privileges (e.g., as to tax returns) or rights of privacy.

Moreover, the individuals identified in the Debtor's requests in the Application (i.e., requests "No. Three," "No. Six," "No. Seven," "No. Eight," and "No. Nine") are the same individuals who are parties in the State Court Action Against the Individual Kimomex Members. Debtor is attempting to use the Application to circumvent the rules and procedures of discovery in that State Court Action. "Courts will not permit the use of Rule 2004 to subvert the more limited discovery procedures available in litigation, *2435 Plainfield Ave., Inc. v. Township of Scotch Plains* (*In re 2435 Plainfield Ave., Inc.*), 223 B.R. 440, 445-47 (Bankr. D. N.J. 1998), nor will they impose duplicative or unduly burdensome procedures upon the target of the 2004 examination. *In re Buick*, 174 B.R. 299, 305 (Bankr. D. Colo. 1994). While that attempt, in and of itself, is objectionable, doing so without even notifying the individuals so that they may contest it should not be allowed and the Application should be denied.

### III. CONCLUSION

The Debtor's Application is an improper fishing expedition into BPB's business affairs. The Debtor has no factual or legal basis to assert fraud or duplicity by BPB. Further, the Application contains overbroad and burdensome requests for production of documents that extend well beyond Debtor's justification for the Application. It also seeks production of BPB's proprietary documents. The Debtor also imposed an unreasonably short deadline for BPB's production and it would be extraordinarily costly for BPB to respond to the Debtor's requests for production. In addition, the requests in the Application triggers the privacy rights of third parties. But, the Debtor failed to notify them about it and the Debtor filed this Application to circumvent the discovery rules and procedures in a State Court action involving those same third parties. BPB has other objections to the requests for production in the Application (including the unauthorized and improper accompanying "instructions") and reserves its right to assert those

547\1030646.1 - 11 -
OBJECTION TO EX PARTE APPLICATION FOR ORDER DIRECTING BPB&T COMPANY'S PRODUCTION OF DOCUMENTS UNDER BANKRUPTCY RULE 2004 CASE NO. 13-53491

Case: 13-53491    Doc# 51    Filed: 08/15/13    Entered: 08/15/13 18:10:51    Page 15 of 16

objections if the Application is granted. Based upon the defects described herein, however, the Application should be denied.

WHEREFORE, Secured Creditor prays that the Application as presented be denied.

Dated: August 15, 2013

HOPKINS & CARLEY
A Law Corporation

By: /s/ Stephen J. Kottmeier
Stephen J. Kottmeier
Jay M. Ross
Attorneys for Secured Creditor
BOSTON PRIVATE BANK & TRUST COMPANY