United States Bankruptcy Court
Northern District of California

In re:  
**272 E Santa Clara Grocery, LLC**

_____/

Case No. **13-53491**

Chapter 11

**[PROPOSED] COMBINED PLAN OF REORGANIZATION
AND DISCLOSURE STATEMENT
(September 24, 2013)**

INTRODUCTION

    This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

    Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: 100% of their allowed claims in monthly payments over sixty months. Taxes and other priority claims would be paid in full, as shown in Part 3.

    Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [date]. The court will hold a hearing on confirmation of the Plan on [date] at [time].

    Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 shows Debtor's monthly income and expenses related to each investment property.

    Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly

encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Debtor to Adjust Terms and Pay Amount Due in Full Over Time.**
[select one form of table and delete the other]

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
|---|---|---|---|---|---|---|
| 1A | Santa Clara County Tax Assessor | 272 E. Santa Clara Street, San Jose, CA | $242,744.13 (as of 9/30/13) | 1.5% per month | (See Pot Plan below) | 60 months |
| 1A | Boston Private Bank & Trust Company | 272 E. Santa Clara Street, San Jose, CA | $3,341,017.20 (principal as of 6/27/13, but to be confirmed) | 6.5% for five years from 7/15/08 and then variable | $24,307.46 | July 15, 2018 |

Debtor will pay the entire amount contractually due with interest through sixty (60) equal monthly payments, due the twentieth (20) day of the month, starting sixty (60) days after the Effective Date on the above secured claims. Creditors in these classes shall retain their interest in the collateral until Debtor makes all payments on the allowed secured claim specified in the Plan.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default

Individual Chapter 11
Combined Plan & Disclosure Statement
July 30, 2012                              -2-                       (Version: 7/30/12)

under the Plan (defined in Part 6(c)).  **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge.  The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

By contract BPB's loan matures July 15, 2018. During this Chapter 11 case, BPB asserted a claim for default interest back to a date uncertain and in an amount approaching $300,000 and a claim for costs and attorney's fees in an unknown amount. Debtor will seek an order decelerating BPB's claim for default interest and an order determining the reasonableness of costs and attorney's fees asserted by BPB.

If Debtor's real property is sold then Debtor will pay its creditors the outstanding balances of their claims, as agreed or ordered by the court-secured creditors at and through escrow and other creditors on the twentieth (20) day of the month after the end of the quarter, starting after then end the first full quarter after the Effective Date.

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**
**Class 2(a).   Small Claims.**

| Name of Creditor | Amount of Claim | Amount to be Paid |
| --- | --- | --- |
| None | | |
| | | |
| | | |

This class includes any creditor whose allowed claim is $ [number] or less, and any creditor in Class 2(b) whose allowed claim is larger than $ [number] but agrees to reduce its claim to $ [number].  Each creditor will receive on the Effective Date of the Plan a single payment equal to [select one] [the lesser of its allowed claim or $ [number]] [lesser of ___% of its allowed claim or $ [number]].

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan, unless their claims are paid in full with interest on the Effective Date of the Plan.**

Individual Chapter 11
Combined Plan & Disclosure Statement
July 30, 2012                          -3-                    (Version: 7/30/12)

Case: 13-53491   Doc# 62   Filed: 09/24/13   Entered: 09/24/13 17:45:07   Page 3 of 17

**Class 2(b). [Other] General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | [Monthly] [Quarterly] Payment |
|---|---|---|---|---|
| Andrew A. Lewis | 668,241.00 | N | $668,241.00, plus agreed interest of 16.5% | (See Pot Plan below) |
| ERAS Environmental, Inc. | $6,359.10 | N | $0.00 (paid in full post petition by non-debtor) | $0.00 |
| Ogen Perry | 80,000 | N | $80,000, plus agreed interest of 16.5% | (See Pot Plan below) |
| Rossi, Hamerslough | $5,914.21 | N | $5,914.21, plus statutory interest of 10% | (See Pot Plan below) |

[All known non-priority unsecured creditors, including deficiency claims, and rejection claims, whether scheduled or based on proofs of claim on file excluding those listed in Class 2(a), must be listed in the above table.]

Allowed claims of general unsecured creditors [not treated as small claims] (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

[select one of the following options]

**Percent Plan.** Creditors will receive [number] percent of their allowed claim in [number] equal [monthly/quarterly] installments, due on the [number] day of the [month/quarter], starting [month & year].

**Pot Plan.** Creditors will receive a pro-rata share of a fund totaling $917,552.40 (less amounts paid for PRIORITY AND ADMINISTRATIVE CLAIMS, created by Debtor's payment of $45,877.62 per quarter ($15,292.54/month) for a period of

sixty(60) months starting the first full quarter after the Effective Date. Payments will be made quarterly, due on the twentieth (20) day of the month after the end of the quarter, starting after then end the first full quarter after the Effective Date. Pro-rata means the entire amount of the fund divided by the entire amount owed to creditors with allowed claims in this class.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **This class is impaired and is entitled to vote on confirmation of the Plan**. Debtor has indicated above whether a particular claim is disputed.

If Debtor's real property is sold then Debtor will pay its creditors the outstanding balances of their claims, as agreed or ordered by the court-secured creditors at and through escrow and other creditors on the twentieth (20) day of the month after the end of the quarter, starting after then end the first full quarter after the Effective Date.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a) <u>Professional Fees</u>.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| **None** | |
| | |

The following professionals have agreed to accept payment over time as follows. Payments will be made quarterly, due on the twentieth (20) day of the month after the end of the quarter, starting after then end the first full quarter after the Effective Date or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **Campeau Goodsell Smith, L.C.** | $40,000.00 | $20,000 ($10,000 of $20,000 agreed upon retainer has been paid) | 1 |
| | | | |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **Estate professionals are not entitled to vote on confirmation of the Plan.**

If Debtor's real property is sold then Debtor will pay its creditors the outstanding balances of their claims, as agreed or ordered by the court-secured creditors at and through escrow and other creditors on the twentieth (20) day of the month after the end of the quarter, starting after then end the first full quarter after the Effective Date.

(b) <u>Other Administrative Claims</u>.  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below).  All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)).  **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| **None** | |
| | |

(c) <u>Tax Claims</u>.  Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code.  Payments will be made quarterly, due on the

twentieth (20) day of the month after the end of the quarter, starting after then end the first full quarter after the Effective Date. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan**.

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| **Internal Revenue Service** | $100.00 (Claim#1) | unknown | $100.00 | 1 |
|  |  |  |  |  |

If Debtor's real property is sold then Debtor will pay its creditors the outstanding balances of their claims, as agreed or ordered by the court-secured creditors at and through escrow and other creditors on the twentieth (20) day of the month after the end of the quarter, starting after then end the first full quarter after the Effective Date.

**PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) <u>Executory Contracts/Unexpired Leases Assumed</u>. Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. Pre-confirmation arrears will be paid quarterly, due on the twentieth (20) day of the month after the end of the quarter, starting after then end the first full quarter after the Effective Date and afterthat .

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| ERAS Environmental, Inc. | Environmental services relating to real property | none (paid in full post petition by non-debtor) | n/a | n/a |

| Rossi, Hamerslough | Hourly Fee Agreement/defend Boston Bank | $5,914.21 | (see Class 2 (b)) | (see Class 2 (b)) |
| Rossi, Hamerslough | Hourly/Contingency Fee Agreement for claim against guarantors | $0.00 | n/a | n/a |
| Grocery Outlet, Inc. | Lease of Debtor's real property (Debtor is landlord) | tenant is believed to be current | n/a | n/a |

(b) <u>Executory Contracts/Unexpired Leases Rejected</u>. Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court. Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| **None** | |
| | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed [select one] [assumed/rejected].

**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**
(a) <u>Discharge</u>. Debtor shall not receive a discharge of debts until Debtor makes all payments due under the Plan or the court grants a hardship discharge.

(b) <u>Vesting of Property</u>. On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c) <u>Plan Creates New Obligations</u>. Except as provided in Part 6(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding

contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**
(a) <u>Creditor Action Restrained</u>. The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b) <u>Obligations to Each Class Separate</u>. Debtor's obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c) <u>Material Default Defined</u>. If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>.  Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>.  If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>.  The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 7: GENERAL PROVISIONS**

(a) <u>Effective Date of Plan</u>.  The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed.  If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed.  If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>.  Debtor will create a reserve for disputed claims.  Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed.  If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under

the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be [select one] [returned to Debtor] [distributed pro-rata among allowed claims in this class].

(c) <u>Cramdown</u>. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| **None** | | | | |
| | | | | |

(g) <u>Notices</u>. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

>   Atten: **Andrew A. Lewis**
>   **272 E Santa Clara Grocery, LLC**
>   **475 S. San Antonio Road**
>   **Los Altos, CA 94022**

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required

by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

_September 24, 2013__

                                                /s/ Andrew A. Lewis_____
                                                Debtor
                                                By: Andrew A. Lewis, Responsible
                                                Individual and Manager

                                                /s/ William J. Healy_____
                                                Attorney for Debtor

**Attorney Certification**

    I, William J. Healy, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

    The following provisions of the Standard-Form Plan have been altered or otherwise modified.

        Page 1, paragraph 4-re-lettered/title exhibits
        Page 2, Part 1-payment schedule
        Page 3, Part 1-added note regarding deceleration, litigation, and sale of real property
        Page 4-5, Part 2-payment schedule of pot plan
        Page 5, Part 3-payment schedule and sale of real property
        Page 6-7, Part 3 (a) and (c)-payment schedule and sale of real property

    I declare that the foregoing is true and correct. Executed this 24th day of September 24, 2013.

                                    /s/ William J. Healy
                                    Attorney for Debtor(s)

**Exhibit 1 – Events That Led To Bankruptcy**

    Debtor is a single asset real estate entity and owner of real property commonly know as 272 E Santa Clara Street in San Jose. Debtor's real property is subject to a commercial lease with Grocery Outlet as a tenant whereby the tenant pays approximately $39,600/month in rent (triple net), and is subject to a first position deed of trust in favor of Boston Private Bank & Trust Company ("BPB"), although Debtor is not BPB's original borrower. In approximately November 2012, Debtor contracted to sell the real property for $7,300,000. However, the contracted buyer did not go forward with the sale when it discovered an environmental issue with the real property. The contracted price was sufficient to satisfy BPB's first deed of trust and all creditors and provide a return to Debtor's investors. Pre-petition the Debtor was working to resolve the environmental issue with the real property and conclude the sale. The bankruptcy resulted from an impasse between Debtor and BPB relative to BPB's demand for a release of Debtor's claims against BPB for its non-disclosure of environmental issues with the real property. Debtor understands that BPB knew of the environmental issues with the real property before it lent monies to Kimomex and knew these issues remained prior to and during Debtor's foreclosure on the second deed of trust (pursuant to a loan between Debtor and Kimomex), Debtor's expenditure of substantial sums of money foreclosing on its second deed of trust, Debtor's bringing and keeping BPB current, Debtor's readying the property for and securing a tenant, and maintaining the tenant's payment on the lease, and Debtor's various agreements with BPB extending BPB's foreclosure. This impasse and bankruptcy also resulted from BPB's demand that Debtor's tenant pay all rental income (all $39,600/month) to them notwithstanding the note between BPB and its borrower Kimomex only called for $24,307.45/month, which then denied Debtor income and monies to address the pending environmental issue preventing the sale of the real property.

    Debtor's rental income is being held by BPB. Debtor's monthly expenses, including environmental professionals, post petition real property taxes, US Trustee Fees, and other expenses, cannot be paid as long as BPB holds Debtor's rental income.

```
Significant events that have occurred during this Chapter 11 case
```

    During this Chapter 11 case Debtor's rental income has been received and held by BPB. Debtor's monthly expenses, including environmental professionals, post petition real property taxes, US Trustee Fees, and other expenses, cannot be paid as long as BPB holds Debtor's rental income. During this Chapter 11 case, BPB asserted, for the first time, a claim for default interest of 2% back to a date uncertain and in an amount approaching $300,000 and a claim for costs and attorney's fees in an unknown amount.

    During this Chapter 11 case Debtor received (August 26, 2013) a 'no further action' letter from the Santa Clara County Department of Environmental Health ("DEH") relative to Debtor's real property. Debtor anticipates receipt of a 'closure' letter from DEH closing the environmental issue.

**Exhibit 2 – What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: [272 E Santa Clara St, San Jose, CA]

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $7,300,000 | 1st $3,341,017.20 (principal as of 6/27/13, but to be confirmed, $300,000 claimed default interest through 12/13, and $100,000 in attorney's fees) | $584,000 at 8% | unknown | n/a | $2,974,982.80 (after cost of sale, real property taxes, and 1st DOT with default interest and attorney's fees as stated) |
| | 2nd | | | | |
| | 3rd | | | | |

[Santa Clara County Tax Assessor claims $242,744.13 (as of 9/30/13)]

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $303.86 | n/a | n/a | $303.86 |
| Automobile #1 | n/a | | | |
| Automobile #2 | n/a | | | |
| Household Furnishings | n/a | | | |
| Jewelry | n/a | | | |
| Equipment | n/a | | | |
| Stocks / Investments | n/a | | | |
| Other Personal Property | $unknown | n/a | n/a | $0.00 |
| TOTAL | | | | |

| Net Proceeds of Real Property and Personal Property | $2,975,286.60 |
|---|---|

| | | |
|---|---|---|
| Recovery from Preferences / Fraudulent Conveyances | [ADD] | 0 |
| Chapter 7 Administrative Claims | [SUBTRACT] | 0 |
| Chapter 11 Administrative Claims | [SUBTRACT] | 20,000 |
| Priority Claims | [SUBTRACT] | 100 |
| Chapter 7 Trustee Fees | [SUBTRACT] | $25,000 |
| Chapter 7 Trustee's Professionals | [SUBTRACT] | $5,000 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | | $2,925,186.60 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | 165,186.66 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 100% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 100% |

**Exhibit 3 – Investment Property Analysis**

**Properties with Positive Monthly Cash-Flow:**
Real Property #1 Income: [Insert Address]

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| $39,600 | 1st $24,307.46 | paid by tenant | paid by tenant | unknown | $15,292.54 |
| | 2nd | | | | |
| | 3rd | | | | |

[Add additional tables for additional real property]

Real Property #2 Income: [Insert Address]

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| | 1st | | | | |
| | 2nd | | | | |
| | 3rd | | | | |

| | |
|---|---|
| **A. Total Positive Cash Flow** | |

**Properties with Negative Monthly Cash-Flow:**
Real Property #3 Income: [Insert Address]

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| | 1st | | | | |
| | 2nd | | | | |
| | 3rd | | | | |

Real Property #4 Income: [Insert Address]

| Rental Income | Mortgage | Insurance | Property Taxes | Other Expenses | Net Income |
|---|---|---|---|---|---|
| | 1st | | | | |
| | 2nd | | | | |
| | 3rd | | | | |

| | |
|---|---|
| **B. Total Negative Cash Flow** | |