CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California 95112
Telephone: (408) 295-9555
Facsimile: (408) 295-6606

ATTORNEYS FOR Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:                                    ) Case No. 13-53491
                                          )
272 E SANTA CLARA GROCERY, LLC,           ) CHAPTER 11
                                          )
                    Debtor.               ) **MOTION TO ASSUME AND ASSIGN**
                                          ) **LEASE (272 E. Santa Clara St.)**
                                          )
                                          ) **Date: TBD**
                                          ) **Time: TBD**
                                          ) **Place:**
                                          )    **280 S. First Street**
                                          )    **San Jose, CA 95113**
                                          ) **Judge: Hon. Stephen L. Johnson**
                                          )
_____)

TO THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY COURT JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; BOSTON PRIVATE BANK & TRUST COMPANY; SANTA CLARA COUNTY TAX ASSESSOR; GROCERY OUTLET, INC.; and all other interested parties:

Debtor 272 E SANTA CLARA GROCERY, LLC, Debtor and Debtor-in-possession herein ("Debtor") submits the following MOTION TO ASSUME AND ASSIGN LEASE (272 E. Santa Clara St.) and an order (1) finding that the notice of the motion was proper and adequate given the circumstances; (2) authorizing Debtor to assume and assign a March 8, 2012 lease ("Lease") of Debtor's real property commonly known as 272 E Santa Clara Street, San Jose, California, Santa Clara County Assessor's Parcel Number 467-24-111 ("Property")

to Nino and Anna Maria Barbieri (or their assigns) ("Buyer") free and clear of liens of Santa Clara County Tax Assessor and Boston Private Bank & Trust Company (formerly known as Borel Private Bank & Trust Company) pursuant to Bankruptcy Code 365 and Bankruptcy Rule 6006; and (3) reserving bankruptcy court jurisdiction to implement, enforce, or resolve any disputes with or related to the order ("Motion") as follows:

I. **Summary of Motion.**

This is a motion seeks to assume and assign a March 8, 2012 lease ("Lease") of Debtor's real property commonly known as 272 E Santa Clara Street, San Jose, California, Santa Clara County Assessor's Parcel Number 467-24-111 ("Property") to Nino and Anna Maria Barbieri (or their assigns) ("Buyer") free and clear of liens of Santa Clara County Tax Assessor and Boston Private Bank & Trust Company (formerly known as Borel Private Bank & Trust Company) pursuant to Bankruptcy Code 365 and Bankruptcy Rule 6006. This Motion is made in connection with and is related to Debtor's sale of the Property to Buyers.

II. **Case Background/Status[1].**

The following case background and status are presented in summary form to assist to the court with the Motion but omit some background and disputed history not essential to the Motion.

**A. May 2009 Loan to Kimomex.**

In May 2009, several investors (collectively the "Investors") loaned $635,000 to Kimomex Santa Clara, LLC ("Kimomex") secured by a deed of trust in second position ("Second DOT") to Investment Grade Loans, Inc. ("IGL") as trustee against the Property. The Second DOT was subject to an existing first deed of trust in the amount of approximately $3.6 million dollars recorded in July 2008 in favor of Boston Private Bank & Trust Company ("BPB") (formerly known as Borel Private Bank & Trust Company) (the "First DOT"). The Property consisted of 1.4 acres improved with a commercial building of approximately 26,575 square feet originally built in 1966 which was occupied by tenant

---

[1] Debtor submits that the factual background stated herein is substantively and substantially undisputed except to note that BPB may disagree with portions not essential to the Motion.

Kimomex Markets, Inc. which operated a Mexican grocery store business.

**B. July 2011 Foreclosure Agreement.**

The Mexican grocery store business failed and Kimomex entered into protracted negotiations with a potential new grocery store tenant, i.e. Fresh & Easy, but that deal was never consummated. In March 2011 BPB recorded a notice of default under the First DOT and eventually set a trustee's sale for July 20, 2011.

Prior to the sale date, on July 15, 2011 BPB and IGL entered into an "Agreement Re Foreclosure Sale" (the "Foreclosure Agreement"). Under the Foreclosure Agreement BPB agreed that if IGL immediately paid $380,661.90 to cure the arrearage BPB would postpone the trustee's sale to after August 17, 2011, and that if IGL made "the regular monthly payment of $24,307.45 due under the Loan", then BPB would continuously postpone the trustee's sale through March 16, 2012.

**C. October 2011 Foreclosure And Second DOT On Empty Building.**

In June 2011 IGL recorded a notice of default under the Second DOT. The foreclosure took place on October 24, 2011. At the time of the sale, the unpaid balance was $1,183,908.74. At the sale, the Investors bid $100,000, which was the highest bid, and became the owners of the Property, leaving a deficiency balance due on the second loan of $1,083,908.74. At the time of the foreclosure, the building was empty, there was no tenant, and there was no rental income. Between October 2011 and March 2012, the Investors marketed the Property for lease to potential tenants, found a tenant in March 2012, and eventually paid $242,000 in leasing commissions. At the same time IGL was paying BPB $24,307.45 per month.

**D. First and Second Amendments to Foreclosure Agreement.**

In November 2011 and January 2012, IGL and BPB entered into a "First Amendment" and a "Second Amendment to Agreement Re Foreclosure Sale" (the "Second Amendment"). Under the Second Amendment the parties agreed that if IGL made "the regular monthly payments" for December 2011 through March 2012 of $24,307.45 then BPB would postpone the foreclosure sale, and if the Investors wanted to pay off the First DOT, BPB would accept $3.25 million dollars, less the payments made for those months, in full satisfaction of the First DOT. The plan was to have the Property leased and sold by March 2012 in order to pay off the First DOT.

**E. March 2012-New Tenant and Third Amendment.**

In March 2012, the Investors formed 272 E Santa Clara Grocery, LLC ("Debtor") and deeded their respective ownership interests in the Property to the Debtor. The deed was recorded in April 2012.

On or about March 8, 2012, Debtor, as landlord, entered into a 10-year lease for the Property with Grocery Outlet, Inc., a national grocery store chain. During the few years the tenant pays rent of $39,600 per month. The monthly rent is net of all expenses, including property taxes, insurance, and maintenance (except the roof and structure) which are all paid by the tenant.

In March 2012, BPB, IGL, and Debtor entered into a "Third Amendment to Agreement Re Foreclosure Sale" (the "Third Amendment"). Under the Third Amendment, the parties agreed that if BPB was paid "the regular monthly payment of $24,307.45 due under the Loan" then BPB would postpone the trustee's sale through December 31, 2012. The parties further agreed that Plaintiff and Debtor would enter into a Subordination, Non-Disturbance and Attornment Agreement ("SNDA") under which BPB would not disturb the tenant's possession in the event BPB foreclosed, which SNDA was signed on July 26, 2012.

In reliance upon the multiple agreements with BPB, Debtor continued to pay BPB $24,307.45 per month through and including March 2013. Thus, from July 2011 through

March 2013, Debtor paid Plaintiff $380,661.90 to cure the arrearage, plus approximately $413,219 in monthly payments for a total of $793,880.90. This is in addition to the approximate $242,000 for leasing commissions spent to find a tenant. Thus, a total of approximately $1,033,880 has been spent in reliance upon the agreements with BPB.

**F. December 2012-Sale of Property and Debtor's Discovery of Environmental Contamination and BPB's Non-Disclosure.**

In November 2012, Debtor found a buyer and entered into a contract for the sale of the Property for $7.3 million dollars. The escrow was scheduled to close in December 2012. This sale would have paid off BPB's lien. However, during their due diligence, the buyer discovered that the Property was listed with the State and/or County as undergoing clean-up or investigation due to a possible leak from an old underground storage tank. Specifically, while conducting a Phase I, Environmental Investigation, the buyer discovered the existence of prior reports filed showing that the Property was contaminated. As a result of the discovery, the buyer cancelled the sale.

This discovery by the buyer was the first notice that Debtor had of any contamination on the Property. However, Debtor was informed that BPB had been aware of the contamination since 2008, had a copy of a report showing purported contamination, and never disclosed the report or the purported contamination to Debtor. Had BPB disclosed this information to Debtor, Debtor would not have paid BPB $793,880 to cure the default, made payments under

the First DOT, or invested another $242,000 in leasing commissions to find a tenant.

**G. May 2013-Proposed Fourth Amendment, Agreement to Suspend Payments, and Release of Claims.**

Debtor continued to make the monthly payments to BPB through March 2013. Around that time, BPB, IGL and Debtor negotiated the terms for a fourth amendment regarding the foreclosure sale. Under the terms as negotiated, Plaintiff agreed that so long as Debtor and IGL took certain steps to obtain a "closure and/or no further action letter" regarding the contamination from the required regulatory agency, and to the extent required, pay for any additional environmental investigation, testing, remediation and/or other work, kept BPB apprised of the progress, and obtained a "closure and/or no further action letter" resolving all environmental issues no later than April 30, 2014, then no monthly payments after March 2013 would be due, and the foreclosure sale would be continued through April 30, 2014.

In reliance upon the agreement that no payments were due after March 2013, Debtor did not make payments pending the drafting and execution of the fourth amendment. The draft fourth amendment was not received until May 2013. Consistent with the negotiations, the draft fourth amendment stated that no payments would be due after March 2013. However, contrary to prior discussions, the proposed "Fourth Amendment to Agreement Re Foreclosure Sale" (the "Fourth Amendment"), required Debtor, IGL, and their predecessors to release BPB from any claims relating to the Property including any environmental issues. As BPB had failed to disclose the environmental contamination to Debtor prior to and during its dealings and did not know the severity of the contamination and cost of remediation, Debtor refused to execute the Fourth Amendment.

**H. May 13, 2013-BPB Serves Demand on Tenant to Pay All Rents to BPB.**

On or about May 17, 2013 BPB served a "Demand That You Pay Rent To A Party Other Than The Landlord" on the tenant. Debtor received confirmation that the tenant would comply with the demand and pay all rents directly to BPB. In compliance with the demand and commencing June 2013, BPB received and continues to receive all the rent, i.e. $39,600, directly from the tenant (this rent is about $15,300 more than the monthly payment). Pre-petition Debtor tendered, and continued to tender, immediate payment of the total arrearage, thereby bringing the obligation current and reinstating the loan. BPB wrongfully rejected this tender.

**I. Bankruptcy.**

On June 27, 2013, Debtor commenced this Chapter 11 bankruptcy case ("Bankruptcy Case"). No Receiver or Trustee has been appointed, and the Debtor remains a Debtor in Possession pursuant to 11 U.S.C. under Chapter 11 of title 11, United States Code sections 1107 and 1108. The bankruptcy was filed to avoid the unnecessary and expensive appointment of a receiver, to prevent BPB's pending foreclosure, and protect Debtor's substantial investment and substantial equity.

On September 24, 2013, Debtor filed a disclosure statement and plan with a hearing date of November 7, 2013 (Doc#62). On October 7, 2013, the court issued an Order Denying Motion for Order Confirming No Stay with Respect to Rent and Denying Cross-Motion for Use of Cash Collateral (Doc#64). Debtor and BPB are discussing, among other things, BPB's turnover of post-petition rents and related cash collateral issues.

**J. Status of Environmental Issue.**

Debtor contracted with ERAS Environmental, Inc. ("ERAS") to assist Debtor address the environmental issues and secure government clearance so the Property can be sold. On August 26, 2013 the Santa Clara County Department of Environmental Health ("DEH") advised Debtor that based on their review it appeared that the Property qualified for closure under State Water Resource Control Board Low-Threat Underground Storage Tank Case Closure Policy ("LTCP"), no further action was required at that time, and the matter would

proceed through the closure process before it was recommended for final closure.

**III. Sale of Property/Assignment of Lease.**

    **A. Debtor's Sales Efforts.**

Post-petition Debtor, with the assistance of Broker/Agent and while continuing to address the environmental issue discussed hereinabove, has continued to market the Property for sale and evaluate various prospective inquiries and interests, buyers, and offers and maintained discussions with interested parties and prospective purchasers, including the buyer Debtor had in contract in November/December 2012. Debtor's marketing efforts have resulted in several quality offers in the range of $7,000,000.

    **B. Purchase Agreement.**

On or about October 10, 2013 Debtor entered into and executed the Purchase Agreement with Buyer to sell the Property for $7,580,000.00.

Pursuant to the terms of the Purchase Agreement the purchase price for the Property is $7,580,000 payable as follows (1) $200,000 within three business days of execution, $100,000 which is non-refundable except for seller's default and the remaining $100,000 refundable if various contingencies are not satisfied or waived, and the balance as closing; (2) buyer has twenty-five days to perform inspection and review and approve title; (3) various escrow fees or costs shall be shared equally by buyer and seller; and (4) escrow shall close on or before five days after waiver or expiration of the inspection period.

Debtor understands that the purchase of the Property is part of a 1031 Exchange and as set forth in the Purchase Agreement and hereinabove, escrow shall close on or before five days after expiration of the inspection period. Therefore, Debtor needs to be ready to perform on the Purchase Agreement in a timely manner.

Debtor, as part of the sale of the Property, seeks to assume and assign the Lease to Buyers. Debtor is currently in good standing with regard to the Lease and is unaware of any restrictions on its assignment of the Lease to Buyer. Debtor, based on its evaluation of Buyers and their ability to perform under the Purchase Agreement and the terms of the Purchase Agreement and Lease, believes that Buyers are ready and able to comply with the

terms and conditions set forth in the Lease both materially and economically.

**C. Secured Claims.**

The real property is subject to two secured claims, namely the Santa Clara Tax Assessor for outstanding real property taxes and a deed of trust in favor of Boston Private Bank & Trust Company ("BPB"). According to the County of Santa Clara, Tax Collector's Office the total unpaid prior year secured taxes due if paid by 10/31/2013 is $245,170.04 and if paid on or after 11/01/2013 and by 12/02/2013 $247,595.95[2]. According to BPB (Doc#22-2, page 3, lines 23-26), as of June 27, 2013 the outstanding principal balance due and owing from Kimomex under its Promissory Note and other Loan Documents is $3,341,017.20[3]. Therefore, it appears the secured claims are, subject to the referenced footnotes and the estimated date of closure, as follows:

    Santa Clara County Tax Assessor: $ 247,595.95
    <u>Boston Private Bank :          $3,341.017.20</u>
                            Total: $3,588,613.10

**D. Consent From Secured Creditors.**

Debtor does not believe that consent is required from its secured creditors because the sales amount is greater than the aggregate value of all liens on the property, and such after anticipated closing costs and commissions. However, Debtor's counsel has confirmed with the Santa Clara County Tax Assessor that it does not and will not object and consents to any sale that pays the outstanding secured taxes. Debtor's counsel also anticipates, based on a recent conversation with BPB's counsel, that BPB will not object and will consent to any sale

---

[2] Debtor's counsel was informed by the Santa Clara Tax Assessor that a Proof of Claim would be filed October 11, 2013. Debtor will review the Proof of Claim relative to the accuracy of the figures and calculations.

[3] Debtor understands that BPB claims that in addition to principal there is due, owing and unpaid accrued interest, late charges and other fees and costs, and attorneys' fees and legal costs in amounts to be determined. Debtor has not yet confirmed BPB's figures, disputes some of its claims to interest, late charges and other fees and costs, and attorney's fees, and reserves its rights relative to these additional claims. In addition, Debtor notes that as of October 11, 2013, BPB holds four (4) months rent ($39,600 x 4 =$158,400) which Debtor has demanded to be turned over to Debtor pursuant to Bankruptcy Code will review the Proof of Claim relative to the accuracy of the figures and calculations.

that results in sufficient funds to pay its undisputed and disputed claims. Debtor submits that any sale at or above $7,000,000 will result in sufficient funds to pay BPB its undisputed and disputed claims.

**III. Conclusion.**

WHEREFORE, Debtor respectfully requests that the court grant this Motion and issue an order (1) finding that the notice of the motion was proper and adequate given the circumstances; (2) authorizing Debtor to assume and assign a March 8, 2012 lease ("Lease") of Debtor's real property commonly known as 272 E Santa Clara Street, San Jose, California, Santa Clara County Assessor's Parcel Number 467-24-111 ("Property") to Nino and Anna Maria Barbieri (or their assigns) ("Buyer") free and clear of liens of Santa Clara County Tax Assessor and Boston Private Bank & Trust Company (formerly known as Borel Private Bank & Trust Company) pursuant to Bankruptcy Code 365 and Bankruptcy Rule 6006; and (3) reserving bankruptcy court jurisdiction to implement, enforce, or resolve any disputes with or related to the order.

Dated: October 16, 2013  CAMPEAU GOODSELL SMITH
　　　　　　　　　　　　　　　/s/ William J. Healy
　　　　　　　　　　　　　　　William J. Healy