1  Stephen J. Kottmeier (State Bar No. 077060)
   sjk@hopkinscarley.com
2  Jay M. Ross (State Bar No. 151759)
   jross@hopkinscarley.com
3  HOPKINS & CARLEY
   A Law Corporation
4  The Letitia Building
   70 S First Street
5  San Jose, CA  95113-2406

6  *mailing address:*
   P.O. Box 1469
7  San Jose, CA 95109-1469
   Telephone:    (408) 286-9800
8  Facsimile:    (408) 998-4790

9  Attorneys for Secured Creditor BOSTON
   PRIVATE BANK & TRUST COMPANY,
10 formerly known as and successor to Borel
   Private Bank & Trust Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | CASE NO. 13-53491 |
| 272 E. Santa Clara Grocery, LLC, | CHAPTER 11 |
| Debtor. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY** |
| | Hearing<br>Date:   November 19, 2013<br>Time:   10:00 a.m.<br>Place:  280 S. First Street<br>         San Jose, CA<br>         Courtroom 3099<br>Judge:  Hon. Stephen L. Johnson |

114\1046210.3

# TABLE OF CONTENTS

| | | | | Page |
|---|---|---|---|---|
| I. | INTRODUCTION | | | 1 |
| II. | STATEMENT OF FACTS | | | 1 |
| | A. | Events Prior To Bankruptcy | | 1 |
| | B. | Proceedings In The Bankruptcy Court | | 3 |
| III. | ARGUMENT | | | 4 |
| | A. | Applicable Legal Standards | | 4 |
| | B. | Relief From Stay Should Be Granted In This Matter | | 6 |
| | | 1. | The Debtor Has No Reasonable Possibility Of Confirming A Plan | 6 |
| | | | a. The Debtor's Proposed Plan Cannot Be Confirmed In the Face Of The Due On Sale Provision In The Deed Of Trust | 7 |
| | | | b. The Debtor Is Unable To Propose A Feasible Plan | 10 |
| | | | c. The Debtor's Proposed Plan Violates The Absolute Priority Rule | 11 |
| | | | d. The Debtor's Classification of Its Attorney As The Non-Insider Unsecured Creditor Class Demonstrates The Plan Is Proposed In Bad Faith | 11 |
| IV. | CONCLUSION | | | 13 |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

- i -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY
CASE NO. 13-53491

Case: 13-53491    Doc# 78    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 2 of 17

# TABLE OF AUTHORITIES

Page

**CASES**

*Christensen v. Tucson Estates, Inc.*
   912 F.2d 1162 (9th Cir. 1990) ............................................................................................ 5

*In re Arnold And Baker Farms*
   177 B.R. 648 (9th Cir. BAP (Ariz.) 1994) ........................................................................... 6

*In re Barrows*
   15 B.R. 338 (Bankr. M.D. Pa. 1981) ................................................................................. 6

*In re Beguelin*
   220 B.R. 94 (9th Cir. BAP 1998) ....................................................................................... 5

*In re Castlerock Properties*
   781 F.2d 159 (9th Cir. 1986) ............................................................................................ 5

*In re Coastal Equities*
   33 B.R. 898 (Bankr. S.D. Cal. 1983) ................................................................................ 9

*In re Ellis*
   60 B.R. 432 (9th Cir. B.A.P. 1985) .................................................................................... 6

*In re Entz White Lumber & Supply, Inc.*
   850 F.2d 1338 (9th Cir. 1988) ........................................................................................ 10

*In re Estate of LaRosa*
   2009 WL 1172843 (Bankr. N.D. W. Va. 2009) ............................................................... 12

*In re Gulph Woods, Corp.*
   84 B.R. 961 (Bankr. E.D. Pa. 1988) ............................................................................... 10

*In re Haas*
   162 F. 3d 1087 (11th Cir. 1998) ..................................................................................... 10

*In re Lakeside Global II, Ltd.*
   16 B.R. 499 (Bkrtcy. S.D.Tex., 1989) ............................................................................. 10

*In re Mendoza*
   2010 WL 1610120 (N.D. Cal. 2010) ................................................................................. 9

*In re Mullin*
   433 B.R. 1 (Bankr. S.D. Tx. 2010) .................................................................................... 8

*In re Sagamore Partners, Ltd.*
   2012 WL 2856104, *4-5 (Bankr. S.D. Fla. 2012) ......................................................... 9, 10

*In re Sentry Park Ltd.*
   87 B.R. 427 (Bk. W.D. Tex. 1988) .................................................................................... 5

*In Re Swartville*
   2012 WL 3564171, *4-6 (Bankr. E.D.N.C. 2012) ........................................................... 12

*In Re Tewell*
   355 B.R. 674 (Bankr. N.D. Ill. 2006) ................................................................................. 8

*In re Wiston XXIV, Limited Partnership*
   153 B.R. 322 (Bankr. D. Kan. 1993) ................................................................................ 6

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

- ii -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY
CASE NO. 13-53491

Case: 13-53491    Doc# 78    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 3 of 17

## TABLE OF AUTHORITIES
(continued)

Page

*In re Young Broadcasting*
   430 B.R. 99 (Bankr. S.D.N.Y. 2010) .................................................................. 8

*In re Zaleha*
   162 B.R. 309 (Bankr. D. Idaho 1993) ................................................................ 6

*Manhattan King David Restaurant, Inc. v. Levine*
   163 B.R. 36 (S.D.N.Y. 1993) ............................................................................ 6

*Matter of Pizza Hawaii, Inc.*
   761 F. 2d 1374 (9th Cir. 1985) ....................................................................... 10

**STATUTES**

11 U.S.C. section 362 ............................................................................................... 1
11 U.S.C. section 362(d) ...................................................................................... 4, 5
11 U.S.C. section 362(d)(1) .......................................................................... 1, 5, 6, 13
11 U.S.C. section 362(d)(3) .......................................................................... 1, 4, 6, 13
11 U.S.C. section 362(d)(3)(A) ............................................................................... 6
11 U.S.C. section 362(g) ......................................................................................... 5
11 U.S.C. section 1123 ............................................................................................ 8
11 U.S.C. section 1124 ............................................................................................ 8
11 U.S.C. section 1124(2)(A) .................................................................................. 8
11 U.S.C. section 1124(2)(E) .................................................................................. 8
11 U.S.C. section 1129 ............................................................................................ 6
11 U.S.C. section 1129(a) ....................................................................................... 6
11 U.S.C. section 1129(a)(10) ............................................................................... 12
11 U.S.C. section 1129(a)(11) ............................................................................... 10
11 U.S.C. section 1129(a)(3) ................................................................................. 12
11 U.S.C. section 1129(b) ....................................................................................... 6
11 U.S.C. section 1322(b)(2) .................................................................................. 8
12 U.S.C. section 1701j-3 ....................................................................................... 8
12 U.S.C. section 1701j-3(b)(1) .............................................................................. 8

**OTHER AUTHORITIES**

"Mortgage Prepayment Clauses: An Economic And Legal Analysis,"
   40 UCLA L. Rev. 851, 853 (1993) ................................................................... 7

5 *Collier on Bankruptcy*
   ¶ 1129.02[11] at 1129-34 (15th ed. 1984) ...................................................... 10

- iii -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY

CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491    Doc# 78    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 4 of 17

# I.

# INTRODUCTION

Secured Creditor Boston Private Bank & Trust Company ("BPB") moves the Court pursuant to 11 U.S.C. §362(d), subsections (1) and (3), for an order for relief from the automatic stay of section 362 to permit BPB to foreclose or otherwise enforce its rights and remedies under its deed of trust, assignment of rents and applicable law with respect to the real property at 272 E. Santa Clara Street, San Jose. BPB seeks relief with respect to Debtor In Possession 272 E. Santa Clara Grocery, LLC ("Debtor"). Grounds for relief exist under either subsection (d)(1) or subsection (d)(3), and relief should therefore be granted.[1]

# II.

# STATEMENT OF FACTS

The factual background of this matter has been presented to the Court in a number of other motions and memoranda. BPB will summarize that background for purposes of this motion.

### A. Events Prior To Bankruptcy

On July 15, 2008, BPB made a secured loan to a borrower named Kimomex Santa Clara, LLC ("Kimomex"). Kimomex borrowed $3.6 million from BPB under BPB's then name Borel Private Bank & Trust Company ("Borel").[2] At the time, Kimomex owned the real property located at 272 East Santa Clara Street, San Jose, CA 95112 (the "Property"). The Property is now the Debtor's sole asset and the subject of this motion. (Declaration of David Scheiber In Support of Boston Private Bank's Motion For Relief From Stay ["Scheiber Decl."] filed herewith, ¶5)

Kimomex executed and delivered to Borel a Business Loan Agreement, a Promissory Note, a first Deed of Trust ("Deed of Trust") describing the Property, an Assignment of Rents ("Assignment of Rents"), Non-Recourse Rider, Hazardous Substances Certificate and Indemnity

---

[1] Subsequent to BPB initiating the drafting of this motion, the Debtor filed a motion to sell the subject property. There is no assurance, however, that the Debtor's sale will be approved or closed. Furthermore, the Debtor has not withdrawn the proposed plan which it filed in this case on September 24, 2013. This motion therefore remains ripe for resolution because the Debtor's only option, other than sale, is reliance upon its proposed plan which has no reasonable probability of confirmation.

[2] BPB is successor by merger to Borel Private Bank & Trust Company.

114\1046210.3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY
CASE NO. 13-53491

Case: 13-53491    Doc# 78    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 5 of 17

Agreement and other documents (collectively, the "Loan Documents") in connection with the loan.[3] Both the Deed of Trust and the Assignment of Rents were recorded against the Property on July 18, 2008 in the Office of the Santa Clara County Recorder. As Borel's successor, BPB is now the lender, assignee and beneficiary under the Loan Documents.

Later on or about May 14, 2009, Kimomex apparently also borrowed a sum of about $600,000 from a group of individuals (the "Junior Lenders") and secured its obligation to those parties through a junior deed of trust ("Junior Deed of Trust") against the Property. According to publicly available records, that Junior Deed of Trust was recorded on or about May 21, 2009. (Scheiber Decl., ¶6 and Exh. G) On information and belief, the trustee of the Junior Deed of Trust later caused the Junior Deed of Trust to be foreclosed under its power of sale and sold to the Junior Lenders under the Junior Deed of Trust. The Trustee's Deed ("Trustee's Deed"), dated October 27, 2011, was recorded on April 20, 2012. (Scheiber Decl., ¶6 and Exh. H) The Junior Lenders thereafter apparently conveyed all of their right, title and interest in the Property to the Debtor, 272 E. Santa Clara Grocery, LLC ("Debtor") by Grant Deed ("Grant Deed") recorded on or about April 20, 2012. (Scheiber Decl., ¶6 and Exh. I) Consequently, the Debtor's interest in the Property is subordinate and subject to BPB's Deed of Trust and Assignment of Rents and all of BPB's rights and remedies.

Kimomex breached its obligations to BPB under the Loan Documents when it failed to make monthly payments when due, beginning before mid-2011, and failed to pay all property taxes for the Property. In addition, the conveyances of the Property under the Junior Deed of Trust, the Trustee's Deed and the Grant Deed were all done without BPB's consent. They therefore constitute breaches of the "due on sale" covenant in the Deed of Trust. (Scheiber Decl., ¶7)

BPB initiated foreclosure under the Deed of Trust in 2011. About a week before the foreclosure sale, a representative of the Junior Lender approached BPB and sought BPB's agreement to postpone the trustee's sale. By written agreement, BPB agreed to postpone the sale

---

[3] Copies of the Loan Documents are attached to the Scheiber Declaration, ¶4 as Exhibits A through F, respectively.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

114\1046210.3 - 2 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY
CASE NO. 13-53491

Case: 13-53491    Doc# 78    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 6 of 17

from month to month for a period of time. By written amendments, that time was extended but ended on December 31, 2012. BPB has had no other agreements whatsoever with the Junior Lenders, their representative or the Debtor. (Scheiber Decl., ¶8)

In their several agreements to postpone the BPB foreclosure sale the Junior Lenders' representative and BPB expressly agreed that defaults under the loan were not cured and that BPB reserved all of its rights and remedies with respect to the defaults, other than its agreement to postpone the nonjudicial foreclosure sale from time to time on certain conditions. In relevant parts, the parties expressly agreed:

> "2. <u>Remaining Default</u>. The Parties acknowledge and agree that the Payment [made by the Junior Lenders' representative] is insufficient in amount to satisfy all obligations due and owing as of this time and that the Notice of Default and Notice of Sale remain in full force and effect….
>
> 7. <u>Reservation of [BPB] Enforcement Rights</u>. The Parties acknowledge and agree that by entering into this agreement, [BPB] is waiving none of its rights and remedies under California law and its loan documents with respect to the defaults of the borrower. Apart from its covenant to postpone the trustee's sale as set forth expressly herein, [BPB] may at any time exercise any of its rights and remedies as it deems appropriate in its sole discretion, including, without limitation [BPB]'s right to seek appointment of a receiver with respect to the property, [BPB]'s right under the civil code to provide notice to any tenant to pay rent to [BPB] and [BPB]'s right to any other type of judicial relief it may deem appropriate to protect its interests in the property or under the loan." (Scheiber Decl., ¶9 Exhs. J through M)

Discussions between the Debtor's representative and BPB following expiration of the last amendment proved fruitless. BPB therefore filed and action and moved for appointment of a receiver. On the day that the receiver motion was scheduled for hearing, the Debtor filed its petition.

**B.     Proceedings In The Bankruptcy Court**

On June 27, 2013, Debtor filed a Chapter 11 Petition under the United States Bankruptcy Code (the "Petition Date"). As of the Petition Date, BPB had made no calculation of what it is owed under the "Interest After Default" provision of its Promissory Note. As the result of making that calculation, BPB discovered that under the terms of the Promissory Note, the obligations have inadvertently been over-credited in reductions of principal on applications of

114\1046210.3 - 3 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY
CASE NO. 13-53491
Case: 13-53491   Doc# 78   Filed: 10/23/13   Entered: 10/23/13 09:55:25   Page 7 of 17

payments to principal and that the actual amount of principal owed is the sum of $3,555,168.55. Scheiber Decl., ¶¶10 and 11. Therefore, as of the Petition Date, the outstanding principal balance due and owing from Kimomex under the Promissory Note and other Loan Documents was and is $3,555,168.55 based upon a proper allocation of prior payments following Kimomex's initial default in May 2009. (Scheiber Decl., ¶14 Exh. N) In addition, Creditor is owed interest at the interest rate after default in the amount of $217,401.61 as of October 15, 2013, late charges of $34,030.36 as of October 15, 2013, and attorney fees and costs. Total amount due as of October 15, 2013 is $3,806,600.52, plus attorney's fees and costs. Interest, interest after default, and attorney fees and costs continue to accrue. (Scheiber Decl., ¶14 Exh. N)

As the Debtor admitted at the Status Conference in this matter on August 1, 2013, it is a single asset real estate debtor. To attempt to meet the requirements of Section 362(d)(3), the Debtor filed a proposed plan and disclosure statement on September 24, 2013. [Dkt. No. 62] It did so using the Court's combined disclosure statement and plan form intended for use in individual Chapter 11 cases, even though the Debtor is a limited liability company and not an individual. As discussed below, the proposed plan does not have a "reasonable possibility of being confirmed within a reasonable time."

## III.

## ARGUMENT

### A. Applicable Legal Standards

The Bankruptcy Code permits relief from the automatic stay in recognition of the fact that the automatic stay may impose an unfair burden on creditors. Specifically, section 362(d) provides, in relevant part, as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> …..

///

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

114\1046210.3 - 4 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY
CASE NO. 13-53491

Case: 13-53491    Doc# 78    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 8 of 17

(3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later –

(A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time;…. or

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either –

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d).

The Bankruptcy Code places the principal burden on the debtor of demonstrating that there is no cause for relief from the automatic stay when a party in interest seeks relief on such ground. Specifically, Bankruptcy Code section 362(g) provides, in relevant part:

(g) In any hearing under subsection (d) ... of this section concerning relief from the stay of any act under subsection (a) of this section—

....

(2) the party opposing such relief has the burden of proof on all other issues [than the issue of the debtor's equity in property].

11 U.S.C. § 362(g).

"Cause" as used in Bankruptcy Code §362(d)(1), "has no clear definition and is determined on a case-by-case basis." *Christensen v. Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990); accord *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir. 1986); *In re Beguelin*, 220 B.R. 94, 97-98 (9th Cir. BAP 1998). "Cause" warranting relief from the automatic stay is an intentionally broad and flexible concept made so in order to permit courts to respond in equity to inherently fact-sensitive situations. *In re Sentry Park Ltd.*, 87 B.R. 427, 430 (Bk. W.D. Tex. 1988). In determining whether "cause" exists to terminate and vacate the automatic stay

requires an inquiry into the totality of the facts and circumstances of a particular case and a balancing of the equities between the parties. *In re Barrows*, 15 B.R. 338, 341 (Bankr. M.D. Pa. 1981) (where the court observed that "[a]s a court of equity, the Bankruptcy Court must consider the impact of the stay on the parties and the 'balance of hurt' in fashioning relief"); *In re Ellis*, 60 B.R. 432, 435 (9th Cir. B.A.P. 1985).

"Cause" for relief from the automatic stay exists where "there is no hope of rehabilitation" for a debtor or a debtor is "unable to demonstrate an ability to raise sufficient funds to reorganize." *Manhattan King David Restaurant, Inc. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y. 1993). Cause for relief also exists where the debtor has failed to propose a feasible reorganization plan, *In re Wiston XXIV, Limited Partnership*, 153 B.R. 322, 328 (Bankr. D. Kan. 1993). Furthermore, a single asset real estate debtor, which files a proposed plan, must file one that "has a reasonable possibility of being confirmed within a reasonable time." 11 U.S.C. §362(d)(3)(A).

If it is to confirm a plan, a debtor must demonstrate, by a preponderance of the evidence, that its plan meets and satisfies all applicable requirements of 11 U.S.C. §§ 1129(a) and 1129(b). *In re Arnold And Baker Farms*, 177 B.R. 648, 654–655 (9th Cir. BAP (Ariz.) 1994); *In re Zaleha*, 162 B.R. 309, 313, 316 (Bankr. D. Idaho 1993). The debtor's failure to satisfy any element of Section 1129 requires that the court deny confirmation of a plan. *Id*. at 313. In this case for a number of reasons, the Debtor is unable to meet that burden. The Debtor's current proposed plan is not confirmable nor is it likely that the Debtor could propose a confirmable plan. For those reasons under both subsections (d)(1) and (d)(3), relief from stay should be granted.

**B. Relief From Stay Should Be Granted In This Matter**

**1. The Debtor Has No Reasonable Possibility Of Confirming A Plan**

Cause for relief exists in this case because the Debtor has no reasonable possibility of confirming a plan. In addition, the draft plan it filed as a single asset debtor has no "reasonable prospect for confirmation within a reasonable time." Accordingly, relief from stay should be granted.

/ / /

/ / /

114\1046210.3 - 6 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY CASE NO. 13-53491

Case: 13-53491    Doc# 78    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 10 of 17

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

### a. The Debtor's Proposed Plan Cannot Be Confirmed In the Face Of The Due On Sale Provision In The Deed Of Trust

This Debtor is not now and never has been a borrower of BPB. It only holds title to the property at issue because its members made a junior loan to BPB's borrower, Kimomex Santa Clara, LLC. That loan was made without BPB's knowledge or consent and in violation of the "due on sale" provision contained in BPB's recorded deed of trust. Worse, the Debtor's owners took title to the property away from BPB's borrower, conveyed it to an unknown entity and filed Chapter 11 to prevent BPB from exercising its rights as to these strangers. Pursuant to the provisions of the deed of trust, the loan was and is immediately due and payable by reason of each of the transfers of the property under the deed of trust, the trustee's deed to the Debtor's members and the grant deed from those members to the Debtor. BPB has not and will not consent to these transfers, much less consent to the proposed plan or to entering into a lending relationship with the Debtor. This default is nowhere mentioned, discussed or addressed in the Debtor's proposed disclosure statement/plan. (Dkt. No. 62)

This default could only be cured by reconveyance of the property to BPB's borrower or payment of the loan in full. The Debtor instead proposes to make BPB its lender by the fiat of its plan when no such relationship has ever existed between the parties. The Debtor's plan offers no legal basis for it to do so and is unconfirmable.

BPB's due on sale provision is not to be lightly disregarded. The importance of the due on sale provision, particularly in the context of an outright transfer of ownership to a third party such here, has been summarized as follows:

> It permits lenders to evaluate the credit history, income, and other characteristics of prospective purchasers of the real estate and to refuse to finance those whose characteristics are unsatisfactory under the lender's loan underwriting criteria. This function is by no means of trivial importance; in many situations it is crucial that the lender be able to avoid the increased risk of default that an uncreditworthy purchaser presents. "Mortgage Prepayment Clauses: An Economic And Legal Analysis," 40 UCLA L. Rev. 851, 853 (1993)

Indeed, Congress considered due on sale provisions so important that, in 1982, it declared them enforceable as a matter of national policy in the "Garn Act," preempting contrary state law.

///

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

114\1046210.3 - 7 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY
CASE NO. 13-53491

Case: 13-53491    Doc# 78    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 11 of 17

*See* Garn-St. Germain Depository Institutions Act of 1982, 12 USC §1701j-3.[4]

The Debtor's proposed plan completely overrides these considerations. Given this strong national policy and the inherent inequity and unfairness in forcing a bank to lend millions to a stranger, the Debtor's plan should never be confirmed. The Debtor is incapable of reorganization, and relief should therefore be granted.

This conclusion is underscored by other aspects of the proposed treatment of BPB. The draft plan appears to attempt to reinstate BPB's loan by asserting that BPB will be paid only its normal monthly payments currently required under the note, the interest rate shall be as called for in the note, and the loan shall apparently be paid in full on the maturity date set forth in the note. The plan also calls for the Debtor to seek an order "decelerating" the claim, which presumably means curing the default. (Dkt. No. 62, pp. 2 -3) This effort on the part of the Debtor fails to comply with the provisions of either 11 U.S.C. §1123 or §1124. Under section 1123, if a plan proposes to cure a default, then the amount to cure must be determined "in accordance with the underlying agreement and applicable nonbankruptcy law." In this instance, the underlying agreement and applicable nonbankruptcy law dictate that the loan must be paid in full under the due on sale clause. If the Debtor is trying to avail itself of section 1124(2)(A), it can only do so if it "does not otherwise alter the legal, equitable or contractual rights" to which BPB is entitled. 11 U.S.C. §1124(2)(E). Disregard of the due on sale clause is plainly an alteration of BPB's rights. In either event, the proposed plan is unconfirmable. *Compare, In re Mullin,* 433 B.R. 1 (Bankr. S.D. Tx. 2010) (holding that a transferee of borrower's residential property could not confirm a Chapter 13 plan forcing a lender to become its lender in the face of a due on sale clause because to do so would modify the secured creditor's rights in violation of 11 U.S.C. §1322(b)(2)); *In Re Tewell,* 355 B.R. 674 (Bankr. N.D. Ill. 2006) (no Chapter 13 plan confirmation for transferee of property "due on sale"); and *In re Young Broadcasting*, 430 B.R. 99, 111-117 (Bankr. S.D.N.Y. 2010) (no reinstatement of credit agreement where plan violates analogous due on "change in

---

[4] "Notwithstanding any provision of the constitution or laws (including the judicial decisions) of any State to the contrary, a lender may, subject to subsection (c) of this section, enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan." 12 USC §1701j-3(b)(1).

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

114\1046210.3 - 8 - CASE NO. 13-53491
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY

Case: 13-53491   Doc# 78   Filed: 10/23/13   Entered: 10/23/13 09:55:25   Page 12 of 17

control" of borrower covenant).

The Debtor may attempt to argue that a few bankruptcy level courts have permitted the overriding of "due on sale" provisions. For example, *In re Mendoza*, 2010 WL 1610120 (N.D. Cal. 2010), the court confirmed a plan over the objection of a secured creditor based on a "due on sale" provision which apparently precluded encumbrances as well. *Mendoza,* however, involved a vastly different set of facts. The debtor was the original borrower and would remain the borrower in a plan that was to pay all creditors in full. The only question was whether the debtor's violation of the "due on" provision by the recordation of a small junior lien was enough to prevent confirmation. The court answered in the negative. Whether properly decided or not, the court did not address circumstances such as the instant case where a complete stranger seeks to override the secured creditor's covenant and force the creditor to become its lender for the next five years. Similarly, in *In re Coastal Equities,* 33 B.R. 898 (Bankr. S.D. Cal. 1983), cited in *Mendoza*, a stranger to the loan was not attempting to force the secured creditor to become its lender. What was a play was a plan provision that permitted later assumption by a future unknown buyer but also apparently permitted the lender to move for relief from stay if it felt it was not adequately protected. 33 B.R. at 906 ("[t]he Plan allows a motion for relief from stay to be brought at any time should a claimant believe it is not adequately protected. At that time the individual claimant would have the opportunity to demonstrate that it is not receiving the full value of its interest.") These decisions are therefore inapposite to the case at hand.

The proposed plan is unconfirmable for a separate reason as well. While purporting to "cure" BPB's defaulted loan and take away its right to default interest, the plan concurrently proposes to pay the three unsecured creditors (two of whom are insiders) in full with interest in a case where the Debtor claims BPB is oversecured. (Dkt. 62, p. 15) The Debtor's members will reap the benefit of denying default interest to BPB. Such a plan is unconfirmable on this basis alone. See*, e.g., In re Sagamore Partners, Ltd.,* 2012 WL 2856104, *4-5 (Bankr. S.D. Fla. 2012) [holding that approval of the disclosure statement would be refused because such a plan is unconfirmable, noting that where " a debtor is solvent, reduction of the default rate of interest will

///

114\1046210.3 - 9 - CASE NO. 13-53491
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY

Case: 13-53491   Doc# 78   Filed: 10/23/13   Entered: 10/23/13 09:55:25   Page 13 of 17

only provide an undeserved windfall to the debtor, or, as in this case, its equity holders"].[5]

### b. The Debtor Is Unable To Propose A Feasible Plan

Separately, the Debtor can make no showing that its purported plan is feasible. The purpose of the "feasibility" requirement in the Code is to prevent confirmation of a visionary scheme that promises more than the debtor can realistically achieve. *In re Gulph Woods, Corp.*, 84 B.R. 961, 973 (Bankr. E.D. Pa. 1988). Although a plan is not required to absolutely guaranty success, a plan based merely on assumptions that may never happen will not satisfy the feasibility requirement of (a)(11). *In re Lakeside Global II, Ltd*. 116 B.R. 499, 507 (Bkrtcy. S.D.Tex., 1989); *In re Haas*, 162 F. 3d 1087, 1090 (11th Cir. 1998) (the plan itself must offer a reasonable prospect of success and be workable to meet the feasibility test). *Matter of Pizza Hawaii, Inc.*, 761 F. 2d 1374, 1382 (9th Cir. 1985), quoting 5 *Collier on Bankruptcy* ¶ 1129.02[11] at 1129-34 (15th ed. 1984) (holding a plan will not meet the requirements of 11 U.S.C. § 1129(a)(11) if it is merely a "visionary scheme which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.").

The Debtor's Exhibit 2 to its draft reveals that its sole assets are its one piece of real property and about $300 in cash. (Dkt. No. 62, at p. 15) The draft plan proposes to pay BPB fixed monthly payments of $24,307.46 each for through July 15, 2018. What the Debtor ignores is that these payments will leave approximately $2.8 million in principal owing to BPB on July 15, 2018. No provision for payment of this sum is made, and how it is to be paid by a penniless Debtor is purely speculative.

Furthermore, the plan's success is predicated entirely upon performance of the lease for the property by the single tenant which occupies the property. The financial viability of the tenant is therefore critical to its feasibility. No information whatsoever is provided as to the tenant's viability or the prospects for future performance. While not anywhere named in the draft disclosure statement/plan, the tenant is Grocery Outlet, Inc. which appears to be a privately held grocery business entity that does not publicly disclose its financial information. (See

---

[5] The court in *Sagamore* discusses in detail how the holding in *In re Entz White Lumber & Supply, Inc*., 850 F.2d 1338 (9th Cir. 1988) has been overruled by subsequent statutory amendment.

114\1046210.3 - 10 -
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY CASE NO. 13-53491

Case: 13-53491    Doc# 78    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 14 of 17

www.groceryoutlet.com) It is noteworthy that grocery business companies are often highly risky tenants.[6] Indeed, Grocery Outlet, Inc. itself was sued on October 1, 2013 in Santa Clara County Superior Court Action No. 113CV253907 for alleged breach of lease for property in Palo Alto, California. The Debtor's plan rests on pure speculation that its tenant will be viable and paying rent five years from now. Such speculation is not a basis upon which a plan may be confirmed.

### c. The Debtor's Proposed Plan Violates The Absolute Priority Rule

The Debtor's filed plan proposes to pay BPB certain payments over time, but as discussed above, will leave BPB with a debt owing to it of about $2.8 million. No provision is made for payment of this large obligation even though the Debtor acknowledges that BPB is the senior secured creditor. On the other hand, the Debtor proposes to pay its purported unsecured creditors, primarily insiders, in full plus some additional amount for a total sum of $917,552.49, before the large remaining balance to BPB is paid. (Dkt. 62, pp. 3-4) No source of these funds is identified but they could only come from BPB's cash collateral. The proposed plan plainly violates the absolute priority rule and is not confirmable on this basis as well.

### d. The Debtor's Classification of Its Attorney As The Non-Insider Unsecured Creditor Class Demonstrates The Plan Is Proposed In Bad Faith

The Debtor's proposed plan includes only one non-insider unsecured creditor – its state court law firm to whom it says it owes $5,914.21. To create an impaired class of non-insider creditors to try to "cram-down" BPB, the Debtor proposes to pay this one claim over five years from the rents being generated from the property. (Dkt. 62, p. 4) The Debtor proposes this treatment though it has more than sufficient funds to pay the claim in full under its proposal to pay BPB only about $24,000 per month. The Debtor also proposes to assume the executory fee agreement with its attorneys but to duck its obligation to cure the pre-petition default upon assumption by proposing to pay the pre-petition obligation over time.

---

[6] See for example, *In re Fresh and Easy Neighborhood Markets, Inc.*, United States Bankruptcy Court District of Delaware Case NO. 13-12569 (filed 9/30/13) and *In re Mi Pueblo San Jose, Inc.,* United States Bankruptcy Court Northern District of California, Case No. 13-53893 (filed 7/22/13).

This case is essentially a two party dispute between the Debtor and BPB. Indeed, the only reason the law firm has an unsecured claim is that it is allegedly owed money for fighting BPB in state court. (Dkt. 62, p. 8) Under these circumstances, the impairment proposed by the Debtor leads to the "inescapable conclusion" that the plan is proposed in bad faith in contravention of 11 U.S.C. §1129(a)(3).

This conclusion is illustrated by the decision in *In Re Swartville*, 2012 WL 3564171, *4-6 (Bankr. E.D.N.C. 2012). There the court denied confirmation based on the impairment "in bad faith" of an unsecured class of four small non-insider claims, only one of which had filed a proof of claim. The court noted that of "vital importance," it appeared on the face of the plan that the case was essentially a two party dispute between the debtor and its secured creditor which the debtor sought to cram down. The court further noted the debtor's effort to create an impaired class of inconsequential unsecured claims totaling about $8,000 which it could induce to vote in favor of the plan in order to set up the cram down of the targeted impaired secured creditor. The court held, however, that "when a debtor 'proposes some insignificant impairment to a class of creditors in [an] effort to obtain cramdown of a plan of reorganization over the objection of truly impaired creditors in an attempt to circumvent the purpose of §1129(a)(10),' it has failed its duty to act in good faith." *Id.,* at *4 (quoting *In re Estate of LaRosa*, 2009 WL 1172843 (Bankr. N.D. W. Va. 2009)). The court therefore denied confirmation on the basis of bad faith.

As in *Swartville*, the Debtor's bad faith appears on the face of its disclosure statement/plan. This case is plainly a two party dispute. The debtor is simply attempting to use a small allegedly unpaid obligation to its own attorneys to gain an impaired class to approve its plan. Indeed, no doubt the Debtor would use the fiduciary and ethical obligations owed to it by those attorneys to compel a favorable vote. The attorneys are apparently to be paid from the rents from the property which are available on confirmation well in excess of the small debt. The only reason not to pay the insignificant claim is to achieve a cramdown in circumvention of the Code. For this reason as well, the proposed plan is unconfirmable and relief from stay should be granted.

///

114\1046210.3 - 12 - CASE NO. 13-53491
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BOSTON PRIVATE BANK'S MOTION FOR RELIEF FROM STAY

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491   Doc# 78   Filed: 10/23/13   Entered: 10/23/13 09:55:25   Page 16 of 17

## IV.
## CONCLUSION

For the foregoing reasons, the Debtor has failed to file a plan within 90 days of its petition which has a "reasonable possibility of being confirmed within a reasonable time." Under the circumstances, this Debtor has no "hope of rehabilitation." Cause for relief exists. Under either of Sections 362(d)(1) or (d)(3), this Court should therefore grant relief from stay.

Dated: October 23, 2013

HOPKINS & CARLEY
A Law Corporation

By: /s/ Stephen J. Kottmeier
Stephen J. Kottmeier
Jay M. Ross
Attorneys for Secured Creditor
BOSTON PRIVATE BANK & TRUST COMPANY