Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151759)
jross@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: (408) 286-9800
Facsimile: (408) 998-4790

Attorneys for Secured Creditor Boston Private Bank
& Trust Company, formerly known as and successor
to Borel Private Bank & Trust Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>272 E. Santa Clara Grocery, LLC,<br><br>    Debtor. | CASE NO. 13-53491<br>RS No.<br>CHAPTER 11<br><br>**DECLARATION OF DAVID SCHEIBER IN SUPPORT OF SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S MOTION FOR RELIEF FROM STAY**<br><br><u>Hearing</u><br>Date: November 19, 2013<br>Time: 10:00 a.m.<br>Place: 280 S. First Street<br>      San Jose, CA<br>      Courtroom 3099<br>Judge: Hon. Stephen L. Johnson |

I, David Scheiber, declare as follows:

1. I am a Senior Vice President – Special Assets Department of Secured Creditor Boston Private Bank & Trust Company ("BPB"), successor in interest by merger to and formerly known as Borel Private Bank & Trust Company. I have been assigned the responsibility for

436\1046150.3

DECLARATION OF DAVID SCHEIBER ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT, CASE NO. 13-53491

Case: 13-53491    Doc# 78-1    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 1 of 6

administration and enforcement of the loan ("Loan") which is secured by the property now owned by the debtor in this case. As part of my responsibilities, I have become familiar with the BPB's loan documents for the Loan, its accounting of sums due and owing under the Loan, and the supervision of the Loan by BPB personnel before me. Except as to those matters stated upon information and belief, I have personal knowledge of the matters set forth in this declaration based upon my personal review of BPB's business records, discussions with other BPB staff and communications with the manager of the current owner of the property. If called upon to do so, I could and would competently testify thereto.

2. I make this declaration in support of BPB's Motion for Relief from Stay relating to the real property located at 272 East Santa Clara Street, San Jose, CA 95112 (Assessor's Parcel No. 467-24-111) (the "Property").

3. BPB has never had a lending relationship with Debtor 272 E. Santa Clara Grocery, LLC ("E. Santa Clara LLC"). BPB's borrower was and is an entity known as Kimomex Santa Clara, LLC ("Kimomex").

4. On or about July 15, 2008, Kimomex executed and delivered to Borel a Business Loan Agreement, a Promissory Note ("Promissory Note"), a first Deed of Trust ("Deed of Trust"), an Assignment of Rents ("Assignment of Rents"), Non-Recourse Rider, Hazardous Substances Certificate and Indemnity Agreement and other documents (collectively, the "Loan Documents") in connection with the loan. True and correct copies of the Business Loan Agreement, Promissory Note, Deed of Trust, Assignment of Rents, Non-Recourse Rider and Hazardous Substances Certificate and Indemnity Agreement are attached hereto as **Exhibits A, B, C, D, E and F**, respectively. Both the Deed of Trust and the Assignment of Rents were recorded against the Property on July 18, 2008 in the Office of the Santa Clara County Recorder. Creditor is the successor of Borel by merger and is now the lender, assignee and beneficiary under the Loan Documents. BPB is the successor by merger of Borel and is now the lender, assignee and beneficiary under the Loan Documents.

5. Pursuant to the terms of the Promissory Note and other Loan Documents, Kimomex borrowed the maximum principal sum of $3,600,000. At the time, Kimomex owned

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

436\1046150.3 - 2 -
DECLARATION OF DAVID SCHEIBER ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT; CASE NO. 13-53491

Case: 13-53491    Doc# 78-1    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 2 of 6

the Property. The Property is now the Debtor's sole asset and the subject of this motion.

6. Later on or about May 14, 2009, Kimomex apparently also borrowed a sum of about $600,000 from a group of individuals and secured its obligation to those parties through a junior deed of trust ("Junior Deed of Trust") against the Property. According to publicly available records, that Junior Deed of Trust was recorded on or about May 21, 2009. A true and correct copy of the Junior Deed of Trust obtained from the records of the County of Santa Clara is attached hereto as **Exhibit G**. On information and belief, the trustee of the Junior Deed of Trust later caused the Junior Deed of Trust to be foreclosed under its power of sale and sold to the beneficiaries under the Junior Deed of Trust. The Trustee's Deed ("Trustee's Deed"), dated October 27, 2011, was recorded on April 20, 2012. A true and correct copy of the Trustee's Deed, obtained from the public records of the County of Santa Clara is attached hereto as **Exhibit H**. The beneficiaries thereafter apparently conveyed all of their right, title and interest in the Property to the Debtor, 272 E. Santa Clara Grocery, LLC ("Debtor") by Grant Deed ("Grant Deed") recorded on or about April 20, 2012. A true and correct copy of the Grant Deed, obtained from the records of the County of Santa Clara, is attached hereto as **Exhibit I**. Consequently, the Debtor's interest in the Property is subordinate and subject to Creditor's Deed of Trust and Assignment of Rents and all of Creditor's rights and remedies.

7. Kimomex breached its obligations to BPB under the Loan Documents when it failed to make monthly payments when due beginning before mid-2011 and failed to pay all property taxes for the Property when due. In addition, the conveyances of the Property under the Junior Deed of Trust, under the Trustee's Deed and under the Grant Deed described in paragraph 6 above were all done without BPB's consent and therefore are in breach of the "due on sale" covenant in the Deed of Trust.

8. BPB initiated foreclosure under the Deed of Trust in 2011. I am informed and believe that about a week before the foreclosure sale, a representative of the Junior Lender approached BPB and sought BPB's agreement to postpone the trustee's sale. By written agreement, BPB agreed to postpone the sale from month to month for a period of time. By written amendments, that time was extended but ended on December 31, 2012. BPB has had no

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

436\1046150.3 - 3 -
DECLARATION OF DAVID SCHEIBER ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT, CASE NO. 13-53491

Case: 13-53491    Doc# 78-1    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 3 of 6

other agreements whatsoever with the Junior Lenders, their representative or the Debtor.

9. In their several agreements to postpone the BPB foreclosure sale the Junior Lenders' representative and BPB expressly agreed that defaults under the loan were not cured and that BPB reserved all of its rights and remedies with respect to the defaults, other than its agreement to postpone the nonjudicial foreclosure sale from time to time on certain conditions. In relevant parts, the parties expressly agreed:

> "2. Remaining Default. The Parties acknowledge and agree that the Payment [made by the Junior Lenders' representative] is insufficient in amount to satisfy all obligations due and owing as of this time and that the Notice of Default and Notice of Sale remain in full force and effect….
>
> 7. Reservation of [BPB] Enforcement Rights. The Parties acknowledge and agree that by entering into this agreement, [BPB] is waiving none of its rights and remedies under California law and its loan documents with respect to the defaults of the borrower. Apart from its covenant to postpone the trustee's sale as set forth expressly herein, [BPB] may at any time exercise any of its rights and remedies as it deems appropriate in its sole discretion, including, without limitation [BPB]'s right to seek appointment of a receiver with respect to the property, [BPB]'s right under the civil code to provide notice to any tenant to pay rent to [BPB] and [BPB]'s right to any other type of judicial relief it may deem appropriate to protect its interests in the property or under the loan."

True and correct copies of the postponement agreements are attached hereto as **Exhibits J-M.**

10. On June 27, 2013, Debtor filed a Chapter 11 Petition under the United States Bankruptcy Code (the "Petition Date"). On June 27, 2013, Debtor filed a Chapter 11 Petition under the United States Bankruptcy Code (the "Petition Date"). As of the Petition Date, BPB had made no calculation of what it is owed under the "Interest After Default" provision of its Promissory Note. As the result of later making calculation, we discovered that under the terms of the Promissory Note, the Borrower had inadvertently been over-credited in reductions of principal on applications of payments to principal and that the actual amount of principal owed is the sum of $3,555,168.55, plus interest and late fees of $251,431.97.

11. We made this discovery following negotiations with the Debtor and after the Debtor began disputing BPB's right to such interest in various pleadings it has filed, including its proposed plan which it filed. The Debtor's assertions caused us to go back and make the

436\1046150.3 - 4 -
DECLARATION OF DAVID SCHEIBER ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT, CASE NO. 13-53491

calculation of interest after default under the loan documents. The following paragraphs explain the proper calculation.

12. The Promissory Note provides that upon default, the interest rate shall "immediately increase" by two per cent per annum. (Exh. B, p. 1) That means that the interest rate under the Note increased automatically upon default from 6.50 percent per annum to 8.50 percent per annum. In this case, the first default was the violation of the due on sale/encumbrance provision in the Deed of Trust which occurred in May 2009, when the Debtor's principals and the Kimomex violated the due on sale covenant in the Bank's Deed of Trust by recording a second deed of trust against the Property without the BPB's consent. The problem of course was that this default was not known to BPB until over two years later. Accordingly, BPB's on-going calculations of interest inadvertently remained at 6.5 percent when they should have increased to 8.5 percent.

13. The Debtor, of course, has now filed this case and began pressing us about what is owed to BPB. The Debtor's tactics therefore compelled us to review all of the post default payments and how they should be applied under the provisions of the Promissory Note. Now that we have found it necessary to make the interest after default calculations, we determined that the outstanding amount of principal owing is actually higher than what we initially believed and what we have previously stated in papers filed in this court. The reason for this difference is that more of each payment made against the loan was inadvertently applied to principal than should have been the case under the provisions of the Promissory Note. The Promissory Note requires that payments should be applied first to any unpaid and accrued interest, then to principal, and then to unpaid collection costs (the "Waterfall"). (Exh. B, p. 1). Accordingly, once the default occurred, more of each subsequent payment should have been applied to interest because of the increased interest due and then to principal. This means that BPB is due more principal than we previously thought, and, by this declaration, I am correcting any prior statement about the principal due.

14. Attached hereto as **Exhibit N** is a schedule showing the proper application of payments according to the "Waterfall" provision in the Promissory Note commencing with the initial default in May 2009. Using the proper contractual allocation, the current outstanding

principal balance due and owing from Kimomex under the Promissory Note and other Loan Documents is $3,555,168.55. In addition, BPB is owed interest in the amount of $217,401.61 as of October 15, 2013, and late charges (5 percent of the "regularly scheduled payment") of $34,030.36. The total amount owed as of October 15, 2013, is therefore $3,806,600.52, plus attorney's fees and costs. Interest at the interest after default rate and attorney fees and costs continue to accrue.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on October 22, 2013 at Encino, California.

>/s/ *David Scheiber* _____
> David Scheiber

436\1046150.3 - 6 -
DECLARATION OF DAVID SCHEIBER ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT, CASE NO. 13-53491

Case: 13-53491    Doc# 78-1    Filed: 10/23/13    Entered: 10/23/13 09:55:25    Page 6 of 6