Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151759)
jross@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:	(408) 286-9800
Facsimile:	(408) 998-4790

Attorneys for Secured Creditor BOSTON PRIVATE BANK & TRUST COMPANY, formerly known as and successor to Borel Private Bank & Trust Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>272 E. Santa Clara Grocery, LLC,<br><br>Debtor. | CASE NO.  13-53491<br><br>CHAPTER 11<br><br>**SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPPOSITION TO DEBTOR'S AMENDED MOTION FOR USE OF CASH COLLATERAL**<br><br>Continued Hearing Date/Time:<br>Date:	December 11, 2013<br>Time:	1:30 p.m.<br>Place:	280 S. First Street<br>	San Jose, CA<br>	Courtroom 3099<br><br>Judge:	Hon. Stephen L. Johnson |

Secured Creditor Boston Private Bank & Trust Company ("BPB") hereby submits this opposition (the "Opposition") to debtor 272 E. Santa Clara Grocery, LLC's (the "Debtor")

Amended Motion for Use of Cash Collateral [Dtk. No. 94] (the "Amended Motion"). The Debtor proposes an "interim order" to, among other things, make final distributions to unsecured creditors and its members and to dispose of all claims against the estate without confirming a plan of reorganization. This proposed "interim order" runs afoul of Chapter 11 statutes, policies and well-settled law. Use of cash collateral for such purposes is an obvious improper attempt to circumvent the plan process, to eliminate creditors' right to vote and to force BPB to compromise its claim. The Debtor fails, and is unable, to provide any authority to support the extraordinary relief requested.

Furthermore, the Debtor failed to provide any notice to its equity security holders who are directly affected by the payments the Debtor proposes to make to certain insiders. That complete failure to give notice likewise justifies denying relief.

Lastly, the Debtor's request to use cash collateral to pay the United States Trustee's fees and the allowed fees of Debtor's professionals in the ordinary course of business should be denied because the Debtor has failed to provide sufficient evidence that BPB's secured claim is adequately protected. For these reasons, the Amended Motion should be denied.

## I.

## STATEMENT OF FACTS

The history of this case has been presented to the Court in a number of other motions and memoranda, which are incorporated herein. For purposes of this Amended Motion, the relevant background is set forth below.

### A. Events Prior To Bankruptcy

On July 15, 2008, BPB, by and through its predecessor Borel Private Bank & Trust Company,[1] made a $3.6 million secured loan to a borrower named Kimomex Santa Clara, LLC ("Kimomex"). The secured loan is evidenced by, among other things, a promissory note and a first deed of trust and assignment of rents with respect to the real property located at 272 East Santa Clara Street, San Jose, CA 95112 (the "Property"). At the time, Kimomex owned the

---

[1] BPB is successor by merger to Borel Private Bank & Trust Company.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1055304.5 - 2 -
SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPP TO DEBTOR'S AMENDED MOTION FOR USE OF CASH COLLATERAL             CASE NO. 13-53491

Case: 13-53491    Doc# 105    Filed: 11/27/13    Entered: 11/27/13 12:18:48    Page 2 of 10

Property. However, a series of events thereafter apparently occurred, including Kimomex borrowing a sum of money from junior lenders who ultimately took ownership and possession of the Property through foreclosure. Those junior lenders subsequently conveyed all of their right, title and interest in the Property to the Debtor. Consequently, the Debtor's interest in the Property became subordinate and subject to BPB's deed of trust, assignment of rents and all of BPB's rights and remedies.

BPB's secured loan has been and remains in default since May 2009.

**B. Proceedings In The Bankruptcy Court and BPB's Disputed Claim**

On June 27, 2013 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code, commencing this single asset real estate case. The Debtor filed the petition to prevent the Superior Court from hearing BPB's motion to appoint a receiver to take control of the Property.

On September 24, 2103, the Debtor filed a combined disclosure statement and plan, and scheduled a hearing on the disclosure statement for November 7, 2013.

On October 22, 2013, BPB filed its original and amended proof of claim [Nos. 2 and 2-2], asserting a secured claim in the amount of $3,806,600.52, plus attorney's fees and costs.[2] As of the Petition Date, BPB had made no calculation of what it was actually owed under the "Interest After Default" provision of its promissory note. When BPB ultimately made such calculation to support its proof of claim, it determined that under the terms of the promissory note, payments to principal had been overcredited following the occurrence of the defaults and that the actual amount of principal owed was the sum of $3,555,168.55. Therefore, as of the Petition Date, the outstanding principal balance due and owing from Kimomex under the promissory note and other loan documents was and is $3,555,168.55 based upon a proper allocation of prior payments following Kimomex's initial default. In addition, BPB is owed several hundred thousand dollars in interest at the interest rate after default, late charges, and attorney fees and costs, all of which continue to accrue.

---

[2] The claim was amended because certain exhibits had mistakenly not been uploaded with the original filing.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1055304.5 - 3 -
SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPP TO DEBTOR'S AMENDED MOTION FOR USE OF CASH COLLATERAL CASE NO. 13-53491

Case: 13-53491  Doc# 105  Filed: 11/27/13  Entered: 11/27/13 12:18:48  Page 3 of 10

The Debtor objected to a portion of BPB's claim (the "Claim Objection") [Dkt. No. 88]. The Claim Objection has not been scheduled for hearing and has not been resolved.[3]

On October 16, 2013, the Debtor filed a motion to sell the Property free and clear of liens.

On October 23, 2013, the Debtor filed a motion for authorization to use cash collateral and set the matter for hearing on December 4, 2013. [Dkt. 81] This initial motion sought only narrow relief to use a portion of monthly rent payments the Debtor was collecting to pay U.S. Trustee's fees and a partial monthly payment to BPB. No mention was made of any use of sale proceeds or any other use for cash collateral.

On October 30, 2013, the Court entered an order (the "Sale Order") approving the Debtor's motion to sell the Property [Dkt. No. 89] after sustaining objections by the U.S. Trustee and BPB to the original proposed form of order. At the sale hearing, the Debtor represented to the Court that it would not proceed with the disclosure statement hearing. To date, no hearing has been scheduled with respect to the disclosure statement or plan. In addition, the Sale Order expressly provides that the funds held by the Debtor following certain specifically approved payments are not to be disbursed until further order of this Court after notice to "interested parties."

On November 7, 2013, the sale closed. After a partial payment to BPB and payment of property taxes and sales costs, the Debtor received $3,616,394.85 in net proceeds, representing the collateral securing the disputed portion of BPB's secured claim.

On November 14, 2013, Debtor's counsel, Campeau Goodsell, filed an application for interim compensation and reimbursement of professionals' fees (the "Fee Application"). [Dkt. No. 97] The Fee Application, which seeks compensation and expense reimbursement in the amount of over $70,000.00, was served on all creditors *and the Debtor's members*. *See* Proof of Service of Fee Application [Dkt. 97-3].[4]

---

[3] As discussed with the Court at the November 7, 2013 status conference in this case, BPB had anticipated filing its response to the objection by Friday, November 22, 2013. On November 20, however, Debtor's counsel advised BPB's counsel that the Debtor intends to amend its objection to the claim. Counsel for Debtor and for BPB agreed that BPB would file a response to the amended objection once that was filed.

[4] It is noteworthy that the Debtor has not included anywhere in this case the actual addresses of its members for notice purposes. Instead, it has listed those addresses to be its own address in contravention of Bankruptcy Rule

728\1055304.5

- 4 -

SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPP TO DEBTOR'S AMENDED MOTION FOR USE OF CASH COLLATERAL

CASE NO. 13-53491

On November 14, 2013, the Debtor also filed an Amended Motion to Use Cash Collateral [Dtk No. 94]. By the Amended Motion, the Debtor dramatically altered the relief sought under its cash collateral motion. The motion now seeks to use BPB's cash collateral in the form of the sale proceeds securing the balance of its claim (i) to pay United States Trustee quarterly fees, (ii) to pay the Debtor's professionals' allowed fees and costs, (iii) to pay *unsecured creditors' pre-petition claims almost 90 percent of which is one claim held by the Debtor's manager*, (iv) *to pay interest on those unsecured claims at what appears to be an exorbitant amount,* and (v) to distribute the balance of alleged equity (after reserving $1 million) to the Debtor's *members*.

According to the Amended Motion, the Debtor intends to pay its listed unsecured creditors $754,155.21 plus interest of $339.86 per day. [Dkt. 95, at p. 2, lines 9-12] No information is provided whatsoever regarding the interest rate used, the basis for paying interest or how the daily rate is justified. Interest in that amount equates to an interest rate of approximately 16.5 percent per annum, an extraordinary rate to say the least.[5] What is not revealed in the motion is that almost 90 percent of this money is to be paid to Andrew Lewis, the Debtor's manager and 28 percent owner. Mr. Lewis' claim has been vetted by no one, and he is to benefit greatly at the expense of the other equity holders.

Although the Debtor is proposing the highly unusual relief of distributing cash collateral to Mr. Lewis and its other two unsecured creditors with extraordinary interest outside of a plan of reorganization, notice of the Amended Motion was *not* served on any of the Debtor's ordinary members notwithstanding the fact that they are among the "interested parties" on whom service of notice is required by the Sale Order. *See* Proof of Service of Amended Motion [Dkt. 94-3]. This service tactic was adopted even though on the same day, the Debtor served its counsel's fee application on the very members who will be affected by the payments to the insider unsecured creditors. Similarly, when the Debtor served an amended notice of the continued hearing date set by the Court for the motion which it addressed to, among others, "all other interested parties," the

---

1007(a)(3) which requires the listing to be of the members' own addresses or places of business. [E.g., Dkt. 57, at pp. 12-13]

[5] In contrast, the Debtor is objecting to BPB's default interest rate of 8.5 percent per annum.

728\1055304.5 - 5 -
SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPP TO DEBTOR'S AMENDED MOTION FOR USE OF CASH COLLATERAL CASE NO. 13-53491

Case: 13-53491 Doc# 105 Filed: 11/27/13 Entered: 11/27/13 12:18:48 Page 5 of 10

Debtor served none of its members. [Dkt. Nos. 102 and 102-1]

## II.

## ARGUMENT

### A. The Court Should Deny the Amended Motion Because Notice Was Deficient

As a preliminary matter, the Amended Motion labeled as a motion for "interim use of cash collateral" is in reality the Debtor's disguised request for authority to use BPB's cash collateral to improperly make interim distributions to unsecured creditors, award interest to those creditors and to pay the Debtor's members without confirming a plan of reorganization. Had the Debtor proceeded properly with filing a disclosure statement and plan, it would be required to give notice not only to creditors but all of its equity holders as well. Bankruptcy Rule 2002(d). It plainly failed to make such service, and the motion should be denied on that basis alone.

Furthermore, the Sale Order requires notice to "interested parties" before the proceeds may be distributed. Because the Debtor is proposing the extraordinary relief of distributing cash collateral to its unsecured creditors and members and such parties are indisputably affected by the Amended Motion (for better or worse), notice should have been given to *all* interested parties. *See, e.g.,* 11 U.S.C. §1009(b)("parties in interest" who may appear and be heard in a case include the debtor's equity holders). The Debtor, however, failed to give most of it members notice of the Amended Motion which seeks to dispose of all of the remaining funds, including paying Mr. Lewis interest in excess of 16 percent per annum. Accordingly, the Amended Motion must be denied based upon deficient notice.[6]

---

[6] The Debtor also filed its original motion using the procedures under Local Rule 9014 and provided adequate notice to BPB for a hearing date of December 4, 2013. Although the original notice did not specifically reference Local Rule 9014, it set a hearing date, provided more than 28 days' notice and specified that any opposition was due fourteen days in advance of the hearing. [Dkt. 81] BPB's opposition, if any, was therefore due on November 20, 2013. On November 14, the Debtor then filed its radically revised Amended Motion and took the position that any opposition by BPB was still due only six calendar days later. The Debtor failed to provide 28 days' notice of the Amended Motion even though it insisted that the normal fourteen day period for opposition was still required. Through this gamesmanship, the Debtor sought to deny BPB proper notice and adequate opportunity to respond. This failure was only addressed when the Court granted BPB's ex parte application for continuance of the hearing date over the objection of the Debtor.

728\1055304.5 - 6 -
SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPP TO DEBTOR'S AMENDED MOTION FOR USE OF CASH COLLATERAL CASE NO. 13-53491

Case: 13-53491 Doc# 105 Filed: 11/27/13 Entered: 11/27/13 12:18:48 Page 6 of 10

**B. The Court Should Deny the Amended Motion Because the Proposed Use of Cash Collateral To Make Distributions to Creditors and Members Is Impermissible Under Well-Settled Bankruptcy Law**

The Court should deny the Amended Motion because the Debtor seeks "interim" use cash collateral in the "ordinary course of business" under Bankruptcy Code sections 363(c)(1) and (2) for impermissible purposes. The proposed use, which amounts to a *sub rosa* plan, is neither interim nor ordinary. That is, by the Amended Motion, the Debtor seeks authority to use BPB's cash collateral securing the balance of its claim to pay United States Trustee quarterly fees, the Debtor's professionals' allowed fees and costs, ***unsecured creditors' pre-petition claims***, and to distribute the balance of alleged equity (after reserving $1 million ) to the Debtor's ***members***. Well settled case law bars the Debtor's devious effort to make non-ordinary course distributions to its creditors and members without proposing and confirming plan of reorganization.

The general rule is that a distribution on pre-petition debt in a Chapter 11 case should not take place except pursuant to a confirmed plan of reorganization, absent extraordinary circumstances. *In re Air Beds, Inc.*, 92 B.R. 419, 422 (B.A.P. 9th Cir. 1988); s*ee also In re Conroe Forge & Mfg. Corp.*, 82 B.R. 781, 784 (Bankr.W.D.Pa.1988); Bankruptcy Rule 3021 (distribution ***shall*** be made to creditors whose claims have been allowed after confirmation of a plan (emphasis added)). "Distribution to all but oversecured creditors must await distribution pursuant to a confirmed Plan." *In re Howe*, 112 B.R. 754, 759 (Bankr. W.D. Pa. 1990).

Where the debtor proposes to distribute significant estate assets to major classes of creditors on account of prepetition claims or to otherwise dictate the terms of a future plan outside the context of a Chapter 11 plan, such a proposal violates the policies of Chapter 11 and should be denied. *See Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 939-40 (5th Cir. 1983) (settlement that had the effect of dictating some of the terms of the debtor's plan of reorganization prior to the confirmation process could not be approved because "[t]he debtor and the bankruptcy court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa*...."); *see also Official Comm. of Unsecured Creditors v. Tower Automotive, Inc.*

728\1055304.5 - 7 -
SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPP TO DEBTOR'S AMENDED MOTION FOR USE OF CASH COLLATERAL CASE NO. 13-53491

Case: 13-53491   Doc# 105   Filed: 11/27/13   Entered: 11/27/13 12:18:48   Page 7 of 10

*(In re Tower Automotive, Inc.)*, 241 F.R.D. 162,169 (S.D. N.Y. 2006) (the disposition of a significant amount of the debtor's assets pursuant to a Rule 9019 compromise may constitute an impermissible *sub rosa* plan ); *Official Comm. of Equity Security Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987)(the appellate court reversed the trial court's approval of an emergency treatment fund for Dalkon shield claimants prior to allowance of claims and prior to plan confirmation, holding that it was a violation of the Bankruptcy Code that could not be justified as an exercise of the court's equitable powers); *State of Ohio Dep't of Taxation v. Swallen's, Inc. (In re Swallen's, Inc.)*, 269 B.R. 634, 637 (B.A.P. 6th Cir. 2001)(reversing the bankruptcy court's approval of pre-confirmation distributions to creditors in the absence of an approved plan, absent a showing of extraordinary circumstances); *Matter of Kmart Corp.,* 359 F.3d 866, 871-72 (7th Cir. 2004)(the Bankruptcy Code does not allow the bankruptcy court to authorize full pre-confirmation payment of unsecured debts unless all unsecured creditors in the class are paid in full).

In a liquidating Chapter 11 such as this case, where the Debtor has ceased operations and the value of the collateral is not decreasing, courts have found that ordinarily all property will be necessary for an effective reorganization. *Conroe*, 82 B.R. at 785. "Necessary" property is that which will contribute to a plan of reorganization. *Id.* If circumstances require confirmation of a sale before a liquidating plan has been confirmed, the proceeds, which will be earning interest, are necessary to the plan which presumably will provide for the sale of the rest of the debtor's assets and the distribution of the proceeds. If distribution of assets occurs before confirmation, there will exist no means by which a plan may be implemented, in contravention of 11 U.S.C. § 1123(a)(5). In addition, if distribution is made to creditors in a liquidating Chapter 11 before confirmation of a plan, there will be little incentive for parties in interest to prosecute the case in an expeditious manner, much less to perform the work required to issue and obtain approval of a disclosure statement and plan. *Id*. The plain language of these statutes, as well as the Bankruptcy Rules applicable thereto, does not authorize the payment in part or in full, or the advance of monies to or for the benefit of unsecured claimants prior to the approval of the plan of reorganization. *Official Committee of Equity Sec. Holders v. Mabey*, 832 F.2d 299 (4th Cir.

1987). After confirmation of a plan, distribution shall be made to creditors whose claims have been allowed. *Id.*

The Debtor's only argument to justify "extraordinary circumstances" for the use of cash collateral to pay all creditors (other than oversecured creditor BPB) is that if the distribution to unsecured creditors and members is not made, it will unnecessarily incur additional interest charges and delay their return of their monies. *See* Amended Motion, 14:20-22. The fact that some creditors (particularly the controlling insider, Mr. Lewis) will benefit more from immediate payment, however, does not constitute an extraordinary circumstance. *Conroe* at 82 B.R. at 784 (the court was not persuaded by the bank's argument that it would benefit from immediate payment). On the other hand, if the distributions are made to unsecured creditors and members – i.e., substantially all interested parties other than BPB – the Debtor will have little or no incentive to perform the work necessary to resolve BPB's claim, propose and confirm a plan, and resolve the case in full. Accordingly, the Court should deny the extraordinary relief sought by the Debtor because it runs afoul of long-standing bankruptcy policies and procedures.

### C. Even If The Requested Use of Cash Collateral Is Being for A Legally Permissible Purpose, The Amended Motion Should Be Denied Because the Debtor Has Failed to Demonstrate That BPB Is Adequately Protected

Notwithstanding that bankruptcy law bars the Debtor's use of cash collateral under section 363 for its stated purposes, the Debtor's specious assertion that it should be entitled to use cash collateral because BPB's $465,643.30 disputed claim is adequately protected under section 361 by the proposed $1 million reserve fails. First, the Debtor understates BPB's secured claim because it also includes approximately $170,000 in attorney's fees and expenses.[7] Furthermore, these amounts will only continue to increase until the claim is resolved. As a result, the significantly less than 50% equity cushion of which the Debtor boasts will undoubtedly promptly decrease over time. Other factors that will further diminish the alleged equity cushion include (a) the professionals' fees that will be required to litigate the Claim Objection and to propose and

---

[7] BPB began incurring attorney's fees and costs in connection with protecting its interests and enforcing its rights under the loan documents in October 2010, and the obligations for fees and costs has been accruing over the past three years.

728\1055304.5 - 9 -
SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPP TO DEBTOR'S AMENDED MOTION FOR USE OF CASH COLLATERAL CASE NO. 13-53491

Case: 13-53491    Doc# 105    Filed: 11/27/13    Entered: 11/27/13 12:18:48    Page 9 of 10

confirm a plan of reorganization in an unknown, but likely substantial amount, (b) additional proposed payments to the Office of the United States Trustee, and (c) other fees and expenses that will inevitably accrue in the case. Since there is no actual evidence or guaranty that BPB is adequately protected by any equity cushion at all, the use of cash collateral to make premature distributions outside of a plan of reorganization should not be authorized.

## III.

## CONCLUSION

The Debtor failed to provide due notice to the Debtor's equity holders of its Amended Motion. The motion should be denied on this basis alone. Separately, the Debtor's self-proclaimed "cash collateral" motion is a strategic effort to find an end-run around confirming a plan of reorganization in this case. If the Court permits the Debtor to use BPB's cash collateral to make the contemplated distributions, this case could remain open indefinitely because after all creditors except BPB have been paid, there will be no incentive for the Debtor to address the Claim Objection, file a plan or close the case. The relief requested also plainly runs afoul of well-settled bankruptcy law.

Based on the foregoing, BPB respectfully requests that the Court to deny the Amended Motion.

Dated: November 27, 2013

HOPKINS & CARLEY
A Law Corporation

By: /s/ Stephen J. Kottmeier
Stephen J. Kottmeier
Jay M. Ross
Attorneys for Secured Creditor
BOSTON PRIVATE BANK & TRUST COMPANY

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1055304.5 - 10 -
SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OPP TO DEBTOR'S AMENDED MOTION FOR USE OF CASH COLLATERAL                                    CASE NO. 13-53491

Case: 13-53491    Doc# 105    Filed: 11/27/13    Entered: 11/27/13 12:18:48    Page 10 of 10