Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151759)
jross@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:    (408) 998-4790

Attorneys for Secured Creditor BOSTON
PRIVATE BANK & TRUST COMPANY,
formerly known as and successor to Borel
Private Bank & Trust Company

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re: | CASE NO.  13-53491 |
| 272 E. Santa Clara Grocery, LLC, | CHAPTER 11 |
| Debtor. | **RESPONSE OF SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY TO DEBTOR'S OBJECTION TO BANK'S CLAIM (CLAIM NO. 2) AND REQUEST FOR HEARING** |
| | Hearing<br>Date:    To Be Set<br>Time:    To Be Set<br>Place:    280 S. First Street<br>        San Jose, CA<br>        Courtroom 3099<br>Judge:  Hon. Stephen L. Johnson |

Hopkins & Carley
Attorneys At Law
San Jose ◆Palo Alto
Burbank

114\I055344.2

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK        CASE NO. 13-53491

Case: 13-53491   Doc# 106   Filed: 12/04/13   Entered: 12/04/13 11:26:15   Page 1 of 21

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................ 1

II.    STATEMENT OF FACTS ................................................................ 1

    A.     Events Prior To Bankruptcy ................................................. 1

        1.     BPB's Loan To Its Borrower Kimomex Santa Clara LLC ........ 1

        2.     Breaches Of The Kimomex Loan And Postponement Of BPB's Foreclosure ...................................................................... 2

    B.     Proceedings In The Bankruptcy Court ................................... 4

    C.     Provisions Of BPB's Loan Documents Pertinent To Debtor's Objection ............ 4

        1.     Provisions Of The Promissory Note (Zuckerman Decl., Exh. B) Relevant To Debtor's Objection .................................. 5

        2.     Business Loan Agreement (Zuckerman Decl., Exh. A) Provisions Relevant To Objection ........................................ 6

        3.     Deed Of Trust (Zuckerman Decl., Exh. C) Provisions Relevant To Objection ..................................................................... 7

III.   ARGUMENT ................................................................................. 9

    A.     The Debtor Has Failed To Meet Its Evidentiary Burden In Its Objection ............... 9

    B.     None Of The Grounds For The Objection Have Merit ........................... 9

        1.     BPB's Claim Is Properly Calculated ........................................ 9

        2.     BPB Is Entitled To Interest Calculated At The Interest After Default Rate ...................................................................... 10

        3.     BPB Is Entitled To The Late Charges It Claims ........................ 12

        4.     BPB Is Entitled To Recovery Of Its Attorney's Fees And Other Expenses ............................................................................ 12

        5.     The Debtor's Assertion That It Has Claims Is Unsupported and Meritless .......................................................................... 16

IV.    CONCLUSION ............................................................................. 17

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

114\1055344.2

- i -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK     CASE NO. 13-53491

# TABLE OF AUTHORITIES

Page

## CASES

*Fox & Carskadon Financial Corporation v.*
*San Francisco Federal Savings And Loan Assn.*
52 Cal.App.3d 484 (1975)................................................................................. 17

*In re Brunel*
54 B.R. 462 (Bankr. D. Colo. 1985) ............................................................... 13

*In re Crystal Properties (Beal Bank v. Crystal Properties)*
268 F.3d 743 (9th Cir. 2001)........................................................................... 10

*In re Entz White Lumber & Supply, Inc.*
850 F.2d 1338 (9th Cir. 1988) ......................................................................... 11

*In re Hemingway Transport*
993 F.2d 915, 925 (1st Cir. 1993) ..................................................................... 9

*In re Holm*
931 F.2d 620 (9th Cir.1991)............................................................................... 9

*In re Lough*
163 B.R. 586 (Bankr. Id. 1994)....................................................................... 16

*In re Marquis Associates*
81 B.R. 576 (B.A.P. 9th Cir. 1987) ................................................................ 13

*In re Medina*
205 B.R. 216 (9th Cir. BAP 1996) .................................................................... 9

*In re Sagamore Partners, Ltd.*
2012 WL 2856104, *4-5 (Bankr. S.D. Fla. 2012) ......................................... 11

*In re Zamani*
390 B.R. 680 (Bankr. N.D. Cal. 2008)........................................................... 10

*Nymark v. Heart Fed. Sav. & Loan*
231 Cal.App.3d 1089 (1991)........................................................................... 17

## STATUTES

11 U.S.C. section 506(b) ...................................................................... 12, 13

Civil Code section 2938 ............................................................................. 12

## RULES

Bankruptcy Rule 2004 .......................................................................... 14, 15

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto
Burbank

114\1055344.2

- ii -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK     CASE NO. 13-53491

Case: 13-53491    Doc# 106    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 3 of
21

## I.

## INTRODUCTION

Secured Creditor Boston Private Bank & Trust Company ("BPB") hereby responds to the objection [Dkt. 88; "Objection"] to its secured claim [Claim No. 2] filed by the Debtor 272 E. Santa Clara Grocery, LLC in this case.[1]  As set forth in this memorandum and the declarations of Randy L. Zuckerman and Counsel Stephen J. Kottmeier filed herewith, the Objection should be overruled.  BPB's claim should be upheld in full.

## II.

## STATEMENT OF FACTS

The factual background of this matter has been presented to the Court in a number of other motions and memoranda.  BPB will summarize that background for purposes of this proceeding.  BPB notes that the Debtor filed its objection in the form of a memorandum but supplied no admissible evidence to support the objection.

### A.    Events Prior To Bankruptcy

#### 1.    BPB's Loan To Its Borrower Kimomex Santa Clara LLC

On July 15, 2008, BPB made a secured loan to a borrower named Kimomex Santa Clara, LLC ("Kimomex").  Kimomex borrowed $3.6 million from BPB under BPB's then name Borel Private Bank & Trust Company ("Borel").[2]  At the time, Kimomex owned the real property located at 272 East Santa Clara Street, San Jose, CA 95112 (the "Property").  (Declaration of Randy L. Zuckerman In Support of Boston Private Bank's Response To Objection To Claim ["Zuckerman Decl."] filed herewith, ¶¶4-5)

Kimomex executed and delivered to Borel a Business Loan Agreement, a Promissory Note, a first Deed of Trust ("Deed of Trust") describing the Property, an Assignment of Rents ("Assignment of Rents"), Non-Recourse Rider, Hazardous Substances Certificate and Indemnity

---

[1]  BPB's claim was timely filed on October 22, 2013 (Claim 2) and amended on the same day (Claim 2-2) to add exhibits that were referenced but inadvertently not attached to the original filing.  This response has been delayed because Debtor's counsel advised BPB that the Debtor was going to amend its objection before the Thanksgiving holiday to "clean it up."  Because Debtor has failed to file an amended objection, BPB is proceeding with its response to the objection as filed to avoid further delay in resolving the matter.

[2]  BPB is successor by merger to Borel Private Bank & Trust Company.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

114\1055344.2

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK                CASE NO. 13-53491

Case: 13-53491    Doc# 106    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 4 of 21

Agreement and other documents (collectively, the "Loan Documents") in connection with the loan.[3] Both the Deed of Trust and the Assignment of Rents were recorded against the Property on July 18, 2008 in the Office of the Santa Clara County Recorder. As Borel's successor, BPB is now the lender, assignee and beneficiary under the Loan Documents.

Later on or about May 14, 2009, Kimomex apparently also borrowed a sum of about $600,000 from a group of individuals (the "Junior Lenders") and secured its obligation to those parties through a junior deed of trust ("Junior Deed of Trust") against the Property. According to publicly available records, that Junior Deed of Trust was recorded on or about May 21, 2009. (Zuckerman Decl., ¶6 and Exh. G) On information and belief, the trustee of the Junior Deed of Trust later caused the Junior Deed of Trust to be foreclosed under its power of sale and sold to the Junior Lenders under the Junior Deed of Trust. The Trustee's Deed ("Trustee's Deed"), dated October 27, 2011, was recorded on April 20, 2012. (Zuckerman Decl., ¶6 and Exh. H) The Junior Lenders thereafter apparently conveyed all of their right, title and interest in the Property to the Debtor, 272 E. Santa Clara Grocery, LLC ("Debtor") by Grant Deed ("Grant Deed") recorded on or about April 20, 2012. (Zuckerman, Decl., ¶6 and Exh. I) Consequently, the Debtor's interest in the Property is subordinate and subject to BPB's Deed of Trust and Assignment of Rents and all of BPB's rights and remedies. The Property was the Debtor's sole asset prior to its sale in this case.

**2. Breaches Of The Kimomex Loan And Postponement Of BPB's Foreclosure**

Kimomex breached its obligations to BPB under the Loan Documents when it failed to make monthly payments when due, beginning on June 15, 2010. Kimomex also defaulted by failing to pay all property taxes for the Property beginning on December 10, 2009. (Zuckerman Decl., ¶7) In addition, the conveyances of the Property under the May 2009 Junior Deed of Trust, the Trustee's Deed and the Grant Deed were all done without BPB's consent. They therefore constitute breaches of the "due on sale" covenant in the Deed of Trust. (*Id.*)

---

[3] Copies of the Loan Documents are attached to the Zuckerman Declaration, ¶4 as Exhibits A through F, respectively.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

114\1055344.2

- 2 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK       CASE NO. 13-53491

Case: 13-53491    Doc# 106    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 5 of
21

In October 2010, BPB first engaged legal counsel to assist it in protecting its interests and enforcing its rights under its loan documents. BPB's counsel has been engaged in the matter dealing with some or all of Kimomex, the Junior Lenders' representative, the Debtor and their respective counsel in the succeeding three years to date.

BPB initiated foreclosure under the Deed of Trust in 2011. (Zuckerman Decl., ¶8 and Exh. J.) About a week before the foreclosure sale, a representative of the Junior Lenders approached BPB and sought BPB's agreement to postpone the trustee's sale. By written agreement, BPB agreed to postpone the sale from month to month for a period of time. By written amendments, that time was extended but ended on December 31, 2012. BPB has had no other agreements whatsoever with the Junior Lenders, their representative or the Debtor. (Zuckerman Decl., ¶9)

In their several agreements to postpone the BPB foreclosure sale, the Junior Lenders' representative and BPB expressly agreed that defaults under the loan were not cured and that BPB reserved all of its rights and remedies with respect to the defaults, other than its agreement to postpone the nonjudicial foreclosure sale from time to time on certain conditions. In relevant parts, the parties expressly agreed:

> "2. <u>Remaining Default</u>. The Parties acknowledge and agree that the Payment [made by the Junior Lenders' representative] is insufficient in amount to satisfy all obligations due and owing as of this time and that the Notice of Default and Notice of Sale remain in full force and effect….
>
> 7. <u>Reservation of [BPB] Enforcement Rights</u>. The Parties acknowledge and agree that by entering into this agreement, [BPB] is waiving none of its rights and remedies under California law and its loan documents with respect to the defaults of the borrower. Apart from its covenant to postpone the trustee's sale as set forth expressly herein, [BPB] may at any time exercise any of its rights and remedies as it deems appropriate in its sole discretion, including, without limitation [BPB]'s right to seek appointment of a receiver with respect to the property, [BPB]'s right under the civil code to provide notice to any tenant to pay rent to [BPB] and [BPB]'s right to any other type of judicial relief it may deem appropriate to protect its interests in the property or under the loan." (Zuckerman Decl., ¶10, Exhs. L through O)

Discussions between the Debtor's representative and BPB following expiration of the last amendment proved fruitless. Instead, the Debtor's representative was obstreperous and

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

114\1055344.2

- 3 -

1  threatening, admitted to having no experience or funds to deal with the environmental issues that

2  allegedly existed on the Property, claimed the costs of dealing with the problem could be tens of

3  thousands of dollars, diverted rents being generated from the Property to his own pocket, left a

4  message for a bank officer suggesting he would interfere with BPB's rights to collect the rents

5  directly from the tenant and wanted to pay nothing from the rents to BPB so long as the

6  environmental issue was unresolved. BPB therefore filed an action and moved for appointment

7  of a receiver. On the day that the receiver motion was scheduled for hearing, the Debtor filed its

8  petition. (Zuckerman Decl., ¶14)

9  **B.      Proceedings In The Bankruptcy Court**

10        On June 27, 2013, Debtor filed a Chapter 11 Petition under the United States Bankruptcy

11  Code (the "Petition Date"). As of the Petition Date, BPB had made no calculation of what it is

12  owed under the "Interest After Default" provision of its Promissory Note. As the result of

13  making that calculation, BPB discovered that under the terms of the Promissory Note, the

14  obligations had been over-credited in reductions of principal on applications of payments to

15  principal and that the actual amount of principal owed is the sum of $3,555,168.55 due to the

16  hidden default caused by the Junior Lenders' violation of the due on sale provision of the Deed of

17  Trust. (Zuckerman Decl., ¶¶18 and 19) Therefore, as of the Petition Date, the outstanding

18  principal balance due and owing from Kimomex under the Promissory Note and other Loan

19  Documents was and is $3,555,168.55 based upon a proper allocation of prior payments following

20  Kimomex's initial default in May 2009. (Zuckerman Decl., ¶20 and Exh. R) In addition,

21  Creditor is owed interest at the interest rate after default in the amount of $217,401.61 as of

22  October 15, 2013, late charges of $34,030.36 as of October 15, 2013, and attorney fees and costs.

23  Total amount due as of October 15, 2013 is $3,806,600.52, plus attorney's fees and costs, which

24  as of November 15, 2013 totaled $170,674.65 for the previous three years of efforts to that date.

25  Interest, interest after default, and attorney fees and costs continue to accrue. (*Id.*)

26  **C.      Provisions Of BPB's Loan Documents Pertinent To Debtor's Objection**

27        Resolution of the Objection requires reference to various provisions of BPB's Business

28  Loan Agreement and Note, as well as its Deed of Trust which secures the obligations of the Note

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

114\1055344.2

- 4 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK          CASE NO. 13-53491

and Business Loan Agreement. The Objection challenges BPB's calculation of principal owing, assessment of late charges, right to default interest and claim for attorney's fees. In doing so, the Debtor fails to quote or describe the applicable Loan Document provisions. To address this omission, BPB notes the following provisions which relate to various aspects of BPB's claim to which the Debtor now objects.

1.      Provisions Of The Promissory Note (Zuckerman Decl., Exh. B) Relevant To Debtor's Objection

The Promissory Note contains provisions related to late charges, fees, default interest and defaults. Those provisions in the order set forth in the document are as follows:

**PAYMENT**…. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs….

**LATE CHARGE**. If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater….

**INTEREST AFTER DEFAULT**. Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding a 2.000 percentage point margin ("Default Rate Margin")….

**Default**. Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default**. Borrower fails to make any payment when due under this Note.

**Other Defaults**. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower….

**ATTORNEYS' FEES; EXPENSES**. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law….

**COLLATERAL**. Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto
Burbank

114\1055344.2

- 5 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK          CASE NO. 13-53491

(A) a Deed of Trust dated July 15, 2008, to a trustee in favor of Lender on real property located in Santa Clara County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property….

### 2. Business Loan Agreement (Zuckerman Decl., Exh. A) Provisions Relevant To Objection

The Business Loan Agreement also contains provisions relevant to the Debtor's objections. They are:

**EFFECT OF AN EVENT OF DEFAULT**. If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy….

**Attorneys' Fees; Expenses**. Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court….

/ / /

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto
Burbank

114\I1055344.2

- 6 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK

CASE NO. 13-53491

Case: 13-53491    Doc# 106    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 9 of 21

**No Waiver By Lender**. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

> **3.  Deed Of Trust (Zuckerman Decl., Exh. C) Provisions Relevant To Objection**

Finally, the Deed of Trust also contains provisions relevant to the Debtor's objections. They are:

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST....

**DUE ON SALE-CONSENT BY LENDER**. Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property....

**Payment Default**. Trustor fails to make any payment when due under the Indebtedness.

///

///

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto
Burbank

114\1055344.2

- 7 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK    CASE NO. 13-53491

Case: 13-53491    Doc# 106    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 10 of 21

**Other Defaults**. Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor….

**Attorneys' Fees; Expenses**. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law….

**No Waiver by Lender**. Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender….

**DEFINITIONS**….

**Indebtedness**. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust….

**Related Documents**. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK
CASE NO. 13-53491

of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

## III.

## ARGUMENT

### A.    The Debtor Has Failed To Meet Its Evidentiary Burden In Its Objection

The Debtor makes various factual claims and allegations throughout the Objection. It submitted, however, no declarations other than a conclusory declaration by its counsel. No admissible witness testimony to substantiate its factual claims is offered whatsoever, including any support for what it asserts are counterclaims against BPB. (Objection, pp. 14 -15) In objecting to a claim, the burden is upon the objecting party to submit actual evidence to overcome the presumptive validity of the claim. *See In re Medina*, 205 B.R. 216, 222 (9th Cir. BAP 1996) (citing *In re Holm,* 931 F.2d 620, 623 (9th Cir. 1991)); and *In re Hemingway Transport,* 993 F.2d 915, 925 (1st Cir. 1993). The Debtor's failure to submit evidence therefore warrants denial of the objection on that basis alone.

### B.    None Of The Grounds For The Objection Have Merit

The Debtor essentially claims that the BPB Claim is objectionable because: (1) it is overstated because it was allegedly "backdated"; (2) that BPB is not entitled to interest calculated at the "Interest After Default Rate"; (3) that BPB is not entitled to late charges; (4) that BPB is not entitled to recovery of its attorney's fees; and (5) that the Debtor has supposed claims of its own against BPB. BPB disputes all of these contentions.

#### 1.    BPB's Claim Is Properly Calculated

The Debtor first attacks BPB's calculation of the amount owing to it for principal and interest and makes the bald assertion that the Claim was "backdated." This factual assertion is disputed. First, the provisions quoted above in both the Loan Documents with Kimomex and in the agreements to postpone the foreclosure sale expressly do not waive any of BPB's rights and reserves all of its rights under the Loan Documents. As set forth in the Zuckerman Declaration

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto
Burbank

114\1055344.2

- 9 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK    CASE NO. 13-53491

Case: 13-53491    Doc# 106    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 12 of 21

filed herewith, BPB did not "backdate" anything, but instead made a proper calculation of the allocation of payments once the Junior Lenders surreptitiously put the Kimomex Loan in default. (Zuckerman Decl., ¶17)  The Debtor has submitted no evidence that demonstrates that BPB's calculation is not correct.  Accordingly, BPB's calculation of the principal and interest owing should be upheld.[4]

## 2. BPB Is Entitled To Interest Calculated At The Interest After Default Rate

Citing two cases, the Debtor claims that BPB is not entitled to interest at the default rate because it allegedly did not "exercise its option to accelerate and in turn charge the default interest rate."  What the Debtor ignores, however, is that in the loan provisions in both cases it cites, the default interest was only triggered if the lender accelerated the loan after a default, in which case the full amount was due and would bear a default rate of interest thereafter.  *In re Crystal Properties (Beal Bank v. Crystal Properties),* 268 F.3d 743, 748 (9th Cir. 2001); and *In re Zamani,* 390 B.R. 680, 688-689 (Bankr. N.D. Cal. 2008) (bank's right to invoke default interest under language of particular notes did not exist until it accelerated the notes and the borrower failed to pay).

The language of the Kimomex Promissory Note is far different.  Here, "[U]pon default, the interest rate on this Note shall…immediately increase by adding a 2.000 percentage point margin…."   In contrast to the loan documents in the Debtor's cases, no declaration of default or acceleration is required to trigger the default rate of interest.  It was automatically imposed once a default occurred without regard to acceleration or notice.  Default first occurred in May 2009 when the due on sale covenant was breached by the Junior Lenders and Kimomex.  Further defaults occurred when Kimomex failed to pay property taxes commencing on December 10, 2009, and then failed to make monthly payments when due commencing on June 15, 2010. (Zuckerman Decl., ¶7)

---

[4]  BPB received one pre-petition rent payment from the tenant which it has not yet applied to the Kimomex obligations, but it will do so once the Court makes a final determination of the amounts owed for the various obligations.

Hopkins & Carley
Attorneys At Law
San Jose ◆Palo Alto
Burbank

114\1055344.2

- 10 -

1    Even if notice of acceleration were required, then such notice was provided no later than

2    March 17, 2011.  On that date, BPB caused its Notice of Default And Election To Sell to be

3    recorded and served upon Kimomex and any parties holding a junior interest, including the Junior

4    Lenders.  The notice states specifically that BPB, the beneficiary under the Deed of Trust, "has

5    declared and does hereby declare all sums secured [by the Deed of Trust] immediately due and

6    payable…." (Zuckerman Decl., Exh. J, at p. 2)

7        Accordingly, BPB was and is entitled to be paid default interest on the sums owed to it.

8    The Debtor's attempt to argue otherwise is absurd given that it also asserts that (i) unsecured

9    creditors (who are primarily insiders) are to be paid in full with interest at a rate almost double the

10   amount of BPB's default rate, (ii) according to even the Debtor, BPB is oversecured, and (iii) the

11   Debtor's members will reap the benefit of taking away this portion of BPB's claim.  (Dkt. 62, p.

12   3)  Under such circumstances, were the Debtor to propose this result in a plan, the plan would be

13   unconfirmable.  *See, e.g., In re Sagamore Partners, Ltd.,* 2012 WL 2856104, *4-5 (Bankr. S.D.

14   Fla. 2012) [holding that approval of the disclosure statement would be refused because such a

15   plan is unconfirmable, noting that where " a debtor is solvent, reduction of the default rate of

16   interest will only provide an undeserved windfall to the debtor, or, as in this case, its equity

17   holders"].[5]

18       BPB disputes the conclusory assertion by the Debtor that the defaults were either cured or

19   waived.  [Objection, p. 11:23-26].  In the agreement regarding postponing BPB's foreclosure sale

20   he signed, the Debtor's managing member, Mr. Lewis, expressly agreed that the payment being

21   made to BPB was "insufficient in amount to satisfy all obligations due and owing as of this time

22   and that the Notice of Default and Notice of Sale remain in full force and effect." (Zuckerman

23   Decl., Exh. L, at section 2) Lewis therefore specifically acknowledged that not only were the

24   defaults not cured but that the acceleration of the loan stated in the Notice of Default remained in

25   effect.  This agreement was affirmed in each of the subsequent amendments to the foreclosure

26   postponement agreement.  (Zuckerman Decl., Exhs. M, N and O, at sections 1, 2 and 2,

27

28

---

[5]  The court in *Sagamore* discusses in detail how the holding in *In re Entz White Lumber & Supply, Inc*., 850 F.2d 1338 (9th Cir. 1988) has been overruled by subsequent statutory amendment.

Hopkins & Carley
Attorneys At Law
San Jose ♦Palo Alto
Burbank

114\1055344.2                                                  - 11 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK                CASE NO. 13-53491

Case: 13-53491    Doc# 106    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 14 of 21

| | |
|---|---|
| 1 | respectively) |
| 2 | **3.  BPB Is Entitled To The Late Charges It Claims** |
| 3 | BPB's Promissory Note provides for payment of late charges for any payment which is |
| 4 | more than eleven days late.  (See p. 5 above)  Under 11 U.S.C. §506(b), BPB is entitled to be paid |
| 5 | these charges as an oversecured creditor.  None of Kimomex, the Junior Lenders, their |
| 6 | representative or the Debtor have paid the full amount of what BPB is entitled to be paid for |
| 7 | years.  BPB seeks only the late charge applicable to the part of the monthly interest accrual for |
| 8 | which it was not paid.  Contrary to the bald assertion in the Objection (p. 12, line 11), there was |
| 9 | never an "agreement" that the Debtor or any other party did not have to make payments.  To the |
| 10 | contrary, as evidenced by the enforcement actions BPB took in providing notice to the tenant |
| 11 | under Civil Code section 2938 and filing suit, it was insisting on being paid in full.  Finally, BPB |
| 12 | took no affirmative actions after the filing of the bankruptcy petition to "intercept" anything and |
| 13 | the Debtor has never been willing to pay anything other than the nondefault monthly payments |
| 14 | which Kimomex was supposed to make under the Note.  The late charges are therefore properly |
| 15 | includable in the claim. |
| 16 | **4.  BPB Is Entitled To Recovery Of Its Attorney's Fees And Other** |
| 17 | **Expenses** |
| 18 | The Deed of Trust expressly provides that it secures payment of the "Indebtedness." |
| 19 | Indebtedness is defined to include not only principal and interest but all fees and costs provided in |
| 20 | any of Promissory Note or the Related Documents, which include both the Business Loan |
| 21 | Agreement and the Deed of Trust.  Thus whatever fees and costs BPB incurred in relation to |
| 22 | enforcing its rights or protecting its interests under the loan documents are part of the obligations |
| 23 | to paid in its claim, irrespective of whether they were incurred in connection with the borrower or |
| 24 | the junior lien holders or before or after the bankruptcy petition.  The Debtor's argument to the |
| 25 | contrary is unsupported by any authority and contradicts the express language of the Deed of |
| 26 | Trust, subordinate to which the Debtor's members recorded their own lien and then took title. |
| 27 | BPB's proof of claim expressly identified that it included attorney's fees and costs which |
| 28 | were continuing to accrue.  The underlying loan has been in monetary default since June 2010. |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

114\1055344.2

- 12 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK

CASE NO. 13-53491

BPB first engaged counsel to assist it in protecting its interests and enforcing its rights in October 2010. (Declaration of Counsel Stephen J. Kottmeier In Support Of Response To Objection To Claim ["Counsel Decl."], filed herewith, ¶2) Legal counsel has been assisting BPB more or less continuously over the past three years in dealing with Kimomex and its counsel, with the Junior Lienholders and Debtor or their respective legal counsel and with various proposed tenants and their counsel. (*Id.*, ¶¶6-10) The scope of activities has been broad and has varied depending upon the circumstances at the time. (*Id.*) Many of the legal services have been driven directly by the acts and conduct of the Debtor's managing member who has dealt with BPB with an unusually high degree of hostility and stubbornness.

The Counsel Declaration filed herewith and its exhibits lay out the actions taken by counsel at various points in time. Given the amount at issue and the complexity of dealing with first defaulted a borrower and then a contentious junior lien holder who ultimately caused this bankruptcy filing, the services provided and fees charged are reasonable. They should therefore be awarded in full.

Furthermore, to the extent the Debtor seeks to argue that BPB must "prevail" on some effort or action in order to recover its fees, it is in error. Section 506(b) contains no such requirement. *See, e.g., In re Brunel,* 54 B.R. 462, 465 (Bankr. D. Colo. 1985) (attorney's fees are allowable for unsuccessful or never ruled upon motion for relief from stay); and *In re Marquis Associates,* 81 B.R. 576, 578 – 580 (B.A.P. 9th Cir. 1987) (with broadly worded attorney's fees provision, award of fees to oversecured creditor is mandatory and no per se rule exists to deny based upon success of creditor action). In fact, all that needs to be determined is that BPB was reasonable in taking it actions. *Id.*

In this matter, BPB's actions through its legal counsel have been reasonable steps that any lender would undertake to protect its interests. Those steps have occurred over three plus years and have varied as circumstances changed and different needs arose. Submitted herewith is the Counsel Declaration and its exhibits which goes into extensive detail of the efforts required and expenses incurred and demonstrate their reasonableness.

The Objection attacks specifically only certain postpetition efforts of BPB. Often the

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto
Burbank

114\1055344.2

- 13 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK    CASE NO. 13-53491

Objection misstates what really occurred in the case.  BPB submits all of its efforts were and are reasonable under the circumstances.  To respond to the specific points raised by the Debtor:

1.  <u>Debtor's deficient applications to employ counsel</u>:  The Debtor's applications were plainly deficient and warranted the objections filed as evidenced by the Court requiring the Debtor to set the matters for hearing and file responses to the objections.  Once the Debtor filed substantial additional declarations addressing the deficiencies identified, BPB advised the Court that it found the additional disclosures acceptable and its objections satisfied.  These circumstances are a far cry from causing the Debtor "unnecessary expense."  (Objection, p. 13, line 16)  The Debtor could have saved expenses by filing adequate applications in the first instance.

2.  <u>Motions for Rule 2004 examination of Debtor's Members</u>:  The Court granted BPB's application to examine Mr. Lewis, the LLC manager and responsible person and denied the other member applications without prejudice, directing BPB to examine Lewis first and come back if more was needed.  The applications were substantially similar so did not require a lot of additional work and were warranted given Mr. Lewis' multiple hats and conflicts of interest in this matter.  Lewis' examination was not completed in large part because he failed to produce many of the records he was ordered to produce and the fact that he had an appointment for which he said he had to leave early.

3.  <u>Motion Regarding Inapplicability of Stay To Rents</u>.  As set forth in the motion and reply papers, there is a substantial and meritorious argument as to why the rents were not property of the estate.  While the Court did not ultimately agree with BPB's arguments, the consideration the Court gave to the matter demonstrates that the issue was substantial.  Given that BPB could lose its statutory rights to the rents if it simply handed the rents to the Debtor, its approach in freezing the rents pending a motion and hearing and seeking a prompt determination of its rights from the Court was necessary and reasonable.  As part of the motion proceedings, BPB also opposed the Debtor's motion for use of cash collateral, an opposition which the Court sustained against the Debtor.

4.  <u>ERAS Rule 2004 Examination Application</u>.  The Court stated in open court that it

Hopkins & Carley
Attorneys At Law
San Jose ◆ Palo Alto
Burbank

114\1055344.2                                                           - 14 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK                    CASE NO. 13-53491

1 would grant the ERAS application, which the Debtor did not oppose. Contrary to Debtor's

2 representation, BPB did submit a proposed form of order for the examination, but the Court did

3 not enter the Order. Contrary to the Debtor's further representation, the ERAS report and the

4 County's closure letter were not posted on the County website when the ERAS application was

5 filed and the hearing held on the Rule 2004 examination applications. Because of the later

6 postings, BPB's counsel elected not to follow up with the Court staff regarding issuance of the

7 order.

8      6. <u>Motion For Relief From Stay</u>. As set forth in BPB's motion papers [Dkt. Nos. 78-

9 79], the Debtor filed a patently unconfirmable plan that was not predicated upon sale of the

10 Property. To protect its rights and consistent with common practice in such circumstances, BPB

11 both prepared opposition to the disclosure statement and a motion for relief from stay. Both were

12 substantially completed by the point when the Debtor suddenly filed a motion to sell the Property

13 outside of the plan. The Debtor did not withdraw its plan, however, so BPB proceeded to finalize

14 and file both its stay motion and opposition to the disclosure statement in the event that the

15 Debtor abandoned the sale motion or could not close the sale and reverted to its plan. A

16 secondary reason for doing so was to incent the Debtor to in fact ensure a sale of the Property was

17 closed. Filing of the motion was quite reasonable under the circumstances.

18      7. <u>Response To Sale Motion</u>. As evidenced by the Court's agreement with almost all

19 of BPB's positions taken in its response to the Debtor's sale motion, BPB's response to that

20 motion was both appropriate and reasonable. Contrary to the Debtor's assertion, there was not

21 just a single point raised by BPB, but several, all of which were substantive and appropriate. (Dkt.

22 No. 86)

23      The evidence submitted herewith details the nature, extent and reasonableness of BPB's

24 fees and expenses. Over the course of more than three years, BPB had to deal with a defaulted

25 borrower struggling to effect a work out, a group of junior lien holders who had their own agenda

26 of trying to profit from the Property and litigation in two courts. Conditions of the borrower, the

27 Property and the junior lienholders changed over that time. BPB was owed in excess of $3.5

28 million. Given the complexity of the circumstances, the Debtor's efforts to force BPB to become

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

114\1055344.2

- 15 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK

CASE NO. 13-53491

Case: 13-53491   Doc# 106   Filed: 12/04/13   Entered: 12/04/13 11:26:15   Page 18 of 21

its involuntary lender and the amount of debt, the total fees and expenses incurred of about

$170,674.65 over that those years is both reasonable and to be expected.

**5.     The Debtor's Assertion That It Has Claims Is Unsupported and Meritless**

The Debtor's last purported objection is an assertion that it has claims against BPB.  No evidence is offered whatsoever in support of this portion of its objection.  It should therefore be denied on this basis alone.

Beyond that fundamental point, BPB denies that the claims have any merit whatsoever.  First and foremost, the Debtor has suffered no damages for any of the claims it asserts.  The Debtor in fact will receive profits in the millions once this case is concluded.  The price it sold the Property for is even several hundred thousand more than what it proposed to sell the Property for at the end of 2012.  The speciousness of a claim for damages for any conduct of BPB is demonstrated by the complete absence of any damage analysis whatsoever in the Objection.

More fundamentally, there is no merit to the substantive claims themselves.  BPB took no postpetition affirmative action whatsoever to collect rents from the Property.  Contrariwise, BPB simply held whatever postpetition rents were sent to it in a segregated account, did not apply or set off against them, and promptly sought a determination by this Court as to the ownership of those rents.  BPB's action is freezing the rents ultimately determined to be BPB's collateral was not a violation of the automatic stay.  *See, e.g., In re Lough,* 163 B.R. 586, 588-589 (Bankr. Id. 1994) (holding that there is no violation of the automatic stay by freezing cash collateral since debtor cannot use cash in any event without a court order).  The Debtor itself prolonged the period rents came to the BPB by stipulating to continue the hearing on BPB's motion.  Once the Court ruled on the motion and held the rents were property of the estate, albeit BPB's cash collateral, BPB promptly delivered all of the funds it received postpetition to the Debtor through its counsel to be held by the Debtor pending further order of this Court.  When the tenant sent another late rent check to BPB, that check was immediately turned over to Debtor's counsel.  There were no stay violations.

As to the supposed failure by BPB to disclose an environmental issue, BPB generally had

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

114\1055344.2

- 16 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK                    CASE NO. 13-53491

Case: 13-53491    Doc# 106    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 19 of 21

no duty to disclose matters to a non-customer such as Mr. Lewis' company. BPB as a lender to Kimomex had no duty whatsoever to Lewis' company or its investors to make some kind of disclosure or to assure the profitability of their enterprise. Under California law, a bank owes no such duty of care to its own borrower, so with even greater force such a duty of care cannot exist as to third parties who are separate lenders to the borrower. As the court in *Nymark v. Heart Fed. Sav. & Loan*, 231 Cal.App.3d 1089, 1095 (1991), held: "[A] lender has no duty to disclose its knowledge that the borrower's intended use of the loan proceeds represents an unsafe investment. The success of the borrower's investment is not a benefit of the loan agreement which the lender is under a duty to protect." The court further held, "[a] lender's general lack of duty to a borrower is an established public policy. A strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure the success of every investment." *Id*. Because this rule holds true as to a bank's borrower, the actual customer of the bank, then it must certainly hold true as to third parties who are simply investors in an unrelated junior loan to the borrower. *Cf. Fox & Carskadon Financial Corporation v. San Francisco Federal Savings And Loan Assn.*, 52 Cal.App.3d 484 (1975) (in the making of a loan, lender had no duty of care to party in contract to purchase property from borrower).

More importantly, the environmental issue was a matter of public record which Mr. Lewis and his investors failed to investigate themselves. (Counsel Decl., Exh. 3) Lastly, the issue was apparently remedied by expenditure of less than $20,000, so it could hardly be viewed to be material.

## IV.

## CONCLUSION

For the foregoing reasons, none of the Debtor's grounds for objection have merit. First and foremost, the Debtor failed to meet its evidentiary burden and the objections should be overruled on that basis alone. Beyond that fundamental defect, none of the grounds for objection

///

///

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

114\1055344.2

- 17 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK          CASE NO. 13-53491

Case: 13-53491    Doc# 106    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 20 of 21

1  have merit.  BPB's claim should therefore be allowed in full, together with additional fees and

2  costs accrued after November 15, 2013.

3

4  Dated: December 4, 2013                    HOPKINS & CARLEY
                                            A Law Corporation

5

6                                          By: /s/ Stephen J. Kottmeier

7                                             Stephen J. Kottmeier
                                            Jay M. Ross

8                                             Attorneys for Secured Creditor
                                            BOSTON PRIVATE BANK & TRUST
                                            COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

114\I055344.2

- 18 -

RESPONSE TO DEBTOR'S OBJECTION TO SECURED CLAIM OF BOSTON PRIVATE BANK          CASE NO. 13-53491

Case: 13-53491    Doc# 106    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 21 of
21