Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151759)
jross@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:     (408) 998-4790

Attorneys for Secured Creditor Boston Private Bank
& Trust Company, formerly known as and successor
to Borel Private Bank & Trust Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>272 E. Santa Clara Grocery, LLC,<br><br>            Debtor. | CASE NO.  13-53491<br>RS No.<br>CHAPTER 11<br><br>**DECLARATION OF RANDY L. ZUCKERMAN IN SUPPORT OF SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S RESPONSE TO OBJECTION TO CLAIM**<br><br><u>Hearing</u><br>Date:     TBD<br>Time:    TBD<br>Place:    280 S. First Street<br>            San Jose, CA<br>            Courtroom 3099<br>Judge:   Hon. Stephen L. Johnson |

I, Randy L. Zuckerman, declare as follows:

1.      I am a Senior Vice President – Special Assets Department of Secured Creditor Boston Private Bank & Trust Company ("BPB"), successor in interest by merger to and formerly known as Borel Private Bank & Trust Company.  I worked with David Scheiber on the

436\1053435.2

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

DECLARATION OF RANDY L. ZUCKERMAN ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S RESPONSE TO OBJECTION TO CLAIM CASE NO. 13-53491

Case: 13-53491    Doc# 106-8    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 1 of 8

administration and enforcement of the loan ("Loan") which was secured by the property formerly owned by the Debtor in this case. That property is the real property located at 272 East Santa Clara Street, San Jose, CA 95112 (Assessor's Parcel No. 467-24-111) (the "Property"). Mr. Scheiber has had primary responsibility for the Loan, but I have worked on the matter with him and make this declaration due to the fact that Mr. Scheiber is unavailable to do so at this time. As part of my responsibilities, I have become familiar with the BPB's loan documents for the Loan, its accounting of sums due and owing under the Loan, and the supervision of the Loan by BPB personnel before me. Except as to those matters stated upon information and belief, I have personal knowledge of the matters set forth in this declaration based upon my personal review of BPB's business records, discussions with Mr. Scheiber and other BPB staff and communications with the manager of the Debtor. If called upon to do so, I could and would competently testify thereto.

2. I make this declaration in support of BPB's response to the Debtor's objection to BPB's claim filed in this case. Mr. Scheiber signed the claim on behalf of BPB, but I have reviewed it and believe it to be true and correct as presented for the reasons set forth in this declaration.

3. BPB has never had a lending relationship with Debtor 272 E. Santa Clara Grocery, LLC ("E. Santa Clara LLC"). BPB's borrower was and is an entity known as Kimomex Santa Clara, LLC ("Kimomex").

4. On or about July 15, 2008, Kimomex executed and delivered to Borel a Business Loan Agreement, a Promissory Note ("Promissory Note"), a first Deed of Trust ("Deed of Trust"), an Assignment of Rents ("Assignment of Rents"), Non-Recourse Rider, Hazardous Substances Certificate and Indemnity Agreement and other documents (collectively, the "Loan Documents") in connection with the loan. True and correct copies of the Business Loan Agreement, Promissory Note, Deed of Trust, Assignment of Rents, Non-Recourse Rider and Hazardous Substances Certificate and Indemnity Agreement are attached hereto as **Exhibits A, B, C, D, E and F**, respectively. Both the Deed of Trust and the Assignment of Rents were recorded against the Property on July 18, 2008 in the Office of the Santa Clara County Recorder. BPB is

436\1053435.2 - 2 -
DECLARATION OF RANDY L. ZUCKERMAN ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S RESPONSE TO OBJECTION TO CLAIM CASE NO. 13-53491

the successor by merger of Borel and is now the lender, assignee and beneficiary under the Loan Documents.

5. Pursuant to the terms of the Promissory Note and other Loan Documents, Kimomex borrowed the maximum principal sum of $3,600,000. At the time, Kimomex owned the Property.

6. Later on or about May 14, 2009, Kimomex apparently also borrowed a sum of about $600,000 from a group of individuals and secured its obligation to those parties through a junior deed of trust ("Junior Deed of Trust") against the Property. According to publicly available records, that Junior Deed of Trust was recorded on or about May 21, 2009. A true and correct copy of the Junior Deed of Trust obtained from the records of the County of Santa Clara is attached hereto as **Exhibit G**. On information and belief, the trustee of the Junior Deed of Trust later caused the Junior Deed of Trust to be foreclosed under its power of sale and sold to the beneficiaries under the Junior Deed of Trust. The Trustee's Deed ("Trustee's Deed"), dated October 27, 2011, was recorded on April 20, 2012. A true and correct copy of the Trustee's Deed, obtained from the public records of the County of Santa Clara is attached hereto as **Exhibit H**. The beneficiaries thereafter apparently conveyed all of their right, title and interest in the Property to the Debtor, 272 E. Santa Clara Grocery, LLC ("Debtor") by Grant Deed ("Grant Deed") recorded on or about April 20, 2012. A true and correct copy of the Grant Deed, obtained from the records of the County of Santa Clara, is attached hereto as **Exhibit I**. Consequently, the Debtor's interest in the Property and its proceeds is subordinate and subject to Creditor's Deed of Trust and Assignment of Rents and all of Creditor's rights and remedies. The Property was the Debtor's sole asset until the Debtor sold it pursuant to motion in this case.

7. Kimomex breached its obligations to BPB under the Loan Documents when it failed to make monthly payments when due beginning before mid-2010 and failed to pay all property taxes for the Property when due. The due date of the intial missed payment was June 15, 2010. I am informed and believe based upon available public records that Kimomex first defaulted on payment of property taxes on or about December 10, 2009. In addition, the conveyances of the Property under the Junior Deed of Trust, under the Trustee's Deed and under

Hopkins & Carley
Attorneys At Law
San Jose

Case: 13-53491  Doc# 106-8  Filed: 12/04/13  Entered: 12/04/13 11:26:15  Page 3 of 8

the Grant Deed described in paragraph 6 above were all done without BPB's consent and therefore are in breach of the "due on sale" covenant in the Deed of Trust.

8. BPB initiated foreclosure under the Deed of Trust in 2011. Attached hereto as **Exhibit J** is a true and correct copy of the Notice of Default And Election To Sell Under Deed of Trust recorded on BPB's behalf on or about March 22, 2011, in the records of the Santa Clara County Recorder as Document No. 21118334. Neither Kimomex nor any other party, including any junior lienholder, sought to cure the defaults during the three month statutory period following the recordation of the Notice of Default. Accordingly, BPB subsequently caused a Notice of Trustee's Sale to be recorded. Attached hereto as **Exhibit K** is a true and correct copy of the Notice of Trustee's Sale recorded for BPB's benefit on or about June 28, 2011, in the records of the Santa Clara County Recorder as Document No. 21219847. The notice of sale set a sale date of July 20, 2011.

9. I am informed and believe that about a week before the foreclosure sale, a representative of the Junior Lenders approached BPB and sought BPB's agreement to postpone the trustee's sale. By written agreement, BPB agreed to postpone the sale from month to month for a period of time. By written amendments to the agreement, that time was extended but ended on December 31, 2012. BPB has had no other agreements whatsoever with the Junior Lenders, their representative or the Debtor.

10. In their several agreements to postpone the BPB foreclosure sale, the Junior Lenders' representative and BPB expressly agreed that defaults under the loan were not cured and that BPB reserved all of its rights and remedies with respect to the defaults, other than its agreement to postpone the nonjudicial foreclosure sale from time to time on certain conditions. In relevant parts, the parties expressly agreed:

> "2. <u>Remaining Default</u>. The Parties acknowledge and agree that the Payment [made by the Junior Lenders' representative] is insufficient in amount to satisfy all obligations due and owing as of this time and that the Notice of Default and Notice of Sale remain in full force and effect….
>
> 7. <u>Reservation of [BPB] Enforcement Rights</u>. The Parties acknowledge and agree that by entering into this agreement, [BPB] is waiving none of its rights and remedies under California law and its loan documents with respect to the defaults of the borrower. Apart from its covenant to postpone the trustee's sale as

436\1053435.2 - 4 -
DECLARATION OF RANDY L. ZUCKERMAN ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S RESPONSE TO OBJECTION TO CLAIM CASE NO. 13-53491

Case: 13-53491    Doc# 106-8    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 4 of 8

set forth expressly herein, [BPB] may at any time exercise any of its rights and remedies as it deems appropriate in its sole discretion, including, without limitation [BPB]'s right to seek appointment of a receiver with respect to the property, [BPB]'s right under the civil code to provide notice to any tenant to pay rent to [BPB] and [BPB]'s right to any other type of judicial relief it may deem appropriate to protect its interests in the property or under the loan."

True and correct copies of the postponement agreements are attached hereto as **Exhibits L, M, N and O.**

11. As discussed above, the Junior Lenders apparently foreclosed upon the Junior Deed of Trust by a trustee's sale held on or about October 24, 2011 according to the Trustee's Deed eventually recorded it their favor. Shortly after the sale, one of our predecessors on the Kimomex Loan wrote to the Debtor's manager Andrew Lewis. In that letter, dated November 2, 2011, our colleague told Mr. Lewis in no uncertain terms that BPB (then known as Borel) waived none of its rights and, to the contrary, reserved all of its rights under the "due on sale" provision in the Deed of Trust. A true and correct copy of the letter sent to Mr. Lewis is attached hereto as **Exhibit P.**

12. Bruce Brown was another BPB colleague who worked on this Loan and had interchanges with Mr. Lewis. After the December 31, 2012 expiration of the last amendment to the Agreement to Postpone Foreclosure Sale, Bruce Brown and Dave Scheiber both attempted to negotiate with Mr. Lewis regarding whether a further agreement could be reached without either litigation or bankruptcy. I am informed and believe based on our conversations with Mr. Brown that the draft Fourth Amendment To Foreclosure Agreement discussed in the Debtor's objection was in fact in accordance with the discussions that Mr. Brown had with Mr. Lewis, *including inclusion of release provisions*. I am further informed that when Mr. Brown presented the draft Fourth Amendment to Mr. Lewis, but Mr. Lewis refused to sign it.

13. In early May 2013, Mr. Scheiber and I became directly involved in attempting to deal with Mr. Lewis. Mr. Scheiber sent him a letter expressly confirming his rejection of the Fourth Amendment and confirming that the proposal in the Fourth Amendment was withdrawn. A true and correct copy of Mr. Scheiber's letter dated May 13, 2013 is attached hereto as **Exhibit Q.**

436\1053435.2 - 5 -
DECLARATION OF RANDY L. ZUCKERMAN ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S RESPONSE TO OBJECTION TO CLAIM CASE NO. 13-53491

Case: 13-53491 Doc# 106-8 Filed: 12/04/13 Entered: 12/04/13 11:26:15 Page 5 of 8

14.     It became apparent to us that Mr. Lewis and his entities were diverting funds which were our collateral to their own benefit. In addition, Mr. Lewis advised me and Mr. Scheiber that the Property had an environmental problem of unknown scope and that neither he nor his entities had any experience in dealing with such problems. Mr. Lewis' personal approach to us was to be confrontational, threatening and irrational. Accordingly, we viewed our collateral to be highly vulnerable and authorized our counsel to file a legal action to seek appointment of a receiver to take possession and control of the Property and its cash collateral and to provide the necessary skill and expertise to deal with the environmental issues. The receivership motion was originally set for hearing on June 27, 2013.

15.     Instead of having the matter heard on the merits, on June 27, 2013, the Debtor filed a Chapter 11 Petition under the United States Bankruptcy Code (the "Petition Date").

16.     As of the Petition Date, BPB had made no calculation of what it is owed under the "Interest After Default" provision of its Promissory Note. In connection with later making that calculation, we discovered that under the terms of the Promissory Note, the Borrower had inadvertently been over-credited in reductions of principal on applications of payments to principal and that the actual amount of principal owed is the sum of $3,555,168.55, plus interest and late fees of $251,431.97.

17.     We made this determination following negotiations with the Debtor and after the Debtor began disputing BPB's right to such interest in various pleadings it has filed, including its proposed plan which it filed. The Debtor's assertions caused us to go back and make the calculation of interest after default under the loan documents. We have not "backdated" anything. Instead, we have applied the terms of BPB's Loan Documents and their provisions to the events and defaults as we now know them. The following paragraphs explain the basis for the calculation and why it is called for under the Loan Documents.

18.     The Promissory Note provides that upon default, the interest rate shall "immediately increase" by two per cent per annum. (Exh. B, p. 1) No acceleration or declaration is required to trigger the increased interest rate. That means that the interest rate under the Note increased automatically upon default from 6.50 percent per annum to 8.50 percent per annum. In

Hopkins & Carley
Attorneys At Law
San Jose

436\1053435.2                                    - 6 -
DECLARATION OF RANDY L. ZUCKERMAN ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S
RESPONSE TO OBJECTION TO CLAIM CASE NO. 13-53491

Case: 13-53491    Doc# 106-8    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 6 of 8

this case, the first default was the violation of the due on sale/encumbrance provision in the Deed of Trust which occurred in May 2009, when the Debtor's principals and Kimomex violated the due on sale covenant in the Bank's Deed of Trust by recording a second deed of trust against the Property without BPB's consent. The problem of course was that this default was not known to BPB until over two years later. Accordingly, BPB's on-going calculations of interest inadvertently remained at 6.5 percent for a period when they should have increased to 8.5 percent from May 2009 on.

19. The Debtor, of course, has now filed this case and began pressing us about what is owed to BPB. The Debtor's tactics therefore compelled us to review all of the post default payments and how they should be applied under the provisions of the Promissory Note. Now that we have found it necessary to make the interest after default calculations, we determined that the outstanding amount of principal owing is actually higher than what we initially believed and what we have previously stated in papers filed in this court. The reason for this difference is that portions of each payment made against the loan were applied to principal which should not have been the case under the provisions of the Promissory Note after the default occurred. The Promissory Note requires that payments should be applied first to any unpaid and accrued interest, then to principal, and then to unpaid collection costs (the "Waterfall"). (Exh. B, p. 1). Accordingly, once the default occurred, each subsequent payment should have been applied only to interest because of the increased interest due. Once the increased interest was due, the amount of each monthly payment available for application to principal was in fact zero. In other words, the regular monthly payments were insufficient to pay all of the interest that became payable and nothing should have been applied to principal. This means that BPB is due more principal than we previously thought, and, by this declaration and Mr. Scheiber's earlier declaration in support of BPB's motion for relief from stay, we are correcting any prior statement about the principal due.

20. Attached hereto as **Exhibit R** is a schedule showing the proper application of payments according to the "Waterfall" provision in the Promissory Note commencing with the initial default in May 2009. Using the proper contractual allocation, the current outstanding

436\1053435.2 - 7 -

DECLARATION OF RANDY L. ZUCKERMAN ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S RESPONSE TO OBJECTION TO CLAIM CASE NO. 13-53491

principal balance due and owing from Kimomex under the Promissory Note and other Loan Documents is $3,555,168.55. In addition, BPB is owed interest in the amount of $217,401.61 as of October 15, 2013, and late charges (5 percent of the "regularly scheduled payment") of $34,030.36. The total amount owed as of October 15, 2013, is therefore $3,806,600.52, plus attorney's fees and costs. Interest at the interest after default rate and attorney fees and costs have continued to accrue after that date.

21. In addition to the foregoing amounts, BPB has had to engage counsel to represent and advise it on this matter. We have therefore incurred attorney's fees and expenses which are also obligations owed to BPB and are secured by its security instruments, including its deed of trust. (See Exhibits A at p. 4, B at p. 2, and C at p. 6) Counsel was first engaged by BPB in connection with enforcement of its rights in October 2010. That representation has continued to date. The nature and amounts of fees and expenses incurred are set forth in our counsel's declaration filed in support of BPB's response to the Debtor's objection.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on November 19, 2013 at Encino, California.

>   */s/ Randy L. Zuckerman*
>         Randy L. Zuckerman

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

436\1053435.2

- 8 -

DECLARATION OF RANDY L. ZUCKERMAN ISO SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S RESPONSE TO OBJECTION TO CLAIM CASE NO. 13-53491

Case: 13-53491    Doc# 106-8    Filed: 12/04/13    Entered: 12/04/13 11:26:15    Page 8 of 8