Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151759)
jross@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:    (408) 286-9800
Facsimile:    (408) 998-4790

Attorneys for Plan Proponent BOSTON PRIVATE
BANK & TRUST COMPANY, formerly known as
and successor to Borel Private Bank & Trust
Company

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re: | CASE NO. 13-53491 |
| 272 E. Santa Clara Grocery, LLC, | CHAPTER 11 |
| Debtor. | **CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S PLAN OF REORGANIZATION DATED DECEMBER 5, 2013** |
| . | |

Disclosure Statement Hearing:
Date:        January 9, 2014
Time:        1:30 p.m.
Place:       Courtroom 3099
             280 S. First Street
             San Jose, CA 95113

Plan Confirmation Hearing:
Date:        To be scheduled
Time:        To be scheduled
Place:       Courtroom 3099
             280 S. First Street
             San Jose, CA 95113

Judge:       Hon. Stephen L. Johnson

# TABLE OF CONTENTS

**Page**

ARTICLE 1.    INTRODUCTION ......................................................... 1

ARTICLE 2.    DEFINITIONS ............................................................ 3

ARTICLE 3.    CERTAIN GENERAL TERMS AND CONDITIONS .................. 7

ARTICLE 4.    ADMINISTRATIVE EXPENSES AND UNCLASSIFIED CLAIMS ........... 8

    1.    Administrative Expenses .......................................... 8

    2.    Priority Tax Claims ................................................ 9

ARTICLE 5.    DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ................ 9

    1.    Class 1:  Secured Tax Claims .................................... 9

    2.    Class 2:  BPB's Secured Claim ................................ 10

    3.    Class 3:  General Unsecured Claims .......................... 11

    4.    Class 4:  Debtor's Equity Holders ............................ 12

ARTICLE 6.    MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN .......... 12

    6.1    Funding the Plan ................................................. 12

    6.2    Disbursements .................................................... 13

    6.3    Interest Pending Allowance of Claims And Disbursement ............... 14

    6.4    Reserve for Disputed Claims .................................... 14

    6.5    Unclaimed Distributions ........................................ 14

    6.6    Revesting of Property of Estate ................................. 15

    6.7    Post-Confirmation Operations .................................. 15

    6.8    Execution and Delivery of Documents .......................... 15

    6.9    Objections to Claims and Interests ............................. 15

    6.10    Bar Date ........................................................ 16

    6.11    Retention and Enforcement of Claims .......................... 16

    6.12    Court and United States Trustee Fees .......................... 16

    6.13    Implementation Reports ......................................... 16

ARTICLE 7.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND PREVIOUSLY ASSUMED LEASES ............ 16

    7.1    Assumptions ..................................................... 16

    7.2    Rejections ....................................................... 17

    7.3    Deadline to File Rejection Claim ............................... 17

ARTICLE 8.    POST-CONFIRMATION EMPLOYMENT AND  COMPENSATION OF PROFESSIONALS ............ 17

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

- i -

ARTICLE 9.      DISCHARGE ................................................................................ 18
 9.1 Discharge of Debts ..................................................................... 18
 9.2 Judgments Obtained on Discharged Debts are Void ......................... 18
 9.3 Discharge Injunction ................................................................... 18
 9.4 Reaffirmation Agreement ............................................................. 18

ARTICLE 10.      MODIFICATION OF THE BPB PLAN .......................................... 19

ARTICLE 11.      GENERAL PROVISIONS ............................................................ 19
 11.1 Jurisdiction ............................................................................... 19
 11.2 Interpretation ............................................................................ 20
 11.3 Binding Effect ........................................................................... 20
 11.4 Default ...................................................................................... 20
 11.5 Applicable Law .......................................................................... 21
 11.6 Implementation Orders ............................................................... 21

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

- ii -

# ARTICLE 1.  INTRODUCTION

272 E. Santa Clara Grocery, LLC ("Debtor"), [1] is the debtor and debtor-in-possession in the above-captioned Chapter 11 bankruptcy case.  On June 27, 2013, the Debtor commenced this action by filing a voluntary Chapter 11 petition under title 11 of the United States Code, section 101, *et seq.* (the "Code").  The Debtor has continued to operate its business and manage its affairs as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Code.  No trustee or examiner has been appointed in this action.

On or about September 24, 2013, the Debtor filed its proposed Combined Plan of Reorganization and Disclosure Statement ("Debtor's Plan").  (Dkt. No. 62.)  At that same time, the Debtor noticed a hearing on its Disclosure Statement for November 7, 2013.  (Dkt. No. 63.)  Thereafter, the Debtor filed a motion for approval to sell its primary asset, the commercial real property located at 272 E. Santa Clara Street, San Jose, California (the "Property"), and a motion to assume and assign its only lease (the "Lease") related to that Property.  On October 31, 2013, this Court entered separate orders approving both the sale of the Property (Dkt. No. 89) and the assumption and assignment of the Lease (Dkt. No. 90).  On or about November 7, 2013, the Debtor closed on the sale of the Property and assignment of the Lease at a price of $7,580,000.  After payment of real estate commissions, closing costs and outstanding real property taxes, the Debtor paid secured creditor BOSTON PRIVATE BANK & TRUST COMPANY, formerly known as and successor to Borel Private Bank & Trust Company ("BPB") $3,241,017.20, leaving Debtor with net sale proceeds in the amount of $3,616,394.85.  According to the Debtor, when combined with post-petition rents it has received, the Debtor is currently holding in its debtor-in-possession bank accounts a total of at least $3,814,794.80 (collectively, the "Estate Funds").  (Dkt. No. 94, at 10:9-10.)

As a result of the sale transaction, on or about November 7, 2013, the Debtor did not proceed with the hearing on its Disclosure Statement and the case was set for further status conference on January 9, 2014.  Additionally, at this point, the Debtor has liquidated its assets

---

[1] Terms shall have the meanings as specified herein; however, any term not defined herein but defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

and ceased business operations, except to the extent that it continues to hold the Estate Funds.

BPB now proposes this plan of reorganization dated December 5, 2013 (the "BPB Plan") pursuant to Chapter 11 of the Bankruptcy Code. Based upon the Debtor's Schedules of Assets and Liabilities, including amendments thereto (Dkt. Nos. 1 and 57) (collectively, the "Schedules"), as well as the Proofs of Claim on file herein, the Debtor currently holds more than sufficient Estate Funds to pay all Allowed Claims as well as Court-approved Administrative Expenses on the Effective Date. Since the Debtor has ceased business operations, it has no ongoing business operating expenses. The Debtor's ongoing expenses solely relate to the expenses associated with administering its estate, including fees and costs to be incurred in connection with resolving BPB's claim and prosecuting its alleged claims against BPB. The Debtor's claims against BPB arise from its assertion that BPB purportedly had knowledge of alleged environmental conditions relating to the Property, allegedly failed to disclose such conditions to Debtor prior to its foreclosure on the Property, and allegedly violated the automatic stay in receiving post-petition rents from the Property (collectively, "Debtor's Claims Against BPB"). BPB disputes each and every one of the Debtor's Claims Against BPB. The BPB Plan resolves the Debtor's Claims Against BPB by settling and releasing them in exchange for a discounted payment to BPB on the unpaid balance of its Allowed Claim after resolution of the other objections the Debtor has asserted to BPB's Claim.

The BPB Plan effective date (the "Effective Date") will be the first business day of the first full calendar month that is at least fifteen (15) calendar days following the later of (i) the Confirmation Date, or (ii) the date of entry of the Court order resolving any objection to BPB's Claim when and provided that all of the following conditions to the effectiveness of the BPB Plan have been satisfied or waived by the Debtor: (a) there shall not be any stay in effect with respect to the BPB Plan Confirmation Order; (b) the court order confirming the BPB Plan (the "BPB Plan Confirmation Order") shall not be subject to any appeal or rehearing; and (c) the BPB Plan and all documents, instruments and agreements to be executed in connection with the BPB Plan shall have been executed and delivered by all parties to such documents, instruments and agreements. Following the Effective Date, the Debtor shall be referred to as the "Reorganized Debtor."

Hopkins & Carley
Attorneys At Law
San Jose ● Palo Alto
Burbank

## ARTICLE 2. DEFINITIONS

For the purposes of the BPB Plan, except as otherwise defined above, the following terms shall have the meanings specified below. Any term used in the BPB Plan that is not defined herein, but that is defined in the Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Code or the Bankruptcy Rules.

2.1 "Administrative Claim" means any Claim, including but not limited to claims for compensation of professionals made pursuant to section 330 of the Code, entitled to be treated as a Priority Claim under section 507(a)(2) of the Code.

2.2 "Allowed Administrative Claim" means an Administrative Claim that is an Allowed Claim.

2.3 "Allowed Claim" means any Claim in the amount and classification set forth in a proof of claim filed with the Court within the time fixed by the Court, or in the absence of such filing, as set forth in the Debtor's Schedules filed in the Case, unless the Claim was listed in the Schedules as disputed, contingent or unliquidated, in any event as to which no objection to the allowance thereof has been interposed within the applicable period fixed in the BPB Plan or the Confirmation Order, or as to which any such objection has been determined by an order of the Court providing for allowance. Multiple proofs of claim of the same Class filed by a Creditor shall be aggregated and shall constitute a single Claim. The allowance of Administrative Claims shall be governed by the applicable provisions of the Code.

2.4 "Allowed Interest" means the Interest held by a member of the Debtor as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed in the BPB Plan or the Confirmation Order, or as to which any such objection has been determined by an order or judgment.

2.5 "Allowed Secured Claim" means an Allowed Claim secured by a Lien, security interest or other charge against property in which the Estate has an interest, or which is subject to setoff under section 553 of the Code, to the extent of the value (determined in accordance with section 506(a) of the Code) of the interest of such Allowed Secured Claim in the Estate's interest in such property or to the extent of the amount subject to setoff, as the case may be.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S PLAN OF REORGANIZATION: CASE NO. 13-53491

2.6 "Allowed Tax Claim" means a Tax Claim that is an Allowed Claim.

2.7 "Allowed Unsecured Claim" means an Unsecured Claim that is an Allowed Claim.

2.8 "Allowed Wage Claim" means a Wage Claim that is an Allowed Claim.

2.9 "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and any amendments thereof.

2.10 "Bar Date" means, for all creditors except a governmental unit, October 29, 2013, and for governmental units, before 180 days after the date relief was entered, is the last day for filing proofs of claim against the Debtor as fixed by order of the Court.

2.11 "BPB Plan" means BPB's Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

2.12 "Case" means the chapter 11 bankruptcy reorganization case of the Debtor, designated as 13-53491, pending before the Court.

2.13 "Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined in section 101(5) of the Code.

2.14 "Claimant" means the holder of a Claim against the Debtor or the Estate.

2.15 "Class" means a grouping of substantially similar Claims or Interests as designated in Article V of the BPB Plan.

2.16 "Code" means the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, and any amendments thereof.

2.17 "Confirmation" means the entry of an order by the Court confirming the BPB Plan at or after hearing pursuant to section 1129 of the Code.

2.18 "Confirmation Date" means of the date of entry of the court order confirming the BPB Plan.

2.19 "Consummation" means completion of all Distributions to be made under the BPB Plan.

2.20 "Court" means the United States Bankruptcy Court for the Northern District of California before which the Case is pending or, in the event such court ceases to exercise

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

jurisdiction over the Case, such court or adjunct or unit thereof that exercises jurisdiction over the

Case in lieu of the United States Bankruptcy Court for the Northern District of California.

2.21    "Creditors" means all entities with Claims against the Debtor or the Estate.

2.22    "Debt" means liability on a Claim.

2.23    "Debtor" means 272 E Santa Clara Grocery, LLC.

2.24    "Debtor's Equity Holders" means the members of 272 E Santa Clara Grocery,

LLC.

2.25    "Disbursing Agent" means the Reorganized Debtor.

2.26    "Disclosure Statement" means the Debtor's Disclosure Statement as approved by

order of the Court entered on *[Date of Order Approving Disclosure Statement].*

2.27    "Disputed Claims" means Claims against the Debtor or the Estate as to which an

objection has been filed no later than one-hundred and twenty (120) days after the Effective Date

(or such later date as may be fixed by the Court) by the Debtor or the Reorganized Debtor and

which objection has not been withdrawn or resolved by the entry of a Final Order.

2.28    "Distribution(s)" means the property (including payments) required by the BPB

Plan to be provided to the holders of Allowed Claims.

2.29    "Effective Date" means the date will be the first business day of the first full

calendar month that is at least fifteen (15) calendar days following the <u>later</u> of (i) the

Confirmation Date or (ii) the date of entry of the court order resolving any objection to BPB's

Claim when and provided that all of the following conditions to the effectiveness of the BPB Plan

have been satisfied or waived by the Debtor: (a) there shall not be any stay in effect with respect

to the BPB Plan Confirmation Order; (b) BPB Plan Confirmation Order shall not be subject to

any appeal or rehearing; and (c) the BPB Plan and all documents, instruments and agreements to

be executed in connection with the BPB Plan shall have been executed and delivered by all

parties to such documents, instruments and agreements.

2.30    "Estate" means the bankruptcy estate created upon commencement of the Case

pursuant to section 541(a) of the Code.

2.31    "Final Order" means an order of the Court that has been entered and either:

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO
BURBANK

2.31.1    The time for appeal from such entered order has expired with no appeal having been filed timely; or

2.31.2    Any appeal that had been filed timely has been dismissed or otherwise finally determined.

2.32    "Impaired" shall have the meaning provided in section 1124 of the Code.

2.33    "Interests" means the equity security interests in the Debtor.

2.34    "Lien" has the meaning provided by section 101(37) of the Code.

2.35    "Order of Confirmation" means the order of the Court confirming the BPB Plan pursuant to section 1129 of the Code.

2.36    "Petition Date" means the date on which the Debtor filed its chapter 11 petition with the Clerk of the Court, June 27, 2013.

2.37    "Priority Claim" means any claim entitled to priority treatment pursuant to section 507 of the Code, except for Administrative Claims and Tax Claims.

2.38    "Property" means the improved real property located at 272 E. Santa Clara Street, San Jose, California.

2.39    "Property of the Estate" has the meaning provided by section 541 of the Code.

2.40    "Pro Rata" means proportionately so that the ratio of the amount of the Distribution made on account of a particular Allowed Claim to the Distributions made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount of such particular Allowed Claim to the total amount of Allowed Claims of the Class of which such particular Allowed Claim is included.

2.41    "Reorganized Debtor" means the Debtor following the Confirmation Date.

2.42    "Secured Claim" means a Claim secured by a Lien on Property of the Estate.

2.43    "Tax Claim" means a Claim entitled to priority treatment pursuant to section 507(a)(8) of the Code.

2.44    "Unclaimed Property" means any Distributions which are unclaimed for a period of ninety (90) days following the date of distribution. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

proper forwarding address, (b) funds for checks which have not been paid, (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address with which to mail or deliver such property, and (d) interest on cash constituting Unclaimed Property.

2.45    "Unsecured Claim" means a Claim that is not secured by any Lien on Property of the Debtor or Property of the Estate.

2.46    "Wage Claim" means a Claim entitled to priority treatment pursuant to section 507(a)(4) and/or (5) of the Code.

## ARTICLE 3.  CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to the BPB Plan:

3.1    To the extent any Claim or portion of any Claim of a Creditor is a Disputed Claim, or is otherwise contingent or unliquidated, or has not been allowed by the Court, the Disbursing Agent may either reserve and segregate such Distribution under the BPB Plan as is sufficient to provide for each of such Claims under the BPB Plan, ask the Court to determine an appropriate reserve, or ask the Court to estimate for purposes of allowance any contingent or unliquidated Claim which would otherwise delay the administration of the Case.

3.2    Pursuant to section 1123 of the Code, Article 5 of the BPB Plan designates four (4) classes of Claims and Interests.  As set forth below, Administrative Claims and Tax Claims of the kind specified in sections 507(a)(2) and 507(a)(8) of the Code, respectively, have not been classified and are excluded from the classes set forth in Article 5 of the BPB Plan, in accordance with section 1123(a)(l) of the Code.  A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim or an Allowed Secured Claim in that Class.  Multiple proofs of claim filed by a Creditor which qualify for inclusion within the same Class shall be aggregated and, if allowed, shall constitute a single Allowed Claim.

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO
BURBANK

- 7 -

# ARTICLE 4.  ADMINISTRATIVE EXPENSES AND UNCLASSIFIED CLAIMS

## 1.    Administrative Expenses

The holders of Allowed Administrative Claims entitled to priority under section 507(a)(2) of the Code, entities entitled to payments under section 546(c) or 553 of the Code, and entities entitled to payment of administrative expenses pursuant to sections 503 and 507(a) of the Code shall receive on account of such Allowed Claims or administrative expenses cash in the amount of such Allowed Claims or administrative expenses as set forth in the chart below.

The following chart lists all of the Debtor's 11 U.S.C. § 507(a)(1) administrative claims and their treatment under the BPB Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Campeau, Goodsell, Smith LLC ("CGS"), the Debtor's bankruptcy counsel | $75,000[2] (estimated) | Paid in full from Estate Funds upon the later of (a) the Effective Date; and (b) the date of entry of the order allowing the final fee application. |
| Clerk's Office Fees | $0 (estimated) | BPB is not aware of any fees presently owed to the Clerk's Office. To the extent such fees will exist on the Effective Date, they shall be paid in full from Estate Funds on the Effective Date. |
| Office of the U.S. Trustee Fees | $0 (estimated) | BPB is not aware of any fees presently owed to the U.S Trustee.  To the extent such fees exist on the Effective Date, they shall be paid in full from Estate Funds on the Effective Date.  To the extent such fees exist post-confirmation, they will be paid when due. |
| **TOTAL** | $75,000 (estimated) | |

The Court must rule on all fees listed in this chart before the fees will be owed, except for fees owing to the Clerk's Office and U.S. Trustee or fees to be paid from non-Debtor sources. The professionals listed above must file and serve a properly noticed fee application, and the Court must rule on the application.  Only the amount of fees and expenses allowed by the Court

---

[2] This is an estimate of fees by CGS in the First Interim Application For Compensation And Reimbursement of Expenses By Attorney For Debtor (Dkt. No. 97) and does not reflect any retainer received by CGS.  According to Debtor's Monthly Operating Report for the month ending October 31, 2013, Debtor's "Assets" include $20,000 "Retainer(s) paid to professionals."  It is only an estimate and actual fees may be higher or lower.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

pursuant to sections 330 or 503(b)(2) through (9) of the Code will be owed and required to be paid under the BPB Plan, unless any such professional or other entity consents prior to Confirmation to other treatment. As discussed in the Disclosure Statement, the Debtor will have sufficient funds from the Estate Funds to satisfy the foregoing administrative claims.

**Estate professionals and administrative claimants are not entitled to vote on confirmation of the BPB Plan.**

**2.      Priority Tax Claims**

Holders of Allowed Tax Claims entitled to priority under section 507(a)(8) of the Code will be paid on account of such Claims. Payment of Allowed Tax Claims shall include payment of interest at the rate applicable under non-bankruptcy law to such Claims. The following chart lists all of the Debtor's 11 U.S.C. § 507(a)(8) Claims and their treatment under the BPB Plan:

| Name | Amount owed | Treatment |
|---|---|---|
| Internal Revenue Service ("IRS") | $100.00[3] | Paid in full from Estate Funds on the Effective Date. |
| **TOTAL** | $100.00 | |

**Priority tax claimants are not entitled to vote on confirmation of the BPB Plan.**

**ARTICLE 5.   DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS**

Claims and Interests are classified under the BPB Plan as follows:

**1.      Class 1:  Secured Tax Claims**

The following chart identifies all of the Class 1 Secured Tax Claims and their treatment under the BPB Plan:

| NAME | DESCRIPTION | DISPUTED (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| Santa Clara County Tax Collector | Collateral description: lien against the Property per Cal. Rev. & Tax Code sections 2191.3 and 2191.4, transferred to net sale proceeds per court order (Dkt. | Y | N | The Santa Clara County Tax Collector received payment in the amount of approximately $247,595.95 at the time of the close of Debtor's sale of the Property and assignment of Lease on or about November 7, 2013 to resolve Claim 5-1 filed in this matter. Subsequently, the Santa Clara County Tax |

---

[3] Based upon Claim No. 1, filed by the IRS on or about July 23, 2013. (Claim 1-1.)

- 9 -

Hopkins & Carley
Attorneys At Law
San Jose ●Palo Alto
Burbank
CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S PLAN OF REORGANIZATION CASE NO. 13-53491

Case: 13-53491   Doc# 108   Filed: 12/05/13   Entered: 12/05/13 16:29:21   Page 12 of 24

| NAME | DESCRIPTION | DISPUTED (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
|  | No. 89.)<br><br>Amount of Claim: $48,281.96, plus monthly interest in the amount of 1.5%[4] |  |  | Collector filed an amended claim, Claim 5-2, in the amount of $48,281.96, plus interest. Since Debtor no longer owns the Property, BPB believes this liability is not Debtor's and no payment is owed. However, in the event it is determined prior to the Effective Date that Debtor is obligated to pay this Claim, it will be paid in full, including accrued interest, from Estate Funds on the Effective Date. |
|  | **TOTAL** |  |  | $48,281.96, plus accrued interest[5] |

  **Class 1 is <u>not impaired</u>; therefore, claims in this class are not entitled to vote on the BPB Plan and are deemed to have accepted the BPB Plan.**

  **2.  Class 2: BPB's Secured Claim**

  The following chart identifies the Class 2 BPB Secured Claim and its treatment under the BPB Plan:

| NAME | DESCRIPTION | DISPUTED (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| BPB | Collateral description: Deed of Trust against, and Assignment of Rents in the Property, transferred to net sale proceeds per court order (Dkt. No. 89.)<br><br>Collateral value: approx. $3,814,794.80<br><br>Amount of Claim: $635,000 est. as of 11/15/13 | Y | Y | Payment of BPB's allowed claim (after resolution of the objections other than the Debtor's Claims Against BPB), now estimated to be $565,583.32, plus interest and fees which continue to accrue, and less the sum of $25,000, paid from Estate Funds on the Effective Date, together with a general release in a form reasonably acceptable to BPB of any and all claims of the Debtor or its predecessors, known or unknown, arising out of the past business relationship between the Debtor and its predecessors, on the one hand, and BPB or its predecessors on the other hand, including any claims based on or arising out of the environmental condition of the Property. |

---

[4] Based upon Amended Claim No.54, filed by County Tax Collector on or about November 19, 2013. (Claim 5-2.)
[5] This is a maximum amount presuming full payment to the Santa Clara County Tax Collector is required.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO
BURBANK

| | | | | |
|---|---|---|---|---|
| | | | | Pending the payment of the claim, BPB shall continue to retain its lien on the Estate Funds with the same validity, extent and priority until the obligation hereunder is satisfied. The treatment of BPB's allowed claim described herein shall be in full settlement and satisfaction of such claim. |
| | **TOTAL** | | | $540,583.32, plus accrued interest and fees (estimated) |

The secured claim of BPB is <u>impaired</u> and, therefore, is entitled to vote on the BPB Plan.

### 3.    Class 3:  General Unsecured Claims

General Unsecured Claims are Unsecured Claims not entitled to priority under Bankruptcy Code Section 507(a) or any other provision of the Code.  The following chart identifies all of the Class 3 General Unsecured Claims and their treatment under the BPB Plan:

| <u>CLAIMANT</u> | <u>AMOUNT</u> | <u>DISPUTED (Y/N)</u> | <u>IMPAIRED (Y/N)</u> | <u>TREATMENT</u> |
|---|---|---|---|---|
| Andrew Lewis | $668,241.00[6] | N | N | Following payment in full of Class 1 and Class 2 Claims, such Class 3 Claim to be paid in full, including purportedly agreed interest at the rate of 16.5%, from Estate Funds on the Effective Date. |
| ERAS Environmental, Inc. | $6,359.10 | N | N | $0.00 (This claim has been paid in full as confirmed by this creditor on November 5, 2013.  See, Dkt. No. 92.) |
| Ogen Perry | $80,000.00[7] | N | N | Following payment in full of Class 1 and Class 2 Claims, such Class 3 Claim to be paid in full, including purportedly agreed interest at the rate of 16.5%, from Estate Funds on the Effective Date. |
| Rossi, | $5,914.21[8] | N | N | Following payment in full of |

---

[6] As set forth in Debtor's Amended Schedule F, filed August 19, 2013.  (Dkt. No. 57.)
[7] As set forth in Debtor's Amended Schedule F, filed August 19, 2013.  (Dkt. No. 57.)
[8] As set forth in Debtor's Amended Schedule F, filed August 19, 2013.  (Dkt. No. 57.)

- 11 -

CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S PLAN OF REORGANIZATION; CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

Case: 13-53491   Doc# 108   Filed: 12/05/13   Entered: 12/05/13 16:29:21   Page 14 of 24

| | | | | |
|---|---|---|---|---|
| Hamerslough, et al. | | | | Class 1 and Class 2 Claims, such Class 3 Claim to be paid in full, including statutory interest of 10%, from Estate Funds on the Effective Date. |
| Grocery Outlet LLC | $0.00[9] | N | N | $0.00 (This creditor's claim was stated to be contingent only, never amended, and resolved by virtue of the assignment of the Lease per court order, see Dkt. No. 90.) |
| | **TOTAL** | | | $754,155.21, plus accrued interest |

**Class 3 is <u>not impaired</u>; therefore, claims in this class are not entitled to vote on the BPB Plan and are deemed to have accepted the BPB Plan.**

      **4.     Class 4:  Debtor's Equity Holders**

Debtor's Equity Holders are unsecured and not entitled to priority under Bankruptcy Code Section 507(a) or any other provision of the Code.  Under the BPB Plan, the Debtor's Equity Holders will retain their respective ownership interests in the Debtor and, therefore, are not impaired.

**Class 4 is <u>not impaired</u>; therefore, the Debtor's Equity Holders are not entitled to vote on the BPB Plan and are deemed to have accepted the BPB Plan.**

  **ARTICLE 6.  MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**

      6.1    *Funding the Plan.*

On or about November 7, 2013, the Debtor closed on the sale of the Property and assignment of the Lease at a price of $7,580,000.  After payment of real estate commissions, closing costs and outstanding real property taxes, and payment to BPB, Debtor received net sale proceeds in the amount of $3,616,394.85.  According to the Debtor, when combined with post-petition rents it has received, the Debtor holds the Estate Funds in the total amount of at least $3,814,794.80.  (Dkt. No. 94, at 10:9-10.)

As described above, the BPB Plan will use the Estate Funds as follows:

---

[9] Based upon Claim No. 4, filed by Grocery Outlet, LLC on or about October 24, 2013.  (Claim 4-1.)

- 12 -

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

| | | | |
|---|---|---|---|
| Administrative | - | $ | 75,000.00 (est.) |
| Priority Tax | - | $ | 100.00 |
| Class 1 | - | $ | 48,281.96 (est.) |
| Class 2 | - | $ | 400,000.00 (est.) |
| Class 3 | - | $ | 754,155.21 (est.) |
| TOTAL | - | $1,277,537.17 (est.) | |

Based on the foregoing required BPB Plan payments (even when adding the interest that will accrue up to the Effective Date), the Estate Funds are more than triple the amount needed to satisfy all of the payments required under the BPB Plan. Consequently, BPP is confident that the Debtor will have more than sufficient cash on hand to make all required BPB Plan payments on the Effective Date.

      6.2    *Disbursements*.

      6.2.1    The Reorganized Debtor shall act as Disbursing Agent and shall make all Distributions in accordance with the BPB Plan. To make the Distributions due under the BPB Plan, the Reorganized Debtor, as Disbursing Agent, shall distribute all payments called for by the BPB Plan. The Disbursing Agent shall serve without bond and shall not receive any compensation for distribution services rendered and expenses incurred pursuant to the BPB Plan.

      6.2.2    Disbursements to be made by the Reorganized Debtor under the BPB Plan shall be made by check drawn on a domestic bank or by wire transfer, at the sole election of the Reorganized Debtor.

      6.2.3    Except as otherwise agreed to by the Reorganized Debtor in writing, disbursements under the BPB Plan made by check may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address.

/ / /

6.2.4    Checks issued by the Reorganized Debtor to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Reorganized Debtor by the holder of the allowed claim to whom such check originally was issued, prior to the expiration of one hundred and twenty (120) days from the date of issuance of such check.  After such date, the claim shall be deemed disallowed and the monies otherwise payable on account of such claim shall revest in the Reorganized Debtor free and clear of all claims and interests.

6.2.5    In connection with the BPB Plan and any instruments issued in connection therewith, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all disbursements under the BPB Plan shall be subject to any such withholding or reporting requirements.

6.3    *Interest Pending Allowance of Claims And Disbursement.*

6.3.1    Except as specifically provided for in the BPB Plan, in the BPB Plan Confirmation Order, or in some other order of the Court, interest shall not accrue on claims and no holder of a claim shall be entitled to interest accruing on or after the Petition Date on any claim.

6.3.2    To the extent the Debtor or any other party in interest objects to the allowance of any claim, nothing in the Plan or herein shall be deemed to imply or create for the holders of any Disputed Claims any entitlement to receive interest upon the allowed amount of any such Disputed Claims as a result, *inter alia*, of the delay in payment of such claims, except as expressly stated in the treatment pursuant to the BPB Plan.

6.4    *Reserve for Disputed Claims.*

6.4.1    Since the BPB Plan calls for the settlement or resolution of Disputed Claims on or by the Effective Date, no reserves for the holders of Disputed Claims is necessary.

6.5    *Unclaimed Distributions.*

6.5.1    The Reorganized Debtor shall deposit any Unclaimed Property in an Unclaimed Property Reserve to be held in trust for the benefit of the holders of Allowed Claims

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO
BURBANK

- 14 -

CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S PLAN OF REORGANIZATION, CASE NO. 13-53491

entitled thereto under the terms of the BPB Plan. For a period of ninety (90) days following the date of distribution, Unclaimed Property, including any principal, interest and dividends, in cash or in kind, as may have been paid on account of any such Unclaimed Property shall be held in the Unclaimed Property Reserve solely for the benefit of the holders of Allowed Claims which have failed to claim such property. Until the expiration of ninety (90) days following the distribution date, Unclaimed Property due to the holder of an Allowed Claim shall be released from the Unclaimed Property Reserve and delivered to such holder upon presentation of proper proof by such holder of its entitlement thereto.

6.5.2    At the end of ninety (90) days following the distribution date, the holders of Allowed Claims theretofore entitled to Unclaimed Property shall cease to be entitled thereto, and the Unclaimed Property shall then become property of the Reorganized Debtor.

6.6    *Revesting of Property of Estate*. On the Effective Date, except as otherwise provided in the BPB Plan, the Reorganized Debtor shall be revested with all property that was formerly Property of the Estate (including, without limitation, all claims belonging to the Debtor or the Estate) free and clear of all Liens, Claims and interests.

6.7    *Post-Confirmation Operations*. The Reorganized Debtor shall continue the business engaged in by the Debtor. It is contemplated that the Reorganized Debtor will operate its business in the ordinary course except as otherwise provided in the BPB Plan. Upon the Effective Date, the Reorganized Debtor may operate and engage in its business free of any restrictions of the Code, the Bankruptcy Rules, the Court, or the Office of the United States Trustee, except if and as specifically set forth in the BPB Plan.

6.8    *Execution and Delivery of Documents*. The Debtor and the Reorganized Debtor are authorized to execute and deliver documents and instruments as are necessary or appropriate to promote and implement Consummation of the BPB Plan or to carry out the purposes of the BPB Plan.

6.9    *Objections to Claims and Interests*. Pursuant to 11 U.S.C. § 502(a), any party in interest may assert objections to claims. Objections to claims other than BPB's claim, which is resolved by the BPB Plan at set forth above, shall be filed not later than one hundred and twenty

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S PLAN OF REORGANIZATION; CASE NO. 13-53491

(120) days after the Effective Date. As provided by Section 502(c) of the Code, the Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the BPB Plan. The Court shall retain jurisdiction over the Debtor, the Reorganized Debtor and the Case to resolve such objections to claims following the confirmation of the BPB Plan.

6.10    *Bar Date*. The last day for filing proofs of claim against the Debtor shall be the Bar Date already fixed by the Court, except for Administrative Claims. The deadline for filing Administrative Claims, including Claims for compensation and reimbursement of professional persons employed pursuant to Court order in the Case, will be fixed by the Court.

6.11    *Retention and Enforcement of Claims*. Pursuant to section 1123(b)(3) of the Code, the Reorganized Debtor may maintain and enforce any Claims of the Debtor or the Estate, except as are released and/or waived pursuant to the BPB Plan.

6.12    *Court and United States Trustee Fees*. Prior to the Effective Date, all fees due from the Debtor to the Clerk of the Court and all fees due from the Debtor to the United States Trustee shall be paid in full.

6.13    *Implementation Reports*. Following the Effective Date and through Consummation of the Plan, the Reorganized Debtor shall file implementation reports with the Clerk of the Court every sixty (60) days setting forth the status of implementation of the BPB Plan. Upon Consummation of the BPB Plan, the Reorganized Debtor will file an application with the Clerk of the Court requesting the entry of a final decree closing the Case.

**ARTICLE 7. EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND PREVIOUSLY ASSUMED LEASES**

7.1    *Assumptions*. The following executory contracts and unexpired leases will be assumed on the Effective Date of the BPB Plan (collectively the "Assumed Contracts"):[10]

| Name Of Counter-Party | Description Of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number Of Installments |
|---|---|---|---|---|
| Rossi, | Professional legal | $5,914.21 | Paid in full on | Paid in full on |

---
[10] The description and assumption of the Assumed Contracts is based upon the Debtor's Plan. (See, Dkt. No. 62, at pp. 7-8.)

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

| Hamersloug, et al. | services, hourly fee related to defending BPB claims | | Effective Date (See, Class 3, above) | Effective Date (See, Class 3, above) |
|---|---|---|---|---|
| Rossi, Hamerslough, Et al. | Professional legal services, contingency fee related to claim against guarantors | $0.00 | n/a | n/a |
| | | | | |

Debtor will perform all pre-confirmation and post-confirmation obligations under the Assumed Contracts. Post-confirmation obligations under the Assumed Contracts will be paid when they come due. BPB believes that, once distributions are made under the BPB Plan, there will be no pre-confirmation arrears on any of the Assumed Contracts.

7.2     *Rejections.* On the Effective Date, executory contracts and unexpired leases which the Debtor did not specifically assume under the BPB Plan will be rejected.

7.3     *Deadline to File Rejection Claim.* Claims arising from rejection of executory contracts and unexpired and previously assumed leases under the BPB Plan must be filed with the Clerk of the Court no later than thirty (30) days following the Effective Date. Failure to timely file such Claims shall result in their disallowance.

## ARTICLE 8.   POST-CONFIRMATION EMPLOYMENT AND COMPENSATION OF PROFESSIONALS

After the Confirmation Date, the Reorganized Debtor may employ, without notice, hearing or order of the Court, such attorneys, accountants and other professionals as it may desire to render services on such terms as it deems reasonable. With respect to services rendered by professional persons employed by the Reorganized Debtor after the Confirmation Date, the Reorganized Debtor shall be authorized to pay for such services, related costs and expenses without notice, hearing or order of the Court; provided however, that with respect to fees, costs and expenses of such professional persons for services rendered after the Confirmation Date in or in connection with the Case, or in connection with the BPB Plan and incident to the Case, in the

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

- 17 -

event the Reorganized Debtor disputes the reasonableness of any such fees, costs or expenses, the Reorganized Debtor shall pay such professional person only the undisputed amount, if any, and file an application with the Court to determine the reasonableness of the fees, costs or expenses which are in dispute.

## ARTICLE 9.  DISCHARGE

9.1     *Discharge of Debts*.  Pursuant to section 1141(d)(1) of the Code, except as otherwise provided in the BPB Plan, Confirmation of the BPB Plan will discharge the Debtor from any Debt that arose prior to the Confirmation Date, and any Debt of any kind specified in section 502(g), 502(h), or 502(i) of the Code, whether or not:  (1) a proof of Claim based on such Debt is filed or deemed filed under section 501 of the Code; (2) such Claim is allowed under section 502 of the Code; or (3) the holder of such Claim accepts the Plan.

9.2     *Judgments Obtained on Discharged Debts are Void*.  Pursuant to section 524(a)(l) of the Code, the Debtor's discharge pursuant to Confirmation of the BPB Plan under section 1141 of the Code, voids any judgments at any time obtained, to the extent that such judgment is a determination of the personal liability of the Debtor with respect to any Debt discharged, whether or not discharge of such Debt is waived.

9.3     *Discharge Injunction*.  Pursuant to section 524 of the Code, the Debtor's discharge pursuant to the BPB Plan under section 1141 of the Code operates as an injunction against the commencement or a continuation of an action, the employment of process, or an act, to collect, recover, or offset any discharged Debt as a personal liability of the Debtor, whether or not discharge of such Debt is waived.

9.4     *Reaffirmation Agreement*.  The Debtor has entered into or may enter into reaffirmation agreements which shall be enforceable to the extent enforceable under applicable non bankruptcy law, only if the reaffirmation agreement was entered into in accordance with the provisions of section 524 of the Code including, without limitation, that the agreement has been filed with the court, the debtor has not rescinded the agreement, and the court has not disapproved the agreement, after notice and a hearing, provided such hearing is concluded before the entry of the debtor's discharge.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO
BURBANK

- 18 -

**ARTICLE 10.  MODIFICATION OF THE BPB PLAN**

10.1    The BPB Plan may be modified upon motion of BPB prior to the Effective Date, without notice and a hearing and without additional disclosure pursuant to section 1125 of the Code provided that, after notice to the United States Trustee, counsel for the Debtor, and all parties who have filed and served a request for special notice in the Case, the Court finds that such modification does not materially or adversely affect any Creditor or any Class of Creditors.

10.2    At any time prior to Consummation, BPB may seek Court authorization to remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Confirmation Order, or effect such other changes, modifications, or amendments as may be necessary to carry out the purposes and intent of the Plan.

**ARTICLE 11.  GENERAL PROVISIONS**

11.1    *Jurisdiction*.  The Court will retain jurisdiction until Consummation of the Plan and an entry of a final decree closing the Case.  The Court shall further retain jurisdiction under the Plan for all purposes consistent with the Plan and the Code, which purposes include, but are not limited to:

11.1.1    The classification or allowance of a Claim of any Creditor and the reexamination of Claims which have been allowed for purposes of voting and the determination of such objections as may be filed against Creditors' Claims.

11.1.2    The determination of all questions and disputes regarding title to the assets of the Estate, and the determination of all causes of action, controversies, disputes or conflicts, including the right to participate in any Distribution from the Estate, whether or not subject to an action pending as of the Effective Date, between the Debtor and/or the Reorganized Debtor and any other party, including, but not limited to, any right of the Debtor and/or the Reorganized Debtor to recover assets pursuant to the provisions of the Code.

11.1.3    The correction of any defect, curing of any omission, or the reconciliation of any inconsistency in the Plan or in the Order of Confirmation, as may be necessary to carry out the purposes and intent of the Plan.

11.1.4    The determination of the allowability, validity and priority of Tax Claims

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO
BURBANK

- 19 -

against the Debtor or the Estate, whether such Claims are asserted before or after the Effective Date.

        11.1.5    The modification or amendment of the Plan after Confirmation pursuant to the Bankruptcy Rules or the Code.

        11.1.6    The enforcement and interpretation of the terms and provisions of the Plan.

        11.1.7    The entry of any order concluding or terminating the Case.

        11.1.8    The granting of extensions of any deadlines set herein.

        11.1.9    The administration of the Case, and implementation and Consummation of the Plan.

    11.2    *Interpretation*.  To the extent that the terms of the BPB Plan are inconsistent with the terms of any agreement or instrument concerning any Claim or Interest, or any other matter, the terms of the Plan shall control.

    11.3    *Binding Effect*.  Upon Confirmation of the BPB Plan, the Debtor and all Creditors and Interest holders, whether or not the Claim of such Creditor is Impaired under the BPB Plan and whether or not such Creditor or Interest holder has accepted the BPB Plan, shall be bound by the provisions of the Plan pursuant to section 1141(a) of the Code.

    11.4    *Default*.  Except as otherwise provided herein or in the Plan Confirmation Order, in the event that the Reorganized Debtor defaults in the performance of any of its obligations under the BPB Plan and fails to cure such default within ten (10) days of written notice of default from the creditor to whom performance is due, then the entity or individual to whom the performance is due may immediately pursue such remedies as are available at law or in equity. An event of default occurring with respect to one claim shall not be an event of default with respect to any other claim.

/ / /

/ / /

/ / /

/ / /

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ●PALO ALTO
BURBANK

CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S PLAN OF REORGANIZATION. CASE NO. 13-53491

1    11.5    *Applicable Law*.  The Plan is to be governed by and construed under the Code and

2  the laws of the State of California as they may be applicable.

3    11.6    *Implementation Orders*.  At any time, the Court may make such orders or give

4  such direction as may be appropriate under section 1142 of the Code.

5

6  Dated: December 5,  2013                           Respectfully submitted,

7                                                     BOSTON PRIVATE BANK & TRUST
                                                       COMPANY, formerly known as and successor
8                                                      to Borel Private Bank & Trust Company

9
                                                          /s/ Randy L. Zuckerman
10                                                     _____
                                                       BY:  Randy L. Zuckerman
11                                                             Senior Vice-President, Special Assets

12                                                     HOPKINS & CARLEY
13                                                     A Law Corporation

14

15                                                     By:  /s/ Stephen J. Kottmeier
                                                       _____
16                                                         Stephen J. Kottmeier
                                                           Jay M. Ross
17                                                         Attorneys for Secured Creditor BOSTON
                                                           PRIVATE BANK & TRUST COMPANY,
18                                                         formerly known as and successor to Borel
                                                           Private Bank & Trust Company

19

20

21

22

23

24

25

26

27

28

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ● PALO ALTO
BURBANK

- 21 -

CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S PLAN OF REORGANIZATION CASE NO. 13-53491

Case: 13-53491   Doc# 108   Filed: 12/05/13   Entered: 12/05/13 16:29:21   Page 24 of
24