Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151759)
jross@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: (408) 286-9800
Facsimile: (408) 998-4790

Attorneys for Plan Proponent BOSTON PRIVATE BANK & TRUST COMPANY, formerly known as and successor to Borel Private Bank & Trust Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>272 E. Santa Clara Grocery, LLC,<br><br>Debtor. | CASE NO. 13-53491<br><br>CHAPTER 11<br><br>**DISCLOSURE STATEMENT WITH RESPECT TO CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S CHAPTER 11 PLAN OF REORGANIZATION (DATED DECMEBER 5, 2013) FOR DEBTOR 272 E. SANTA CLARA GROCERY, LLC** |

Plan Proponent and secured creditor BOSTON PRIVATE BANK & TRUST COMPANY, formerly known as and successor to Borel Private Bank & Trust Company ("BPB"), provides the following Disclosure Statement in connection with its Plan of Reorganization (Dated December 5, 2013) (the "BPB Plan") for debtor and debtor-in-possession 272 E. Santa Clara, LLC ("Debtor") in the above-captioned chapter 11 case.

///

///

547\1055557.5

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

Case: 13-53491    Doc# 109    Filed: 12/05/13    Entered: 12/05/13 16:31:07    Page 1 of 18

# 1. INTRODUCTION

BPB is providing this Disclosure Statement to Debtor and all of the Debtor's Creditors,[1] holders of Interests, and other interested parties known to BPB in connection with the BPB Plan, a copy of which accompanies this Disclosure Statement. Based upon the Debtor's Schedules as well as the Proofs of Claim on file herein as of December 5, 2013, the Debtor currently holds more than sufficient Estate Funds to pay all Allowed Claims as well as Court-approved Administrative Expenses on the Effective Date. Since the Debtor has ceased business operations, it has no ongoing business operating expenses. The Debtor's ongoing expenses solely relate to the expenses associated with administering its estate, including fees and costs to be incurred in connection with resolving BPB's claim and prosecuting its alleged claims against BPB. The Debtor's claims against BPB arise from its assertion that BPB purportedly had knowledge of alleged environmental conditions relating to the Property, allegedly failed to disclose such conditions to Debtor prior to its foreclosure on the Property, and allegedly violated the automatic stay in receiving post-petition rents from the Property (collectively, "Debtor's Claims Against BPB"). BPB disputes each and every one of the Debtor's Claims Against BPB. The BPB Plan resolves the Debtor's Claims Against BPB by settling and releasing them in exchange for a discounted payment to BPB on the unpaid balance of its Allowed Claim after resolution of the other objections the Debtor has asserted to BPB's Claim.

If the BPB Plan is confirmed: BPB has agreed to reduce its Claim by an amount certain in exchange for the Debtor's release of BPB; Administrative Expenses associated with litigating the Debtor's Claims Against BPB will be minimized for the benefit of all Creditors and Interest holders; and all Allowed Claims will be paid in full.

The Plan provides fair and equitable treatment of all classes of Creditors and holders of Interests and the greatest feasible recovery to Creditors and holders of Interests. Accordingly, BPB requests that all Creditors and holders of Interests in Impaired Classes vote to accept the BPB Plan.

---

[1] Capitalized terms not defined in this Disclosure Statement shall have the meanings assigned to them in the BPB Plan.

## 2. PURPOSE OF DISCLOSURE STATEMENT AND PROCEDURE FOR PLAN CONFIRMATION

**a.     Purpose and General Information**

Pursuant to section 1125 of the Bankruptcy Code (11 U.S.C. § 1125), BPB submits this Disclosure Statement to provide Creditors and holders of Interests with adequate information to allow them to make an informed judgment about the acceptability of the BPB Plan.  Specifically, the purpose of this Disclosure Statement is to give Creditors and holders of Interests sufficient information, as is reasonably practicable for BPB to provide, that would allow a hypothetical reasonable investor typical of the holders of Claims and Interests in the classes Impaired under the BPB Plan to make an informed judgment about whether to accept or reject the BPB Plan.  A copy of the BPB Plan accompanies this Disclosure Statement.  Terms defined in the BPB Plan shall have the same meaning in this Disclosure Statement.  The first letter of words defined in the BPB Plan are capitalized in this Disclosure Statement.  Please refer to the BPB Plan for the treatment of Claims and Interests.  The provisions of the BPB Plan are binding on all Creditors and holders of Interests, therefore, please read the BPB Plan carefully.

**NO REPRESENTATIONS ABOUT THE DEBTOR, PARTICULARLY ABOUT THE DEBTOR'S FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS PROPERTY, ARE AUTHORIZED BY BPB OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE BPB PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY ANY CREDITOR OR INTEREST HOLDER.  ANY ADDITIONAL REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED TO COUNSEL FOR BPB OR TO THE UNITED STATES TRUSTEE WHO, IN TURN, SHALL DELIVER THE INFORMATION TO THE BANKRUPTCY COURT OR TAKE OTHER APPROPRIATE ACTION.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON,**

547\1055557.5                                         - 3 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF
SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491    Doc# 109    Filed: 12/05/13    Entered: 12/05/13 16:31:07    Page 3 of 18

**AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ABSOLUTE ACCURACY, BPB IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS COMPLETE AND ACCURATE, BPB HAS RELIED UPON FILINGS AND REPRESENTATIONS OF THE DEBTOR TO TRY TO PRESENT COMPLETE AND ACCURATE INFORMATION. COUNSEL TO BPB HAS NOT INDEPENDENTLY VERIFIED ANY OF THE INFORMATION PROVIDED BY THE DEBTOR AND DOES NOT MAKE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE TRUTH OR ACCURACY OF ANY OF THE INFORMATION PRESENTED.**

**ALL PARTIES ENTITLED TO VOTE ON THE BPB PLAN ARE URGED TO REVIEW IN FULL THE BPB PLAN AND THIS DISCLOSURE STATEMENT TOGETHER WITH ALL EXHIBITS ATTACHED THERETO, PRIOR TO VOTING ON THE BPB PLAN, AND MAY DESIRE TO CONSULT LEGAL COUNSEL PRIOR TO VOTING TO ENSURE COMPLETE UNDERSTANDING OF THEIR TREATMENT UNDER THE BPB PLAN. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS AND HOLDERS OF INTERESTS OF THE DEBTOR TO ENABLE THEM TO MAKE AN INFORMED DECISION ABOUT THE BPB PLAN.**

**EACH CREDITOR AND INTEREST HOLDER IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE BPB PLAN TO IT UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND FOREIGN TAX LAWS. BPB MAKES NO WARRANTIES OR REPRESENTATIONS REGARDING THE TAX IMPACT OF THE BPB PLAN ON ANY CREDITOR OR INTEREST HOLDER.**

**RISKS AND OPPORTUNITIES ARE IDENTIFIED IN THE DISCLOSURE STATEMENT CONCERNING THE DEBTOR'S ABILITY TO PERFORM UNDER THE BPB PLAN. THE RISKS AND OPPORTUNITIES ARE DISCUSSED IN ARTICLE 8(b) OF THIS DISCLOSURE STATEMENT.**

**BPB BELIEVES THAT THE BPB PLAN IS FEASIBLE, FAIR AND EQUITABLE**

547\1055557.5 - 4 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto
Burbank

Case: 13-53491   Doc# 109   Filed: 12/05/13   Entered: 12/05/13 16:31:07   Page 4 of 18

1 **AND THAT CONFIRMATION OF THE BPB PLAN IS IN THE BEST OF INTERESTS
2 OF CREDITORS AND HOLDERS OF INTERESTS.**

       **b.     Manner of Voting**

            i.     **Classes Entitled to Vote.**  The BPB Plan divides the Claims of Creditors and holders of Interests into four (4) classes.  Only classes of Creditors and holders of Interests with claims or interests impaired under a plan of reorganization are entitled to vote on a plan.  Generally, and subject to the specific provisions of the Bankruptcy Code, this includes creditors and holders of Interests whose claims or interests, under a plan, will be modified in terms of principal, interest, length of time for payment, or a combination of the above.  Each holder of a Claim in a Class that is not Impaired under the BPB Plan is conclusively presumed to have accepted the BPB Plan, and solicitation of acceptances from the holders of such Claims is not required and will not be undertaken.

The Creditors in Class 1, Secured Tax Claims, and Class 3, General Unsecured Claims, are not Impaired under the BPB Plan.  Class 2, BPB's Secured Claim, however, is Impaired under the BPB Plan and the member of that Class are entitled to vote to accept or reject the BPB Plan.  Class 4 Interests are not Impaired under the BPB Plan.

            ii.     **Procedure For Voting.**  All Creditors and holders of Interests entitled to vote may cast their vote by completing, dating, and signing the Ballot included with this Disclosure Statement and mailing it to:

*Hopkins & Carley*
*Attn: Stephen J. Kottmeier, Esq.*
*70 S. First Street*
*San Jose, CA 95113.*

**IN ORDER TO BE COUNTED, THE COMPLETED BALLOT MUST BE RECEIVED NO LATER THAN THE DATE FIXED FOR ACCEPTANCE OR REJECTION OF PLAN, WHICH IS _____, 2014.  A BALLOT DOES NOT CONSTITUTE A VALID PROOF OF CLAIM IN THE DEBTOR'S CASE.**

       **c.     Confirmation of the BPB Plan**

            i.     **Solicitation of Acceptance of the BPB Plan.**  This Disclosure Statement

547\1055557.5       - 5 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

Case: 13-53491    Doc# 109    Filed: 12/05/13    Entered: 12/05/13 16:31:07    Page 5 of 18

has been approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code (11 U.S.C. § 1125) and has been provided to all Creditors and holders of Interests in this Case. This Disclosure Statement is intended to assist Creditors and holders of Interests with their evaluation of the BPB Plan and their decision to accept or reject the BPB Plan. Your acceptance of the BPB Plan may not be solicited unless you receive a copy of this Disclosure Statement at the time of, or before, such solicitation.

ii. **Votes Considered in Determining Acceptance of the BPB Plan.** When acceptance of the BPB Plan is determined by the Bankruptcy Court, in accordance with Bankruptcy Code Section 1126 (11 U.S.C. § 1126) and Rule 3018 of the Federal Rules of Bankruptcy Procedure, votes of Creditors will only be counted if submitted by Creditors with Allowed Claims who are members of Class 2, BPB's Secured Claim. If you are in any way uncertain if or how your Claim has been scheduled, you should review the Debtor's schedules and any amendments thereto which are on file with the Clerk's Office of the United States Bankruptcy Court, located at 280 S 1st St #3035, San Jose, CA 95113. Pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure, votes of the members of Class 2, BPB's Secured Claim, will be counted only if submitted by the holder of record on the date the order of the Court approving the Disclosure Statement is entered.

iii. **Hearing on Confirmation of the BPB Plan.** The Bankruptcy Court has set a hearing to determine if the BPB Plan has been accepted by the required number of holders of Claims and Interests and if other requirements for Confirmation of the BPB Plan outlined in the Bankruptcy Code have been satisfied. The hearing on Confirmation of the BPB Plan shall commence on _____, 2014, at ___ __:m., in the United States Bankruptcy Court, located at 280 S. 1st St., San Jose, CA 95113. Any objections to confirmation of the BPB Plan must be in writing and must be filed with the Clerk of the Bankruptcy Court and served on counsel for BPB, Hopkins & Carley, Attn.: Stephen J. Kottmeier, 70 S. First Street, San Jose, CA 95113, on or before _____, 2014.

iv. **Determining Whether Impaired Classes Have Accepted the BPB Plan.** At the scheduled hearing on Confirmation of the BPB Plan, the Bankruptcy Court must

547\1055557.5
- 6 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

Case: 13-53491    Doc# 109    Filed: 12/05/13    Entered: 12/05/13 16:31:07    Page 6 of 18

determine, among other things, if the BPB Plan has been accepted by each Impaired Class. Under section 1126(c) of the Bankruptcy Code (11 U.S.C. § 1126(c)), an Impaired Class of Claims is deemed to have accepted the BPB Plan if Class members holding at least two-thirds (2/3) in amount and more than one-half (1/2) in number of all Allowed Claims of Class members actually voting have voted in favor of the BPB Plan. Under § 1126(d) of the Bankruptcy Code (11 U.S.C. § 1126(d)), an Impaired Class of Interests is deemed to have accepted the BPB Plan if Class members holding at least two-thirds (2/3) in amount of the Allowed Interests of Class members actually voting have voted in favor of the BPB Plan. Further, under section 1129 of the Bankruptcy Code (11 U.S.C. § 1129(a)(7)(A)(ii)), the Bankruptcy Court must also find that each member of an Impaired Class either votes to accept the BPB Plan or will receive or retain as much under the BPB Plan as the member would receive or retain if the Debtor were liquidated, as of the Effective Date of the BPB Plan, under chapter 7 of the Bankruptcy Code. This is known as the "best interest of creditors' test."

        v.    **Confirmation of the BPB Plan Without Consent of all Impaired Classes.** The BPB Plan may be confirmed even if not accepted by all Impaired classes, if the Bankruptcy Court finds that all other requirements of Confirmation under section 1129(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)) are satisfied and certain additional conditions are met. These conditions are set forth in section 1129(b) of the Bankruptcy Code (11 U.S.C. § 1129(b)), and require, generally, a showing that the BPB Plan does not discriminate unfairly and that the BPB Plan is "fair and equitable" with respect to each Class of Claims and Interests that is Impaired under, and has not accepted, the BPB Plan. In order to be "fair and equitable" as required by section 1129(b) of the Bankruptcy Code, the BPB Plan must provide that Unsecured Creditors and Holders of Interests in non-consenting, Impaired classes will either receive or retain on account of their Claims or Interests, property of a value, as of the Effective Date of the BPB Plan, at least equal to the value of such Claims or Interests or, if they receive less than full value, no Class with a junior priority will receive or retain anything on account of such junior Claim or Interest. For Secured Creditors, the BPB Plan will be "fair and equitable" under Section 1129(b) if Secured Creditors either (i) retain the liens securing their claims and receive deferred cash

547\1055557.5      - 7 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY
Case: 13-53491    Doc# 109    Filed: 12/05/13    Entered: 12/05/13 16:31:07    Page 7 of 18

payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the BPB Plan, of at least the value of the Secured Creditor's interest in such property, (ii) if the property securing their claim is to be sold, their liens will attach to the proceeds, or (iii) Secured Creditors will receive the "indubitable equivalent" of their Secured Claims. These are complex statutory provisions and this summary is not intended to be a complete statement of the law. If the BPB Plan is not accepted by an Impaired Class or Classes, the Debtor will rely on the "cramdown" provisions of section 1129(b) of the Bankruptcy Code and seek Confirmation of the BPB Plan.

### 3. THE DEBTOR

**a.  In General**

The Debtor is a limited liability company purportedly organized under the laws of the State of California. At the time it commenced this bankruptcy action, the Debtor's sole business was ownership of the commercial real property located at 272 E. Santa Clara Street, San Jose, California (the "Property"), and the lease (the "Lease") of that Property to Grocery Outlet, LLC.

**b.  Factors Precipitating Chapter 11 Filing**

The following factors precipitated the commencement of Debtor's chapter 11 case:[2]

i.  **BPB's Loan To Its Borrower Kimomex Santa Clara LLC**

On July 15, 2008, BPB made a secured loan to a borrower named Kimomex Santa Clara, LLC ("Kimomex"). Kimomex borrowed $3.6 million from BPB under BPB's then name Borel Private Bank & Trust Company ("Borel").[3] At the time, Kimomex owned the Property.

Kimomex executed and delivered to Borel a Business Loan Agreement, a Promissory Note, a first Deed of Trust ("Deed of Trust") describing the Property, an Assignment of Rents ("Assignment of Rents"), Non-Recourse Rider, Hazardous Substances Certificate and Indemnity Agreement and other documents (collectively, the "Loan Documents") in connection with the loan. Both the Deed of Trust and the Assignment of Rents were recorded against the Property on

---

[2] These facts and the evidence in support of them are set forth in detail in BPB's response to "*Debtor's Objection to Bank's Claim (Claim No. 2)*" filed in this case on December 4, 2013, at Dkt. No. 106.

[3] BPB is successor by merger to Borel Private Bank & Trust Company.

547\1055557.5

- 8 -

DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

Case: 13-53491   Doc# 109   Filed: 12/05/13   Entered: 12/05/13 16:31:07   Page 8 of 18

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

July 18, 2008 in the Office of the Santa Clara County Recorder. As Borel's successor, BPB is now the lender, assignee and beneficiary under the Loan Documents.

Later on or about May 14, 2009, Kimomex apparently also borrowed a sum of about $600,000 from a group of individuals (the "Junior Lenders") and secured its obligation to those parties through a junior deed of trust ("Junior Deed of Trust") against the Property. According to publicly available records, that Junior Deed of Trust was recorded on or about May 21, 2009. On information and belief, the trustee of the Junior Deed of Trust later caused the Junior Deed of Trust to be foreclosed under its power of sale and sold to the Junior Lenders under the Junior Deed of Trust. The Trustee's Deed ("Trustee's Deed"), dated October 27, 2011, was recorded on April 20, 2012. The Junior Lenders thereafter apparently conveyed all of their right, title and interest in the Property to the Debtor by Grant Deed ("Grant Deed") recorded on or about April 20, 2012. Consequently, the Debtor's interest in the Property is subordinate and subject to BPB's Deed of Trust and Assignment of Rents and all of BPB's rights and remedies. The Property was the Debtor's sole asset.

    ii. **Breaches Of The Kimomex Loan And Postponement Of BPB's Foreclosure**

Kimomex breached its obligations to BPB under the Loan Documents when it failed to make monthly payments when due, beginning on June 15, 2010. Kimomex also defaulted by failing to pay all property taxes for the Property beginning on December 10, 2009. In addition, the conveyances of the Property under the May 2009 Junior Deed of Trust, the Trustee's Deed and the Grant Deed were all done without BPB's consent. They therefore constitute breaches of the "due on sale" covenant in the Deed of Trust.

BPB initiated foreclosure under the Deed of Trust in 2011. About a week before the foreclosure sale, a representative of the Junior Lenders approached BPB and sought BPB's agreement to postpone the trustee's sale. By written agreement, BPB agreed to postpone the sale from month to month for a period of time. By written amendments, that time was extended but ended on December 31, 2012. BPB has had no other agreements whatsoever with the Junior Lenders, their representative or the Debtor.

547\1055557.5   - 9 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

Case: 13-53491 Doc# 109 Filed: 12/05/13 Entered: 12/05/13 16:31:07 Page 9 of 18

In their several agreements to postpone the BPB foreclosure sale, the Junior Lenders' representative and BPB expressly agreed that defaults under the loan were not cured and that BPB reserved all of its rights and remedies with respect to the defaults, other than its agreement to postpone the nonjudicial foreclosure sale from time to time on certain conditions. In relevant parts, the parties expressly agreed:

> "2. <u>Remaining Default</u>. The Parties acknowledge and agree that the Payment [made by the Junior Lenders' representative] is insufficient in amount to satisfy all obligations due and owing as of this time and that the Notice of Default and Notice of Sale remain in full force and effect….
>
> 7. <u>Reservation of [BPB] Enforcement Rights</u>. The Parties acknowledge and agree that by entering into this agreement, [BPB] is waiving none of its rights and remedies under California law and its loan documents with respect to the defaults of the borrower. Apart from its covenant to postpone the trustee's sale as set forth expressly herein, [BPB] may at any time exercise any of its rights and remedies as it deems appropriate in its sole discretion, including, without limitation [BPB]'s right to seek appointment of a receiver with respect to the property, [BPB]'s right under the civil code to provide notice to any tenant to pay rent to [BPB] and [BPB]'s right to any other type of judicial relief it may deem appropriate to protect its interests in the property or under the loan."

Discussions between the Debtor's representative and BPB following expiration of the last amendment proved fruitless. Instead, the Debtor's representative was obstreperous and threatening, admitted to having no experience or funds to deal with the environmental issues that allegedly existed on the Property, claimed the costs of dealing with the problem could be tens of thousands of dollars, diverted rents being generated from the Property to his own pocket, left a message for a bank officer suggesting he would interfere with BPB's rights to collect the rents directly from the tenant and wanted to pay nothing from the rents to BPB so long as the environmental issue was unresolved. BPB therefore filed an action and moved for appointment of a receiver. On the day that the receiver motion was scheduled for hearing, the Debtor filed its Chapter 11 petition.

### c. **Debtor's Recent Financial Results**

On or about October 16, 2013, the Debtor filed a motion for approval to sell the Property, and a motion to assume and assign the Lease. (Dkt. Nos. 67 and 68) On October 31, 2013, this

Court entered separate orders approving both the sale of the Property (Dkt. No. 89) and the assumption and assignment of the Lease (Dkt. No. 90). On or about November 7, 2013, the Debtor closed on the sale of the Property and assignment of the Lease at a price of $7,580,000. After payment of real estate commissions, closing costs and outstanding real property taxes, the Debtor paid BPB $3,241,017.20, leaving Debtor with net sale proceeds in the amount of $3,616,394.85. According to the Debtor, when combined with post-petition rents it has received, the Debtor holds in its debtor-in-possession bank accounts a total of at least $3,814,794.80 (collectively, the "Estate Funds"). (Dkt. No. 94, at 10:9-10.)

### d. Actions Taken to Improve Operations

As a result of the sale of the Property and the assignment of the Lease described above, the Debtor no longer has any business operations, except to the extent it continues to hold the Estate Funds.

### e. Debtor's Continuing Viability

As a result of the sale of the Property and the assignment of the Lease described above, the Debtor no longer has any business operations. BPB is not aware of whether the Debtor has any intention to conduct business or even to continue to exist following this bankruptcy. BPB presumes that the Debtor will wind up, including distributing to its members the Estate Funds remaining after funding the BPB Plan, and cease to exist following this bankruptcy.

## 4. MAJOR EVENTS IN CHAPTER 11 CASE

Significant events in this Chapter 11 case include the Debtor's sale of the Property and assignment of the Lease, as described above. In addition, on or about September 24, 2013, the Debtor filed its proposed Combined Plan of Reorganization and Disclosure Statement ("Debtor's Plan"). (Dkt. No. 62.) At that same time, the Debtor noticed a hearing on its Disclosure Statement for November 7, 2013. As a result of the sale transaction, on or about November 7, 2013, the Debtor did not proceed with the hearing on its Disclosure Statement and the case was set for further status conference on January 9, 2014. Rather, the Debtor filed an Amended Motion To Use Cash Collateral requests Bankruptcy Court approval for the Debtor to use the Estate Funds to pay the General Unsecured Creditors' Claims in full (including post-petition interest)

547\1055557.5 - 11 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY
Case: 13-53491 Doc# 109 Filed: 12/05/13 Entered: 12/05/13 16:31:07 Page 11 of 18

and its attorneys, and to reserve $1,000,000 for purposes of covering the costs to litigate the Debtors' Claims Against BPB and, if necessary, to pay what Debtor claims is the disputed portion of BPB's Claim in the amount of $465,643.30. (See, Debtor's Amended Motion to Use Cash Collateral, at Dkt. No. 94.) A hearing on the Amended Motion To Use Cash Collateral is scheduled to be held December 11, 2013.

During this case, the Debtor and BPB have also participated in the 341 meeting of creditors, conducted Rule 2004 examinations pursuant to orders of the Court, and engaged in negotiations regarding the Debtor's Claims Against BPB. The Debtor filed an objection to BPB's Claim on October 29, 2013 (Dkt. No. 88) ("Claim Objection"), asserting, among other things, that BPB miscalculated its claim. The Claim Objection also included counterclaims against BPB (i.e. the Debtor's Claims Against BPB), which the BPB Plan will resolve in full. On December 4, 2013, BPB filed a response to such objection and requested a hearing thereon (Dkt. No. 106), disputing the Debtor's Objection, including all of the Debtor's Claims Against BPB. No hearing has been set on the Claim Objection. To date, the Debtor and BPB have been unable to reach a compromise of their respective claims.

### 5. SUMMARY OF DEBTOR'S ASSETS AND LIABILITIES

**a.  Assets**

The Debtor's Significant Assets consist of only the Estate Funds.

**b.  Liabilities**[4]

| *Name* | **Amount Owed** |
|---|---|
| Campeau, Goodsell, Smith LLC ("CGS"), the Debtor's bankruptcy counsel | $75,000[5] (estimated) |

---

[4] The liabilities identified and the amounts owed listed here are based upon Debtor's Amended Schedules that accompanied its Amended Voluntary Petition, filed August 19, 2013 (Dkt. No. 57) as well as the Claims, including Amendments thereto, reflected in the Bankruptcy Court's Claims Register in this case as of December 5, 2013.

[5] This is an estimate of fees by CGS in the First Interim Application For Compensation And Reimbursement of Expenses By Attorney For Debtor (Dkt. No. 97) and does not reflect any retainer received by CGS. According to Debtor's Monthly Operating Report for the month ending October 31, 2013, Debtor's "Assets" include $20,000 "Retainer(s) paid to professionals." It is only an estimate and actual fees may be higher or lower.

547\1055557.5                                       - 12 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF
SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491    Doc# 109    Filed: 12/05/13    Entered: 12/05/13 16:31:07    Page 12 of 18

| *Name* | Amount Owed |
|---|---|
| Clerk's Office Fees | $0 (estimated) |
| Office of the U.S. Trustee Fees | $0 (estimated) |
| Internal Revenue Service ("IRS") | $100.00 |
| BPB | $565,583.32, plus interest and attorneys' fees and costs that continue to accrue (estimated) |
| Santa Clara County Tax Collector | $48,281.96 (estimated) |
| Andrew Lewis | $668,241.00, plus interest |
| Ogen Perry | $80,000.00, plus interest |
| Rossi, Hamerslough, et al | $5,914.21, plus interest |

## 6. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE BPB PLAN

### a. Alternative Plans of Reorganization

If the requisite acceptances are not received or if the BPB Plan is not confirmed, the Debtor could pursue confirmation of the Debtor's Plan. Alternatively, any other party in interest could attempt to formulate and propose a different plan or plans of reorganization.

The Debtor's Plan, in the event of the sale of the Property, seeks to pay the outstanding balances of the Santa Clara County Tax Assessor's claim, BPB's claim, and the General Unsecured Creditors Claims "as agreed or ordered by the court-secured creditors at and through escrow and other creditors on the twentieth (20) day of the month after the end of the quarter, starting after then (sic) end of the first full quarter after the Effective Date." Debtor's Plan, however, was filed prior to the sale of the Property and assignment of the Lease and related payments to Creditors described above, and before the Debtor filed its Amended Motion To Use Cash Collateral, discussed above. Based upon the sale of the Property and assignment of the Lease, the related payments made to Creditors, and Debtor's Amended Motion to Use Cash Collateral, BPB presumes that the Debtor would amend the Debtor's Plan to achieve a result

547\1055557.5 - 13 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

Hopkins & Carley
Attorneys At Law
San Jose ♦ Palo Alto
Burbank

Case: 13-53491    Doc# 109    Filed: 12/05/13    Entered: 12/05/13 16:31:07    Page 13 of 18

consistent with the result described in the Amended Motion to Use Cash Collateral. Other plans might involve some other treatment of BPB's Claim and the Debtors' Claims Against BPB.

With respect to an alternative plan, BPB has explored various alternatives in connection with formulations and development of the BPB Plan. BPB believes that the BPB Plan enables Creditors and holders of Interests to realize the greatest possible value under the circumstances, particularly by minimizing administrative fees and expenses necessary to litigate BPB's Claim and the Debtor's Claims Against, and, compared to any alternative plan of reorganization, has the greatest chance to be confirmed and consummated so Creditors can promptly be paid.

### b. Liquidation Analysis

When evaluating the terms of the BPB Plan, each Creditor and Interest holder belonging to an Impaired Class should compare their treatment under the BPB Plan with how they would be treated if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. Effectively, the BPB Plan is a liquidating plan where the Debtor already has liquidated its asset. The effect of the BPB Plan is for all creditors, except BPB, to be paid in full. Consequently, Creditors other than BPB receive identical treatment under the BPB Plan and under a liquidation analysis. BPB submits that if the BPB Plan is confirmed, more equity in the Debtor will be preserved for the benefit of the Interest holders than under a Chapter 7. That is, if the case is converted to Chapter 7, a Chapter 7 trustee would be appointed and need to come up to speed in the case, analyze claims, and, if necessary, object to Creditors' claims, thereby incurring additional administrative expenses that would decrease the Interest holders' equity (particularly with respect to the this non-operating Debtor). On the other hand, if the BPB Plan is confirmed, such administrative expenses will not accrue..

### 7. GOING CONCERN VALUATION

Since Debtor elected to liquidate its only asset, it has no ongoing operations other than holding the Estate Funds. It, therefore, is not a going concern and has no value as such following bankruptcy.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

547\1055557.5 - 14 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

Case: 13-53491    Doc# 109    Filed: 12/05/13    Entered: 12/05/13 16:31:07    Page 14 of 18

# 8. REORGANIZED DEBTOR

### a. Funding of the BPB Plan.

The BPB Plan will be funded entirely with Estate Funds, i.e., money already in the Debtor's possession resulting from its sale of the Property and assignment of the Lease, as well as its receipt of post-petition rents.

### b. Risks and Opportunities Under BPB Plan

The only risk under the BPB Plan is that the Debtor could recover more from BPB than the $25,000.00 discount on Debtor's Claims Against BPB reflected in the BPB Plan if such claims were litigated and reduced to judgment. In other words, the risk under the BPB Plan is that BPB has incorrectly analyzed and assessed BPB's liability and underestimated the amount that could be recovered if the Debtor litigated the Debtor's Claims Against BPB.

The opportunities under the BPB Plan are that the Debtor can avoid time and administrative expenses associated with protracted litigation over the Debtor's Claims Against BPB. BPB's analysis and assessment is that the Debtor's Claims Against BPB have no merit and no chance for success. Specifically, first and foremost, the Debtor has suffered no damages for any of the claims it asserts. The Debtor in fact will receive profits in the millions once this case is concluded. The price it sold the Property for is even several hundred thousand more than what it proposed to sell the Property for at the end of 2012. Not surprisingly, but telling, to date, the Debtor has not offered any analysis of its purported damages.

More fundamentally, there is no merit to the substantive claims themselves. The Debtor claimed that BPB violated the automatic stay by collecting post-petition rents from the Property. BPB took no post-petition affirmative action to collect rents from the Property. Rather, BPB simply held whatever post-petition rents were sent to it in a segregated account, did not apply or set off against them, and promptly sought a determination by this Court as to the ownership of those rents ("BPB's Rents Motion"). BPB's action in freezing the rents ultimately determined to be BPB's collateral was not a violation of the automatic stay. *See, e.g., In re Lough,* 163 B.R. 586, 588-589 (Bankr. Id. 1994) (holding that there is no violation of the automatic stay by freezing cash collateral since debtor cannot use cash in any event without a court order). The

547\1055557.5 - 15 -
DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

Case: 13-53491   Doc# 109   Filed: 12/05/13   Entered: 12/05/13 16:31:07   Page 15 of 18

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Debtor itself prolonged the period rents came to the BPB by stipulating to continue the hearing on BPB's Rents Motion. Once the Court ruled on that Motion and held the rents were property of the estate, albeit BPB's cash collateral, BPB promptly delivered all of the funds it received post-petition to the Debtor through its counsel to be held by the Debtor pending further order of this Court. When the tenant sent another late rent check to BPB, that check was immediately turned over to Debtor's counsel. There were no stay violations.

Debtor also has claimed that BPB failed to disclose an environmental issue related to the Property that resulted in the Debtor making payments (e.g., related to the loan secured by the Property and real estate commissions for finding a tenant for the Property) it otherwise would not have made and in the loss of a potential sale of the Property at a price of $7,300,000. BPB, however, generally had no duty to disclose matters to a non-customer such as the Debtor. BPB, *as a lender to Kimomex*, had no duty whatsoever to Debtor or its investors to make some kind of disclosure or to assure the profitability of their enterprise. Under California law, a bank owes no such duty of care to its own borrower, so with even greater force such a duty of care cannot exist as to third parties who are separate lenders to the borrower. As the court in *Nymark v. Heart Fed. Sav. & Loan*, 231 Cal.App.3d 1089, 1095 (1991), held: "[A] lender has no duty to disclose its knowledge that the borrower's intended use of the loan proceeds represents an unsafe investment. The success of the borrower's investment is not a benefit of the loan agreement which the lender is under a duty to protect." The court further held, "[a] lender's general lack of duty to a borrower is an established public policy. A strong public policy exists, if our financial institutions are to remain solvent, to prevent a conventional money lender from having to insure the success of every investment." *Id*. Because this rule holds true as to a bank's borrower, the actual customer of the bank, then it must certainly hold true as to third parties who are simply investors in an unrelated junior loan to the borrower. *Cf. Fox & Carskadon Financial Corporation v. San Francisco Federal Savings And Loan Assn.*, 52 Cal.App.3d 484 (1975) (in the making of a loan, lender had no duty of care to party in contract to purchase property from borrower).

More importantly, the environmental issue was a matter of public record which the Debtor

and its principals and representatives failed to investigate themselves. Lastly, the issue was apparently remedied by Debtor's environmental consultant at a cost of less than $20,000, so it could hardly be viewed to be material.

With respect to the potential attorneys' fees and costs that will be avoided under the BPB Plan, the exact amount of those fees and costs are unknown because the actions, efforts, and results are not known at this point. However, it is known that the Debtor and BPB have engaged in contested litigation to date in this bankruptcy. BPB presumes any litigation of the Debtor's Claims Against BPB will be no less hotly contested as BPB would vigorously defend itself. As some indication of the potential fees to be incurred, it is noted that Debtor' counsel claimed that its fees in this matter were an estimated $71,505.00, only through, apparently, October 31, 2013. (See, First Interim Application For Compensation And Reimbursement of Expenses By Attorney For Debtor (Dkt. No. 97).) BPB expects that litigation of the Debtor's Claims Against BPB would be significantly more involved and costly that what has occurred up to October 31, 2013 in this bankruptcy.

## 9. SUMMARY OF BPB PLAN OF REORGANIZATION

### a. Introduction

This Disclosure Statement contains a summary of the BPB Plan, and is qualified in its entirety by the full text of the BPB Plan itself. To the extent any information in this Disclosure Statement conflicts with the BPB Plan, the BPB Plan shall govern. All terms defined in the BPB Plan have the same meaning in this Disclosure Statement. The BPB Plan, if confirmed, will bind the Debtor, any entity acquiring property under the BPB Plan or otherwise transferring property pursuant to the BPB Plan, and all Creditors and holders of Interests in the Debtor's Case. The BPB Plan is intended to deal with all Claims against the Debtor and the Estate and all Interests in the Debtor of whatever character, whether or not contingent or liquidated and whether or not allowed by the Bankruptcy Court pursuant to Bankruptcy Code section 502 (11 U.S.C. § 502). All Creditors, holders of Interests, and other interested parties, are urged to carefully read the BPB Plan.

The BPB Plan designates four Classes of Claims and Interests. Administrative Expenses

and Tax Claims, as set forth in the BPB Plan, have not been classified and are excluded from the designation of Classes. A Claim or Interest shall be deemed classified in a particular class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim or an Allowed Secured Claim in that Class.

### b. The BPB Plan

The significant provisions of the BPB Plan are that all Court-approved Administrative Expenses and priority Tax Claims, the Allowed Secured Tax Claim (i.e., Class 1), and the Allowed General Unsecured Creditors claims (i.e., Class 3) will be paid in full on the Effective Date. Additionally, the BPB's Allowed Secured Claim (i.e., Class 2) will be discounted $25,000.00 in exchange for settlement (i.e., full release) of the Debtor's Claims Against BPB so that the Debtor can avoid expending the resources that would be needed to litigate the Debtor's Claims Against BPB. Class 4 Interest holders will retain their respective ownership interests.

### 10. EFFECT OF CONFIRMATION

The provisions of the BPB Plan, if confirmed, shall bind the Debtor, all Creditors, holders of Interests, and any entity acquiring property under the BPB Plan, whether or not the Claim or Interest of such Creditor, Interest holder, or entity is impaired under the BPB Plan and whether or not such Creditor, Interest holder, or entity has accepted the BPB Plan.

Dated: December 5, 2013

Respectfully submitted,

HOPKINS & CARLEY
A Law Corporation

By:/s/ Stephen J. Kottmeier
Stephen J. Kottmeier
Jay M. Ross
Attorneys for Secured Creditor BOSTON PRIVATE BANK & TRUST COMPANY, formerly known as and successor to Borel Private Bank & Trust Company

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

547\1055557.5

- 18 -

DISCLOSURE STATEMENT WITH RESPECT TO CHAPTER 11 PLAN OR REORGANIZATION OF SECURED CREDITOR, BOSTON PRIVATE BANK & TRUST COMPANY

Case: 13-53491    Doc# 109    Filed: 12/05/13    Entered: 12/05/13 16:31:07    Page 18 of 18