```
CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:  (408) 295-9555
Facsimile:   (408) 295-6606

ATTORNEYS FOR Debtor
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 13-53491 |
| 272 E SANTA CLARA GROCERY, LLC, | CHAPTER 11 |
| Debtor. | **DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY (Claim No. 2)** |

I, Andrew A. Lewis, do hereby declare:

1. I am the manager of Debtor 272 E SANTA CLARA GROCERY, LLC ("Debtor"). I am also the court appointed responsible person for the Debtor. I am also the one of the Investors as that term is described below and the principal of Investment Grade Loans, Inc. ("IGL") as referenced hereinafter.

2. I submit this declaration of my own personal knowledge except as to those matters upon which I am informed and believe and as to those matters I am informed and believe them to be true. If called to testify as to the matters stated herein I could do so in an honest and

---

**DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY**
**(Claim No. 2)**

competent manner. By way of this declaration I do no intend to or waive the attorney client and work product privileges.

3. This declaration is submitted as part of Debtor's AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY (Claim No. 2) ("Objection")

4. The following case background is presented as a summary to assist to the court with the Objection but omits some background and disputed history. Boston Private Bank & Trust Company ("BPB") and Borel Private Bank & Trust Company ("Borel") are used interchangeably or are referred to as BPB as I understand BPB either bought Borel Private Bank & Trust Company or is its successor in interest.

5. **May 2009 Loan to Kimomex**.

6. In May 2009, several investors (collectively the "Investors") loaned $635,000 to Kimomex Santa Clara, LLC ("Kimomex") secured by a deed of trust in second position ("Second DOT") to Investment Grade Loans, Inc. ("IGL") as trustee against the Property. The Second DOT was subject to an existing first deed of trust in the amount of approximately $3.6 million dollars recorded in July 2008 in favor of Boston Private Bank & Trust Company ("BPB") (formerly known as Borel Private Bank & Trust Company) (the "First DOT"). The Property consisted of 1.4 acres improved with a commercial building of approximately 26,575 square feet originally built in 1966 which was occupied by tenant Kimomex Markets, Inc. which operated a Mexican grocery store business.

7. **July 2011 Foreclosure Agreement.**

8. The Mexican grocery store business failed and Kimomex entered into protracted negotiations with a potential new grocery store tenant, i.e. Fresh & Easy, but that deal was never consummated. In March 2011 BPB recorded a notice of default under the First DOT and eventually set a trustee's sale for July 20, 2011.

9. On July 15, 2011, prior to the sale date, BPB and IGL entered into an "Agreement Re

Foreclosure Sale" (the "Foreclosure Agreement"). Under the Foreclosure Agreement BPB agreed that if IGL immediately paid $380,661.90 to cure the arrearage BPB would postpone the trustee's sale to after August 17, 2011, and that if IGL made "the regular monthly payment of $24,307.45 due under the Loan" to keep the loan current, then BPB would continuously postpone the trustee's sale through March 16, 2012. The Foreclosure Agreement also provided that the $380,661.90 sum shall be applied to payments of principal and interest now due, together with certain trustee's fees, attorneys' fees and other costs owing to Borel as of the date of this Agreement . . ." On July 18, 2001, pursuant to the Foreclosure Agreement, IGL paid BPB $380,661.90 to reinstate and bring the loan current. The Foreclosure Agreement acknowledges the Second DOT and at all times related to the Foreclosure Agreement and thereafter BPB was aware of the Second DOT.

10. On June 30, 2011, prior to the Foreclosure Agreement, BPB's agent PLM Lender Services, Inc. ("PLM") provided IGL with a reinstatement letter dated June 29, 2011 which indicated, in part, the amounts necessary to reinstate the loan through July 15, 2011 and specified a principal balance of $3,487,501.16. A true and correct copy of this reinstatement letter is attached hereto as Exhibit A. I negotiated the reinstatement and cure amount of $380,661.90 directly with Bruce Brown of BPB and based those negotiations on many factors, including the asserted principal balance of $3,487,501.16, that the regular monthly was $24,307.45, that the regular monthly payment consisted of principal and interest at 6.5%, that the regular monthly payment of $24,307.45 would keep the loan current, and without knowledge of any environmental issues with the Property. IGL would not have foreclosed on its Second DOT, entered into the Foreclosure Agreement on behalf of IGL, paid the agreed reinstatement and cure monies of $380,661.90 or paid the regular monthly payments of $24,307.45 to keep the loan current had the principal balance not been $3,487,501.16, had the payment of $380,661.90 and the regular monthly payment of $24,307.45 not reinstated, cured, and kept the loan current, had the regular monthly payments of $24,307.45 not been based on interest at 6.5% and been applied to both principal and interest, had I been advised

**DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY**
**(Claim No. 2)**
3
Case: 13-53491    Doc# 119-4    Filed: 12/13/13    Entered: 12/13/13 16:45:12    Page 3 of 17

by BPB of the environmental issues with the Property, and had I been advised by BPB that it may attempt to assert any right to thereafter backdate and/or re-apply the monies already paid to it against alleged late fees, interest at $8.5%, or other costs.

11. **October 2011 Foreclosure And Second DOT On Empty Building.**

12. In June 2011 IGL recorded a notice of default under the Second DOT. The foreclosure took place on October 24, 2011. At the time of the sale, the unpaid balance was $1,183,908.74. At the sale, the Investors bid $100,000, which was the highest bid, and became the owners of the Property, leaving a deficiency balance due on the second loan of $1,083,908.74. At the time of the foreclosure, the building was empty, there was no tenant, and there was no rental income. BPB was promptly made aware of the foreclosure on the Second DOT.

13. Between October 2011 and March 2012, the Investors marketed the Property for lease to potential tenants, found a tenant in March 2012, and eventually paid $242,000 in leasing commissions. At the same time IGL was paying BPB its regularly monthly payment of $24,307.45 per month to keep the loan current.

14. **First and Second Amendments to Foreclosure Agreement.**

15. In November 2011 and January 2012, IGL and BPB entered into a "First Amendment" and a "Second Amendment to Agreement Re Foreclosure Sale" (the "Second Amendment"). Under the Second Amendment the parties agreed that if IGL made "the regular monthly payments" for December 2011 through March 2012 of $24,307.45 to keep the loan curent then BPB would postpone the foreclosure sale, and if the Investors wanted to pay off the First DOT, BPB would accept $3.25 million dollars, less the payments made for those months, in full satisfaction of the First DOT. The plan was to have the Property leased and sold by March 2012 in order to pay off the First DOT. I negotiated these amendments directly with Bruce Brown of BPB.

DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY
(Claim No. 2)
4
Case: 13-53491   Doc# 119-4   Filed: 12/13/13   Entered: 12/13/13 16:45:12   Page 4 of 17

16. **March 2012-New Tenant and Third Amendment.**

17. In March 2012, the Investors formed 272 E Santa Clara Grocery, LLC ("Debtor") and deeded their respective ownership interests in the Property to the Debtor. The deed was recorded in April 2012. BPB was promptly made aware of the transfer of such interest to the Debtor (and such is reflected in the Fourth Amendment discussed hereinafter).

18. On or about March 8, 2012, Debtor, as landlord, entered into a 10-year lease for the Property with Grocery Outlet, Inc., a national grocery store chain. During the first few years the tenant pays rent of $39,600 per month. The monthly rent was net of all expenses, including property taxes, insurance, and maintenance (except the roof and structure) which are all paid by the tenant.

19. In March 2012, BPB, IGL, and Debtor entered into a "Third Amendment to Agreement Re Foreclosure Sale" (the "Third Amendment"). Under the Third Amendment, the parties agreed that if BPB was paid "the regular monthly payment of $24,307.45 due under the Loan" to keep the loan current then BPB would postpone the trustee's sale through December 31, 2012. The parties further agreed that Plaintiff and Debtor would enter into a Subordination, Non-Disturbance and Attornment Agreement ("SNDA") under which BPB would not disturb the tenant's possession in the event BPB foreclosed, which SNDA was signed on July 26, 2012. The Third Amendment was negotiated with Bruce Brown on behalf of BPB.

20. In reliance upon the multiple agreements with BPB, Debtor continued to pay BPB $24,307.45 per month through and including March 2013 to keep the loan current. Thus, from July 2011 through March 2013, Debtor paid Plaintiff $380,661.90 to cure the arrearage and bring the loan current, plus approximately $413,219 in monthly payments for a total of $793,880.90 to keep the loan current. This is in addition to the approximate $242,000 for leasing commissions spent to find a tenant. Thus, a total of approximately $1,033,880 was spent in reliance upon the agreements with BPB.

DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY
(Claim No. 2)
5

Case: 13-53491   Doc# 119-4   Filed: 12/13/13   Entered: 12/13/13 16:45:12   Page 5 of 17

21. The Third Amendment indicated a principal balance on the loan of $3,460,917.00.

22. IGL and Debtor would not have foreclosed on its Second DOT, entered into the Foreclosure Agreement or subsequent amendments, paid the agreed reinstatement and cure monies of $380,661.90 to bring the loan current, or paid the regular monthly payments of $24,307.45 to keep the loan current had the principal balance not been $3,487,501.16, had the payment of $380,661.90 and the regular monthly payment of $24,307.45 not cured, reinstated, and kept the loan current, had the regular monthly payments of $24,307.45 not been based on interest at 6.5% and been applied to both principal and interest, had I been advised by BPB of the environmental issues with the Property, and had I been advised by BPB that it may attempt to assert any right to thereafter backdate and/or re-apply the monies already paid to it against alleged late fees, interest at $8.5%, or other costs.

23. **December 2012-Sale of Property and Debtor's Discovery of Environmental Contamination and BPB's Non-Disclosure.**

24. In November 2012, Debtor found a buyer and entered into a contract for the sale of the Property for $7.3 million dollars. The escrow was scheduled to close in December 2012. This sale would have paid off BPB's lien. However, during their due diligence, the buyer discovered that the Property was listed with the State and/or County as undergoing clean-up or investigation due to a possible leak from an old underground storage tank. Specifically, while conducting a Phase I, Environmental Investigation, the buyer discovered the existence of prior reports filed showing that the Property was contaminated. As a result of the discovery, the buyer cancelled the sale.

25. This discovery by the buyer was the first notice that Debtor had of any contamination on the Property. However, Debtor was informed that BPB had been aware of the contamination since 2008, had a copy of a report showing purported contamination, and never disclosed the report or the purported contamination to Debtor. Had BPB disclosed this information to Debtor, Debtor would not have paid BPB $793,880 to cure the default, made the regular

**DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY**
**(Claim No. 2)**
6

Case: 13-53491   Doc# 119-4   Filed: 12/13/13   Entered: 12/13/13 16:45:12   Page 6 of 17

monthly payments under the First DOT to keep the loan current, or invested another $242,000 in leasing commissions to find a tenant. In addition, had BPB disclosed this information, not affirmatively acknowledged the declining principal ($3,460,917.00 in the Third Agreement), not reinstated or treated the loan as current, not based the regular monthly payment of $24,307.45 on 6.5% and applied such payments to interest and principal, or asserted any right to thereafter backdate and/or re-apply the monies already paid to it against alleged late fees, interest at $8.5%, or other costs then IGL and Debtor would not have entered into the Foreclosure Agreement or taken any of the actions described herein.

26. **May 2013-Proposed Fourth Amendment, Agreement to Suspend Payments, and Release of Claims.**

27. Debtor continued to make the monthly payments of $24,307.45 to BPB through March 2013 to keep the loan current. Around that time, BPB, IGL and Debtor negotiated the terms for a fourth amendment regarding the foreclosure sale. Under the terms as negotiated, Plaintiff agreed that so long as Debtor and IGL took certain steps to obtain a "closure and/or no further action letter" regarding the contamination from the required regulatory agency, and to the extent required, pay for any additional environmental investigation, testing, remediation and/or other work, kept BPB apprised of the progress, and obtained a "closure and/or no further action letter" resolving all environmental issues no later than April 30, 2014, then no monthly payments after March 2013 would be due, and the foreclosure sale would be continued through April 30, 2014. I negotiated this amendments directly with Bruce Brown of BPB.

28. In reliance upon the agreement that no payments were due after March 2013, Debtor did not make payments pending the drafting and execution of the fourth amendment. The draft fourth amendment was not received until May 2013. Consistent with the negotiations, the draft fourth amendment stated that no payments would be due after March 2013. However, contrary to prior discussions, the proposed "Fourth Amendment to Agreement Re Foreclosure Sale" (the "Fourth Amendment"), required Debtor, IGL, and their predecessors

to release BPB from any claims relating to the Property including any environmental issues. As BPB had failed to disclose the environmental contamination to Debtor prior to and during its dealings and did not know the severity of the contamination and cost of remediation, Debtor refused to execute the Fourth Amendment. The Fourth Amendment, prepared by BPB and presented to Debtor for signature, indicated a principal balance on the loan of $3,341,017.00.

29. In late January or early February 2013 and at my direction my staff contacted BPB because Debtor needed payment information for its tax returns and had not received a 1098 or similar form from BPB. On February 4, 2013 Debtor received a facsimile from BPB consisting of a payment history on the loan. The payment history reflects a payment history for 12/27/11 through 12/31/12, a principal balance of $3,460,916.67, regular monthly payments of $24,307.45, but an allocation of the payment only to interest and at 8%. A true and correct copy of this fax is attached hereto as Exhibit B. Therefore, I contacted Bruce Brown of BPB, indicated that the payment history was incorrect in terms of the interest rate and application of the regular monthly payment to interest and principal, and asked that the errors be corrected immediately and made consistent with our agreement that the loan was brought current and kept current by the prior payments so Debtor could prepare its tax returns. Mr. Brown agreed to correct the errors. On February 25, 2013 Bruce Brown emailed an adjusted amortization schedule which referenced the loan, the payment history from July 19, 2011 through February 15, 2013, the interest rate at 6.5%, the regular monthly payment of $24,307.45, the application of the regular monthly payment to principal and interest at 6.5%, a declining principal balance, and a principal balance of $3,347,194.03. A true and correct copy of this Amortization Schedule is attached hereto as Exhibit C. Debtor secured this amortization schedule from BPB for its 2012 taxes, reasonably relied upon this information, and used this information for its 2012 tax returns.

//

**DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY**
**(Claim No. 2)**
8

Case: 13-53491   Doc# 119-4   Filed: 12/13/13   Entered: 12/13/13 16:45:12   Page 8 of 17

30. **May 13, 2013-BPB Serves Demand on Tenant to Pay All Rents to BPB.**

31. On or about May 17, 2013 BPB served a "Demand That You Pay Rent To A Party Other Than The Landlord" on the tenant. Debtor received confirmation that the tenant would comply with the demand and pay all rents directly to BPB. In compliance with the demand and commencing June 2013, BPB received and continues to receive all the rent, i.e. $39,600, directly from the tenant (this rent was about $15,300 more than the regular monthly payment). Pre-petition Debtor tendered, and continued to tender, immediate payment of the total arrearage, thereby bringing and maintaining the loan current. BPB wrongfully rejected this tender.

32. **State Court Action.**

33. On June 10, 2013, BPB filed a Verified Complaint For (1) Judicial Foreclosure; And (2) Specific Performance And Appointment of Receiver commencing a state court action against Kimomex and Debtor, Santa Clara County Superior Action No.: 1-13-CV-247961 ("State Court Action") and wherein BPB, under penalty of perjury, repeatedly asserted "As of June 10, 2013, there is due, owing and outstanding under the Promissory Note the principal amount of $3,341,017.20 . . ." (sic). Although the State Court Action does not acknowledge the prior agreements and prior payments, it does not assert or quantify any claim for default interest. This principal figure appeared consistent with the information provided to us by BPB and the agreements with BPB and Debtor and I reasonably relied upon this information.

33. **Bankruptcy.**

34. On June 27, 2013, Debtor commenced this Chapter 11 bankruptcy case ("Bankruptcy Case"). No Receiver or Trustee has been appointed, and the Debtor remains a Debtor in Possession pursuant to 11 U.S.C. under Chapter 11 of title 11, United States Code sections 1107 and 1108. The bankruptcy was filed to avoid the unnecessary and expensive appointment of a receiver, to prevent BPB's pending foreclosure, and protect Debtor's

DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY
(Claim No. 2)
9

Case: 13-53491    Doc# 119-4    Filed: 12/13/13    Entered: 12/13/13 16:45:12    Page 9 of 17

substantial investment and substantial equity.

35. On September 24, 2013, Debtor filed a disclosure statement and plan with a hearing date of November 7, 2013 (Doc#62). On October 7, 2013, the court issued an Order Denying Motion for Order Confirming No Stay with Respect to Rent and Denying Cross-Motion for Use of Cash Collateral (Doc#64).

36. On October 7, 2013, this court issued an Order Denying Motion for Order Confirming No Stay with Respect to Rent and Denying Cross-Motion for Use of Cash Collateral ("Order")(Doc#64) which, in summary confirmed Debtor's position that the post-petition rental income was property of the estate pursuant to Bankruptcy Code 541 and cash collateral of BPB and may not be used by Debtor absent consent of BPB or order of the court.

37. Debtor attempted to secure an agreement with BPB regarding the use of cash collateral, prior to and after this court's Order, but BPB refused to consent[1] to Debtor using such funds to pay BPB its contractual interest and regular monthly payment of $24,307.45 for the post-petition months of July-October and thereafter as monthly rental income of $39,600 was received from Debtor's tenant, to pay United States Trustee Quarterly Fees as invoiced by the United States Trustee ("UST"), and to hold the balance of such funds in Debtor's DIP account pending an agreement with BPB and/or an order from this court and without prejudice to the rights of BPB or Debtor. Debtor's Motion to Use Cash Collateral Filed by Debtor 272 E Santa Clara Grocery, LLC (Doc#80) was amended following Debtor's sale of real property.

38. **Status of Environmental Issue.**

39. Debtor contracted with ERAS Environmental, Inc. ("ERAS") to assist Debtor address the environmental issues and secure government clearance so the Property can be sold. On August 26, 2013 the Santa Clara County Department of Environmental Health ("DEH") advised Debtor that based on their review it appeared that the Property qualified for closure

---

[1] BPB orally refused to consent to the use of such funds and then refused to consent to use of such funds in writing (twice).

DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY
(Claim No. 2)
10

Case: 13-53491    Doc# 119-4    Filed: 12/13/13    Entered: 12/13/13 16:45:12    Page 10 of 17

under State Water Resource Control Board Low-Threat Underground Storage Tank Case Closure Policy ("LTCP"), no further action was required at that time, and the matter would proceed through the closure process which it continues to do.

40. On July 12, 2013, BPB, through David Scheiber, Senior Vice President- Special Assets Department of BPB, filed a declaration, under penalty of perjury, and asserted that the outstanding balance due and owing by Debtor to BPB on the First DOT as of June 27, 2013 totaled $3,341,017.20. Specifically, BPB asserted "As of June 27, 2013, the outstanding principal balance due and owing from Kimomex under the Promissory Note and other Loan Documents is $3,341,017.20." ("Scheiber Declaration")(Docket#22-2, entered July 12, 2013, page 3, paragraph 7). This principal figure appeared consistent with the information provided to us by BPB and the agreements with BPB and Debtor and I reasonably relied upon this information.

41. On July 30, 2013 BPB filed a Reply in Support of its Ex Parte Applications for Orders of Examination and for Production of Documents Pursuant to Bankruptcy Rule 2004, in support of numerous 2004 applications (Docket#31-36 and 41) asserting "BPB holds the senior lien on the Property securing a loan with an outstanding principal balance of $3,341,017.20". (Docket#42, entered July 30, 2013, page 3, lines 7-8) At the same time BPB also re-filed the Scheiber Declaration to support the alleged principal balance of $3,341,017.20. (Docket#31-3, entered July 30, 2013, page 3, paragraph 7). This principal figure appeared consistent with the information provided to us by BPB and the agreements with BPB and Debtor and I reasonably relied upon this information.

42. On August 12, 2013 BPB filed an additional 2004 application and asserted "BPB holds the senior lien on the Property securing a loan with an outstanding principal balance of $3,341,017.20. (Counsel Decl. Exh. 1 ("Scheiber Declaration"), at ¶7.)" (Docket#45, page 2, paragraph 3). This principal figure appeared consistent with the information provided to us by BPB and the agreements with BPB and Debtor and I reasonably relied upon this information.

43. On August 14, 2013 BPB filed Secured Creditor Boston Private Bank & Trust Company's Opposition to Debtor's Cross Motion for Use of Cash Collateral and asserted "As of the Petition Date, the outstanding principal balance due and owing from Kimomex to BPB under the Note and other Loan Documents was $3,341,017.20." (Docket#50, page 4, lines 6-9). This principal figure appeared consistent with the information provided to us by BPB and the agreements with BPB and Debtor and I reasonably relied upon this information.

44. On October 15, 2013 BPB filed a Declaration of Counsel In Support of Opposition to Ex Parte Application For Order Directing Boston Private Bank & Trust Company's Production of Documents Under Bankruptcy Rule 2004 and asserted "BPB holds the senior lien on the certain leased real property located at 272 E. Santa Clara Street, San Jose, Ca. (the "Property") securing a loan with an outstanding principal balance of $3,341,017.20". (Docket#51, page 5, lines 3-5). This principal figure appeared consistent with the information provided to us by BPB and the agreements with BPB and Debtor and I reasonably relied upon this information.

45. BPB consistently provided Debtor with confirmation of the principal amount owed under the loan and First DOT and how much it would cost to bring and keep the loan current and Debtor and I reasonably relied upon this representations. Debtor would not have pursued foreclosure of its Second DOT, the various agreements with BPB, secured a tenant, or paid BPB and various related expenses totaling approximately $1,033,880 ($380,661.90 to BPB to cure and reinstate the loan, $242,000 in leasing commissions, and $413,219 to BPB ($24,307.45 from July 2011-March 2013) for regular monthly payments of principal and interest to keep the loan current if the principal, interest, and interest rate were not as agreed with BPB or as represented by BPB. Debtor rightfully relied upon BPB's representations of principal, interest, and interest rate as discussed herein and as reflected in its June 2011 reinstatement letter (principal $3,487,501.16), in the March 2012 BPB Third Amendment (principal $3,460,917.00), its February 2013 Amortization Schedule (principal $3,347,194.03), in the March 2013 Fourth Amendment (principal $3,341,017.00), and

**DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY**
**(Claim No. 2)**
12

Case: 13-53491    Doc# 119-4    Filed: 12/13/13    Entered: 12/13/13 16:45:12    Page 12 of 17

various other documents.

46. Yet, just as Debtor proceeded to sell the Property BPB filed the BPB Claim and asserted, contrary to all prior declarations and documents, that "As of the petition date, the outstanding principal due and owing from Kimomex under the Promissory Note and other Loan Documents is $3,555,168.55 (Proof of Claim No. 2, page 5). Suddenly, as Debtor moves to sell the Property, a $214,151.35 ($3,555,168.55-$3,341,017.00) difference in the claimed principal arises and said difference is reflected between BPB's agreements with Debtor, documents BPB provided Debtor, the Verified Complaint in the State Court Action, and repeatedly filed declarations and representations made in this bankruptcy case on the one hand and the BPB Claim on the other hand.

47. The principal claim is overstated and contradicts the repeated, sworn and represented amount of outstanding principal by at least $214,151.50 and thus results in an overstatement by any calculation of interest, whether it be contract interest at 6.5% or alleged default interest at 8.5%, relative to the overstated principal.

48. The BPB Claim also asserts two different interest totals, $217,401.61 as of October 15, 2013 and $242,584.05 as of November 15, 2013 a difference of $25,182.44. Both figures are miscalculated.

49. On November 8, 2013 Debtor, pursuant to the court's October 30, 2013 Order Granting Motion to Sell Real Property (272 E. Santa Clara St.) Free and Clear of Liens and Pay Broker/agent (Docket#89), paid BPB $3,341,017.20 in principal. BPB has not amended the BPB Claim to acknowledge such principal payment.

50. The BPB Claim was, admittedly, backdated. Debtor rejects the explanation for the backdating as "based on a proper allocation of prior payments" as alleged therein. Debtor submits that BPB, in an effort to improperly maximize its recovery, backdated its calculations.

51. BPB failed to put Debtor on notice of its intention to accelerate the note and seek

default interest. In fact, BPB did the opposite.

52. BPB was aware of Debtor's junior deed of trust on the Property and did not assert any objection relative thereto, negotiated and entered into various agreements with Debtor wherein BPB specified the amounts necessary to cure arrears and reinstate the loan and keep the loan current and accepted these payments from Debtor over the course of approximately two years without objection, was aware of Debtor's foreclosure on its junior deed of trust on the Property and did not assert any objection relative thereto, was aware of Debtor's efforts to ready the Property to secure a tenant and that it had secured a tenant and did not assert any objections relative thereto, was aware of Debtor's efforts to market and sell the Property and of its December 2012 sale and did not assert any objection relative thereto, continued to accept regular monthly payments from Debtor without objection or reservation, and at no time prior to the commencement of this case did BPB ever assert, mention, reference, or claim default interest.

53. In reliance thereon, Debtor foreclosed on its junior deed of trust, paid substantial monies to BPB to cure its arrears and reinstate the loan, paid substantial monies to BPB to maintain its regular monthly contractualpayment, paid substantial monies to others to ready the Property for a tenant and to secure a tenant, and marketed the Property for sale and secured a buyer-only to have the sale fall through due to BPB's non-disclosure of the environmental issue. Similarly, BPB consistently provided Debtor with confirmation of the declining principal amount owed under the loan and First DOT upon which Debtor reasonably relied. Debtor would not have pursued foreclosure of its Second DOT, the various agreements with BPB, secured a tenant, or paid BPB and various related expenses totaling approximately $1,033,880 ($380,661.90 to BPB to cure and reinstate, $242,000 in leasing commissions, and $413,219 to BPB ($24,307.45 from July 2011-March 2013) for regular monthly payments of principal and interest to keep the loan current if the principal was not as represented by BPB, the regular monthly payment of $24,307.45 was not being applied to

principal and interest at 6.5%, or had I been advised by BPB that it may attempt to assert any right to thereafter backdate and/or re-apply the monies already paid to it against alleged late fees, interest at $8.5%, or other costs. Debtor rightfully and reasonably relied upon BPB's representations of principal and interest including as reflected in its June 2011 reinstatement letter (principal $3,487,501.16), the March 2012 BPB Third Amendment (principal $3,460,917.00), its February 2013 Amortization Schedule (principal $3,347,194.03 and interest at 6.5%), and the March 2013 Fourth Amendment (principal $3,341,017.00).

54. Debtor cured and reinstated the loan as agreed, kept the loan current, and all curable or other defaults were waived by BPB.

55. The BPB Claim improperly asserts late fees notwithstanding Debtor reinstated the loan and cured BPB's claimed monetary defaults in approximately July 2011 and caused timely regular monthly payments to be made thereafter and through present to keep the loan current, including those payments intercepted by BPB from Debtor's tenant and/or that which BPB refused to accept. The BPB Claim asserts late fees of $1,215.37 a month from July 19, 2011 to October 15, 2013 and totaling $34,030.36 as of November 15, 2013. Yet, the same BPB Claim simultaneously asserts payments made from July 19, 2011 through March 15, 2013, fails to acknowledge a March 2013 agreement between BPB and Debtor that monthly payments need not be made, fails to acknowledge that pre-petition BPB received the June 2013 rent payment of $39,600 following BPB's May 17, 2013 BPB Demand That You Pay Rent To A Party Other Than The Landlord, and fails to acknowledge that post-petition BPB intercepted $39,600 for four consecutive months (July-October 2013) totaling $158,400 ($39,600 x 4) and then refused to accept regular monthly contract payments of $24,307.45 from Debtor for the months of July-October 2013 and thereafter as Debtor's tenant paid its monthly rent. Debtor filed a Motion for Use of Cash Collateral because BPB refused to accept such payments.

56. BPB has no basis to charge Debtor late fees. As stated hereinabove, Debtor reinstated

DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY
(Claim No. 2)
15

Case: 13-53491   Doc# 119-4   Filed: 12/13/13   Entered: 12/13/13 16:45:12   Page 15 of 17

the loan, cured the non-monetary defaults, and kept the loan current as agreed, BPB received overpayments from Debtor's tenant or simply refused to accept payments, and Debtor only stopped making payments pursuant to a verbal agreement with BPB that no payments needed to be made until the environmental issue relative to the Property could be resolved (as referenced in the Fourth Amendment Re Foreclosure Sale) and then BPB intercepted, kept, and should have applied the April, May, and June 2013 $39,600 each ($118,800) and then wrongfully intercepted, held without applying payments against the loan, belatedly turned over to Debtor rents for July-October 2013, but then refused to accept payments for July-October and thereafter from Debtor at $24,307.45 per month.

57. Debtor submits that it has multiple claims against BPB. Some non-exclusive examples are worth noting.

58. BPB was put on notice of the commencement of this bankruptcy on June 27, 2013, the petition date, filed a Request For Notice within three days of the bankruptcy filing Doc# 11, and had clear notice of the bankruptcy and of the automatic stay. Yet, BPB refused and failed to cease its collection actions against Debtor by not advising Debtor's tenant that post-petition rental payments should be made directly to Debtor, continuing to intercept rent payments, filing an unsuccessful motion to determine that such post-petition rents were not property of the estates notwithstanding authority to the contrary, delaying the turnover of such funds after receipt of the court's October 7, 2013 order finding such post-petition rents are property of the estate, not advising Debtor's tenant to direct post-petition rental payments directly to Debtor after receipt of the court's October 7, 2013 order, and refusing to accept payments from Debtor. Preliminarily, BPB's violations of the automatic stay have resulted in damages to Debtor, including but not limited to, damages in the form of attorney's fees and costs, claims of additional interest and late fees and attorney's fees and costs by BPB, and punitive damages.

59. Debtor, as discussed in its Schedule B, asserts that it has a claim against BPB for

**DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY**
**(Claim No. 2)**
16

Case: 13-53491   Doc# 119-4   Filed: 12/13/13   Entered: 12/13/13 16:45:12   Page 16 of 17

BPB's failure and refusal to disclose to Debtor, prior to, during, and after, the various agreements between them and while Debtor was making substantial payments to BPB and others while BPB knew the Property had a material environmental issue.

60. As a result of BPB's non-disclosure and withholding of such material information, Debtor paid considerable monies to BPB and incurred substantial expenses to bring and keep BPB current, paid substantial monies to others ready the Property for a tenant and secure a tenant, and paid substantial monies to ERAS Environmental, Inc. to assist Debtor secure a No Further Action letter from the County of Santa Clara. In addition, as a result of BPB's non-disclosure and withholding of such material information Debtor lost a sale of the Property in December 2012, incurred, paid, and/or will incur and/or pay substantial additional interest to BPB (approximately $291,689.40 (12 x $24,307.45, December 2012-November 2013), substantial additional interest and penalties on outstanding real property taxes (18% interest and penalties estimated in excess of $50,000 since December 2012), and substantial attorney's fees and costs, and may have lost interest and/or profits on the net proceeds of a sale of the Property.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Los Altos, California, on December 12, 2013.

/s/ Andrew A. Lewis
Andrew A. Lewis

**DECLARATION OF ANDREW A. LEWIS RE: AMENDED OBJECTION TO PROOF OF CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY**
**(Claim No. 2)**
17

Case: 13-53491    Doc# 119-4    Filed: 12/13/13    Entered: 12/13/13 16:45:12    Page 17 of 17