In re:
272 E. Santa Clara
Grocery, LLC

Case No. 13-53491
Chapter 11

_____/

**[PROPOSED] COMBINED PLAN OF REORGANIZATION
AND [APPROVED] [TENTATIVELY APPROVED] DISCLOSURE STATEMENT
(January 17, 2013)**

**INTRODUCTION**

This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: 100% of their allowed claims. Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [date]. The court will hold a hearing on confirmation of the Plan on [date] at [time].

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 describes how much Debtor is required to pay on the effective date of the plan.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to

confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. The effect of confirmation on the Debtor is governed by 11 U.S.C. 1141. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Creditors' Rights Remain Unchanged.**

| Class | Name of Creditor | Description of Collateral |
|---|---|---|
| 1A | Santa Clara County Tax Assessor | 272 E. Santa Clara Street, San Jose, CA (sold, proceeds held in Debtor's DIP Account) |
| 1A | Boston Private Bank & Trust Company ("BPB") | 272 E. Santa Clara Street, San Jose, CA and related sales proceeds and rents (held in Debtor's DIP Accounts) |

These creditors' legal, equitable, and contractual rights remain unchanged with respect to the above collateral. The confirmation order will not constitute an order for relief from stay. Creditors in these classes shall retain their interest in the collateral until paid in full. **These secured claims are not impaired and are not entitled to vote on confirmation of the Plan.**

**Regarding Class 1A Santa Clara County Tax Assessor: on 11/7/13, pursuant to its escrow demand, it was paid $247,595.95, on 11/19/13 it filed an Amended Proof of Claim (Claim 5-2) of $48,281.96 for monies due on 12/10/13 of $24,140.98 and on 4/10/14 of $24,140.98, and interest commencing on 7/1/14, and on December 9, 2013 filed a Withdrawal of Claim Claim No. 5 (Docket#114)noting that is prior claim had been paid in full.**

**Regarding Class 1A on or about November 7-8, 2013 BPB was paid the previously undisputed principal balance of its loan from**

proceeds of the sale of Debtor's real property in the amount of $3,341,017.20. On 10/22/13 BPB asserted a claim for principal and default interest back to a date uncertain and in an amount of $465,643.30 and a claim for costs and attorney's fees in an unknown amount (Claim 2). Debtor filed an objection to BPB's claim (Claim Objection). Debtor will seek, inter alia, an order declerating BPB's claim for default interest, determining the amount of principal, interest, and late fees, if any, and an order determining the reasonableness of costs and attorney's fees asserted by BPB. Pursuant to Bankruptcy Local Rule 3017-1 (b) an initial hearing on Debtor's objection to BPB's claim is currently scheduled for January 22, 2014 at 2:00 p.m.

For Class 1A BPB Debtor will pay the entire amount due with allowed interest and attorney's fees within ten (10) business days of expiration of any appeal period(s) after Final Order on Claim Objection. Final Order is defined as Order fixing claimant's allowed proof of claim for which either no appeal has been taken or any such appeal has been resolved by a court of appropriate jurisdiction.

**PART 2A: TREATMENT OF GENERAL UNSECURED CREDITORS**
**Class 2(a). Small Claims.**

| Name of Creditor | Amount of Claim | Amount to be Paid |
|---|---|---|
| None | | |
| | | |
| | | |

**Class 2(b). [Other] General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | [Monthly] [Quarterly] Payment |
|---|---|---|---|---|
| ERAS Environmental, Inc. | $6,359.10 | N | $0.00 (paid in full post-petition by non-debtor) | $0.00 |

| Rossi, Hamerslough (BPB Matter) | $5,914.21 | N | $5,914.21, plus post-petition interest at federal interest at 3% | Lump sum paid no later than 30 days after the Effective Date of the Plan. |
|---|---|---|---|---|
| Grocery Outlet, Inc. | $0.00 | N | $0.00 | 1/8/14 formally withdrew its claim (Claim 4)(Docket#136) |

For Class 2b, Debtor will pay the entire amount due with post-petition interest accruing at the Federal Rate (est. at 3%) not later than 30 days after the Effective Date of the Plan. Creditors will not receive post-petition interest at their contract rate and waive any claim for attorney's fees.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6©).  **This class is impaired and is entitled to vote on confirmation of the Plan**.  Debtor has indicated above whether a particular claim is disputed.

**Class 2©. Insider Note Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disp Y/N | Amount to be Paid | [Monthly] [Quarterly] Payment |
|---|---|---|---|---|
| Andrew A. Lewis | $668,241.00 | N | $668,241.00, plus post-Petition Fed. interest at 3% | Lump sum paid not later than 45 days after the Effective Date of the Plan |
| Ogen Perry | $80,000.00 | N | $80,000.00, plus post-Petition Fed interest at 3% | Lump sum paid not later than 45 days after the Effective Date of the Plan |

For Class 2c, Debtor will pay the entire amount due with post-petition interest accruing at the Federal Rate (est. at 3%) not later than 45 days after the Effective Date of the Plan. Creditors will not receive post-petition interest at their contractual rate and waive any claim for attorneys fees. In addition, Class 2c creditors subordinate their right to payment to prior payment of Class 1A and Class 2b creditors.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6) and will not receive any contractual interest which might otherwise accrue after Petition filing. **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan**.

Part 2B. **Member/Owner Interests**.

| Name of Member | Interest | Disp Y/N | Amount to be Paid | [Monthly] [Quarterly] Payment |
|---|---|---|---|---|
| Andrew A. Lewis | 27.5591 | N | To be determined | Pro Rata Distribution |
| PENSCO Trust Company, Custodian | 11.8110 | N | To be determined | Pro Rata Distribution |
| Michael Lach | 7.8740 | N | To be determined | Pro Rata Distribution |
| Liesel Ernst | 23.6220 | N | To be determined | Pro Rata Distribution |
| Allyn R. Tognoli & Tina D. Tognoli, Trustees | 3.9370 | N | To be determined | Pro Rata Distribution |
| Ogen Perry & Dorit G. Perry | 17.3228 | N | To be determined | Pro Rata Distribution |
| Linda C. Latham | 3.9370 | N | To be determined | Pro Rata Distribution |
| PENSCO Trust Company, Custodian | 3.9370 | N | To be determined | Pro Rata Distribution |

For Class 2B, Debtor will make a pro rata distribution of all net monies remaining after paying Class 1A, Class 2b and Class 2c creditors. However, these members/owners will receive no monies until all such creditors are paid under this Plan. **Claimants in this class are impaired and are entitled to vote on confirmation of the Plan**.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a) <u>Professional Fees</u>.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| Campeau Goodsell Smith, L.C. | Balance unknown. ($72,000 (approved on 12/12/13, Docket#118 and paid) |
| Rossi, Hamerslough (Small Matter)(employed 8/26/13, Docket#59) | $2,500.00 (est.)(no application yet filed) |

Professionals are subject to the provisions of 11 U.S.C. 503.

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6©). **Estate professionals are not entitled to vote on confirmation of the Plan**.

(b) <u>Other Administrative Claims</u>. Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6©). **Administrative claimants are not entitled to vote on confirmation of the Plan**.

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| None | |
| | |

© <u>Tax Claims</u>. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest

(at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code.  Payments will be made [monthly/quarterly], due on the [number] day of the [month/quarter], starting [month & year].  To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6©).  **Priority tax claimants are not entitled to vote on confirmation of the Plan**.

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Internal Revenue Service | $100.00 (Claim#1)(Debtor may object to this claim) | unknown | $100.00 | 1 |
|  |  |  |  |  |

**PART 4:   EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) <u>Executory Contracts/Unexpired Leases Assumed</u>.  Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder.  Post-confirmation obligations will be paid as they come due.  Pre-confirmation arrears will be paid as set hereinabove.

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| None-see note in subsection © |  |  |  |  |

(b) <u>Executory Contracts/Unexpired Leases Rejected</u>.  Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its

Case: 13-53491    Doc# 144    Filed: 01/17/14    Entered: 01/17/14 15:20:25    Page 7 of 18

property, without further order of the court.  Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
| --- | --- |
| None | |
| | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed rejected. Debtor notes that to the extent executory contracts and unexpired leases were paid in full as in the case of ERAS Environmental, already assumed and assigned as in the case of Grocery Outlet, Inc., satisfied by way of the Plan as in the case of Rossi, Hamerslough in the BPB Matter, or the party was employed post-petition as in the case of Rossi, Hamerlough in the Small Matter Debtor does not assume these.

**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**
(a) <u>Discharge</u>.  Debtor shall not receive a discharge of debts until Debtor makes all payments due under the Plan or the court grants a hardship discharge.

(b) <u>Vesting of Property</u>.  On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c) <u>Plan Creates New Obligations</u>.  Except as provided in Part 6(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**
(a) <u>Creditor Action Restrained</u>.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the

Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b) <u>Obligations to Each Class Separate</u>. Debtor's obligations under the Plan are separate with respect to each class of creditors. Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes. For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c) <u>Material Default Defined</u>. If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtor

shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 11<s>3</s> to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan. Except for Debtor's potential affirmative claim against BPB described in Part 7 (f), it is not anticipated that the bankruptcy court will have or exercise jurisdiction over the other claims described in Part 7 (f), including the Small Matter already pending in state court or claims against Chevron and other property owners <s>Chevron and prior owners, occupants of real property</s>.

**PART 7: GENERAL PROVISIONS**
(a) <u>Effective Date of Plan</u>. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>. Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be [select one] [returned to Debtor] [distributed pro-rata among allowed claims in this

Chapter 11
Combined Plan & Disclosure Statement
January 17, 2014                    -10-                    (Version: 7/30/12)

Case: 13-53491    Doc# 144    Filed: 01/17/14    Entered: 01/17/14 15:20:25    Page 10 of 18

class].

(c) <u>Cramdown</u>.  Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>.  If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>.  Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Cred Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| Boston Private Bank | Y | Fraud/Estoppel | $470,000.00 | Y |
| Kimball W. Small, et al | N | Breach of Guarantee/Contract | $1,083,908.74 | Y |
| Chevron, prior owners, occupants of real property | N | contribution, etc | unknown | Y |

(g) <u>Notices</u>.  Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

    Atten: **Andrew A. Lewis**
    **272 E Santa Clara Grocery, LLC**
    **475 S. San Antonio Road**
    **Los Altos, CA 94022**

(h) <u>Post-Confirmation United States Trustee Fees</u>.  Following confirmation, Debtor shall continue to pay quarterly fees to the

United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(I) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

(j) <u>Miscellaneous</u>. Debtor's manager will be responsible for pursuing claim objections and/or litigation, acting as the disbursing agent, and doing so without compensation

Dated: January 17, 2014

                                        _____
                                        Debtor
                                        By: Andrew A. Lewis, Responsible
                                        Individual and Manager

                                        **Campeau Goodsell Smith, L.C.**
                                        <u>**/s/ William J. Healy**</u>
                                        **William J. Healy**
                                        Attorneys for Debtor

**Attorney Certification**

    I, William J. Healy, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (I) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

    The following provisions of the Standard-Form Plan have been altered or otherwise modified.

        Page 1, paragraph 4-re-lettered/title exhibits
        Page 2, paragraph 1-clarified effect of confirmation
        Page 2, Part 1-Treatment of Secured Creditors
        Page 3, Part 2A-Treatment of General Unsecured Claims
        Page 4, Class 2(c)Insider Note Unsecured Claims
        Page 5, Part 2B. **Member/Owner Interests**.
        Page 6, Part 3--added sentence that professionals are subject to the provisions of 11 U.S.C. 503.
        Page 7, Part 4-added language to subsections (a) & ©.
        Page 10, Part 6 (f)added language relative to conversion.
        Page 10, Part 6 (g) added language relative to jurisdiction.
        Page 12, added sentence (part (j)) regarding party/person prosecuting objections to claims and litigation and compensation for same.

    I declare that the foregoing is true and correct. Executed this 17th day of January, 2014.

                          /s/ William J. Healy
                          William J. Healy
                          Attorneys for Debtor

**Exhibit 1 – Events That Led To Bankruptcy**

Debtor is a single asset real estate entity and owner of real property commonly know as 272 E Santa Clara Street in San Jose. Debtor's real property is subject to a commercial lease with Grocery Outlet as a tenant whereby the tenant pays approximately $39,600/month in rent (triple net), and is subject to a first position deed of trust in favor of Boston Private Bank & Trust Company ("BPB"), although Debtor is not BPB's original borrower. In approximately November 2012, Debtor contracted to sell the real property for $7,300,000. However, the contracted buyer did not go forward with the sale when it discovered an environmental issue with the real property. The contracted price was sufficient to satisfy BPB's first deed of trust and all creditors and provide a return to Debtor's investors. Pre-petition the Debtor was working to resolve the environmental issue with the real property and conclude the sale. The bankruptcy resulted from an impasse between Debtor and BPB relative to BPB's demand for a release of Debtor's claims against BPB for its non-disclosure of environmental issues with the real property. Debtor understands that BPB knew of the environmental issues with the real property before it lent monies to Kimomex and knew these issues remained prior to and during Debtor's foreclosure on the second deed of trust (pursuant to a loan between Debtor and Kimomex), Debtor's expenditure of substantial sums of money foreclosing on its second deed of trust, Debtor's bringing and keeping BPB current, Debtor's readying the property for and securing a tenant, and maintaining the tenant's payment on the lease, and Debtor's various agreements with BPB extending BPB's foreclosure. This impasse and bankruptcy also resulted from BPB's demand that Debtor's tenant pay all rental income (all $39,600/month) to them notwithstanding the note between BPB and its borrower Kimomex only called for $24,307.45/month, which then denied Debtor income and monies to address the pending environmental issue preventing the sale of the real property.

Debtor's rental income is being held by BPB. Debtor's monthly expenses, including environmental professionals, post petition real property taxes, US Trustee Fees, and other expenses, cannot be paid as long as BPB holds Debtor's rental income.

**Significant events that have occurred during this Chapter 11 case**

During this Chapter 11 case Debtor's rental income has been received and held by BPB. Debtor's monthly expenses, including environmental professionals, post petition real property taxes, US Trustee Fees, and other expenses, cannot be paid as long as BPB holds Debtor's rental income. During this Chapter 11 case, BPB asserted, for the first time, a claim for default interest of 2% back to a date uncertain and in an amount approaching $300,000 and a claim for costs and attorney's fees in an unknown amount.

During this Chapter 11 case Debtor received (August 26, 2013) a 'no further action' letter from the Santa Clara County Department of Environmental Health ("DEH") relative to Debtor's real property. Debtor anticipates receipt of a 'closure' letter from DEH closing

the environmental issue.

On October 29, 2013 the court issued an ORDER GRANTING MOTION TO SELL REAL PROPERTY (272 E. Santa Clara St.) FREE AND CLEAR OF LIENS AND PAY BROKER/AGENT (Docket#89)) and on October 30, 2013 issued an ORDER GRANTING MOTION TO ASSUME AND ASSIGN LEASE (272 E. Santa Clara St.)(Docket#90), on November 7, 2013 said sale closed, and on November 7-8, 2013 Debtor paid, through escrow, US Trustee Fees, outstanding real property taxes pursuant to the County of Santa Clara Tax Assessor's escrow demand $247,595.95, and $3,341,017.20 to BPB. Debtor currently holds $3,814,794.80 in its DIP Accounts (consisting of post-petition rents of approximately $198,400 (July-November) and $3,616,394.85 of net sale proceeds.

On October 22, 2013, shortly after Debtor had filed its motion to sell and motion to assume and assign lease and before payment of $3,341,017.20 on November 8, 2013, BPB filed a Proof of Claim ("BPB Claim") asserting a debt of $3,806,660.52. On October 29, 2013 Debtor filed an Objection to Proof of Claim of Boston Private Bank & Trust Company (Claim No. 2)(Docket#88)("Claim Objection") asserting, in part, that the BPB Claim was admittedly back-dated, is overstated, and improperly overstates and contradicts the repeated, sworn and represented amount of outstanding principal by at least $214,151.50, BPB authored and filed at least seven (7) pleadings confirming a principal debt of $3,341,017.20, BPB asserted two different interest totals, $217,401.61 as of October 15, 2013 and $242,584.05 as of November 15, 2013 a difference of $25,182.44, BPB asserted late fees and default interest, BPB intercepted but held in abeyance post-petition rents in violation of 11 U.S.C. 362 and 541, delayed return of such funds, and then refused to accept payment from Debtor, and BPB asserted a claim for attorney's fees. As a result there is a dispute between Debtor and BPB of $465,643.30, upon which BPB also asserts costs and attorneys fees.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Real Property #1: [272 E Santa Clara St. San Jose, CA]

| Fair Market Value | Liens | | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|---|
| see below | 1st | see below | n/a | see below | see below | see below |
| | 2nd | | | | | |
| | 3rd | | | | | |

[Santa Clara County Tax Assessor claims $48,281.96 (as of 11/19/13)]

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $3,741,941.41 | TBD | n/a | $3,741,941.41 |
| Automobile #1 | n/a | | | |
| Automobile #2 | n/a | | | |
| Household Furnishings | n/a | | | |
| Jewelry | n/a | | | |
| Equipment | n/a | | | |
| Stocks / Investments | n/a | | | |
| Other Personal Property | $unknown | n/a | n/a | $unknown |
| TOTAL | | | | |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | $3,741,941.41 |
| Recovery from Preferences / Fraudulent Conveyances [ADD] | 0 |
| Chapter 7 Administrative Claims [SUBTRACT] | 0 |
| Chapter 11 Administrative Claims [SUBTRACT] | unknown |
| Priority Claims [SUBTRACT] | 100 |
| Chapter 7 Trustee Fees [SUBTRACT] | $25,000 |
| Chapter 7 Trustee's Professionals [SUBTRACT] | $5,000 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | $3,717,841.40 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $754,155.21 principal |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 100% |

| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 100% |
|---|---|

Debtor notes that the above calculation does not include BPB and its claim. As discussed in Part 1, BPB asserts a claim above its previously undisputed claim of principal paid by Debtor on November 7-8, 2013 and includes, among other things, a claim **for** principal and default interest backed dated to a date uncertain and in an amount of $465,643.30 and a claim for costs and attorney's fees in an unknown amount (Claim 2). As BPB's claim has changed, is apparently changing, and is subject to a claim's objection, Debtor cannot project exactly what BPB or others would receive if this case was converted to a Chapter 7 other than to reference the claim now asserted by BPB, known figures, and estimates of other figures.

**Exhibit 3 – Effective Date Feasibility**
Can the Debtor Make the Effective Day Payments?

|  | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date |  | 3,741,941.41 |
| Payments on Effective Date |  |  |
| Unclassified Claims | $754,155.21 principal |  |
| Administrative Expense Claims | ($73,556.80 paid) unpaid balance unknown |  |
| Priority Claims | $100.00 |  |
| Small Claims (Class 2(a)) | n/a |  |
| U.S. Trustee Fees | unknown |  |
| B. Total Payments on Effective Date |  | $754,255.21 |
| **C. Net Cash on Effective Date** (Line A – Line B) (Not feasible if less than zero) |  | $2,987,686.20 |

Debtor anticipates that BPB will assert that the monies held by Debtor in Debtor's DIP Accounts, namely net sales proceeds and rental payments from Debtor's former tenant, are subject to its collateral claims and cash collateral requirements. Debtor maintains that to the extent such funds are BPB's collateral and subject to cash collateral requirements BPB's claim is adequately protected notwithstanding payments under the Plan. However, in the absence of BPB's consent to the Plan payments Debtor will move the court for permission to use funds pursuant to 11 U.S.C. 363 and related authorities.

In addition, Debtor notes that the above calculation does not include BPB and its claim. As discussed in Part 1, BPB asserts a claim above its previously undisputed claim of principal paid by Debtor on November 7-8, 2013 and includes, among other things, a claim **for** principal and default interest backed dated to a date uncertain and in an amount of $465,643.30 and a claim for costs and attorney's fees in an unknown amount (Claim 2). As BPB's claim has changed, is apparently changing, and is subject to a claim's objection, Debtor cannot project exactly what BPB or others would receive if this case was converted to a Chapter 7 other than to reference the claim now asserted by BPB, known figures, and estimates of other figures.