Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151759)
jross@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:      (408) 998-4790

Attorneys for Secured Creditor BOSTON PRIVATE
BANK & TRUST COMPANY, formerly known as
and successor to Borel Private Bank & Trust
Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re: | CASE NO.  13-53491 |
| 272 E. Santa Clara Grocery, LLC, | CHAPTER 11 |
| Debtor. | **SECURED CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S OBJECTION TO DEBTOR'S COMBINED DISCLOSURE STATEMENT (AND PLAN OF REORGANIZATION) DATED JANUARY 17, 2014** |
| | <u>Disclosure Statement Hearing:</u><br>Date:           February 6, 2014<br>Time:           1:30 p.m.<br>Judge:          Hon. Stephen L. Johnson<br>Courtroom:   3099 |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1079846.1

OBJECTION TO DISCLOSURE STATEMENT

CASE NO. 13-53491

Case: 13-53491    Doc# 149    Filed: 01/30/14    Entered: 01/30/14 14:19:54    Page 1 of 7

# I. INTRODUCTION

On January 17, 2014, debtor and debtor in possession 272 E. Santa Clara Grocery, LLC ("Debtor") filed a proposed Combined Plan of Reorganization and Disclosure Statement[1] (the "Disclosure Statement") [Dkt. No. 144]. The Disclosure Statement attempts to describe the terms of the Debtor's proposed plan for resolving what is essentially a two-party dispute with secured creditor Boston Private Bank & Trust Company ("BPB").[2] Yet, the Disclosure Statement contains various deficiencies that must be addressed before the Court can find that the "adequate information" requirement under Bankruptcy Code section 1125 is met. For the reasons discussed below, the Disclosure Statement should not be approved.

# II. THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED BECAUSE IT FAILS TO CONTAIN ADEQUATE INFORMATION UNDER BANKRUPTCY CODE SECTION 1125

## A. Legal Standard

Under Bankruptcy Code section 1125, a disclosure statement shall contain "adequate information", which is information "of a kind, and in sufficient detail" to "enable a hypothetical reasonable informed investor…to make an informed judgment about the plan…." 11 U.S.C. § 1125. The court has an independent obligation to determine if a proposed disclosure statement meets this standard. *E.g.*, *In re Eastern Main Electrical Cooperative, Inc.*, 125 B.R. 329, 333 (Bankr. D. Maine 1991); *In re Main Street AC, Inc.*, 234 B.R. 771, 774 (Bankr. N. D. Cal. 1999). Disclosure statements may vary in content, but should include "financial information sufficient to inform the creditors of all liens, en-cumbrances, security interests, loans or other financial obligations which may impair the Debtor or [its] assets." *In re Michael E. Malek*, 35 B.R. 443, 445 (Bankr. E.D. Mich. 1983). A disclosure statement must describe how the plan will be implemented and "describe fully, completely, and in detail all transactions with insiders." *Id.* Furthermore, risk factors to creditors must be described. *Id. See also*, *In Re Metrocraft Publishing Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

---

[1] The Debtor again filed the Disclosure Statement using a model combined plan and disclosure statement promulgated for use in Chapter 11 cases filed by *individuals*, rather than for a sophisticated single asset business entity such as the Debtor.

[2] BPB was formerly known as Borel Private Bank & Trust Company and is the successor by merger to Borel.

Measured against these standards, the Debtor's proposed Disclosure Statement in this case fails and should not be approved.

### B. Specific Objections to the Proposed Disclosure Statement

BPB's specifically objects to the Debtor's proposed disclosure statement as follows:

#### 1. The Disclosure Statement Fails to Provide Adequate Information Regarding Treatment of Secured Creditors

Part 1 of the plan deals with Treatment of Secured Creditors. This section is confusing and misleading. Initially, it includes the Santa Clara County Tax Assessor as a participant in the class but then says the Assessor's claim has been withdrawn and has already been paid in full. Inclusion of the Santa Clara County Tax Assessor in the plan is superfluous and misleading because it suggests that an already fully satisfied and withdrawn claim is affected by the plan. This claim should be completely removed from consideration in the document.

The Disclosure Statement also asserts that BPB "Rights Remain Unchanged" and that it is unimpaired because it will be paid its allowed claim in full. However, the Disclosure Statement lacks any specific time frame for paying BPB's claim and ignores that BPB's rights to immediate foreclosure on its collateral are blocked. The Disclosure Statement/Plan states that the Debtor seeks to deny BPB its contractual right to interest calculated at the interest after default rate. Any delay in payment of a claim or other alteration of BPB's rights constitutes impairment. *See In re L & J Anaheim Associates*, 995 F.2d 940, 942 (9th Cir.1993). At this point, BPB may be forced to wait indefinitely for payment and is not correctly advised of the impact on its enforcement rights or of its right to vote on the Plan. To suggest that BPB's "Rights Remain Unchanged" is plainly false. Accordingly, the Disclosure Statement lacks adequate information and should not be approved.

#### 2. The Disclosure Statement Fails to Describe Transactions with Insiders

The Disclosure Statement fails to "describe fully, completely, and in detail all transactions with insiders," in violation of section 1125. The major unsecured creditors in Class 2c are insiders, one of whom is the managing member and responsible person of the Debtor. The

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1079846.1

- 3 -

OBJECTION TO DISCLOSURE STATEMENT

CASE NO. 13-53491

Debtor's schedules reveal that these individuals received substantial payments from the Debtor within 90 days of the bankruptcy filing. In addition, through a Rule 2004 examination, BPB has determined that one of these individuals (Mr. Lewis) has received in excess of $500,000 in payments within the one year period preceding the filing of the petition. The Disclosure Statement completely fails to provide any information regarding these insider transactions, why substantial preference claims do not exist and why administrative and priority claims should not be paid from recoveries from these sources rather than from BPB's collateral. *Compare,* Disclosure Statement, Part 7 (disclosing potential claims against BPB, Kimball W. Small, *et al.* and Chevron).

### 3. The Disclosure Statement Misrepresents Insiders' Voting Rights

The Disclosure Statement misrepresents the effect of a member's vote on the Plan. It provides that Class 2(c) (Insider Note Unsecured Claims) and Class 3 (Member/Owner Interests) are impaired and entitled to vote on the Plan. Even if these insider classes may be *offered the opportunity to vote*, the Disclosure Statement fails to disclose that the votes of the members of those insider classes will *not be counted*. 11 U.S.C. section 1129(a)(10). Accordingly, to the extent the Debtor is attempting to give interested parties false assurance that it will be able to secure at least one impaired consenting class based upon the insider-members' votes, the insiders should be informed that such is not the case.

### 4. The Disclosure Statement Fails To Describe The Debtor's Failure To Comply With Its Obligations As A Single Asset Real Property Debtor

Exhibit 2 of the Disclosure Statement fails to describe the fact that the Debtor admitted at the first status conference in this matter that it is a single asset real estate debtor. In addition, the Debtor fails to describe that it did not comply with its Code obligations to make payments to BPB or to file a plan within 90 days which had a reasonable probability of being confirmed. (See BPB's motion for relief from stay [Dkt. No. 78].) The Debtor's lack of compliance with its Code obligations should be disclosed to both the Court and creditors.

///

///

### 5. The Disclosure Statement Misleadingly Suggests That The LLC Debtor Is Entitled To A Hardship Discharge

Part 5(a) of the Disclosure Statement suggests that the LLC debtor may obtain a "hardship discharge" of its obligations. This statement is untrue because only individual debtors are eligible for such discharges. 11 U.S.C. §1141(d)(5). The Disclosure Statement therefore misleads creditors and should not be approved.

### 6. Exhibit 2 Is Inadequate Because It Refuses To Include Information Readily Available To The Debtor Regarding The Amount of BPB's Claim

The Disclosure Statement obfuscates the distribution that would be made to creditors if the case were converted to Chapter 7. The Debtor fails to include information regarding the amounts to be disbursed to BPB even though the remaining unpaid constituent elements of BPB's claim have been plainly spelled out to it. [E.g., Dkt. 108, p. 4 and Dkt. 145, p. 11] Even though the Debtor may dispute some or all of these elements, they provide information regarding what will be disbursed on liquidation if the Debtor is unable to meet its burden of proof on the claim objection. Accordingly, that information should be included.

### 7. The Disclosure Statement Was Prepared Using an Improper Combined Plan and Disclosure Statement

Notwithstanding the fact that it is a limited liability company which filed a single asset commercial real estate case, the Debtor has filed a combined plan and disclosure statement using the Court's model plan promulgated for use in Chapter 11 cases filed by *individuals*. While the Court's instructions do not prohibit debtors from attempting to use the model in other cases, the format and approach is plainly unsuitable for a sophisticated Chapter 11 case. The purposes of the model plan are to reduce expense for debtors and "to provide creditors the clearest possible explanation of how their claims will be treated."[3] Perhaps this Debtor saved some fees in the short run by using the model, but the form certainly does not provide BPB (or other interested parties) with the "clearest possible explanation" of the treatment of its claim. On this basis alone,

---

[3] See "Instructions For Using Standard-Form Plan And Disclosure Statement For Individual Chapter 11 Debtors," part 1.A.

728\1079846.1 - 5 - OBJECTION TO DISCLOSURE STATEMENT CASE NO. 13-53491

approval of the disclosure statement should be denied.[4]

## III. BPB RESERVES FOR CONFIRMATION ITS OBJECTIONS BASED UPON THE REVELATIONS IN THE DISCLOSURE STATEMENT THAT THE PLAN IS UNCONFIRMABLE ON ITS FACE

In its objections to the initial combined proposed disclosure statement and plan filed by the Debtor, BPB pointed out that the document demonstrated that the plan was unconfirmable on its face. [Dkt. 128, part IV]  During the hearing held on January 9, 2013, BPB understood the Court to indicate that those objections would be dealt with during the confirmation process if the Debtor proceeds with its plan.  Accordingly, BPB incorporates those objections by reference but reserves its right to assert those objections in opposition to confirmation.

## IV. THE DISCLOSURE STATEMENT SHOULD NOT BE APPROVED BECAUSE SERVICE AND NOTICE OF THE DISCLOSURE STATEMENT HEARING ARE DEFECTIVE

Under Bankruptcy Local Rule 3017-1(a), "[t]he proposed plan and proposed disclosure statement shall be served, *with the notice*, only on the United States Trustee and the persons mentioned in the second sentence of Bankruptcy Rule 3017(a)." BLR 3017-1(a) (emphasis added). The second sentence of Bankruptcy Rule 3017(a) provides that "[t]he plan and the disclosure statement shall be mailed with the notice of the hearing only to the debtor, any trustee or committee appointed under the Code, *the Securities and Exchange Commission* and any party in interest who requests in writing a copy of the statement or plan." Fed. R. Bankr. P. 3017 (emphasis added). As reflected in the proof of service of the notice of the initial hearing on the Debtor's Disclosure Statement [Dkt. No. 111-1], as well as the separate proof of service of the Debtor's proposed plan and Disclosure Statement [Dkt No. 111-2], the Debtor failed to serve the Securities and Exchange Commission with the requisite notice and pleadings.  The Debtor has filed no proof of service showing that it cured the defective service and notice by serving either (i) the amended disclosure statement and plan on the SEC, or (ii) notice to the SEC of the continued hearing on February 6, 2014.  Because the Debtor failed to comply with BLR 3017-

---

[4] BPB respectfully disagrees with the suggestion in the U.S. Trustee's earlier objection [Dkt. 126] that the form could possibly be adapted for use in this Case given the underlying nature of BPB's involuntary relationship with the Debtor and the nature and scope of disputes between the parties.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1079846.1                                - 6 -
OBJECTION TO DISCLOSURE STATEMENT                                CASE NO. 13-53491

Case: 13-53491    Doc# 149    Filed: 01/30/14    Entered: 01/30/14 14:19:54    Page 6 of 7

1(a) and Bankruptcy Rule 3017(a), notice and service remains defective, and the Disclosure Statement should not be approved.

## V. CONCLUSION

Based upon the foregoing, BPB respectfully requests that the Court deny approval of the proposed Disclosure Statement.

Dated: January 30, 2014

HOPKINS & CARLEY
A Law Corporation

By: /s/ Stephen J. Kottmeier
Stephen J. Kottmeier
Jay M. Ross
Attorneys for Secured Creditor
BOSTON PRIVATE BANK & TRUST COMPANY

728\1079846.1

- 7 -