Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151759)
jross@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA  95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone:     (408) 286-9800
Facsimile:      (408) 998-4790

Attorneys for Plan Proponent BOSTON PRIVATE BANK & TRUST COMPANY, formerly known as and successor to Borel Private Bank & Trust Company

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>272 E. Santa Clara Grocery, LLC,<br><br>Debtor.<br><br>. | CASE NO.  13-53491<br><br>CHAPTER 11<br><br>**RESPONSE TO DEBTOR'S OBJECTION TO DISCLOSURE STATEMENT (DATED AS OF JANUARY 17, 2014) WITH RESPECT TO CREDITOR BOSTON PRIVATE BANK & TRUST COMPANY'S CHAPTER 11 PLAN OF REORGANIZATION (DATED DECEMBER 5, 2013, AS AMENDED JANUARY 17, 2014) FOR DEBTOR 272 E. SANTA CLARA GROCERY, LLC** |

**I.     INTRODUCTION**

Plan Proponent and secured creditor BOSTON PRIVATE BANK & TRUST COMPANY, ("BPB"), hereby responds to the objections filed by debtor and debtor-in-possession 272 E. Santa Clara, LLC ("Debtor") to BPB's proposed Amended Disclosure Statement (as amended as of January 17, 2014, the "Disclosure Statement") in connection with its Plan of Reorganization (Dated December 5, 2013, as amended on January 17, 2014; the "BPB Plan").  The Debtor's

objections either lack merit, are premature objections to the BPB Plan that should be reserved for the plan confirmation phase, or in certain instances may be resolved by BPB's proposed changes to the Amended Disclosure Statement described in part II.D below. Accordingly, BPB's Amended Disclosure Statement should be approved.

The Debtor filed this single asset real estate case solely to resolve a two-party dispute between itself and BPB. Since that time, it has failed to propose a viable means of efficiently achieving such result at the least expense to creditors and interest holders. The Debtor's assertion that the BPB Plan is merely a partial settlement "offer" to the Debtor to resolve the bankruptcy case simply does not demonstrate that the Disclosure Statement lacks adequate information. To the contrary, all of the information necessary to enable creditors and interest holders who are entitled to vote on the BPB Plan is contained in the Disclosure Statement.

The BPB Plan, which includes a resolution of BPB's claim and a good faith compromise of the Debtor's purported Affirmative Claims Against BPB, is the most effective means of promptly paying creditors and enabling the Debtor's members to retain their interests altered (including their right to pursue claims against Chevron Oil and other entities which is preserved under the BPB Plan). Any assertion by the Debtor that the Disclosure Statement lacks sufficient or accurate information is absurd because, other than BPB, there are no creditors or interest holders who are not already intimately familiar with the disputed facts giving rise to BPB's claims and the Debtor's objections and alleged affirmative claims. Accordingly, the Disclosure Statement should be approved.

## II. ARGUMENT

### A. The BPB Disclosure Statement and BPB Plan Adequately Describe the Settlement and Release

Nothing in applicable bankruptcy law prevents a plan proponent from including a settlement of claims through a proposed plan of reorganization. To be sure, for purposes of adequate disclosure, the Debtor understands the settlement or it would not be balking at it. Therefore, BPB's description of the terms of the settlement is adequate.

Next, the Debtor's assertion that the release attached to the Plan is fatally defective

728\1080893.1 - 2 -
RESPONSE TO DEBTOR'S OBJECTION TO DISCLOSURE STATEMENT (DATED AS OF JANUARY 17, 2014); CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ◆ PALO ALTO
BURBANK

Case: 13-53491   Doc# 151   Filed: 02/04/14   Entered: 02/04/14 10:58:47   Page 2 of 9

because it allegedly incorrectly asserts that the Debtor owns all claims against BPB is contradicted by the Debtor's own filings and sworn testimony. On numerous occasions, the Debtor has represented that it owns the claims against BPB arising from the foreclosed loan and BPB's alleged non-disclosure of information. *See, e.g.* Dkt. 1, Schedule B ("claim against lender for non-disclosure"); Dkts. 62 and 144 (Exh. 1 to each of the Debtor's Combined Plan and Disclosure Statement and its Amended Plan and Disclosure Statement provide: "*Debtor's* expenditure of substantial sums of money foreclosing on its second deed of trust, *Debtor's* bringing and keeping BPB current, *Debtor's* readying the property for and securing a tenant, and maintaining the tenant's payment on the lease, and *Debtor's* various agreements with BPB extending BPB's foreclosure." (Emphasis added); and Dkt. 119-4 (In support of the Debtor's objection to BPB's claim, Andrew Lewis declares under oath, "Debtor was informed that BPB had been aware of the contamination since 2008, had a copy of a report showing purported contamination, and never disclosed the report or the purported contamination to Debtor. Had BPB disclosed this information to Debtor, *Debtor* would not have paid BPB $793,880 to cure the default, made the regular monthly payments under the First DOT to keep the loan current, or invested another $242,000 in leasing commissions to find a tenant." (Emphasis added.) In fact, even footnote 2 of the Debtor's objection to the Disclosure Statement speaks of a purported $1,000,000 claim of the Debtor.

To the extent the Debtor is now asserting that it does not own the claims against BPB, it has made significant material misrepresentations to creditors and the Court including in the instant objections. In light of the Debtor's repeated assertions that it was the party damaged by BPB, one could only conclude that any third party assigned its rights, title and interest in any such claims against BPB to the Debtor. *Compare* Dkt. 48 ("Assignors assigned all of their right, title and interest to their causes of action against the Guarantors under the Guaranties to [the Debtor] as Assignee.") The Debtor's new assertion that Investment Grade Loans, Inc. ("IGL") – a company that the Debtor listed as an auditor of its books and records within two years prior to the Petition Date but failed to include on its mailing matrix – may have claims against BPB or the Debtor is somewhat surprising. Yet, IGL is owned by the Debtor's responsible individual and

member, Andrew Lewis, which may explain why the Debtor is confusing its own alleged claims against BPB with those of others. The Debtor simply cannot have it both ways. Either it owns the claims and has made truthful disclosures to the Court and creditors or it does not and has made material misrepresentations to the Court and creditors. Until the Debtor disclaims ownership of the claims and amends its schedules and other filings in this case, BPB's disclosures accurately reflect the facts stated in the Debtor's schedules and other filings.

But more importantly, no matter who holds the claims, there is no dispute that the proposed release language has been disclosed. If the Debtor takes issue with it, any objections should be raised at the confirmation stage. Finally, the Debtor's is incorrect in asserting that the absence of legal authority in the Disclosure Statement means the disclosure statement does not contain adequate information. This Court has specifically directed that legal authority should not be contained in a disclosure statement.

### B. The Disclosure Statement Accurately Describes Whether or Not a Class Is Impaired

As acknowledged by the Debtor, section 1125 requires BPB as plan proponent to provide impaired creditors and interest holders with a written disclosure statement which contains adequate information regarding a proposed plan. A class is impaired unless, as to each claim in the class, the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest ." 11 U.S.C. §1124(1). BPB is not only impaired by virtue of the delayed payment it will receive on account of its Allowed Claim, but its bargained-for lien on the Property has since been converted to a security interest in the proceeds from the Debtor's sale of the Property and it is prevented from foreclosing upon that lien.

As to the remaining classes of claims, none of them are impaired. Class 1 has already been satisfied in full. As to Class 3, the BPB Plan proposes to pay such unsecured claims in full, with interest, on the Effective Date. Since none of the Class 3 claims are based upon an agreement that sets a deadline for payment, timing is not an issue and that class is unimpaired. However, even if Class 3 were re-designated as an impaired class as a result of the allegedly

728\1080893.1 - 4 -
RESPONSE TO DEBTOR'S OBJECTION TO DISCLOSURE STATEMENT (DATED AS OF JANUARY 17, 2014); CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491  Doc# 151  Filed: 02/04/14  Entered: 02/04/14 10:58:47  Page 4 of 9

delayed payment, each of the three members of the class is an "insider" whose vote would not be counted in any event. *See* 11 U.S.C. §1126(e); *In re Gilbert*, 104 B.R. 206, 209 (Bankr. W.D. Mo. 1989) (definition section of "insider" in 11 U.S.C. § 101(31) is nonexhaustive). The legislative history of the statute indicates that an "insider" is a person or entity with "a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." S.Rep. No. 95–989, 95th Cong. 2nd Sess., reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5810.

Here, because the Debtor's attorneys (Rossi, Hammerslough) were retained pre-petition, post-petition and intend to continue performing services post-confirmation, they have a close relationship with the Debtor and are extra-statutory insiders who would not be entitled to vote. *In re Broumas*, 203 B.R. 385, 391 (D.Md.1996) (finding debtor's attorneys were insiders). Ogen Perry is also an insider because he is the holder of over 17.3% of the Debtor's membership interests, has voting rights, made a significant loan to the Debtor and has control over the Debtor. Andrew Lewis, the Debtor's responsible individual and holder of over 27% of the Debtor's membership interests is also an insider by virtue of his own close relationship with and control over the Debtor.

In an effort to convert Class 4 into an impaired class, the Debtor asserts that the "rights and interests of the Debtor's members are impaired and diluted because the value of their respective interest are summarily reduced and their right to vote summarily denied." Objection, 5:2-5. Yet, the BPB Plan expressly provides that the Debtor's members will retain their membership interests. The BPB Plan provides that the Reorganized Debtor will retain any claims that have not been discharged or released in connection with the bankruptcy case. Since there is no ruling on the Debtor's Affirmative Claims Against BPB and the Debtor has not even filed any such claims, the Debtor's members' interests are not being "summarily reduced". In fact, to the extent BPB is successful in its defense against such claims, the members would actually benefit by accepting the $25,000 in the form of an offset from BPB's Allowed Claim. In short, the BPB Plan does not alter the members' rights; rather, it preserves them. They therefore are not impaired.

728\1080893.1 - 5 -
RESPONSE TO DEBTOR'S OBJECTION TO DISCLOSURE STATEMENT (DATED AS OF JANUARY 17, 2014); CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491    Doc# 151    Filed: 02/04/14    Entered: 02/04/14 10:58:47    Page 5 of 9

**C. BPB Has Not Taken An Inconsistent Position Regarding Adequate Protection**

The Debtor's assertion that BPB has taken inconsistent positions regarding adequate protection is false and misplaced. First, neither the BPB Plan nor the Disclosure Statement even refers to the term "adequate protection." Second, BPB's assertion that if the BPB Plan is confirmed, the estate will have sufficient funds to pay claims on the Effective Date of the BPB Plan remains true and correct because it assumes claims will be compromised and administrative expenses will be reduced or eliminated. Third, at the time BPB asserted that its position may not be adequately protected in connection with its opposition to the Debtor's motion for use of cash collateral (see Dkt. 105 at 2:14-15; 10:3-5), BPB was projecting based upon the status of the Debtor's case and the pending competing plans of reorganization. That is, if the Debtor's plan or another plan is confirmed, there is no guaranty that administrative expenses would not deplete the estate's funds to the detriment of BPB. Accordingly, no modifications need to be made to address the Debtor's out-of-context objection.

**D. The Balance Of The Debtor's Objections Can Be Resolved By Simple Amendments To The Disclosure Statement If The Court Finds Them Appropriate For Disclosure In This Matter**

The Debtor has raised certain matters that BPB acknowledges can be addressed in its amended disclosure statement if the Court deems them material. Those issues, and BPB's proposed modifications, are set forth below.

1. To address Debtor's Objection at Part V, BPB will correct the inadvertent typo in the disclosure statement regarding the amount the Debtor paid BPB from the proceeds of the sale of the Property from $3,241,017.20 to $3,341,017.20.

2. The Debtor's Objection at Part VII is actually a plan objection. However, BPB can amend its plan to reconcile the allegedly inconsistent treatment of unclaimed distributions described in Section 6.2.4 versus Sections 6.5.1 and 6.5.2. Specifically, BPB will delete Section 6.5 (including but not limited to Sections 6.5.1 and 6.5.2) from the Plan in its entirety. New Section 6.2.6 will be inserted, which will state: "The Disbursing Agent Shall make responsible efforts to locate a current address for creditors whose mail/distribution is returned as undeliverable."

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

728\1080893.1 - 6 -
RESPONSE TO DEBTOR'S OBJECTION TO DISCLOSURE STATEMENT (DATED AS OF JANUARY 17, 2014); CASE NO. 13-53491

Case: 13-53491    Doc# 151    Filed: 02/04/14    Entered: 02/04/14 10:58:47    Page 6 of 9

3. To address the Debtor's Objection at Part VIII, BPB can amend and restate Part 5.a. of the Disclosure Statement in its entirety as follows:

> a. Assets
>
> The Debtor's assets consist of the Estate Funds, a $20,000 "Retainer(s) paid to professionals" (see Dkt. 140), the Affirmative Claims Against BPB, and its other contingent, unliquidated claims against Chevron Oil and "guarantors of foreclosed loan" as reflected on Schedule B. BPB disputes the Affirmative Claims Against BPB in their entirety and assert they have no value to the Debtor's estate.

No further change is needed. As already described in the Disclosure Statement, "[a]ny claims or causes of action that the Debtor has listed as assets of the estate, or which the Debtor discovers during the pendency of the bankruptcy case, to the extent any exist, shall become property of the Reorganized Debtor on the Effective Date and may be pursued by the Debtor or the Reorganized Debtor for the benefit of the estate. Moreover, Section 6.11 of the BPB Plan also provides that the Reorganized Debtor may maintain and enforce any Claims of the Debtor or the Estate, except as are released and/or waived pursuant to the BPB Plan.

4. The Debtor's insistence at Part IX of its Objection that BPB must include the Debtor's self-serving version of the disputed facts only tends to demonstrate that the Debtor is more concerned with dragging out litigation and incurring administrative fees at the expenses of all creditors and equity holders than bringing this case to a close. BPB disputes that the Disclosure Statement contains inaccurate, one-sided information, particularly given the two-party nature of this case. Nevertheless, if the Court believes changes are warranted to address the Debtor's Objection at Part IX, BPB can make the following changes:

   a. Disclosure Statement, 2: 8-10 may be amended to read: "Debtor's ongoing expenses relate to the expenses associated with administering its estate, including but not limited to fees and costs to be incurred in connection with resolving BPB's claim, evaluating and prosecuting its alleged claims against BPB and other third parties including Chevron Oil and the guarantors of a loan, and winding up the bankruptcy estate."

   b. Disclosure Statement, 2:12-17 may be amended to read: "Debtor's factual

728\1080893.1 - 7 -
RESPONSE TO DEBTOR'S OBJECTION TO DISCLOSURE STATEMENT (DATED AS OF JANUARY 17, 2014); CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491    Doc# 151    Filed: 02/04/14    Entered: 02/04/14 10:58:47    Page 7 of 9

and legal claims against BPB are described in detail in the Debtor's amended objection to BPB's proof of claim (see Dkt. 119) and arise from its assertion that BPB purportedly had knowledge of alleged environmental conditions relating to the Property, allegedly failed to disclose such conditions to Debtor prior to, during and after its foreclosure on the Property and payment to BPB of funds and incurring expenses in connection with the Property, allegedly negotiated, but failed to consummate an agreement with the Debtor regarding the Property, and allegedly improperly backdated payments and charged default interest and late fees that increased the amounts it previously claimed in various pleadings that it was owed."

    c.    The following sentence may be inserted after Disclosure Statement, 10:15-16: "The Debtor contends that other agreements exist."

    d.    Disclosure Statement, 10:17-20 may be amended to read: "In their several agreements to postpone the BPB foreclosure sale, the Junior Lenders' representative and BPB expressly agreed that defaults under the loan were not cured and that BPB reserved all of its rights and remedies with respect to the defaults, other than its agreement to postpone the nonjudicial foreclosure sale from time to time on certain conditions. The Debtor disputes BPB's position and asserts that the loan was brought current in July 2011 and kept current from July 2011 through April/May 2013 when BPB asserted its right to take assignment of the rents from the tenant."

    e.    The relevant portion of Disclosure Statement, 11:5-6 may be amended to read: "Instead, the Debtor's representative admitted to having…."

The Debtor has repeatedly recited its eight-page, one-sided history of the background of the two-party dispute between itself and BPB and demanded that it be included in BPB's disclosure statement. That self-serving history, however, is nothing more than a direct copy of the Debtor's amended objection to BPB's claim, to which BPB is prepared to refer into the Disclosure Statement if the Court deems the information material. To be sure, any interested parties –to the extent they exist – are already intimately familiar with the parties' claims and defenses and do not need to read the regurgitated disputed facts again.

728\1080893.1 - 8 -
RESPONSE TO DEBTOR'S OBJECTION TO DISCLOSURE STATEMENT (DATED AS OF JANUARY 17, 2014); CASE NO. 13-53491

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE ♦ PALO ALTO
BURBANK

Case: 13-53491    Doc# 151    Filed: 02/04/14    Entered: 02/04/14 10:58:47    Page 8 of 9

## III. CONCLUSION

BPB respectfully submits that the Disclosure Statement contains adequate and accurate information and should be approved. To the extent the Court deems material, BPB can incorporate the changes described above. The balance of the Debtor's objections should be reserved for the plan confirmation process.

Dated: February 4, 2014

Respectfully submitted,

HOPKINS & CARLEY
A Law Corporation

By: /s/ Stephen J. Kottmeier
　　Stephen J. Kottmeier
　　Jay M. Ross
　　Attorneys for Secured Creditor BOSTON
　　PRIVATE BANK & TRUST COMPANY,
　　formerly known as and successor to Borel
　　Private Bank & Trust Company

728\1080893.1 - 9 -
RESPONSE TO DEBTOR'S OBJECTION TO DISCLOSURE STATEMENT (DATED AS OF JANUARY 17, 2014); CASE NO. 13-53491

Case: 13-53491   Doc# 151   Filed: 02/04/14   Entered: 02/04/14 10:58:47   Page 9 of 9