

Entered on Docket
June 20, 2014
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed June 20, 2014

_____
Stephen L. Johnson
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

In re

272 E. SANTA CLARA GROCERY LLC,

Debtor.

Case No. 13-53491 SLJ

Chapter 11

**ORDER FOLLOWING TRIAL ON AMENDED OBJECTION TO CLAIM OF BOSTON PRIVATE BANK & TRUST COMPANY**

Debtor 272 E. Santa Clara Grocery, LLC ("Debtor") filed its chapter 11 petition on June 27, 2013. On October 22, 2013, Boston Private Bank & Trust Company ("BPB") filed a secured proof of claim for $3,806,600.52. Debtor filed an objection to the claim on October 29, 2013. On December 4, 2013, BPB filed a response to the Debtor's claim objection, and on December 13, 2013, Debtor filed an amended objection to BPB's claim.

On May 12, 2014, the court held a trial on the claim objection. William Healy, Esq. appeared for Debtor. Steven Kottmeier, Esq. appeared for BPB. After considering the evidence and the legal arguments submitted by the parties, the court will allow in full BPB's claim.

ORDER FOLLOWING TRIAL
-1-

# I. FACTUAL BACKGROUND[1]

## A. Loan Transactions and Defaults

An entity called Kimomex Santa Clara LLC ("Kimomex") owned real property located at 272 East Santa Clara Street, San Jose, California (the "Property"). On July 15, 2008, BPB's predecessor, Borel Private Bank & Trust Company, made a secured loan to Kimomex for the principal sum of $3,600,000. The loan documents Kimomex signed include the Promissory Note, the Business Loan Agreement, and a Deed of Trust (collectively, the "Loan Documents").

The Promissory Note provided that the original principal amount of the loan was $3,600,000. The Promissory Note required 120 monthly payments of $24,307.45, with a final balloon payment estimated to be $2,814,716.98. However, the interest rate was to vary over the term of the loan once sixty months had elapsed. The Promissory Note provided that payments were to be applied to interest first, then to principal, and then to any fees. Upon default, the interest rate on the loan increased by 2%. A default occurred if there was a failure to make payment on the loan, or if there was a breach of any of the other loan terms. It permitted the recovery of attorney's fees and costs. The Promissory Note also authorized a late charge of 5% of the missed payment.

The Promissory Note contained this provision:

> COLLATERAL. Borrower acknowledges this Note is secured by the following collateral described in the security agreement listed herein:
>
> (A) a Deed of Trust, dated July 15, 2008, to a trustee in favor of Lender on real property located in Santa Clara County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.

---

[1] This order constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052(a).

ORDER FOLLOWING TRIAL

The provision included a transfer of any beneficial interest in the Property. This was a due on sale/encumbrance provision.

The Business Loan Agreement included a covenant that the borrower would not encumber the Property with any junior liens. Under this agreement, the full amount of the loan would become due in the event of default. It also contained a term requiring payment of attorney's fees and costs. Finally, it included a provision which indicated that no provision in the Loan Documents can be waived by the lender unless that waiver is done in writing and was signed by the lender. This provision specifically stated that the BPB's course of conduct alone cannot constitute a waiver.

The Deed of Trust provided that all of Kimomex's obligations under the Loan Documents were secured by a lien on the Property. The Deed of Trust also contained a due on sale/encumbrance provision.

BPB acquired Borel's interest in the Loan Documents by merger.[2]

On or about May 14, 2009, Kimomex borrowed $635,000 from a group of individuals ("Junior Lenders") under a loan arranged through Investment Grade Loans, Inc. ("IGLI"). Kimomex secured this obligation with a second priority deed of trust on the Property. IGLI acted as trustee under that deed of trust. Kimomex borrowed this money and placed a lien on the Property without informing BPB. IGLI and the Junior Lenders were sophisticated real property secured lenders with enormous experience in the market. Andrew Lewis, IGLI's executive, testified that he understood the meaning of due on sale/encumbrance clauses like those found in the Loan Documents. Thus, IGLI and the Junior Lenders knew or should have known that the second lien they took on the Property violated the due on sale/encumbrance clause.

In 2010, Kimomex stopped making payments on the BPB obligation. On March 22, 2011, BPB recorded a notice of default with the Recorder for the County of Santa Clara, thereby commencing foreclosure on its Deed of Trust. In connection with the foreclosure

---

[2] Unless otherwise noted, the court uses "BPB" to refer to both Boston Private Bank & Trust and its predecessor Borel Private Bank & Trust Company.

proceeding, BPB requested a preliminary title report on the Property. It learned for the first time that Kimomex had borrowed $635,000 from IGLI and the Junior Lenders. On June 28, 2011, BPB recorded a notice of sale, establishing a foreclosure sale date of July 20, 2011.

BPB's original loan was in default for at least two reasons. First, the original Loan Documents contained a due on sale/due on encumbrance clause, which was triggered by the second priority borrowing against the Property. Second, Kimomex had defaulted on the BPB loan by failing to make payments. The court finds these defaults were both material. As to the second borrowing, it resulted in the foreclosure of the Property and this litigation. As to the payment default, BPB was significantly delayed in realizing the payments justly due under the Loan Documents.

IGLI and the Junior Lenders were fully aware of BPB's foreclosure action. As junior lienholders, they stood to lose much if BPB succeeded in foreclosing on the Property. In an effort to buy time, IGLI member Andrew Lewis contacted BPB and negotiated a deal to extend the date for a foreclosure sale of the Property. IGLI and BPB prepared a written agreement ("Foreclosure Postponement Agreement") which permitted the Junior Lenders to make payments to BPB in exchange for its agreement not to foreclose on the Property before July 15, 2011. Ultimately, there were four such agreements; only the second and third agreements were actually signed by the parties.

Under the terms of these Foreclosure Postponement Agreements, the parties agreed that the payments being made by the Junior Lenders to BPB were not sufficient to cure the monetary defaults under the Loan Documents. They also agreed that BPB reserved its right to foreclose subject only to the time extension granted upon payment of specified sums.

As it happens, BPB was not the only lender that Kimomex had not paid. The Junior Lenders were also not being paid. On October 24, 2011, IGLI foreclosed upon the Property by a trustee's sale. The winning bidders were the Junior Lenders who credit bid the sum of $100,000. Title was conveyed to the beneficiaries under the junior deed of trust, and the beneficiaries subsequently conveyed title to the Debtor, 272 East Santa Clara Grocery LLC. In

ORDER FOLLOWING TRIAL

-4-

other words, the second position lenders foreclosed their deed of trust and conveyed the Property to a new entity they formed and controlled, namely Debtor.

The last agreement to toll BPB's foreclosure sale expired on December 31, 2012. The parties at this point encountered a rather lengthy dispute about some environmental conditions at the Property. IGLI and Debtor contended that BPB had a duty to disclose certain adverse environmental issues at the Property and breached that duty. The parties also had a dispute about rents that may have been diverted at the Property. At this point, the parties' negotiations came to an end and BPB filed suit in Santa Clara Superior Court for the appointment of a receiver. On June 27, 2013, Debtor filed this chapter 11 proceeding to stop the state court lawsuit.

B. BPB Proof of Claim, Debtor's Objection, and Sale of the Property

On October 22, 2013, BPB filed its proof of claim and an amendment to its proof of claim. BPB asserted a claim of $3,806,600.52 plus attorney's fees and expenses. Apparently, this included an erroneous outstanding principal balance of $3,555,168.55 instead of $3,341,017.20. Debtor filed an objection to that claim on several grounds.

On October 30, 2013, the court granted debtor's motion to sell the Property free and clear of liens. On November 8, 2013, the debtor closed a sale of the Property and paid BPB $3,341,017.20 from escrow.

Debtor paid a substantial part of BPB's claim when the sale of the Property closed. Debtor reserved from the sale the portion of the claim attributable to "additional principal, additional interest, default interest and late fees." It contended these costs were not allowable as a matter of federal or state law and were barred by the doctrines of waiver and estoppel. The parties also disagreed whether BPB or Debtor was entitled to attorney's fees for their work in this matter.

C. BPB has Calculated the Amount Due Correctly

Much of the trial in this case involved allegations that BPB failed to accurately assert the amount due under the Promissory Note. Without belaboring the point, Debtor and its principals contended that BPB repeatedly demanded the wrong amount under the loan,

ORDER FOLLOWING TRIAL
-5-

including in its verified state court complaint for the appointment of a receiver, incorrectly applied payments and made inconsistent demands for default interest and late fees. As a factual matter, many of Debtor's complaints are true as BPB has restated the amount due repeatedly. However, having considered all the evidence submitted, the court concludes that the balance established at trial by BPB accurately describes the amount due as of May 14, 2014: $503,540.07.[3]

## II. DISCUSSION

### A. Legal Standard for Claims Objections

Under Bankruptcy Code § 101(5)(A), a claim is a "right to payment." The applicable substantive law in determining the origin and existence of a claim is state law unless the Bankruptcy Code provides otherwise. *In re Sparkman*, 703 F.2d 1097, 1099 (9th Cir. 1983). A creditor's claim, once proof of it has been filed is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a).

A properly filed and executed proof of claim "constitutes prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). The burden shifts to the objecting party to present evidence to overcome the claimant's prima facie case. *In re Murgillo*, 176 B.R. 524, 529 (B.A.P. 9th Cir. 1995). The ultimate burden of persuasion is always on the claimant. *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991).

### B. An Oversecured Creditor is Entitled to Interest at the Default Rate and Reasonable Attorney's Fees

As an oversecured creditor, BPB is entitled, generally speaking, to post-petition interest, default interest, and reasonable attorney's fees. *Gen. Elec. Cap. Corp. v. Future Media*, 547

---

[3] Calculated based on Exhibits 1 and 2 at trial as follows:

| | |
|---|---:|
| Balance at closing of sale on November 8, 2013: | $3,555,168.55 |
| Less: Proceeds of sale | 3,341,017.20 |
| Balance | 214,151.35 |
| Add: Unpaid interest | 246,851.27 |
| Add: Late Fees | $42,537.95 |
| Total Outstanding on May 12, 2014: | $503,540.57 |

ORDER FOLLOWING TRIAL
-6-

F.3d 956, 961 (9th Cir. 2008); 11 U.S.C. § 506(b). Debtor contends that under California law, a party is not entitled to default interest unless it declares a default. It contends that BPB did not declare the loan obligation to be in default. The court concludes that is not true. On March 17, 2011, BPB filed its Notice of Default with the county recorder, which declared the loan in default and accelerated. Default interest can be charged from that date forward, subject to the limitations discussed below.

C. No Law Provides that the Loan Documents Should be Ignored when the Junior Lenders (Debtor) Foreclosed

Debtor makes a novel argument that the terms of the original Loan Documents should be ignored and do not control the contractual analysis because neither Debtor nor the Junior Lenders were parties to the original documents. The argument is not supported by any law and is not correct. *See Kolodge v. Boyd*, 88 Cal.App.4th 349, 356 (2001)(the junior lienholder at a foreclosure, like any other successful purchaser, takes the property subject to the senior lien). Debtor and the Junior Lenders foreclosed on the Property and succeeded to any obligations recorded with priority over their foreclosed deed of trust. This is an elementary feature of California real property law. The court will proceed with its analysis premised on the terms of the Loan Documents.

D. Late Fees and Default Interest are Allowable

Debtor objects to the imposition of both late fees and default interest, stating that both federal and state law prohibit such charges. A creditor's claim is usually determined by reference to state law. *See Travelers Cas. and Sur. Co. of America v. Pacific Gas Co.* 549 U.S. 443, 444 (2007)(noting that bankruptcy courts are required to consult state law in determining the validity of most claims); *Butner v. U.S.*, 440 U.S. 48, 55 (1979)("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). As the Ninth Circuit put it, a secured creditor is entitled to default interest on its claim "provided that the rate is not unenforceable under

ORDER FOLLOWING TRIAL
-7-

applicable nonbankruptcy law." *Gen. Elec. Cap. Corp. v. Future Media Prod. Inc.*, 536 F.3d at 974 (internal quotation and citation omitted).

To determine whether late fees and default interest are allowable under California law, one looks to the law of liquidated damages. Under California law, "[A] provision in a contract liquidating the damages for the breach of the contract *is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances* existing at the time the contract was made." Cal. Civ. Code § 1671(b) (emphasis added). "A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. . . . In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.'" *Ridgley v. Topa Thrift And Loan Ass'n.*, 17 Cal.4th 970, 977 (1998), *citing Garrett v. Coast & So. Fed. Sav. & Loan Ass'n.*, 9 Cal.3d 731, 739 (1973). "The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from the failure to perform under a contract." *Garrett v. Coast & So. Fed. Sav. & Loan Ass'n.*, 9 Cal.3d at 739. The party opposing the assessment of a default charge has the burden of proof that the applicable provisions were unreasonable at the time the contract was made. Cal. Civ. Code. § 1671(b); *Weber, Lipshie & Co. v. Christian*, 52 Cal.App.4th 645, 654 (1997).

In *Garrett*, a lender included in its standard promissory note a provision assessing a late charge for failure to make timely installment payments equal to 2% annual interest on the unpaid principal balance of the loan obligation for the period during which the payment was in default. The court concluded that "a charge for the late payment of a loan installment which is measured against the unpaid balance of the loan must be deemed to be punitive in character" and that the provision was void. *Garrett v. Coast & So. Fed. Sav. & Loan Ass'n.*, 9 Cal.3d at 740. Even though Garrett was decided prior to the 1977 amendment of § 1671, "[n]othing in the 1977 legislation indicates an intent to abrogate Garrett's analysis of unjustified late fees as unenforceable penalties[.]" *Ridgley v. Topa Thrift And Loan Ass'n.*, 17 Cal.4th at 981 fn 5.

ORDER FOLLOWING TRIAL

-8-

In this case, the late charge and default interest provisions are allowable. The late charge is 5% of the missed payment. It is not calculated with reference to the entire amount outstanding, but is narrowly tailored to the missed payment itself and thus has a sufficient proportional relationship to the actual damages BPB would suffer as a result of the missed payments. No evidence was presented at trial that would show this amount is unreasonable, outside industry standards, or patently unenforceable. As such, the late charges are allowable.

The default interest rate is also allowable. The Promissory Note provides for a 2% increase in the interest rate in the event of a default. In the Ninth Circuit, the rule is that the bankruptcy court should apply a presumption of allowability for the contract rate of default unless the rate not unenforceable under applicable nonbankruptcy law. *Gen. Elec. Cap. Corp. v. Future Media Prod., Inc.*, 536 F.3d at 974. As noted, there were two outstanding defaults on the BPB loan: the second encumbrance and the payment default. As a result, the loan qualified for the imposition of a default interest rate.

Debtor has not made any showing that a 2% default rate differential is unenforceable under California law. Debtor has not provided any evidence that the 2% default interest is extravagant or that it is not a reasonable estimation of a fair average compensation for any loss that BPB may sustain. In fact, Andrew Lewis's testimony that he and the Junior Lenders charge 2% default interest on loans they underwrite undermines any claim by Debtor that BPB's default rate is unreasonable. The evidence showed that the Junior Lenders knew of BPB's loan, knew of the due on sale or encumbrance clause, and knew or should have known that lending money secured by a junior lien on the Property might be violating the terms of the BPB loan and triggering a default.

Contrary to Debtor's assertion, BPB does not have to reconcile the default interest with its actual damages. Actual damages are irrelevant. The test is whether BPB made a reasonable attempt to estimate the damages that might be suffered in the event of a breach at the time the contract was made. *See Ridgley v. Topa Thrift And Loan Ass'n.*, 17 Cal.4th at 977. The financial consequences to BPB stemming from the junior lien are far more serious than missed

payments. BPB was never told of the junior encumbrance, and the injury from such breach is difficult or incapable of accurate estimation.

The cases cited by Debtor holding that an over-secured creditor may not receive both default interest rate and late charges under § 506(b) are not persuasive. First, the cases are not from the Ninth Circuit and are not binding on this court.

Second, the decisions do not uniformly hold that a creditor cannot get both default interest and late fees, as Debtor argued. Instead, they indicate that a creditor should not get *above market* default interest rate and late fees. *See In re Market Center East Retail Property, Inc.*, 433 B.R. 335, 365 (Bankr. D. N.M. 2010)("the Court finds that a creditor should not get both *an above market default interest rate* and late fees on the same debt." (emphasis added)).

Third, as recognized in BPB's trial brief, the cases are readily distinguishable on their facts. In this case, Debtor did not present any evidence that the default interest is unreasonably high and no junior creditors will be harmed if BPB is awarded default interest.

Finally, most of the cases that prohibit the award of default interest and late charges are concerned with the prospect of double recovery by the secured creditor for the same injury. In this case, the Junior Lenders triggered two events of default for which BPB suffered two injuries. The late charges compensate BPB only as to the injury that resulted from the missed payments.

E. <u>BPB did not Waive its Right to Default Interest and Late Fees and is not Estopped from Collecting Them</u>

Debtor argues, alternatively, that BPB waived its right to collect additional principal, interest at the default rate, and late fees, or was estopped from doing so. The terms "waiver" and "estoppel" are two distinct and different doctrines that rest upon different legal principles. *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III,* Ltd., 30 Cal. App. 4th 54, 59-60 (1994). Waiver refers to the act, or the consequences of the act, of one side. *Id.* It is the intentional relinquishment of a known right after full knowledge of the facts and depends upon the intention of one party only and does not require any act or conduct by the other party. *Id.* Waiver may be shown by conduct that "is so inconsistent with the intent to enforce the right in

ORDER FOLLOWING TRIAL

-10-

question as to induce a reasonable belief that such right has been relinquished." *Howard J. White*, *Inc. v. Varian Ass'n.*, 178 Cal. App. 2d 348, 355 n.2 (1960). "The burden is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver.'" *Id.* (quoting *City of Ukiah v. Fones*, 64 Cal.2d 104, 17-08 (1966)).

Estoppel, on the other hand, is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts. *Id.* (citations omitted). "Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." *Id.*

There is no waiver here because BPB has continuously expressly reserved its rights and claimed "no waiver" of those rights in every agreement that was signed.

Moreover, BPB is not estopped from collecting the additional principal, interest at the default rate, and late fees. First, as is the case with waiver, BPB has neither through its conduct nor by written agreement foregone its rights to collect such sums. BPB's repeated failures over time to ascertain the correct balances are regrettable but not legally significant. Moreover, there has been no injury to Debtor. The property is worth much more now than it was at the time of default.

The court further concludes that the late fees and default interest rate requested by BPB were supported by the testimony and are consistent with charges imposed by the Junior Lenders and IGLI in their own lending relationships. There was no evidence that the fees were unreasonable.

### III. CONCLUSION

For the foregoing reasons, Debtor's claim objection is OVERRULED. Because the Loan Documents permit BPB attorney's fees, the court expects that BPB's counsel will make a request for payment of those fees. The parties are free to negotiate the amount due. If they

ORDER FOLLOWING TRIAL

-11-

cannot arrive at a figure, BPB's counsel should file an addendum to the proof of claim by June 30, 2014, specifying the attorney's fees that are due. Debtor may file a response within 14 days. The matter will be submitted at the conclusion of that period without argument.

IT IS SO ORDERED.

**\*\*\* END OF ORDER \*\*\***

ORDER FOLLOWING TRIAL

**COURT SERVICE LIST**

[ECF Recipients by Electronic Notice]