CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California 95112
Telephone: (408) 295-9555
Facsimile: (408) 295-6606

ATTORNEYS FOR Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 13-53491 |
| 272 E SANTA CLARA GROCERY, LLC, | CHAPTER 11 |
| Debtor. | **SECOND INTERIM AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR** |
| | Date: September 24, 2014<br>Time: 1:30 p.m.<br>Place:<br>   280 S. First Street, Crt. Rm. 3099<br>   San Jose, CA 95113<br>Judge: Hon. Stephen L. Johnson |

TO THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY COURT JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; 272 E SANTA CLARA GROCERY, LLC; and all other interested parties:

Campeau Goodsell Smith ("CGS" or "Applicant"), general bankruptcy counsel to 272 E. Santa Clara Grocery, LLC, debtor-in-possession ("Debtor") in the above entitled bankruptcy case ("Bankruptcy Case") hereby submits this Second Interim and Final Application for Compensation and Reimbursement of Expenses by Attorney for Debtor

("Final Application"), pursuant to sections 328, 331, and 330 of title 11 of the United States Code, as amended (the "Bankruptcy Code"); Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses (the "Compensation Guidelines") promulgated by the Executive Office of the United States Trustee pursuant to 28 U.S.C. § 586(a)(3)(A). By this Application, CGS seeks, among other things, an order (I) approving as interim and final compensation those Chapter 11 attorneys fees incurred and costs expended by Applicant during the period of November 1, 2013 through the date of the hearing on this Application ("Application Period"), namely attorneys fees of $190,302.50 and costs of $3,271.08; (ii) approving the Order Granting First Interim Application for Compensation And Reimbursement of Expenses by Attorney for Debtor (Docket#118) ("Order Approving First Application") as final; (iii) approving $3,575.25 in attorneys fees for preparation of the First Application; (iv) approving $5,525.00 in attorneys fees for preparation of the Final Application; (v) authorizing and ordering Debtor to pay to these sums to Applicant; and (vi) for such further relief as this court deems proper.

In support of this Application, CGS submits the Declaration of William J. Healy ("Healy Declaration"). In further support hereof, CGS respectfully represents as follows:

## TABLE OF CONTENTS

Page

I. Introduction.

II. Background.

III. Case Initiation and Administration.

IV. Post-Petition Operations.

V. Cash Collateral.

VI. Asset Sales.

VII. Adversary Proceedings/Debtor's Claims.

VIII. Creditor Claims Analysis/Claims Objections.

IX. Reorganization.

X. Fee Application.

XI. Conclusion.

XII. Certification by Attorney for Debtor.

XIII. Debtor-in-Possession's Statement.

**I.   Introduction.**

Since the initial meeting with Debtor, commencement of this Bankruptcy Case, appointment of Applicant as counsel for the Debtor, and throughout the Application Period, Applicant has served as the Debtor's general bankruptcy counsel. Applicant took a lead role in preparing, submitting, arguing, and negotiating a number of pleadings relating to the commencement of the Bankruptcy Case, the administration of the Bankruptcy Case, and the various aspects of Debtor's use of cash collateral, sale of Debtor's assets, resolution of disputes with a secured creditor, and business and reorganization efforts. CGS worked extensively with the Debtor, its representatives, and creditors throughout the Application Period.

**II.   Background.**

Debtor is a single asset real estate entity and was the owner of real property commonly know as 272 E Santa Clara Street in San Jose[1]. Debtor's real property was subject to a commercial lease with Grocery Outlet, Inc. and was subject to a first position deed of trust in favor of Boston Private Bank & Trust Company ("BPB"), although Debtor was not BPB's borrower.

In approximately December 2012, Debtor contracted to sell the real property. However, the contracted buyer did not go forward with the sale when it discovered an environmental issue with the real property. Pre-petition the Debtor was working to resolve the environmental issue with the real property and conclude the sale.

The bankruptcy resulted from an impasse between Debtor and BPB relative to BPB's demand for a release of Debtor's claims against BPB for its non-disclosure of environmental issues with the real property and efforts to foreclose. Debtor understood that BPB knew of

---

[1] Debtor's sale of real property and assumption and assignment of its lease were approved by the court during the Application Period and the sale closed outside the Application Period (November 2013). Debtor, after payment of the costs of sale, real property taxes, and approximately $3,300,000 to BPB on its secured claim, now holds approximately $3,600,000 of sale proceeds and $160,000 in post-petition rent monies.

the environmental issues with the real property before it lent monies to Kimomex and knew these issues remained prior to and during Debtor's foreclosure on the second deed of trust (pursuant to a loan between Debtor and Kimomex); Debtor's expenditure of substantial sums of money foreclosing on its second deed of trust, bringing and keeping BPB current, readying the property for and securing a tenant, and maintaining the tenant's payment on the lease; and Debtor's various agreements with BPB. This impasse also resulted from BPB's demand that Debtor's tenant pay all rental income to them, BPB's denial of income from which Debtor could address the environmental issue preventing the sale of the real property, and BPB's state court action to proceed with foreclosure.

**III. Case Initiation and Administration.**

In June 2013, Debtor approached Applicant regarding its current situation, its rights and remedies relative thereto including a potential bankruptcy, and the potential benefits a bankruptcy, including a potential Chapter 11, may provide to the Debtor and its creditors in response to BPB's pursuit of foreclosure.

Applicant assisted the Debtor to evaluate and understand its rights and remedies in bankruptcy, assisted the Debtor to prepare for a bankruptcy filing, including preparing various schedules and required bankruptcy filings, and conferred with Debtor and relative to numerous matters discussed hereinafter. Applicant conferred with Debtor concerning its financial circumstances and reorganization alternatives and Debtor's election to file a Chapter 11 petition to reorganize its affairs.

During these proceedings, Applicant assisted Debtor to address various U.S. Trustee requirements, including but not limited to the Initial Debtor Interview ("IDI"), 341 Meeting of Creditors, Debtor-in-Possession bank account ("DIP Account"), and Debtor's various schedules and associated filings. Applicant conferred with Debtor concerning the obligations required of it pursuant to the Bankruptcy Rules and the U.S. Trustee Guidelines. Applicant communicated on various subjects with representatives of the U.S. Trustee's office and the Bankruptcy Clerk's office with respect to issues arising in this case. Applicant also

conferred with various creditors concerning claims asserted. Applicant regularly conferred with various other counsel taking part in this case and has regularly conferred with various creditors concerning developments in this case.

In addition, Applicant secured its own employment, the employment of special counsel to prosecute Debtor's state court action, the employment of a real estate professional to assist Debtor in the marketing and sale of its real property, and the appointment of Debtor's Responsible Individual. The cost and expense associated with employment of Applicant, employment of Debtor's special counsel, and appointment of Debtor's Responsible Individual were increased as a result of objections asserted by BPB, all of which were subsequently abandoned. BPB's objections were primarily premised on the allegation that more information was required notwithstanding BPB was not a direct creditor of the Debtor, BPB had years of direct dealings with the Debtors of BPB and was familiar with Debtor and Debtor's history, BPB asserted these objections to harass Debtor, and neither the U.S. Trustee nor Debtor's four unsecured creditors or limited members objected.

Most recently, Applicant assisted Debtor secure court approval of its compromise with BPB and a dismissal process.

In connection with the foregoing, during the Application Period, CGS expended a total of _____ hours, at a cost to the estate of $_____.

**IV. Post-Petition Operations.**

Applicant assisted Debtor in the preparation of and timely filing of U.S. Trustee required Monthly Operating Reports and worked with various Debtor, creditor, and an interested party to confirm that Debtor's real property was in adequately insured.

BPB filed multiple applications for 2004 examinations to examine Debtor's members without ever applying to examine Debtor; filed multiple applications for 2004 examinations to examine Debtor's members regarding potential preference claims to which it did not have a security interest and knew were invalid due to Debtor's solvency; filed an application for examination of Debtor's environmental consultant ERAS Environmental, Inc. and never

SECOND INTERIM AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR
6
Case: 13-53491    Doc# 250    Filed: 09/02/14    Entered: 09/02/14 13:35:46    Page 6 of 16

secured an order and notwithstanding BPB's knowledge that ERAS Environmental. Inc's report would be a matter of public records once filed with the County of Santa Clara and it would be filed upon payment of the outstanding balance of $6,359.10-which Debtor's creditor advanced due to BPB's delays in agreeing to pay such balance from cash collateral and/or rent and which substantially delayed Debtor's receipt of a No Further Action letter from the County of Santa Clara; and then proceeded with one examination of member and creditor Andrew A. Lewis for ½ day via video tape (the examination was not officially concluded and the underlying application did not relate to Mr. Lewis's capacity as Debtor's manager or Responsible Individual).

Applicant's services during the Application Period and relative to post-petition operations were placed in other categories.

**V. Cash Collateral.**

Debtor's cash-collateral issues were in flux as of the commencement of this bankruptcy case because pre-petition BPB had intercepted 100% of Debtor's rent, continued to do so post-petition, simply refused to substantively engage Debtor in a consensual use of the cash collateral, including to pay the outstanding invoice of ERAS Environmental, Inc. so ERAS's report could be finalized and submitted to the County for processing and movement towards the County's issuance of a No Further Action letter, and then moved for a determination that post-petition rents were not property of the estate. Applicant assisted Debtor understand and evaluate the cash collateral issues, including payment to ERAS and BPB's motion, and successfully opposed BPB's motion. Subsequently, Applicant assisted Debtor retrieve property of the estate from BPB and secure such funds, secure future rents from Debtor's tenant, seek BPB's consent to use cash collateral to pay BPB (albeit unsuccessfully), and prepare a motion for use of cash collateral so Debtor could pay BPB and US Trustee Quarterly Fees.

In addition, post Debtor's sale of Real Property and payment of the undisputed portions of BPB's claim Debtor held substantial funds in excess of its claims. Applicant, after

discussion and disclosure to Debtor regarding the applicable law and relative authority, assisted Debtor's efforts to secure court approval of distributions of undisputed claims. Debtor's efforts in this regard, although unsuccessful, were designed to benefit the creditors by avoiding further delays in payment, reduce ongoing interest Debtor would otherwise owe to these creditors, and provide adequate protection for BPB.

In connection with the foregoing, during the Application Period, CGS expended a total of _____ hours, at a cost to the estate of $_____.

**VI. Asset Sales.**

Debtor's primary asset was its real property and associated real property lease. As a result of Debtor's securing of a No Further Action letter from the County of Santa Clara and marketing efforts Debtor was able to secure various purchase offers. Applicant assisted Debtor understand and address various sales issues, including liens for real property taxes, BPB's disputed lien, and the lease, and assisted Debtor to address inquiries from the buyers, and prepare and file a motion to sell and motion to assume and assign its lease to buyers on shortened time. Shortened time was necessary for various reasons, including Debtor's demand and buyers' agreement to close the sale in an expedited manner.

With respect to the Application Period Applicant primarily addressed finalizing the sale and associated rent issues, lien release, payment issues, and less significant closing issues as detailed in Applicant's time records.

In connection with the foregoing, during the Application Period, CGS expended a total of _____ hours, at a cost to the estate of $_____.

**VII. Adversary Proceedings/Debtor's Claims.**

Debtor's schedules reference various claims, including claims against BPB for non-disclosure of environmental issues with Debtor's real property (before and after Debtor became the owner of the real property), potential claims against others that may be responsible for the environmental issue with the real property, and pending state court litigation against guarantors of Debtor's promissory note to Kimomex.

Applicant assisted Debtor in identifying these various claims, evaluating these various claims relative to potential prosecution, and securing potential relevant information regarding these claims. Applicant worked with Debtor and creditor's counsel regarding potential compromise options relative to Debtor's claims against BPB, participated in a self-mediated conference between Debtor and BPB, and assisted Debtor evaluate various legal and factual issues associated with such claim, including but not limited to BPB's claim. In addition, Applicant conducted research regarding a prosecution of a potential claims against others that may be responsible for the environmental issue with the real property, including prior property owners and occupants. Applicant has worked with Debtor and special counsel regarding the pending state court litigation court litigation against guarantors of Debtor's promissory note to Kimomex.

In connection with the foregoing, during the Application Period, CGS expended a total of _____ hours, at a cost to the estate of $_____.

**VIII. Creditor Claims Analysis/Claims Objections.**

Debtor's creditors were limited such that initially creditor claims analysis and claims objections were not anticipated. However, during the Application Period Debtor received notice of three claims, Internal Revenue Service, County of Santa Clara for real property taxes, and BPB which, in light of Debtor's prosecution of a disclosure statement and plan and a sale and unanticipated figures in the claims, required Applicant and Debtor to review these claims.

Applicant reviewed these claims, consulted with Debtor and Debtor's representatives, and began the process of addressing the unexpected figure in the County of Santa Clara's claim and BPB's claim which specifically asserted figures and claims opposite of various agreements with the Debtor, information provided to Debtor, state court filings, and various filings in this Bankruptcy Case.

Applicant was able to secure amended claims by the Internal Revenue Service and The County of Santa Clara whereby each asserted no further claim against the Debtor.

Applicant and Debtor's efforts to resolve the claim of BPB were substantially more complicated and in the absence of an informal agreement Debtor pursued its objections to BPB's claim. Applicant assisted Debtor to prepare and file objections to the BPB claim, prepare the objections for trial, and prosecute the objections at trial. Following the court's ruling on the primary portions of BPB's claim, Applicant reviewed BPB's addendum to claim, consulted with Debtor, and prepared and filed an objection thereto.

Applicant, subsequent to the court's ruling on the primary portions of BPB's claim but prior to any ruling on the addendum to claim, renewed efforts to resolve the claim, worked with Debtor and BPB's counsel to reach a stipulated compromise, and secured court approval of the compromise and Debtor's exit from bankruptcy.

In this regard, Applicant has generally categorized the Creditor Claims Analysis/Claims Objections into several sub-categories, namely Non-BPB Claims, Pre-Trial Claim Objection, Pre-Trial Claim Objection Discovery/Pleadings, Trial Claim Objection-General Pleading, Trial Claim Objection-Evidence Pleading, Trial Claim Objection-Legal Pleading, Trial Claim Objection-Trial, Post-Trial Claim Objection Briefing, Post-Trial Claim Addendum (Attorneys Fees), Claim Objection Compromise, and Claim Objection Miscellaneous. In addition

In connection with the foregoing, during the Application Period, CGS expended a total of _____ hours, at a cost to the estate of $_____.

**IX. Reorganization.**

Debtor is a single asset real estate entity. Therefore this bankruptcy case was subject to the rules and procedures associated with single asset real estate case. Pursuant thereto Applicant prepared and timely filed a disclosure statement and plan. Initially Debtor's plan was dependent on two main issues, namely use of Debtor's rental income to address and resolve the pending environmental issues and potential resolution with BPB. Specifically, Debtor's plan was to resolve the environmental issue with the real property, sell the real property, and pay BPS and all creditors. Absent the filing of the disclosure statement and

**SECOND INTERIM AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR**
10
Case: 13-53491    Doc# 250    Filed: 09/02/14    Entered: 09/02/14 13:35:46    Page 10 of 16

plan Debtor would have been subject to a loss of the automatic stay and foreclosure of BPB's lien.

After sale of Debtor's Real Property Debtor, with the assistance of Applicant, submitted and pursued an amended plan which would allow it to pay all creditors in full after any disputed claims were resolved. In this regard, Debtor only needed to resolve BPB's disputed claim. Notwithstanding the apparent simplicity of Debtor's plan, BPB asserted numerous objections in an apparent effort to prevent any reorganization and to gain tactical advantage over Debtor.

In addition, BPB submitted and pursued its own plan which would only allowed BPB to vote, paid BPB in full, Debtor to pay all other creditors in full, but denied any other party the right to vote, denied Debtor the right to pursue independent claims against BPB, and required Debtor and its members to defend BPB from claims from unidentified third parties. As BPB's plan only served BPB, Applicant, at Debtor's instruction and for the benefit of the Debtor and others, objected to BPB's plan.

Applicant prepared and filed several pleadings and attended several hearings relating to Debtor's and BPB's respective disclosure statements and plans and relative to objections asserted by one another, the US Trustee, and the court. After the court issued orders approving two disclosure statements and issued an order regarding balloting and confirmation Applicant assisted Debtor in the balloting, related briefing requested by the court, and other aspects of the confirmation process. The confirmation process was ready for final hearing or trial when it was placed on hold pending the Debtor's compromise with BPB and anticipated dismissal.

In connection with the foregoing, during the Application Period, CGS has expended a total of _____ hours, at a cost to the estate of $_____.

**X. Fee Application.**

Pursuant to the Guidelines Applicant seeks compensation for the First Application and the related Order Granting First Application and this Application.

On December 12, 2013 the court issued an Order Granting First Interim Application for Compensation And Reimbursement of Expenses by Attorney for Debtor (Docket#118) ("Order Approving First Application"). Applicant did not previously ask the court for compensation for the First Application. Applicant previously spent approximately 11.9 hours preparing the First Application, including responding to an objection from creditor BPB and dealing with cash collateral assertions, at a cost of approximately $5,057.50 (said total excludes any time to attend said hearing and file a related order). The Guidelines provide for attorneys fees of $3,575.25. (Per Guidelines, $3,575.25 is 5% of that application sum ($71,505.00 x 5%). Pursuant to the Guidelines Applicant seeks compensation of $3,575.25 for the First Application.

Applicant spent 13.0 hours preparing this Final Application, including 1.0 hour allocated to attend the hearing, at a cost of approximately $5,525.00. (Per Guidelines, $_____ is 5% of the application sum).

Therefore, by way of this Final Application Applicant moves for approval of $3,575.25 in attorneys fees for preparation of the First Application and approval of $5,525.00 in attorneys fees for preparation of the Final Application.

**XI. Conclusion.**

In the course of representation in these matters during the Application Period, Applicant has devoted hours of professional services, as indicated on Applicant's project billing statements, which are attached as Exhibit A. The Statement identifies the individuals who have performed specific services and is summarized as follows:

| | | |
|---|---|---|
| Scott L. Goodsell (SLG) | ____ | 475.00/hr. |
| Scott L. Goodsell (SLG) | ____ | No Charge |
| William J. Healy (WJH) | ____ | 425.00/hr. |
| William J. Healy (WJH) | ____ | No Charge. |
| Kari L. Silva[2] (KSL) | ____ | 300.00/hr. |
| Kari L. Silva (KSL) | ____ | No Charge. |

In view of the time expended and the responsibilities assumed during the Application Period,

---

[2] Kari L. Silva subsequently changed her name to Kari S. Bowyer.

Applicant respectfully submits that it expended hours and the reasonable value of its services hereinabove set forth is $_____.

Applicant also expended the sum of $3,271.08 for court fees, transcripts, photocopying, postage, telephone and other costs during the Application Period, as set forth in Exhibit B. All requests for costs are based on the <u>Guidelines for Compensation of Professionals</u>.

Applicant believes that the services so rendered and costs so incurred herein were necessary and that the fees and costs requested constitute reasonable and necessary fees expended on behalf of the estate. In accordance with its Rule 2016(b) Disclosure of Compensation, Applicant previously received payment of $73,556 (Attorney's fees of $71,505 and costs of $2,051) pursuant to the First Application and Order Approving First Application and a retainer of $20,000.00 from Andrew Lewis in connection with the Chapter 11 case. No part of the monies previously received by Applicant has been shared with any person, and no agreement or understanding exists between Applicant and any other person for the sharing of compensation received or to be received for services rendered in connection with this case, except with the members and associates of Applicant's law firm.

Debtor's June 2014 Monthly Operating Report ("MOR") (Docket#228) indicates it currently holds $3,540,047.05 in its Blocked DIP Account and an additional $198,303.86 in a separate DIP Account for a total of approximately $3,738,351.00. Debtor's July MOR (Docket#244) indicates it holds approximately $3,540,017 in its Blocked DIP Account and an additional $198,304 in a separate DIP Account for total of approximately $3,738,351.00. Pursuant to Debtor's compromise it, upon court approval, intends to pay creditor BPB $850,000. Special Counsel and creditor Rossi, Hamerslough ("Rossi Firm") are owed monies as special counsel and as creditor. While Debtor prefers to pay the Rossi Firm after dismissal, currently Rossi Firm has requested payment prior to dismissal of this case. The total sum payable to the Rossi Firm is less believed to be less than $25,000. Other claimants are owed less than $1,000,000. Therefore, Debtor has sufficient funds to pay on this Application and without cash collateral concerns.

**SECOND INTERIM AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR**
13
Case: 13-53491    Doc# 250    Filed: 09/02/14    Entered: 09/02/14 13:35:46    Page 13 of 16

WHEREFORE, Applicant prays that this court enter an order an order (I) approving as interim and final compensation those Chapter 11 attorneys fees incurred and costs expended by Applicant during the period of November 1, 2013 through the date of the hearing on this Application ("Application Period"), namely attorneys fees of $_____ and costs of $3,271.08; (ii) approving the Order Granting First Interim Application for Compensation And Reimbursement of Expenses by Attorney for Debtor (Docket#118) ("Order Approving First Application") as final; (iii) approving $3,575.25 in attorneys fees for preparation of the First Application; (iv) approving $5,525.00 in attorneys fees for preparation of the Final Application; (v) authorizing and ordering Debtor to pay to these sums to Applicant; and (vi) for such further relief as this court deems proper.

DATED: September 2, 2014     CAMPEAU GOODSELL SMITH
By: <u>William J. Healy</u>
William J. Healy
Attorneys for Debtor

**XII. Certification by Attorney for Debtor.**

I, William J. Healy, say:

1. I am an attorney with the law firm of Campeau Goodsell Smith, attorneys of record for debtors herein. I make this declaration in support of said law firm's application for interim compensation and reimbursement of expenses as attorneys for debtor in this Chapter 11 case. By way of this certification I do not intend to waive any privileges, including the attorney client and word product privileges. If called as a witness, I would competently testify as follows:

2. In accordance with its Disclosure of Compensation and Application for Order Appointing Counsel for Debtor (Docket#21) and Debtor's Ex Parte Application to Employ Campeau Goodsell Smith, L.C. as Counsel For Debtor (Docket#24 and related pleadings), Debtor and Applicant agreed to an initial retainer in the sum of $20,000.00. Applicant received $20,000 towards this retainer. On August 26, 2013 the court issued an Order Appointing Counsel for Debtor (Docket#58).

3. No part of the monies previously received by Applicant have been shared with any person, and no agreement or understanding exists between Applicant and any other person for the sharing of compensation received or to be received for services rendered in connection with this case, except with the members and associates of Applicant's law firm.

4. Debtor's June 2014 Monthly Operating Report ("MOR") (Docket#228) indicates it currently holds $3,540,047.05 in its Blocked DIP Account and an additional $198,303.86 in a separate DIP Account for a total of approximately $3,738,351.00. Debtor's July MOR (Docket#244) indicates it holds approximately $3,540,017 in its Blocked DIP Account and an additional $198,304 in a separate DIP Account for total of approximately $3,738,351.00. Pursuant to Debtor's compromise it intends to pay creditor BPB $850,000. Special Counsel

and creditor Rossi, Hamerslough ("Rossi Firm") are owed monies as special counsel and as creditor. While Debtor prefers to pay the Rossi Firm after dismissal, currently Rossi Firm has requested payment prior to dismissal of this case. The total sum payable to the Rossi Firm is less believed to be less than $25,000. Other claimants are owed less than $1,000,000. Therefore, Debtor has sufficient funds to pay on this Application and without cash collateral concerns.

5. I prepared the accompanying application based on my own personal knowledge, my familiarity and review of this firm's practices, files, and records, and my review of the court's files and records and believe its contents to be true and correct.

6. Attached hereto as exhibits are true and correct copies of the following:

Exhibit A Applicant's Project Billing Summaries;

Exhibit B Applicant's Expenses;

Exhibit C Transmittal.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at San Jose, California, on September 2, 2014

/s/ William J. Healy
William J. Healy

## XIII. Debtor-in-Possession's Statement.

At this time Applicant does not have a formal statement of the Debtor.